RNo. [ ]

# IN THE
## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

JOHN DOE #1 AND JOHN DOE #2,

*Plaintiffs-Respondents*,

v.

TWITTER, INC.,

*Defendant-Petitioner.*

On Petition for Permission to Appeal from the United States District Court for the
Northern District of California
The Honorable Joseph C. Spero
District Court Case No. 21-cv-000485

## PETITION FOR PERMISSION TO APPEAL PURSUANT TO
## 28 U.S.C. § 1292(B)

COOLEY LLP
MICHAEL G. RHODES (116127)
(rhodesmg@cooley.com)
KATHLEEN HARTNETT (314267)
(khartnett@cooley.com)
KYLE C. WONG (224021)
(kwong@cooley.com)
3 Embarcadero Center 20th Floor
San Francisco, CA 94111-4004
Telephone: (415) 693-2000
Facsimile: (415) 693-2222

COOLEY LLP
LINH K. NGUYEN (305737)
(lknguyen@cooley.com)
JAMIE D. ROBERTSON (326003)
(jdrobertson@cooley.com)
4401 Eastgate Mall
San Diego, California 92121
Telephone: (858) 550-6000
Facsimile: (858) 550-6420

*Attorneys for Defendant-Petitioner Twitter, Inc.*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1(a), Petitioner Twitter, Inc. ("Twitter") states that it is a publicly traded corporation with no parent corporation, and no publicly traded corporation owns more than 10% of its stock.

# TABLE OF CONTENTS

Page

INTRODUCTION ...................................................................................... 1

QUESTIONS PRESENTED .................................................................... 4

BACKGROUND ....................................................................................... 5

    A.    Relevant Statutory Provisions .................................................. 5

    B.    The First Amended Complaint. ............................................... 7

    C.    Procedural History. .................................................................. 9

    D.    The Division in the District Courts Concerning the Questions Presented. ............................................................. 10

THE COURT SHOULD PERMIT THIS APPEAL ................................ 13

    A.    The Order Involves Two Controlling Questions of Law ...... 14

        1.    Section 230(e)(5)(A) Immunity Carve-Out. .................... 15

        2.    " Participation in a Venture" Under Section 1595. ........ 16

    B.    There are Substantial Grounds for Difference of Opinion as to Both Controlling Questions. ................................................ 18

        1.    Section 230(e)(5)(A) Immunity Carve-Out. .................... 18

        2.    "Participation in a Venture" Under Section 1595. ......... 18

    C.    Review Now Will Materially Advance Termination of the Litigation. .............................................................................. 19

        1.    Section 230(e)(5)(A) Immunity Carve-Out. .................... 19

        2.    "Participation in a Venture" Under Section 1595. ......... 20

CONCLUSION ....................................................................................... 20

i

# TABLE OF AUTHORITIES

## Cases

*AM v. Salesforce.com Inc.*,
   No. 21-cv-1668 (N.D. Tex. July 19, 2021) ................................................16

*AXA Rosenberg Grp. v. Gulf Underwriters*,
   No. C-04-0415-JCS, 2004 WL 1844846 (N.D. Cal. Aug. 16,
   2004) ............................................................................................................15

*B.M. v. Wyndham Hotels & Resorts, Inc.*,
   No. 20-cv-00656-BLF, 2020 WL 4368214 (N.D. Cal. July 30,
   2020) ........................................................................................... 11, 13

*In re Cement Antitrust Litig.*,
   673 F.2d 1020 (9th Cir. 1981), *aff'd sub nom. Arizona v. Ash
   Grove Cement Co.*, 459 U.S. 1190 (1983) .............................. 14, 15, 18, 20

*Couch v. Telescope Inc.*,
   611 F.3d 629 (9th Cir. 2010) .......................................................................18

*Doe #1 v. MG Freesites LTD*,
   No. 21-cv-00220 (N.D. Ala. Feb. 11, 2021)................................................16

*Doe v. Kik Interactive, Inc.*,
   482 F. Supp. 3d 1242 (S.D. Fla. 2020).......................................................12

*Doe v. Mindgeek USA Inc.*,
   No. 21-cv-00338-CJC(ADSx), 2021 WL 4167054 (C.D. Cal.
   Sept. 3, 2021) ........................................................................................ 12, 13

*Doe v. Reddit*,
   No. 21-cv-00768-JVS-KEW (C.D. Cal. Oct. 7, 2021).................. 11, 12, 13

*Doe v. WebGroup Czech Republic*,
   No. 21-cv-2428 (C.D. Cal. Mar. 18, 2021) ................................................16

*Fair Hous. Council of San Fernando Valley v. Roommates.Com,
   LLC*,
   521 F.3d 1157 (9th Cir. 2008) ................................................................5, 6

i

*Fleites v. MindGeek S.A.R.L.*,
    No. 21-cv-4920 (C.D. Cal. June 17, 2021)......................................... 12, 16

*G (a minor) v. Salesforce.com, Inc.*,
    No. 20-cv-02335 (N.D. Ill. Apr. 15, 2020).................................16

*Helman v. Alcoa Glob. Fasteners Inc.*,
    No. CV 09-1353 SVW, 2009 WL 2058541 (C.D. Cal. June
    16, 2009), *aff'd*, 637 F.3d 986 (9th Cir. 2011) ..........................17

*J.B. v. G6 Hosp., LLC*,
    No. 19-cv-07848-HSG, 2020 WL 4901196 (N.D. Cal. Aug.
    20, 2020) ................................................................................13

*J.B. v. G6 Hospitality, LLC*,
    No. 19-CV-07848-HSG, 2021 WL 4079207 (N.D. Cal. Sept.
    8, 2021) ............................................................................ *passim*

*J.C. v. Choice Hotels Int'l, Inc.*,
    No. 20-cv-00155-WHO, 2020 WL 6318707 (N.D. Cal. Oct.
    28, 2020) ................................................................................13

*Joffe v. Google, Inc.*,
    746 F.3d 920 (9th Cir. 2013) ....................................................17

*Jones v. Dirty World Ent. Recordings LLC*,
    755 F.3d 398 (6th Cir. 2014) ....................................................15

*Klinghoffer v. S.N.C. Achille Lauro*,
    921 F.2d 21 (2d Cir. 1990) .......................................................16

*Kuehner v. Dickinson & Co.*,
    84 F.3d 316 (9th Cir. 1996) ......................................................15

*LH v. Marriott Int'l, Inc.*,
    No. 21-cv-22894 (S.D. Fla. Aug. 10, 2021) ..............................16

*M.A. v. Wyndham Hotels & Resorts, Inc.*,
    425 F. Supp. 3d 959 (S.D. Ohio 2019).......................................11

*M.L. v. craigslist Inc.*, No. 19-cv-6153 (W.D. Wash. Dec. 2,
      2019) ...................................................................................................16

*Mohawk Indus., Inc. v. Carpenter*,
      558 U.S. 100 (2009) ...........................................................................18

*Reese v. BP Expl. (Alaska) Inc.*,
      643 F.3d 681 (9th Cir. 2011) ................................................ 14, 16, 19, 20

*Ricchio v. McLean*,
      853 F.3d 553 (1st Cir. 2017) .............................................................13

*Springs Ambulance Serv., Inc. v. City of Rancho Mirage, Cal.*,
      745 F.2d 1270 (9th Cir. 1984) ...........................................................15

*Steering Comm. v. United States*,
      6 F.3d 572 (9th Cir. 1993) .................................................................16

*VIA Techs., Inc. v. SonicBlue Claims, LLC*,
      No. C 09-2109 PJH, 2011 WL 2437425 (N.D. Cal. June 17,
      2011) ...................................................................................................19

## Statutes

18 U.S.C. § 1591 ........................................................................... *passim*

18 U.S.C. § 1595 ........................................................................... *passim*

28 U.S.C. § 1292(b) ...................................................................... *passim*

47 U.S.C. § 230 ............................................................................. *passim*

## Other Authorities

164 Cong. Rec. S1849-08 (daily ed. Mar. 21, 2018) .........................6

H.R. Rep. No. 115-572 (2018) ...........................................................6

## INTRODUCTION

This petition for interlocutory review pursuant to 28 U.S.C. § 1292(b) ("Section 1292(b)") presents two significant, recurring, and controlling questions of law regarding the application of federal sex trafficking laws to online platforms such as Petitioner Twitter, Inc. ("Twitter"). Both questions are novel and are dividing lower courts in this Circuit and beyond—with the district court's resolution here in the minority. Under Section 1292(b), interlocutory review is warranted upon a showing of a "controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). As the district court recognized, these criteria are satisfied by both questions. Moreover, an immediate appeal will allow the Court to provide needed guidance more broadly on these recurring and significant issues.

The first question concerns the district court's flawed interpretation of the narrow exception to immunity under Section 230 of the Communications Decency Act ("CDA § 230") set forth in the Fight Online Sex Trafficking Act ("FOSTA"), which was enacted in 2018. *See* 47 U.S.C. § 230(e)(5)(A) ("Section 230(e)(5)(A)"). Since 1996, CDA § 230 has provided online platforms such as Twitter broad immunity from claims arising from the hosting of third-party generated content. FOSTA created a narrow exception to that immunity, allowing federal civil sex

trafficking claims against online platforms "*if the conduct underlying the claim constitutes a violation of section 1591*" of Title 18 ("Section 1591")—the federal criminal sex trafficking statute. 47 U.S.C. § 230(e)(5)(A).[1] To be liable under Section 1591, a defendant must have actual knowledge of the plaintiff's alleged sex trafficking and have knowingly benefited from his participation in the alleged sex trafficking. 18 U.S.C. § 1591(a). Here, Respondents alleged that they alerted Twitter to videos of them containing child sexual abuse material ("CSAM") on its platform, and that Twitter failed to immediately remove the videos. They did not, however, sufficiently allege that Twitter met the heightened requirements of Section 1591, including actual knowledge of the underlying trafficking. This should have been dispositive in Twitter's favor, but the district court did not follow the plain meaning of the immunity carve-out in Section 230(e)(5)(A) requiring a showing that Twitter violated Section 1591. Instead, the district court held that Respondents could trigger the carve-out by meeting the more relaxed "should have known" standard that applies to civil sex trafficking claims brought against non-online platform defendants under 18 U.S.C. § 1595 ("Section 1595"). *See* A42 ("Order"). In so doing, the district court erroneously interpreted FOSTA and joined the minority of an existing split among district courts, mostly within this Circuit. Several courts have come to the correct conclusion, in conflict with the district court here, that a

---

[1] Unless otherwise noted, all emphasis is added, and internal citations are omitted.

plaintiff must plead a defendant's violation of Section 1591 to trigger FOSTA's immunity carve-out. *See, e.g.*, *J.B. v. G6 Hospitality, LLC*, No. 19-CV-07848-HSG, 2021 WL 4079207, at *4 (N.D. Cal. Sept. 8, 2021) (holding that "[S]ection 230(e)(5)(A) withdraws immunity only for claims asserting that the defendant's own conduct amounts to a violation of section 1591"). This controlling and recurring question divides the courts, and its resolution will materially advance this litigation given Respondents' inability to satisfy Section 1591. As a question of immunity, it is also particularly appropriate for interlocutory review.

The second question involves the meaning of the term "participation in a venture" under Section 1595, which is an element of a civil sex trafficking claim. As with the immunity question, the district court incorrectly evaluated Respondents' beneficiary liability sex trafficking claim under Section 1595—*i.e.*, applied the ordinary standards for civil sex trafficking claims—as opposed to the heightened Section 1591 standard that applies to online platforms under FOSTA's plain language. The district court concluded that Respondents sufficiently alleged "participation in a venture" under Section 1595 by merely alleging that Twitter "enables sex trafficking on its platform" generally and that Twitter was specifically alerted to the videos containing CSAM but failed to remove those videos immediately. A42-44. The district court did not require *any* relationship between Twitter and Respondents' traffickers, much less the business dealings or monetary

relationship with the traffickers necessary for there to be "participation in a venture." In conflict with the district court here, other district courts have correctly interpreted "participation in a venture" under Section 1595 to require, absent a defendant's formal association with a trafficker, a showing of a "continuous business relationship" with the alleged traffickers such as business dealings or a monetary relationship. Had the district court correctly interpreted "participation in a venture" to require such a showing, Respondents' beneficiary liability claim should have failed. As with the proper interpretation of FOSTA's immunity carve-out, this controlling question is dividing the courts and will benefit from immediate review.

Since the district court's order issued, two other district courts within the Circuit issued rulings that conflict with the district court's resolution, and the district court has agreed that there are substantial grounds for difference of opinion on both questions. Thus, in addition to materially advancing the resolution of this particular case, allowing an immediate appeal will also materially advance the resolution of these legal questions more broadly, potentially saving district courts and litigants from years of full-scale litigation in several cases. Accordingly, Twitter respectfully requests that the Court grant this Petition for interlocutory review.

## QUESTIONS PRESENTED

(1)    Whether FOSTA strips interactive computer service providers of immunity for hosting third-party content under Section 230 of the Communications

Decency Act, where a plaintiff fails to allege that the defendant's conduct violates the federal criminal sex trafficking prohibition in 18 U.S.C. § 1591, as required by the plain language of FOSTA's immunity carve-out, 47 U.S.C. § 230(e)(5)(A).

(2)     Whether plaintiffs adequately plead "participation in a venture" under 18 U.S.C. § 1595(a), where the complaint fails to allege any "continuous business relationship" with the sex traffickers at issue in the form of direct business dealings or a monetary relationship.

## BACKGROUND

### A.     Relevant Statutory Provisions.

**CDA § 230.**  Congress enacted CDA § 230 in 1996 to, among other things, promote the "continued development of the Internet" as a "vibrant and competitive free market . . . unfettered by Federal or State regulation."  47 U.S.C. § 230(b)(1)-(2).  To that end, CDA § 230 creates broad immunity for claims against interactive computer service ("ICS") providers based on user-generated content: "No provider . . . of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."  47 U.S.C. § 230(c)(1).  CDA § 230 thus bars all causes of action that seek to hold ICS providers like Twitter liable for hosting content created by third-parties.  *See Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1170-71 (9th Cir. 2008) (explaining that a provider is "perforce immune under section 230"

for any claim that "can be boiled down to deciding whether to exclude material that third parties seek to post online"). This approach ensures that online platforms do not have to make the "grim" choice "between taking responsibility for all messages and deleting no messages at all." *Id.* at 1162-63.

**FOSTA.** In 2018, Congress enacted FOSTA to target the small but growing number of websites deliberately promoting and facilitating prostitution and sex trafficking, but using CDA § 230 as a shield. Pub. L. No. 115-164, 132 Stat. 1253 ("It is the sense of Congress that—[CDA § 230] was never intended to provide legal protection to websites that unlawfully promote and facilitate prostitution"); H.R. Rep. No. 115-572, at 3-5 (2018) ("[O]nline classified sites . . . have gone beyond merely hosting advertisements, [] and have purposely created platforms designed to facilitate prostitution and sex trafficking."). Most infamously, as explained in the House Report, online classified sites like Backpage.com "had knowingly concealed evidence of criminality by systematically editing its 'Adult' ads [by] automatically delet[ing] incriminating words [and] then manually delet[ing] incriminating language that filters missed," *id.*, and its business relied almost entirely on advertisements "designed to sell children for sex," 164 Cong. Rec. S1849-08, S1852-60 (daily ed. Mar. 21, 2018).

To balance the interests of allowing civil liability against sites that actively encourage, facilitate, and benefit from sex trafficking, with protecting ICS providers

against crushing liability from hosting user-generated content, FOSTA created a narrow exception to CDA § 230 immunity: federal sex trafficking claims against ICS providers could proceed ***"if the conduct underlying the claim constitutes a violation of section 1591"***—the federal criminal prohibition of sex trafficking. 47 U.S.C. § 230(e)(5)(A); *see* 18 U.S.C. §§ 1591(a)(1), (e)(4) (prohibiting direct sex trafficking or "***knowing[ly]*** . . . benefit[ting], financially or by receiving anything of value" from "***knowingly*** assisting, supporting, or facilitating" a sex trafficking venture). In contrast, federal sex trafficking claims against non-ICS providers are subject to the more relaxed requirements of Section 1595, the civil cause of action provision, which includes a "should have known" standard. *See* 18 U.S.C. § 1595 ("whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew ***or should have known*** has engaged in an act in violation of this chapter"). As one court described the genesis of FOSTA's narrow immunity carve-out, after a comprehensive examination of the legislative history, "Congress reached a compromise by including a narrowed federal civil sex trafficking carve-out that requires plaintiffs to show the civil defendant's knowing assistance, support or facilitation," which is "facially consistent with the CDA's stated policies." *J.B.*, 2021 WL 4079207, at *11-12.

## B.    The First Amended Complaint.

Respondents' First Amended Complaint ("FAC," ECF No. 39) alleges that in

2017, when Respondents were minors, they were tricked into sending nude photos of themselves to sex traffickers on Snapchat, an online messaging application. FAC ¶¶ 87-89. The traffickers allegedly used the photos to blackmail Respondents into also sending explicit videos of themselves to the traffickers. *Id.* ¶ 90.[2] Respondents later cut off communication with the traffickers. *Id.* ¶¶ 94-96.

The FAC alleges that two years later, Respondents learned that the videos had been posted on Twitter. *Id.* ¶¶ 105, 107. The FAC contains no allegation that the account holders who posted the videos to Twitter are the sex traffickers who tricked Respondents into sending the videos. Indeed, there are no allegations at all regarding who posted the videos or their knowledge of the underlying sex trafficking.

The FAC also alleges that Respondent John Doe #1 and his mother reported the videos using Twitter's reporting process three times beginning on January 21, 2020. *Id.* ¶¶ 112-117. They also allegedly emailed Twitter about the videos. *Id.* ¶¶ 114, 119, 123. The FAC alleges that on January 28, 2020, Twitter informed John Doe #1 that it had reviewed the videos and did not find a violation. *Id.* ¶ 120. Sometime after, John Doe #1's mother allegedly contacted an agent of the United States Department of Homeland Security ("DHS"), who sent Twitter a takedown request. *Id.* ¶ 128. Immediately after Twitter received the DHS request, on or about

---

[2] Twitter assumed, for the purposes of its Motion to Dismiss only, that this alleged conduct qualifies as a primary sex trafficking violation. *See* 18 U.S.C. § 1591(a)(1).

January 30, 2020—*i.e.*, nine days after receiving the first report from John Doe #1—Twitter removed the videos and suspended the accounts that had posted them. *Id.*

The FAC alleged thirteen claims against Twitter, including direct and beneficiary liability under the federal sex trafficking laws; two other CSAM-related federal claims; and nine claims under California law. A2-4.

## C. Procedural History.

On May 7, 2021, Twitter moved to dismiss the FAC. ("MTD," ECF No. 48.) Twitter argued that it was entitled to CDA § 230 immunity as to all claims, and that FOSTA's immunity carve-out did not apply to the federal sex trafficking claims because the carve-out applies only if the "conduct underlying the claim constitutes a violation of [S]ection 1591," 47 U.S.C. § 230(e)(5)(A), and Respondents did not adequately allege that Twitter violated Section 1591. *See* MTD at 1-2, 4-5, 18.

On August 19, 2021, the district court dismissed all claims with prejudice, except the federal sex trafficking beneficiary liability claim. A56. As to that claim, the district court rejected Twitter's argument that the immunity carve-out in Section 230(e)(5)(A) is triggered only upon a violation of Section 1591. Instead, it held—in recognized conflict with other courts—"that Plaintiffs' Section 1595 claim against Twitter based on [an] alleged violation of Section 1591(a)(2) is not subject to the more stringent requirements that apply to criminal violations of that provision." A42. It stated that the carve-out language—"if the conduct underlying the claim

9

constitutes a violation of [S]ection 1591"—does not require a plaintiff to allege a violation of Section 1591, but merely "creates an exemption to Section 230 immunity for civil sex trafficking claims under Section 1591" under the more relaxed standards ordinarily applicable to civil sex trafficking claims under Section 1595 against non-ICS providers.  A40.  In other words, the court found that an ICS provider like Twitter could be found liable for hosting images of third-party sex trafficking on its platform, absent any allegation of actual knowledge of the underlying sex trafficking activities or any business relationship with the traffickers.

On October 4, 2021, Twitter moved for leave to file for reconsideration of the Order or, in the alternative, for an order certifying the Order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).  A57-180.  Twitter presented two questions for Section 1292(b) certification: "the standard for triggering Section 230(e)(5)(A)'s immunity carve-out," and "to determine the meaning of 'participation in a venture.'" A74-79.  Respondents opposed Twitter's motion.  A181-211.  The district court granted certification on October 26, 2021, concluding that the Order met all the requirements for interlocutory review, and staying the proceedings pending resolution of any appeal.  A212.  This petition is timely filed within 10 days of the district court's certification order.  *See* 28 U.S.C. § 1292(b); Fed. R. App. P. 5(a)(2).

## D.     The Division in the District Courts Concerning the Questions Presented.

Numerous district courts within this Circuit (and beyond) have addressed

10

whether the immunity carve-out in Section 230(e)(5)(A) requires a plaintiff to plead a violation of Section 1591, and the meaning of "participation in a venture" under Section 1595.[3]  There is currently a split of authority on both questions, with the district court in this case being in the minority view on both.

**Split on Immunity Carve-Out.**  The majority of district courts analyzing Section 230(e)(5)(A) have concluded that a plaintiff must plead that the defendant's conduct violated Section 1591 to avoid immunity for their beneficiary liability claim. *See J.B.*, 2021 WL 4079207, at *12 (concluding that "the most persuasive reading of [S]ection 230(e)(5)(A) is that it provides an exemption from immunity for a section 1595 claim if, but only if, the defendant's conduct amounts to a violation of section 1591");[4] *Doe v. Kik Interactive, Inc.*, 482 F. Supp. 3d 1242, 1249-51 (S.D.

---

[3] "Participation in a venture" is an element of both the criminal (Section 1591) and civil (section 1595) prohibitions, but is defined differently in each.  Section 1591 defines "participation in a venture" as "knowingly assisting, supporting, or facilitating a violation of [Section 1591](a)(1)," 18 U.S.C. § 1591(e)(4), whereas Section 1595 requires only constructive knowledge of the alleged sex trafficking. *See M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 969-71 (S.D. Ohio 2019).  Due to this difference in the applicable *mens rea*, courts generally have recognized that "participation in a venture" is a more difficult element to meet under Section 1591 than Section 1595. *See id.*; *see B.M. v. Wyndham Hotels & Resorts, Inc.*, No. 20-cv-00656-BLF, 2020 WL 4368214, at *3 (N.D. Cal. July 30, 2020). Thus, to the extent a plaintiff has not adequately pleaded participation in a venture under Section 1595 (the question the district court here addressed), that plaintiff has not pleaded it under Section 1591. *See Doe v. Reddit*, No. 21-cv-00768-JVS-KEW, ECF No. 58 at 12-13 (C.D. Cal. Oct. 7, 2021) ("Reddit").

[4] On September 8, 2021, Judge Gilliam granted dismissal to craigslist, Inc. ("Craigslist").  No. 19-cv-07848-HSG, ECF No. 178.  The plaintiff moved to certify the order for interlocutory appeal on September 23, 2021. *Id.*, ECF No. 179.

Fla. 2020); *Reddit*, ECF No. 58 at 11-12 (agreeing with interpretation of Section 230(e)(5)(A) in *J.B.*);[5] *M. L. v. craigslist Inc.*, No. C19-6153 BHS-TLF, 2020 WL 5494903, at *4 (W.D. Wash. Sept. 11, 2020).

Only the district court below and one other court have concluded that a plaintiff need not plead that an ICS provider violated Section 1591 to trigger the immunity carve-out for federal sex trafficking claims. *Doe v. Mindgeek USA Inc.*, No. 21-cv-00338-CJC(ADSx), 2021 WL 4167054, at *4 (C.D. Cal. Sept. 3, 2021).[6]

***Split on Participation in a Venture.*** The district court below is the only court to have held that a plaintiff adequately pleads an ICS provider's "participation in a venture" with a sex trafficker under Section 1595 absent any allegation that the defendant interacted with the traffickers, nevermind through a continuous business relationship. *See Reddit*, ECF No. 58 at 12-13 (plaintiff failed to plead "participation in a venture" because there was no allegation that Reddit made a "business deal" or had a "monetary relationship" with the specific traffickers); *J.B. v. G6 Hosp., LLC*,

---

Craigslist filed a statement of non-opposition. *Id.*, ECF No. 183. Judge Gilliam has not yet ruled on the certification motion.

[5] On October 7, 2021, Judge Selna dismissed a complaint against Reddit with leave to amend. *Reddit*, ECF No. 58. On October 27, 2021, the plaintiff filed a notice of non-amendment seeking to dismiss the case. *Id.*, ECF No. 59. Judge Selna dismissed the plaintiff's complaint with prejudice on October 28, 2021. *Id.*, ECF No. 60. Thus, a final order exists in *Reddit* that could be appealed to this Court at any time.

[6] On September 30, 2021, MindGeek moved for reconsideration or, in the alternative, for certification of the order for interlocutory appeal under Section 1292(b). *Mindgeek*, ECF No. 73. Judge Carney took the motion under submission on October 25, 2021. *Id.*, ECF No. 80.

No. 19-cv-07848-HSG, 2020 WL 4901196, at *9 (N.D. Cal. Aug. 20, 2020) (plaintiff failed to plead "participation in a venture" where she alleged only that Craigslist generally enabled sex trafficking content on its platform); *Mindgeek*, 2021 WL 4167054, at *5-6 (plaintiff pleaded MindGeek's "participation in a venture" where she alleged that her trafficker posted CSAM videos of her to MindGeek's platform, MindGeek generally enabled sex trafficking content on its platform, and MindGeek shared advertising revenue with traffickers); *M.L.*, 2020 WL 5494903, at *1, *4 (plaintiff adequately pleaded Craigslist's "participation in a venture" where she alleged her "traffickers paid a fee to post the advertisement" of her to Craigslist's platform).[7]

## THE COURT SHOULD PERMIT THIS APPEAL

As the district court correctly concluded, the Order meets the requirements for interlocutory appeal under 28 U.S.C. § 1292(b): it (1) involves two "controlling question[s] of law"; (2) on which there are "substantial ground[s] for difference of

---

[7] In other Section 1595 cases involving non-ICS providers—generally cases against hotels used by traffickers for their trafficking activities—courts likewise have required allegations of direct and repeated business interactions between the hotel defendants and the plaintiffs' specific traffickers for "participation in a venture." *E.g.*, *Ricchio v. McLean*, 853 F.3d 553, 555 (1st Cir. 2017) (plaintiff alleged a past business relationship between her trafficker and hotel owner); *J.C. v. Choice Hotels Int'l, Inc.*, No. 20-cv-00155-WHO, 2020 WL 6318707, at *5 (N.D. Cal. Oct. 28, 2020) (plaintiff alleged her traffickers checked her into the hotels and paid for the rooms in cash over a period of years); *Wyndham*, 2020 WL 4368214, at *5-6 (plaintiff alleged her traffickers "rented two adjoining rooms" at the hotels over a period of years and had a "personal relationship [with] the front desk employees").

13

opinion"; and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b); *see* A2122 (citing 28 U.S.C. § 1292(b) and *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1981), *aff'd sub nom. Arizona v. Ash Grove Cement Co.*, 459 U.S. 1190 (1983)); *see also Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 687-88 (9th Cir. 2011).

The Court should exercise its discretion to hear this appeal, 28 U.S.C. § 1292(b), because the Order presents important, recurring questions of immunity and statutory interpretation that have divided the courts. Guidance from this Court will not only materially advance resolution of the instant litigation, but also will benefit and promote the economy of the lower courts confronting these issues, as wells as guide online platforms that depend on clarity regarding CDA § 230.

## A. The Order Involves Two Controlling Questions of Law.

To establish a "controlling" question under Section 1292(b), "all that must be shown . . . is that resolution of the issue on appeal could materially affect the outcome of the litigation in the district court." *In re Cement Antitrust*, 673 F.2d at 1026. A question may also be controlling even though its resolution does not determine who will prevail. *See Kuehner v. Dickinson & Co.*, 84 F.3d 316, 318-19 (9th Cir. 1996). Here, two clearly controlling questions are presented and justify review.

### 1.    Section 230(e)(5)(A) Immunity Carve-Out.

Whether Section 230(e)(5)(A)'s carve-out from CDA § 230 immunity for federal sex trafficking claims against online platforms requires pleading a violation of Section 1591 is a novel and important controlling question of law. *See Springs Ambulance Serv., Inc. v. City of Rancho Mirage, Cal.*, 745 F.2d 1270, 1272 (9th Cir. 1984) (questions of immunity meet the first prong of Section 1292(b)); *see also Jones v. Dirty World Ent. Recordings LLC*, 755 F.3d 398, 417 (6th Cir. 2014) (noting the propriety of interlocutory appeal on the scope of CDA § 230 immunity).

Reversal of the district court's ruling on this issue would undoubtedly "materially affect" this litigation. *See In re Cement Antitrust*, 673 F.2d at 1026. If the Court agrees with Twitter and the majority of district courts reaching the question and holds that the Section 230(e)(5)(A) immunity carve-out applies only where a defendant's conduct meets the heightened Section 1591 standard for criminal liability, the only non-dismissed claim in this litigation should be conclusively resolved in favor of Twitter given the deficiency of the FAC, or at the very least, will require Respondents to meet a heightened burden. *See AXA Rosenberg Grp. v. Gulf Underwriters*, No. C-04-0415-JCS, 2004 WL 1844846, at *10 (N.D. Cal. Aug. 16, 2004) (certifying because "if the Ninth Circuit determines . . . that the Court has erred . . . such a ruling may be dispositive of the entire case"). Because this is a "pure legal question," an interlocutory appeal is especially appropriate. *See Steering*

*Comm. v. United States*, 6 F.3d 572, 575-76 (9th Cir. 1993).

Notably, a ruling from this Court clarifying the scope of an ICS provider's immunity in light of Section 230(e)(5)(A) could significantly affect numerous other cases pending before district courts within this circuit and across the country. *See Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 24 (2d Cir. 1990) ("the impact that an appeal will have on other cases is a factor" in determining whether a question is controlling). At least eleven cases currently present this issue in seven federal district courts, including seven cases in this Circuit.[8] Interlocutory appeal thus should help conserve judicial resources. *See Reese*, 643 F.3d at 688 n.5 (noting that Section 1292(b) certification can be used to prevent waste of judicial resources).

**2.    " Participation in a Venture" Under Section 1595.**

The district court evaluated Respondents' beneficiary liability sex trafficking claim against Twitter under the Section 1595 standard applicable to non-ICS provider defendants, which requires a showing of the defendant's "participation in a

---

[8] In addition to the pending district court cases where opinions have issued, *see supra* 10-13, there are additional pending cases in this Circuit: *Doe v. WebGroup Czech Republic*, No. 21-cv-2428 (C.D. Cal. Mar. 18, 2021); *Fleites v. MindGeek S.A.R.L.*, No. 21-cv-4920 (C.D. Cal. June 17, 2021); and *M.L. v. craigslist Inc.*, No. 19-cv-6153 (W.D. Wash. Dec. 2, 2019). And at least four district courts in other Circuits are addressing these same issues: *G (a minor) v. Salesforce.com, Inc.*, No. 20-cv-02335 (N.D. Ill. Apr. 15, 2020), *Doe #1 v. MG Freesites LTD*, No. 21-cv-00220 (N.D. Ala. Feb. 11, 2021), *LH v. Marriott Int'l, Inc.*, No. 21-cv-22894 (S.D. Fla. Aug. 10, 2021) (as to defendant Craigslist, Inc.), and *AM v. Salesforce.com Inc.*, No. 21-cv-1668 (N.D. Tex. July 19, 2021).

[sex trafficking] venture." 18 U.S.C. § 1595(a).[9]  The interpretation of "participation in a venture" under Section 1595 is a controlling question of law that warrants interlocutory review, as the district court's erroneous interpretation allowed this litigation to continue.  *See Joffe v. Google, Inc.*, 746 F.3d 920, 924 (9th Cir. 2013) (interlocutory review of order denying motion to dismiss because "the district court resolved a novel question of statutory interpretation"); *see also Helman v. Alcoa Glob. Fasteners Inc.*, No. CV 09-1353 SVW (FFMx), 2009 WL 2058541, at *7 (C.D. Cal. June 16, 2009), *aff'd*, 637 F.3d 986 (9th Cir. 2011) (The "issue of statutory interpretation involves a controlling issue of law where there is substantial ground for disagreement[.]")

Multiple courts interpreting "participation in a venture" under Section 1595 have concluded that plaintiffs must allege a defendant's "continuous business relationship" with plaintiffs' traffickers, such as business dealings or a monetary relationship. *See supra* 12-13.   Respondents, however, have alleged no facts indicating *any relationship*—nevermind business dealings or a monetary relationship—between Twitter and Respondents' alleged traffickers.  Yet the Order determined that Respondents alleged "participation in a venture."  A42-44.  Reversal of this ruling would "materially affect" this litigation as it may be dispositive with

---

[9] As noted above, *see supra* n.3, if a complaint fails to meet the Section 1595 "participation in a venture" standard, it necessarily fails the more strict Section 1591 standard that should apply here in light of the immunity carve-out.

respect to Respondents' only remaining claim, given the heightened showing that other courts have required. *See In re Cement Antitrust*, 673 F.2d at 1026.

## B. There are Substantial Grounds for Difference of Opinion as to Both Controlling Questions.

"Courts traditionally will find that a substantial ground for difference of opinion exists . . . if novel and difficult questions of first impression are presented." *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010); *see Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 111 (2009) (a court "should not hesitate to certify" an order that "involves a new legal question or is of special consequence"). Here, the questions at issue are not only novel matters of first impression, but also the subject of a documented split of authority, establishing substantial grounds for difference of opinion.

### 1. Section 230(e)(5)(A) Immunity Carve-Out.

There is an established split of authority, across multiple circuits, as to whether a Section 1591 violation is needed to trigger the Section 230(e)(5)(A) carve-out from CDA § 230 immunity, with the district court here taking the minority view. *See supra* 10-12. This indicates substantial grounds for difference of opinion. *See Reese*, 643 F.3d at 688 ("A substantial ground for difference of opinion exists where reasonable jurists might disagree on an issue's resolution[.]").

### 2. "Participation in a Venture" Under Section 1595.

Similarly, there is a disagreement in the lower courts concerning the

18

interpretation of the term "participation in a venture" in Section 1595. *See supra* 12-13. The district court rejected Twitter's argument that there could not be a "continuous business relationship" or "tacit agreement" to establish Twitter's "participation in venture" when there was no allegation of any sort of relationship or interaction between Twitter and the alleged traffickers, A42-44—in conflict with several other courts requiring such a showing, *see supra* 12-13. This, too, indicates substantial grounds for difference of opinion. *See Reese*, 643 F.3d at 688.

## C. Review Now Will Materially Advance Termination of the Litigation.

An interlocutory appeal materially advances termination of litigation if reversal of the order at issue would more quickly dispose of the litigation. *VIA Techs., Inc. v. SonicBlue Claims, LLC*, No. C 09-2109 PJH, 2011 WL 2437425, at *1 (N.D. Cal. June 17, 2011) ("a question of law is controlling if reversal of the district court's order would terminate the action"). That is the case here.

### 1. Section 230(e)(5)(A) Immunity Carve-Out.

Immediate appeal of the district court's ruling about the proper interpretation of Section 230(e)(5)(A) will materially advance the litigation and save the parties and the courts significant expense. Specifically, if the Court reverses the district court and holds that a Section 1591 violation is required to trigger Section 230(e)(5)(A)'s carve-out from CDA § 230 immunity, the sole remaining claim in this case will likely be dismissed, obviating the need for discovery and trial. That is

so because Respondents fail to allege the requirements of Section 1591—including Twitter's "knowing" support for sex trafficking or that Twitter had any business or monetary relationship with Respondents' traffickers. *See Reese*, 643 F.3d at 688 (interlocutory appeal materially advances the litigation if reversal "may" remove defendant and some claims from the case).

### 2. "Participation in a Venture" Under Section 1595.

Similarly, immediate appeal of the district court's ruling on the controlling question of the meaning of "participation in a venture" in Section 1595 will also materially advance the litigation and save the parties and the district court significant expense. If the Court reverses the Order as to the district court's "participation in a venture" interpretation and construes Section 1595 to require more than conclusory suggestions of an undefined relationship between an ICS provider and unidentified sex traffickers generally, Respondents will have failed to state a claim. Respondents do not allege *any* relationship, commercial or otherwise, between Twitter and Respondents' traffickers. Thus, an immediate appeal should lead to termination of the case. *See In re Cement Antitrust Litig.*, 673 F.2d at 1026.

### CONCLUSION

Twitter respectfully requests the Court grant this petition.

Dated:  November 5, 2021                    COOLEY LLP


By: */s/ Kathleen Hartnett*
      Kathleen Hartnett (314267)
      khartnett@cooley.com

*Attorneys for Defendant-Petitioner*
*Twitter, Inc.*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this Petition complies with the type-volume limitation of Circuit Rule 5-2 because it does not exceed 20 pages in length, excluding the parts of the petition exempted by Federal Rules of Appellate Procedure 5(b)(1)(E) and 32(f).

I hereby certify that this Petition complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and typestyle requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface of 14 points in Times New Roman font.

Dated:  November 5, 2021                    COOLEY LLP


By: */s/ Kathleen Hartnett*
    Kathleen Hartnett (314267)
    khartnett@cooley.com

*Attorneys for Defendant-Petitioner*
*Twitter, Inc.*

## CERTIFICATE OF SERVICE

I, Kathleen Hartnett, hereby certify that on November 5, 2021, I caused to be electronically filed the foregoing Petition for Permission to Appeal and its Exhibits with the Clerk of the Court for the U.S. Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. I certify that I have caused all participants to be served via both U.S. mail and E-mail as indicated below.

Dated: November 5, 2021                    COOLEY LLP


                                           By: */s/ Kathleen Hartnett*
                                               Kathleen Hartnett (314267)
                                               khartnett@cooley.com

                                           *Attorneys for Defendant-Petitioner*
                                           *Twitter, Inc.*


**NATIONAL CENTER ON**              **THE HABA LAW FIRM, P.A.**
**SEXUAL EXPLOITATION**             Lisa D. Haba
Benjamin W. Bull                    Adam A. Haba
Peter A. Gentala                    1220 Commerce Park Dr., Suite 207
Danielle Bianculli Pinter           Longwood, FL 32779
Christen M. Price                   lisahaba@habalaw.com
1201 F St. NW, Suite 200            adamhaba@habalaw.com
Washington, DC, 20004
Lawcenter@ncose.com

**THE MATIASIC FIRM, P.C.**
Paul A. Matiasic
Hannah E. Mohr
4 Embarcadero Center, suite 1400
San Francisco, CA 94111
matiasic@mjlawoffice.com
mohr@mjlawoffice.com

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT
## Form 6. Representation Statement

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form06instructions.pdf*

**Appellant(s)** *(List **each** party filing the appeal, do not use "et al." or other abbreviations.)*

Name(s) of party/parties:

> Twitter, Inc.

Name(s) of counsel (if any):

> Cooley LLP: Michael G. Rhodes (rhodesmg@cooley.com), Kathleen Hartnett (khartnett@cooley.com), Kyle C. Wong (kwong@cooley.com), Linh K. Nguyen (lknguyen@cooley.com), Jamie D. Robertson (jdrobertson@cooley.com)

Address: | 3 Embarcadero Center, 20th Floor, San Francisco, CA 94111

Telephone number(s): | (415) 693-2000

Email(s): | See above

Is counsel registered for Electronic Filing in the 9th Circuit?    ⦿ Yes    ○ No

**Appellee(s)** *(List only the names of parties and counsel who will oppose you on appeal. List separately represented parties separately.)*

Name(s) of party/parties:

> John Doe #1 and John Doe #2

Name(s) of counsel (if any):

> The Matiasic Firm, P.C.: Paul A. Matiasic, Hanna E. Mohr

Address: | 4 Embarcadero Center, Suite 1400, San Francisco, CA 94111

Telephone number(s): | (415) 675-1089

Email(s): | matiasic@mjlawoffice.com

*To list additional parties and/or counsel, use next page.*

*Feedback or questions about this form? Email us at* *forms@ca9.uscourts.gov*

**Form 6**                                    *1*                                    *New 12/01/2018*

Continued list of parties and counsel: *(attach additional pages as necessary)*

**Appellants**

Name(s) of party/parties:

Name(s) of counsel (if any):

Address:

Telephone number(s):

Email(s):

Is counsel registered for Electronic Filing in the 9th Circuit?  ○ Yes  ○ No

**Appellees**

Name(s) of party/parties:

John Doe #1 and John Doe #2

Name(s) of counsel (if any):

The Haba Law Firm, P.A.: Lisa D. Haba (lisahaba@habalaw.com), Adam A. Haba (adamhaba@habalaw.com)

Address: 1220 Commerce Park Dr., Suite 207, Longwood, FL 32779

Telephone number(s): (844) 422-2529

Email(s): See above

Name(s) of party/parties:

John Doe #1 and John Doe #2

Name(s) of counsel (if any):

National Center on Sexual Exploitation: Benjamin W. Bull, Peter A. Gentala, Danielle Bianculli Pinter, Christen M. Price

Address: 1201 F St. NW, Suite 200, Washington, DC 20004

Telephone number(s): (202) 393-7245

Email(s): lawcenter@ncose.com

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 6** *2* *New 12/01/2018*

No. [ ]

**IN THE**
**UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

JOHN DOE #1 AND JOHN DOE #2,

*Plaintiffs-Respondents*,

v.

TWITTER, INC.,

*Defendant-Petitioner.*

On Petition for Permission to Appeal from the United States District Court for the
Northern District of California
The Honorable Joseph C. Spero
District Court Case No. 21-cv-000485

**APPENDIX TO PETITION FOR PERMISSION TO**
**APPEAL PURSUANT TO 28 U.S.C. § 1292(B)**

COOLEY LLP
MICHAEL G. RHODES (116127)
(rhodesmg@cooley.com)
KATHLEEN HARTNETT (314267)
(khartnett@cooley.com)
KYLE C. WONG (224021)
(kwong@cooley.com)
3 Embarcadero Center 20th Floor
San Francisco, CA 94111-4004
Telephone: (415) 693-2000
Facsimile: (415) 693-2222

COOLEY LLP
LINH K. NGUYEN (305737)
(lknguyen@cooley.com)
JAMIE D. ROBERTSON (326003)
(jdrobertson@cooley.com)
4401 Eastgate Mall
San Diego, California 92121
Telephone: (858) 550-6000
Facsimile: (858) 550-6420

*Attorneys for Defendant and Petitioner Twitter, Inc.*

| Document | File Date | USDC Dkt. No. | Page No. |
|---|---|---|---|
| **Volume 1 of 1** | | | |
| Order Granting In Part and Denying in Part Motion to Dismiss First Amended Complaint | 8/19/2021 | 69 | 1 - 56 |
| Defendant Twitter, Inc.'s Motion for Leave to File Motion for Reconsideration or, In the Alternative, Motion for an Order Permitting Interlocutory Appeal Pursuant to 28 U.S.C. §1292(b) and accompanying Declaration of Linh K. Nguyen and Exhibits | 10/4/2021 | 80 | 57 - 180 |
| Plaintiffs' Combined Opposition to Defendant's Motion for Leave to File Motion for Reconsideration or, in the Alternative, Motion for an Order Permitting Interlocutory Appeal Pursuant to 28 U.S.C. §1292(b) | 10/18/2021 | 83 | 181 - 211 |
| Order re: 1) Motion for Leave to File Motion for Reconsideration or, In the Alternative, Motion for an Order Permitting Interlocutory Appeal Pursuant to 28 U.S.C. §1292(b); 2) Motion for Stay; and 3) Administrative Motion to Enlarge Time to Respond to Discovery Requests | 10/26/2021 | 85 | 212 - 213 |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JOHN DOE, et al.,

          Plaintiffs,

    v.

TWITTER, INC.,

          Defendant.

Case No.  21-cv-00485-JCS

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Re: Dkt. No. 48

## I.    INTRODUCTION

Plaintiffs John Doe #1 and John Doe #2 allege that when they were thirteen years old they were solicited and recruited for sex trafficking and manipulated into providing to a third-party sex trafficker pornographic videos ("the Videos") of themselves through the social media platform Snapchat.  A few years later, when Plaintiffs were still in high school, links to the Videos were posted on Twitter.  Plaintiffs allege that when they learned of the posts, they informed law enforcement and urgently requested that Twitter remove them but Twitter initially refused to do so, allowing the posts to remain on Twitter, where they accrued more than 167,000 views and 2,223 retweets.  According to Plaintiffs, it wasn't until the mother of one of the boys contacted an agent of the Department of Homeland Security, who initiated contact with Twitter and requested the removal of the material, that Twitter finally took down the posts, nine days later.

Plaintiffs assert state and federal claims against Twitter based on its alleged involvement in and/or enabling of sex trafficking and the distribution of the child pornography containing their images.  Twitter, however, contends that even after Congress's enactment of the Fight Online Sex Trafficking Act and Stop Enabling Sex Traffickers Act in 2018, the conduct alleged by Plaintiffs

is shielded from liability under Section 230 of the Communications Decency Act ("CDA"). Thus, Twitter brings a Motion to Dismiss First Amended Complaint ("Motion") seeking dismissal of all of Plaintiffs' claims on the basis that it is immune from liability under the CDA. In the Motion, Twitter also contends Plaintiffs fail to state viable claims as to many of their claims. A hearing on the Motion was held on August 6, 2021. For the reasons stated below, the Motion is GRANTED in part and DENIED in part.[1]

## II.     BACKGROUND

### A.     First Amended Complaint

Plaintiffs' First Amended Complaint ("FAC"), which is the operative complaint, contains detailed allegations describing: 1) Twitter's platform, business model and content moderation policies and practices (FAC ¶¶ 23-51); 2) the ways Twitter allegedly permits and even aids in the distribution of child pornography on its platform and profits from doing so (FAC ¶¶ 52-84); 3) how pornographic content featuring John Doe #1 and John Doe #2 was created and eventually ended up on Twitter's platform (FAC ¶¶ 85-100); and 4) Twitter's response to requests that the pornographic photos and videos containing Plaintiffs' images be removed from Twitter (FAC ¶¶ 101-132).

Based on these allegations, Plaintiffs assert the following claims:

1) violation of the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. §§ 1591(a)(1) and 1595(a) based on the allegation that "Twitter knew, or was in reckless disregard of the fact, that through monetization and providing, obtaining, and maintaining [child sexual abuse material ("CSAM")] on its platform, Twitter and Twitter users received something of value for the video depicting sex acts of John Doe #1 and John Doe #2 as minors." FAC ¶¶ 133-143 (Claim One);

2) violation of the TVPRA, 18 U.S.C. §§ 1591(a)(2) and 1595(a), based on the allegation that Twitter "knowingly benefited, or should have known that it was benefiting, from assisting, supporting, or facilitating a violation of 1591(a)(1)." FAC ¶¶ 144-155 (Claim Two);

---

[1] The parties have consented to the jurisdiction of a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

United States District Court
Northern District of California

United States District Court
Northern District of California

3) violation of the duty to report child sexual abuse material under 18 U.S.C. §§ 2258A and 2258B. FAC ¶¶ 156-163 (Claim Three);

4) civil remedies for personal injuries related to sex trafficking and receipt and distribution of child pornography under 18 U.S.C. §§ 1591, 2252A, and 2255, based on the allegations that Twitter was "notified of the CSAM material depicting John Doe #1 and John Doe #2 as minors on its platform and still knowingly received, maintained, and distributed this child pornography after such notice[,]" causing Plaintiffs to suffer "serious harm and personal injury, including, without limitation, physical, psychological, financial, and reputational harm." FAC ¶¶ 164-176 (Claim Four);

5) California products liability based on the allegedly defective design of the Twitter platform, which is "designed so that search terms and hashtags utilized for trading CSAM return suggestions for other search terms and hashtags related to CSAM" and through use of "algorithm(s), API, and other proprietary technology" allows "child predators and sex traffickers to distribute CSAM on a massive scale" while also making it difficult for users to report CSAM and not allowing for immediate blocking of CSAM material once reported pending review. FAC ¶¶ 177-190 (Claim Five);

6) negligence based on allegations that Twitter had a duty to protect Plaintiffs, had actual knowledge that CSAM containing their images was being disseminated on its platform and failed to promptly remove it once notified. FAC ¶¶ 191-197 (Claim Six);

7) gross negligence based on the same theory as Plaintiffs' negligence claim. FAC ¶¶ 198-203 (Claim Seven);

8) negligence per se based on the allegation that Twitter's conduct violated numerous laws, including 18 U.S.C. §§ 1591 and 1595 (benefiting from a sex trafficking venture), 18 U.S.C. § 2258A (failing to report known child sexual abuse material), 18 U.S.C. § 2552A (knowingly distributing child pornography), Cal. Civ. Code § 1708.85 (intentionally distributing non-consensually shared pornography), and Cal. Penal Code § 311.1 (possessing child pornography). FAC ¶¶ 204-26 (Claim Eight);

9) negligent infliction of emotional distress. FAC ¶¶ 207-212 (Claim Nine);

10) distribution of private sexually explicit materials, in violation of Cal. Civ. Code § 1708.85, based on the allegation that "[b]y refusing to remove or block the photographic images and video depicting him after Plaintiff John Doe #1 notified Twitter that both he and John Doe #2 were minors, Twitter intentionally distributed on its online platform photographic images and video of the Plaintiffs." FAC ¶¶ 213-218 (Claim Ten);

11) intrusion into private affairs, based on the allegation that "Twitter intentionally intruded into Plaintiffs' reasonable expectation of privacy by continuing to distribute the photographic images and video depicting them after John Doe #1 notified Twitter that Plaintiffs were minors and the material had been posted on its platform without their consent." FAC ¶¶ 219-223 (Claim Eleven);

12) invasion of privacy under the California Constitution, Article 1, Section 1.  FAC ¶¶ 224-228 (Claim Twelve); and

13) violation of California Business and Professions Code § 17200 ("UCL") based on allegations that "Twitter utilized and exploited Plaintiffs for its own benefit and profit" and "Plaintiffs, to their detriment, reasonably relied upon Twitter's willful and deceitful conduct and assurances that it effectively moderates and otherwise controls third-party user content on its platforms."   FAC ¶¶ 229-234 (Claim Thirteen).

Plaintiffs seek compensatory and punitive damages, injunctive relief, restitution, disgorgement of profits and unjust enrichment and attorneys' fees and costs.

## B.    Statutory Background

### 1.    The CDA

The CDA was enacted as part of the Telecommunications Act of 1996.  It contains a "Good Samaritan" provision that immunizes interactive computer service ("ICS") providers from liability for restricting access to certain types of materials or giving users the technical means to restrict access to such materials, providing as follows:

(c) **Protection for "Good Samaritan" blocking and screening of offensive material**

(1) Treatment of publisher or speaker

No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider.

(2) Civil liability

No provider or user of an interactive computer service shall be held liable on account of—

(A) any action voluntarily taken in good faith to restrict access to or availability of material that the provider or user considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable, whether or not such material is constitutionally protected; or

(B) any action taken to enable or make available to information content providers or others the technical means to restrict access to material described in paragraph (1).

47 U.S.C. § 230(c).

"This grant of immunity dates back to the early days of the internet when concerns first arose about children being able to access online pornography." *Enigma Software Grp. USA, LLC v. Malwarebytes, Inc.*, 946 F.3d 1040, 1046 (9th Cir. 2019), cert. denied, 141 S. Ct. 13 (2020). At that time, "[p]arents could not program their computers to block online pornography, and this was at least partially due to a combination of trial court decisions in New York that had deterred the creation of online-filtration efforts." *Id.* Under the New York cases, "if a provider remained passive and uninvolved in filtering third-party material from its network, the provider could not be held liable for any offensive content it carried from third parties." *Id.* (citing *Cubby, Inc. v. CompuServe, Inc.*, 776 F. Supp. 135, 139–43 (S.D.N.Y. 1991)). On the other hand, "once a service provider undertook to filter offensive content from its network, it assumed responsibility for any offensive content it failed to filter, even if it lacked knowledge of the content." *Id.* (citing *Stratton Oakmont, Inc. v. Prodigy Services Co.*, 1995 WL 323710, *5 (N.Y. Sup. Ct. May 24, 1995)). "The *Stratton Oakmont* decision, along with the increasing public concern about pornography on the internet, served as catalysts" for the enactment of the CDA. *Id.*

The Ninth Circuit has interpreted CDA § 230 broadly: so long as an interactive computer service provider is not also an "information content provider," that is, someone who is "responsible, in whole or in part, for the creation or development of" the offending content, it is immune from liability arising from content created by third parties. *Fair Hous. Council of San*

A005    5

*Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1162 (9th Cir. 2008) (citing 47 U.S.C. §§ 230(c), (f)). Thus, a defendant is entitled to immunity under the CDA if: 1) it is a "provider or user of an interactive computer service," 2) the information for which the plaintiff seeks to hold the defendant liable was "information provided by another information content provider," and 3) the complaint seeks to hold the defendant liable as the "publisher or speaker" of that information. *Klayman v. Zuckerberg*, 753 F.3d 1354, 1357 (D.C. Cir. 2014) (citing 47 U.S.C. § 230(c)(1)); *see also Pennie v. Twitter, Inc.*, 281 F. Supp. 3d 874, 890 (N.D. Cal. 2017) (finding that under Section 230 Twitter was immune from claims based on theory that third-party content Twitter allowed to be posted on its platform led to plaintiff's injury because the claim sought to hold Twitter liable as a publisher).[2]

As expressly stated in Section 230, the policies underlying the enactment of that section are:

> (1) to promote the continued development of the Internet and other interactive computer services and other interactive media;
>
> (2) to preserve the vibrant and competitive free market that presently exists for the Internet and other interactive computer services, unfettered by Federal or State regulation;
>
> (3) to encourage the development of technologies which maximize user control over what information is received by individuals, families, and schools who use the Internet and other interactive computer services;
>
> (4) to remove disincentives for the development and utilization of blocking and filtering technologies that empower parents to restrict their children's access to objectionable or inappropriate online material; and
>
> (5) to ensure vigorous enforcement of Federal criminal laws to deter and punish trafficking in obscenity, stalking, and harassment by means of computer.

47 U.S.C. § 230(b).

Section 230 expressly states that it has "[n]o effect on criminal law[,]" providing that "[n]othing in this section shall be construed to impair the enforcement of section 223 or 231 of this title, chapter 71 (relating to obscenity) or 110 (relating to sexual exploitation of children) of Title

---

[2] Here, it is undisputed that Twitter is an interactive computer service provider and that the Videos were provided by another information content provider.

18, or any other Federal criminal statute." 47 U.S.C. § 230(e)(1). It expressly preempts all state laws that are inconsistent with Section 230's grant of immunity. 47 U.S.C. § 230(e)(3) ("No cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section.").

### 2. The TVPRA

In 2000, Congress enacted the TVPRA, which criminalized sex trafficking. When it enacted the TVPRA, "Congress declared that the purposes of the [TVPRA] are to 'combat trafficking in persons, a contemporary manifestation of slavery whose victims are predominantly women and children, to ensure just and effective punishment of traffickers, and to protect their victims.' " *Ditullio v. Boehm*, 662 F.3d 1091, 1094 (9th Cir. 2011) (quoting Pub.L. No. 106–386, § 102, 114 Stat. 1488 (2000) (codified as amended at 18 U.S.C. § 1589 *et seq.*)). In 2003, the law was expanded to provide a private right of civil action for victims of sex trafficking, codified at 18 U.S.C. § 1595. *Id.* "The version of § 1595 enacted in 2003 limited the civil remedy to victims of three specific trafficking acts (including sex trafficking of minors), and did not expressly permit recovery against individuals who benefit from participation in a trafficking venture." *Id.* n. 1 (citing Pub.L. 108–193, § 4(a)(4)(A), 117 Stat. 2878 (2003)). "In the [TVPRA's] 2008 reauthorization, Congress deleted those limitations." *Id.* (citing Pub.L. 110–457, Title II, § 221(2), 122 Stat. 5067 (2008)).

In its current form, the TVPRA makes it a crime to engage in direct sex trafficking or to benefit financially from sex trafficking, providing as follows:

> (a) Whoever knowingly—
>
> (1) in or affecting interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States, recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or
>
> (2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1),
>
> knowing, or, except where the act constituting the violation of paragraph (1) is advertising, in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to

1    cause the person to engage in a commercial sex act, or that the person
     has not attained the age of 18 years and will be caused to engage in a
2    commercial sex act, shall be punished as provided in subsection (b).

3    18 U.S.C. § 1591(a). Section 1591(e) further provides that "[in] this section . . . [t]he term

4    'participation in a venture' means knowingly assisting, supporting, or facilitating a violation of

5    subsection (a)(1)." 18 U.S.C. § 1591(e)(4).

6          The civil liability provision in its current form provides that "[a]n individual who is a

7    victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever

8    knowingly benefits, financially or by receiving anything of value from participation in a venture

9    which that person knew or should have known has engaged in an act in violation of this chapter)

10   in an appropriate district court of the United States and may recover damages and reasonable

11   attorneys fees." 18 U.S.C. § 1595(a).

12         **3.  FOSTA**

13         In 2018, the CDA was amended by the Allow States and Victims to Fight Online Sex

14   Trafficking Act of 2017, Pub. L. No. 115-164, 132 Stat. 1253 (2018) ("FOSTA"), which inserted a

15   new provision in CDA § 230 specifically addressing the application of that section in the context

16   of sex trafficking law.  *See* 47 U.S.C. § 230(f)(5).  " 'Congress passed [FOSTA] to narrow Section

17   230's scope and provide prosecutors with new tools to combat the sex trafficking of both minors

18   and adults.' " *J. B. v. G6 Hosp., LLC*, No. 19-CV-07848-HSG, 2020 WL 4901196, at *4 (N.D.

19   Cal. Aug. 20, 2020) (quoting *Woodhull Freedom Found. v. United States*, 948 F.3d 363, 368 (D.C.

20   Cir. 2020));  *see also* 164 Cong. Rec. S1849-08, 164 Cong. Rec. S1849-08, S1849 (reflecting that

21   FOSTA was enacted in response to an increase in sex trafficking resulting from "the presence of

22   [sex trafficking] organizations online that are using the ruthless efficiency of the internet to sell

23   women and children").  The legislative history reflects that one of the websites of particular

24   concern to Congress was a sex trafficking website called "Backpage," which knowingly trafficked

25   in young women and children.  *See* 164 Cong. Rec. S1849-08, 164 Cong. Rec. S1849-08, S1854

26   ("Why is this law so important? If I am looking at this through a prosecutor's lens, now all of the

27   prosecutors in the country can go after anyone who knowingly facilitates sex trafficking online. I

28   am not saying when it is by accident, and I am not saying when it has slipped through and they

don't know it; I am talking about to knowingly facilitate, which is what [B]ackpage was doing.")
(Senator McCaskill).

FOSTA's amendment of the CDA consisted of adding Section 230(e)(5):

> (5) No effect on sex trafficking law
>
> Nothing in this section (other than subsection (c)(2)(A)) shall be construed to impair or limit—
>
> (A) any claim in a civil action brought under section 1595 of Title 18, if the conduct underlying the claim constitutes a violation of section 1591 of that title;
>
> (B) any charge in a criminal prosecution brought under State law if the conduct underlying the charge would constitute a violation of section 1591 of Title 18; or
>
> (C) any charge in a criminal prosecution brought under State law if the conduct underlying the charge would constitute a violation of section 2421A of Title 18, and promotion or facilitation of prostitution is illegal in the jurisdiction where the defendant's promotion or facilitation of prostitution was targeted.

47 U.S.C. § 230(e)(5). " 'FOSTA narrowed the scope of immunity for interactive computer service providers, by providing that Section 230 has "[n]o effect on sex trafficking law," and shall not "be construed to impair or limit" civil claims brought under TVPRA Section 1595 or criminal charges brought under state law if the underlying conduct would constitute a violation of TVPRA Sections 1591 or 2421A.' " *J. B. v. G6 Hosp., LLC*, 2020 WL 4901196, at *4 (quoting *Woodhull Freedom Found. v. United States*, 948 F.3d at 368) (quoting 132 Stat. at 1254).

## C. Contentions of the Parties

### 1. Motion

Twitter argues in the Motion that it is immune under CDA § 230 as to all of Plaintiffs' claims. Motion at 2. According to Twitter, the amendment of Section 230 under FOSTA, permitting sex trafficking victims to pursue civil claims under 18 U.S.C. § 1595 against an interactive computer service provider where the provider violates 18 U.S.C. § 1591, created only a narrow exception to the immunity afforded under Section 230 that was "carefully targeted to remove civil immunity for the few criminal websites that, unlike Twitter here, were deliberately and knowingly assisting and profiting from reprehensible crimes." *Id.* Twitter contends,

United States District Court
Northern District of California

"FOSTA's language, its legislative history, and the pre-existing case law on Section 1591 all point to the same conclusion: civil claims can only proceed against sex traffickers and those who knowingly benefit from their affirmative participation in a sex trafficking venture." *Id.*

Twitter argues that here, Plaintiffs have failed to allege facts showing that the exception to immunity created under FOSTA applies because the FAC: 1) "lacks any facts showing that Twitter affirmatively participated in any kind of venture with the Perpetrators, let alone a sex trafficking venture"; 2) "does not allege, as required to establish a violation of Section 1591, any facts establishing that Twitter knew that Plaintiffs were victims of sex trafficking or that the Videos were evidence of this crime"; and 3) does not "allege any connection between the Perpetrators and Twitter or that Twitter received any benefits because of the Videos." *Id.* Twitter further asserts that CDA § 230 protects it from liability because "Twitter did remove the Videos and suspend the accounts that had posted them" and it cannot be held liable under "any applicable law" simply because it did not take the videos down immediately. *Id.*

Twitter represents that it "vigorously combats [child sexual exploitation material ("CSE")] through a combination of methods, including review of user reports and the use of proprietary technology to proactively identify and remove such material" but that "given the sheer volume of Tweets posted every day on Twitter's platform (hundreds of millions of Tweets posted by over 190 million daily users), it is simply not possible for Twitter – or the individuals who enforce its Rules and policies – to find and remove all offending content immediately or accurately in all cases." *Id.* at 1. Twitter points to its zero-tolerance policy for child sexual exploitation materials, which is set forth in its Rules – to which users must agree when they create a Twitter account. *Id.* at 6. According to Twitter, it also "utilizes multiple tools, including reports by the public . . . , moderators who review reports of abuse and CSE content, innovative technology and algorithms that proactively identify abusive content, and online education and information sharing to combat online abuse." *Id.* (citing FAC ¶¶ 42-43, 55-57; Wong Decl., Exs. 1 (news article entitled "Twitter says it's getting better at detecting abusive tweets without your help"), 2 (a blog post by Twitter entitled "A healthier Twitter: Progress and more to do")). According to Twitter, in enacting FOSTA, Congress did not intend "for online platforms like Twitter that proactively act against

United States District Court
Northern District of California

1    such activity to be sued for their inadvertent failure to remove content." *Id.* at 2.

2           The purpose of CDA § 230, according to Twitter, was "to ensure that interactive computer

3    service ('ICS') providers would never have to choose 'between taking responsibility for all

4    messages and deleting no messages at all,' which presents such providers a 'grim' and illusory

5    choice." *Id.* at 3 (quoting *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*,

6    521 F.3d 1157, 1162-63 (9th Cir. 2008)). To achieve that purpose, it asserts, "§ 230 creates broad

7    immunity for claims against ICS providers based on content created by users: 'No provider . . . of

8    an interactive computer service shall be treated as the publisher or speaker of any information

9    provided by another information content provider.' " *Id.* (quoting 47 U.S.C. § 230(c)(1)). Twitter

10   contends this provision "bars all causes of action that seek to hold ICS providers like Twitter

11   liable for not removing content created by a third-party." *Id.* (citing *Igbonwa v. Facebook, Inc.*,

12   2018 WL 4907632, at *5-7 (N.D. Cal. Oct. 9, 2018), aff'd, 786 F. App'x 104 (9th Cir. 2019)).

13          Twitter asserts that FOSTA created only a narrow exception to the immunity afforded

14   under CDA § 230, permitting a victim of sex trafficking to bring a civil action under § 1595, but

15   only " 'if the conduct underlying the claim constitutes a violation of [S]ection 1591,' the criminal

16   statute prohibiting sex trafficking." *Id.* at 4 (citing 47 U.S.C. § 230(e)(5)(A); *Doe v. Kik*

17   *Interactive*, 482 F.Supp.3d 1242, 1251 (S.D. Fla. 2020) ("FOSTA permits civil liability for

18   websites only if the conduct underlying the claim constitutes a violation of section 1591.")). This

19   limitation is important, it contends, because "Section 1591 has more stringent *mens rea* and

20   required elements to meet than Section 1595." *Id.* Thus, Twitter argues, the FOSTA exception

21   only applies to "openly malicious actors" and does not otherwise change the scope of immunity

22   under CDA § 230. *Id.* at 5 (citing *Kik*, 482 F.Supp.3d at 1249-51); *see also id.* at 3. According

23   to Twitter, this is apparent from the legislative history. *Id.* (citing 164 Cong. Rec., at S1860-62

24   (statement of Senator Durbin ("[FOSTA] is a narrowly crafted bill that would ensure that Section

25   230 . . . does not provide legal immunity to websites like Backpage that knowingly facilitate sex

26   trafficking")); *id.* (statement of Senator Schumer ("Key to my support is my understanding that

27   this legislation would not allow nuisance lawsuits against technology companies.")).

28          Here, Twitter asserts, it meets all the requirements for establishing immunity under CDA §

230, namely, that (1) it is an ICS provider; (2) Plaintiffs' claims treat Twitter as the publisher or speaker of the content in question; and (3) someone other than Twitter provided or created the content at issue. *Id.* at 8-11. Twitter argues further that the FAC does not allege facts that would establish that any exemption to CDA § 230 applies, including the FOSTA exception that allows for the imposition of liability where the ICS itself violates Section 1591, either as a "primary violator" or a "secondary participant" that 'knowingly . . . benefits, financially or by receiving anything of value, from participation in a venture' with a primary violator." *Id.* (quoting 18 U.S.C. § 1591(a)). *Id.* at 11-12.

With respect to Plaintiffs' claim that Twitter was a primary participant in sex trafficking under Section 1591(a)(1), Twitter contends Plaintiffs' allegations fall short because "[t]o plead a primary violation, a plaintiff must allege that the defendant 'provide[d], obtain[ed], [and] maintain[ed] . . . a **person**" knowing that he or she "will be . . . cause[d]" to engage in a commercial sex act." *Id.* at 12 (quoting 18 U.S.C. § 1591(a)(1)) (emphasis added by Twitter). Twitter contends "Plaintiffs allege only that 'Twitter knowingly provided, obtained, and maintained the **Videos**,' not Plaintiffs" and therefore they fail to allege a primary violation. *Id.* (quoting FAC ¶ 141) (emphasis added by Twitter). Twitter also argues that as to Plaintiffs' claims under both Section 1591(a)(1) and Section 1591(a)(2), those claims fall short for the additional reason that Section 1591 "requires a defendant to know that the victim 'will in the future [be] cause[d] . . . to engage in prostitution.' " *Id.* at 12 n. 10 (citing *United States v. Todd*, 627 F.3d 329, 334 (9th Cir. 2010)). According to Twitter, "Plaintiffs cannot plead that Twitter had such knowledge as the FAC alleges that Plaintiffs had cut off contact with the Perpetrators before the Videos were posted on Twitter's platform." *Id.* (citing FAC ¶¶ 94-96).

Twitter contends Plaintiffs also fail to allege that it was a secondary participant under Section 1591(a)(2). *Id.* at 12-19. According to Twitter, to establish that it is a secondary participant, Plaintiffs must "plead that Twitter 'knowingly . . . benefit[ed] . . . from participation in a venture which has engaged in [sex trafficking] in violation of [Section 1591(a)(1)].' " *Id.* (quoting 18 U.S.C. § 1591(a)(2)). It further asserts that Section 1591 was amended by FOSTA to define "[p]articipation in a venture" as "**knowingly** assisting, supporting, or facilitating" a primary

violation. *Id*. at 12 (quoting 18 U.S.C. § 1591(e)(4)) (emphasis added by Twitter)).  Twitter

argues that neither of the grounds upon which Plaintiffs rely to establish that Twitter was a

secondary participant – "(i) Twitter's initial failure to find a violation of its policies after

reviewing the Video, or (ii) Twitter's nine-day delay in removing the Videos" – establishes it was

a secondary participant for three reasons.  *Id*.

"First, Plaintiffs do not allege the existence of any type of venture between Twitter and any

party that has a common purpose, much less facts suggesting 'that [Twitter] actually participated

in a *sex-trafficking venture*' that had the common purpose of trafficking Plaintiffs."  *Id*. at 12

(quoting *United States v. Afyare*, 632 F. App'x 272, 283-86 (6th Cir. 2016) (emphasis in original);

and citing *B.M. v. Wyndham Hotels & Resorts, Inc*., 2020 WL 4368214, at *3 (N.D. Cal. July 30,

2020) (purportedly analyzing the elements of a Section 1591 violation and following *Afyare*));  *see

also id*. at 13-15 (arguing that Plaintiffs have not alleged any "venture" or any "active

participation" in a venture).

"Second, there are no facts indicating Twitter received a benefit 'because of' the alleged

sex trafficking venture, let alone that Twitter knowingly received it."  *Id*. at 12 (citing *Geiss v.

Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 169 (S.D.N.Y. 2019));  *see also id*. at 15-17

(arguing that Plaintiffs have not alleged "a causal relationship between affirmative conduct

furthering the sex-trafficking venture and receipt of a benefit, with actual . . . knowledge of that

causal relationship") (citing *Geiss*, 383 F.Supp.3d at 169; *Kolbek v. Twenty First Century Holiness

Tabernacle Church, Inc*., 2013 WL 6816174, at *16 (W.D. Ark. Dec. 24, 2013)).  In particular,

Twitter asserts that the FAC contains no factual allegations that it monetized or benefited from the

Videos, instead containing only conclusory allegations that it did so, which are insufficient.  *Id*. at

16 (citing *Jabagat v. Lombardi*, 2015 WL 11004900, at *4 (S.D. Miss. Jan. 30, 2015)).  Twitter

further contends the FAC does not plausibly allege that it knowingly generated revenue "because

of" its alleged failure to remove the Videos.  *Id*. at 16 (citing *Geiss*, 383 F.Supp.3d at 169-170).

"Third, the FAC does not contain any allegation that Twitter had actual knowledge that

Plaintiffs were victims of sex trafficking or that it knew the Videos contained evidence of this."

*Id*. at 12 (citing FAC ¶¶ 152-54; *Noble v. Weinstein*, 335 F.Supp.3d 504, 523-24 (S.D.N.Y. 2018));

United States District Court
Northern District of California

*see also id.* at 17-19.  According to Twitter, Plaintiffs "must show that Twitter knew specifically that Plaintiffs had been sex trafficked, and deliberately assisted the sex trafficking." *Id.* at 17 (citing *Kik*, 482 F.Supp.3d at 1251).  They do not satisfy this requirement, Twitter asserts, because "[t]he FAC . . .  contains no facts plausibly alleging that Twitter had actual knowledge of Plaintiffs' prior interactions with the Perpetrators" or that it *knew* the perpetrators were sex traffickers or that the videos related to commercial sex.  *Id.*  at 18-19 (citing *Noble*, 335 F.Supp.3d at 524; *Lawson v. Rubin*, 2018 WL 2012869, at *12-14 (E.D.N.Y. Apr. 29, 2018); *A.B. v. Hilton Worldwide Holdings Inc.*, 484 F.Supp.3d 921, 940 (D. Or. Sept. 8, 2020); *Woodhull Freedom Found. v. United States*, 334 F.Supp.3d 185, 203 (D.D.C. 2018), rev'd on other grounds, 948 F.3d 363 (D.C. Cir. 2020)).

Twitter argues that even if it is not immune under CDA § 230, Plaintiffs fail to state a claim under Section 1595.  *Id.* at 19-21.  First, it argues that Plaintiffs fail to allege that Twitter is a perpetrator and therefore cannot establish liability on the basis of primary liability.  *Id.*  at 19.  To the extent that Plaintiffs assert their claim under Section 1595 on a "beneficiary" theory the claim also fails, Twitter asserts, because Plaintiffs have not alleged that Twitter participated in a venture with the perpetrators or that Twitter should have known of Plaintiffs' alleged sex trafficking.  *Id.*  at 19-21.

Twitter further asserts that even if Plaintiffs' Section 1595 claim is not subject to immunity under CDA § 230, their remaining claims are nonetheless barred because FOSTA removes immunity *only* for claims asserted under Section 1595.  *Id.* at 21-22 (citing *Kik*, 482 F.Supp.3d at 1249; *M. L. v. Craigslist Inc.*, 2020 WL 6434845, at *9-10 (W.D. Wash. Apr. 17, 2020); *Doe v. Bates*, 2006 WL 3813758, at *18-20 (E.D. Tex. Dec. 27, 2006); *M.A. ex rel. P.K. v. Vill. Voice Media Holdings, LLC*, 809 F. Supp. 2d 1041, 1054-55 (E.D. Mo. 2011); Cal. Civ. Code § 1708.85(h); *J.B. v. G6 Hospitality, LLC*, 2020 WL 4901196, at *7 (N.D. Cal. Aug. 20, 2020); *Riggs v. MySpace, Inc.*, 2009 WL 10671689, at *3 (C.D. Cal. Sept. 17, 2009), reversed in part on other grounds, 444 Fed. Appx. 986 (9th Cir. 2011); *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1125 (9th Cir. 2003); *Caraccioli v. Facebook, Inc.*, 700 Fed. Appx. 588, 590 (9th Cir. 2017); *Doe II v. MySpace Inc.*, 175 Cal. App. 4th 561, 575 (2009); *Ripple Labs Inc. v. YouTube*

United States District Court
Northern District of California

*LLC*, 2020 WL 6822891, at *6 (N.D. Cal. Nov. 20, 2020)).

Twitter argues further that Plaintiffs fail to state viable claims under 18 U.S.C. §§ 2258A & 2258B, California products liability law, as to any of their negligence claims, under Cal. Civ. Code § 1708.85, or under Cal. Bus. & Prof. Code § 17200.  *Id.*  at 22-25. Twitter contends there is no private right of action as to18 U.S.C. §§ 2258A & 2258B.  *Id.* at 22 (citing *Abcarian v. Levine*, 972 F.3d 1019, 1025-26 (9th Cir. 2020)).  It challenges the California product liability claim on the grounds that Plaintiffs "do not allege physical injury or property damage resulting from their use of a defective product" or even identify any product that is defective.  *Id.* at 22 (citing *Hernandez v. Avis Budget Grp., Inc.*, 2017 WL 6406838, at *5 (E.D. Cal. Dec. 15, 2017); *Griff v. Woejeckloski*, 2017 WL 8185857, at *3 (C.D. Cal. March 20, 2017)).  Twitter further asserts that to the extent Plaintiffs base that claim on defective platform design, it fails because product liability law is "geared to the tangible world." *Id.*  at 23 (citing *Winter v. G.P. Putnam's Sons*, 938 F.2d 1033, 1034-35 (9th Cir. 1991); *Intellect Art Multimedia Inc. v. Milewski*, 899 N.Y.S.2d 60, at *7 (2009); *Brooks v. Eugene Burger Management Corp.*, 215 Cal. App. 3d 1611, 1624-25 (1989); *Wilson v. Midway Games, Inc.*, 198 F.Supp.2d 167, 172-73 (D. Conn. 2002)).

With respect to Plaintiffs' negligence claims (Claims Six through Nine), Twitter challenges the negligence per se and negligent infliction of emotional distress claims (Claims Eight and Nine) on the basis that they are not independent causes of action.  *Id.*  at 23 (citing *J.B. v. G6 Hospitality LLC*, 2020 WL 4901196, at *11; *Sinclair for Tucker v. Twitter, Inc.*, 2019 WL 10252752, at *7 (N.D. Cal. Mar. 20, 2019)). As to the two remaining negligence claims (Claims Six and Seven), Twitter argues that they fail because Plaintiffs have not alleged that Twitter owed them any duty.  *Id.* (citing *Worldwide Media, Inc. v. Twitter, Inc.*, 2018 WL 5304852, at *8-9 (N.D. Cal. Oct. 24, 2018)).  According to Twitter, Plaintiffs' allegations that "Twitter had a duty to protect" them because it knew of the Videos and failed to take them down (FAC ¶¶ 112, 128, 194-95) are insufficient because a defendant can only be liable for negligence based on failure to act where there is a special relationship between the parties and Plaintiffs have not alleged such a relationship.  *Id.* at 24.

Twitter contends Plaintiffs' claim under California Civil Code section 1708.85, which

creates a private right of action against a person "who intentionally distributes" private sexually explicit materials "without consent" fails to state a claim because "the FAC alleges no facts from which the Court could infer that Twitter 'intentionally distribute[d]' the Videos; rather, it makes a conclusory allegation that '[b]y refusing to remove or block [the Videos], Twitter intentionally distributed' them" *Id.* (citing FAC ¶ 214). It argues further that "liability is precluded if the 'material was previously distributed by another person,' Cal. Civ. Code § 1708.85(c)(6), and here, the Videos were distributed first on a different platform—Snapchat—by two individuals (whom Plaintiffs do not allege were the individual(s) who trafficked them) months before Twitter ever became aware of the Videos—@StraightBross and @fitmalesblog." *Id.* (citing FAC ¶¶ 87-89, 99, 100.)

Finally, Twitter argues that Plaintiffs' UCL claim is insufficiently pled because Plaintiffs have not alleged any economic injury and therefore, they do not have standing to assert the claim. *Id.* at 24 (citing *Huynh v. Quora, Inc.*, 2019 WL 11502875, at *7 (N.D. Cal. Dec. 19, 2019)). Twitter further contends Plaintiffs have not alleged an unfair business practice because: 1) they have not pled any statutory violation and therefore have not alleged an unlawful act by Twitter; and 2) "To the extent Plaintiffs' claim is premised on an alleged misrepresentation (¶ 230), it fails to meet Rule 9(b) because Plaintiffs do not allege with particularity a misrepresentation by Twitter." *Id.* (citing *Letizia v. Facebook Inc.*, 267 F. Supp. 3d 1235, 1244 (N.D. Cal. 2017)). Twitter also argues that the claim fails because Plaintiffs have not alleged actual reliance, having failed to allege that they "ever used Twitter, saw or read its policies, or that seeing those policies resulted in an economic injury." *Id.*

### 2. Opposition

In their Opposition, Plaintiffs reject Twitter's challenges under CDA § 230, arguing that the claims in this case are based on just the sort of knowing conduct that Congress intended to exempt from Section 230 when it enacted FOSTA. Opposition at 1. In particular, they assert that Twitter knew that the Videos were being widely distributed on its platform and that they contained child pornography created as a result of sex trafficking and deliberately allowed the posts to remain on Twitter. *Id.*

United States District Court
Northern District of California

First, Plaintiffs argue that they have sufficiently alleged their claims under the TVPRA, which FOSTA exempts from CDA § 230, both on the basis of direct sex trafficking under Section 1591(a)(1) and as a beneficiary of sex trafficking under Section 1591(a)(2). *Id.* at 3. With respect to direct sex trafficking, Plaintiffs point to the language of Section 1591(a)(1), providing for liability for a perpetrator who "knowingly . . . recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits *by any means* a person," while "knowing, or . . . in reckless disregard of the fact . . . that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act[.]" *Id.* (quoting 8 U.S.C. § 1591(a)) (emphasis added). According to Plaintiffs, "the phrase 'by any means' is not defined and contains no exception for electronic or virtual actions." *Id.* Further, they assert, while the statute does not define the words "provide[]," "obtain[ ]," or "maintain[ ]," their ordinary meaning as evidenced by dictionary definitions – upon which the Ninth Circuit has relied to define other undefined terms of the TVPRA –support the conclusion that Plaintiffs' allegations are sufficient as to the first part of Section 1591(a)(1) (establishing liability as to a defendant that "knowingly . . . recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person"). *Id.* at 3-4. In particular, Plaintiffs contend they have satisfied this requirement by alleging that "Twitter made them available, as depicted in a CSAM compilation video, to users on Twitter, having gained or attained Plaintiffs by the same electronic means, and having kept them in the same existing state, all despite Plaintiffs' own reports and objections." *Id.* at 4 (citing *United States v. Love,* 743 F. App'x 138, 139 (9th Cir. 2018) (using Webster's dictionary to define "force" in § 1591(a)(1) charge against sex trafficker)).

Plaintiffs further assert that child pornography can be the basis for a TVPRA claim under Section 1591(a)(1), including in cases where the perpetrator procures pornographic material without having direct contact with the child or paying money for the material. *Id.* at 4-5 (citing *United States v. Flanders*, 752 F.3d 1317, 1330 (11th Cir. 2014); *United States v. Tollefson*, 367 F. Supp. 3d 865, 878-880 (E.D. Wis. 2019)).

Plaintiffs argues further that their allegations are sufficient as to the second phrase of Section 1591(a)(1), requiring that the conduct that is the basis for the claim must have been

1  "knowing, or . . . in reckless disregard of the fact . . . that the person has not attained the age of 18

2  years and will be caused to engage in a commercial sex act[.]" *Id.* at 5-6.  According to Plaintiffs,

3  a "commercial sex act" is defined under the TVPRA as " 'any sex act, on account of which

4  anything of value is given to or received by any person[.]' " *Id.* at 6 (quoting 18 U.S.C. §

5  1591(e)(3)).  Here, they contend, they have alleged "actual knowledge" in that they "alleged that

6  they reported child sexual abuse material featuring them to Twitter, depicting them engaged in

7  sexual acts due to extortion and blackmail (that is, in exchange for 'something of value')." *Id.*

8  (citing FAC ¶¶ 112, 114, 123).  They also point to their allegation that "John Doe 1 provided proof

9  of his age to Twitter, that numerous users commented on their belief that videos featured minors

10  and that one disseminating account had already been reported to Twitter for CSAM." *Id.*  (citing

11  FAC ¶¶ 101-102, 114, 121-122).  Plaintiffs argue that "[t]aken together, these allegations are more

12  than sufficient to indicate that Twitter knew, or at least was in reckless disregard of, Plaintiffs'

13  status as minors when engaging in the commercial sex acts at issue." *Id.*  at 5-6.

14      Plaintiffs also argue that they state a claim on the basis of beneficiary liability under

15  Section 1595(a) and Section 1591(a)(2), addressing the requirements of both provisions; according

16  to Plaintiffs, Sections 1591(a)(2) and 1595(a) "have similar provisions for those who benefit

17  financially, and distinct requirements for participation in a venture and the requisite level of

18  knowledge." *Id.*  at 6.

19      With respect to whether Plaintiffs have alleged that Twitter knowingly "benefited

20  financially or by receiving anything of value," Plaintiffs contend they have satisfied this

21  requirement by alleging that Twitter both monetizes the CSAM on its platform and gains more

22  viewers from CSAM, which makes the platform more popular and attracts advertisers. *Id.* at 6-7.

23  In support of this argument, it points to *B.M. v. Wyndham*, 2020 WL 4368214, at *4 (N.D. Cal.

24  July 30, 2020).  *Id.*  According to Plaintiffs, in that case the Court rejected the defendant's

25  argument that a plaintiff asserting a claim under Sections 1591(a)(2) and 1595(a) was required to

26  show that the financial benefit "must [have] derive[d] directly from, and [been] knowingly

27  received in exchange for, participation in a sex trafficking venture." *Id.*  at 7 (quoting *B.M.*, 2020

28  WL 4368214, at *4 (internal citations omitted) (alterations added)).  Instead, Plaintiffs assert, the

United States District Court
Northern District of California

court in *B.M.* found "that § 1595 claims could not be subjected to the same knowledge standard as § 1591 without undermining the 'should have known' language, and the Court concluded that it was sufficient to allege that the hotels knowingly received revenue from room rentals." *Id.* (citing *B.M.*, 2020 WL 4368214, at *4) (internal citations omitted).

Plaintiffs reject Twitter's argument that "any benefit [it] receives must have a causal relationship to the sex trafficking[,]" arguing that the cases upon which it relies – *Geiss v. Weinstein Co. Holdings LLC*, 383 F.Supp. 3d 156, 169 (S.D.N.Y. 2019) and *Kolbek v. Twenty First Century Holiness Tabernacle Church, Inc*., 2013 WL 6816174, at *16 (W.D. Ark. Dec. 24, 2013) – are not on point. *Id.* at 8 (citing Motion at 13, 15). Even if Twitter is correct, Plaintiffs contend, they have demonstrated such a connection through the allegations in the FAC. *Id.* at 8-10. Plaintiffs argue that many of Twitter's assertions as to their allegations are contradicted by the FAC and provide a list of examples comparing specific claims about the allegations made by Twitter with the actual allegations in the FAC. *Id.*

Next, Plaintiffs address whether they have adequately alleged that Twitter participated in what it knew or should have known was a sex trafficking venture. *Id.* at 10-16. According to Plaintiffs, Sections 1591(a)(2) and 1595 contain distinct requirements. *Id.* at 10. "Participation in a venture" for the purposes of Section 1591(a)(2) means "knowingly assisting, supporting, or facilitating a violation of subsection (a)(1)." *Id.* (quoting 18 U.S.C. § 1591(e)(4)). Plaintiffs contend they have alleged a violation of subsection (a)(1) for the reasons discussed above and therefore have satisfied that aspect of the definition of "participation in a venture" under Section 1591(a)(2). *Id.* at 11. Further, they reject Twitter's arguments that it did not participate in a venture that it knew was sex trafficking, which they characterize are as follows: "(1) Twitter did not have a common purpose with the initial sex traffickers, (2) Twitter was at most a passive beneficiary of sex trafficking profits, and (3) Twitter does not know what sex trafficking is." *Id.*

As to the "common purpose" argument, Plaintiffs contend Twitter relies on cases interpreting the Racketeer Influenced and Corrupt Organizations Act ("RICO") in support of such a requirement, but that these cases have no bearing on Plaintiffs' TVPRA claims. *Id.* (citing Motion at 13 (citing *United States v. Turkette*, 452 U.S. 576 (1981); *Washington v. Deleon*, 2019

United States District Court
Northern District of California

WL 11691424 (N.D. Cal. July 9, 2019)).

Plaintiffs argue that Twitter's passive beneficiary argument also fails because it's reliance on *Afyare*, 632 F. App'x at 286, is misplaced. *Id.* at 11-12. According to Plaintiffs, in *Afyare* the court offered an analogy "that a defendant who joins a soccer team whose members include sex traffickers who sponsor the team financially, does not violate § 1591(a)(2) unless that defendant commits 'some overt act' that 'furthers the sex trafficking aspect of the venture.' " *Id.* at 11 (quoting Motion at 14). Plaintiffs argue that Twitter's reliance on that analogy to argue that there must be "some overt act that furthers the sex trafficking aspect of the venture" should be rejected because "[t]he decision's logic doesn't apply where the beneficiary defendant is engaging in illegal acts." *Id.* at 12. In particular, they assert, while playing soccer is a lawful venture, "CSAM possession and distribution are not." *Id.* (citing 18 U.S.C. § 2252A). Thus, Plaintiffs assert, they *have* alleged that Twitter engaged in overt acts that further the sex trafficking venture "[b]y knowingly hosting, possessing, and distributing the CSAM of Plaintiffs, as Plaintiffs have alleged." *Id.*

Next, Plaintiffs reject Twitter's claims that it "did not know of the alleged sex trafficking" (Motion at 17), that "there is no allegation that any of these submissions informed Twitter that Plaintiffs were victims of sex trafficking" (Motion at 18), that "none of the reports or emails sent to Twitter about the videos indicated that Plaintiffs had been sex trafficked or that they involved commercial sex acts" (Motion at 21), and that Plaintiffs did not allege "that the videos would have, on their face, indicated to Twitter (or a reasonable viewer) that Plaintiffs had been trafficked and the videos involved commercial sex" (Motion at 18). *Id.* at 12. Plaintiffs argue that these claims are "misleading and meritless" in light of the allegations in the FAC. *Id.* at 12-13 (citing FAC ¶¶ 52-53, 57, 101-102, 112, 114, 121-123, 196). Likewise, they argue that Twitter's suggestion that their claims are merely about "delay," implying that it acted in good faither in eventually taking action to remove the Videos rather than doing so in response to an intervening event (a request from the federal government that it take action) after refusing to take action, is misleading. *Id.* at 12 n. 26. According to Plaintiffs, "unless the charge is advertising, § 1591(a), nowhere does the TVPRA require that the defendant actually knew that someone was a sex

trafficking victim to be liable. Reckless disregard or constructive knowledge suffice for civil liability." *Id.* (citing 18 U.S.C. §§ 1591(a), 1595(a)). Thus, they contend, their allegations are sufficient to establish knowledge of their sex trafficking. *Id.*

Plaintiffs also point to Section 1595, which they contend under *B.M.* requires that they "allege that Twitter (1) 'knowingly benefit[ted] financially or by receiving anything of value'; (2) from participation in a venture; (3) that they 'knew or should have known [had] engaged in' sex trafficking.' " *Id.* at 14 (quoting *B.M.*, 2020 WL 4368214, at *4). They contend, "[t]he *B.M.* court determined, as most courts have, that the plaintiff 'is not required to allege an overt act in furtherance of or actual knowledge of a sex trafficking venture in order to sufficiently plead her section 1595 civil liability claim[.]' " *Id.* (quoting *B.M.*, 2020 WL 4368214, at *4 and citing *S.Y. v. Wyndham Hotels & Resorts, Inc. & Laxmi of Naples, LLC*, No. 2:20-CV-619-JES-MRM, 2021 WL 1814651, at *4-5 (M.D. Fla. May 6, 2021); *E.S. v. Best W. Int'l, Inc.*, No. 3:20-CV-00050-M, 2021 WL 37457, at *3–4 (N.D. Tex. Jan. 4, 2021); *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d at 968–71 (S.D. Ohio 2019); *S.J. v. Choice Hotels Int'l, Inc.*, 473 F.Supp.3d 147, 152-54 (E.D.N.Y. 2020); *Doe S.W. v. Lorain-Elyria Motel, Inc.*, Case No. 2:19-cv-1194, 2020 WL 1244192, *6-7 (S.D. Ohio Mar. 16, 2020)). Plaintiffs note that *Afyare*, upon which Twitter relies to assert that an overt act is required, was a criminal action, in contrast to *B.M.,* and argue that under *B.M.* Plaintiffs are not required to plead a § 1595 claim under a § 1591 standard. *Id.* (citing *B.M.*, 2020 WL 4368214, at *3; *J.C. v. Choice Hotels Int'l, Inc.*, No. 20-CV-00155-WHO, 2020 WL 6318707, at *7 (N.D. Cal. Oct. 28, 2020)). Plaintiffs also argue that Twitter's reliance on *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 966 (S.D. Ohio 2019) is misplaced because is mischaracterizes the facts and holding of that case. *Id.* at 14-15. According to Plaintiffs, they have "sufficiently alleged that Twitter had constructive and actual knowledge of Plaintiffs' sex trafficking, which it could see for itself; the main crime happened in plain sight." *Id.* at 16.

Plaintiffs strenuously disagree with Twitter's characterization of the legislative history of FOSTA and its argument that Congress intended to create only a narrow exception for bad actors like Backpage. *Id.* at 16-19. Plaintiffs argue that in any event, they have alleged conduct that is

1    sufficient to fall within the exception, and the question of "how Twitter's actions compare to

2    Backpage is a factual question that cannot be resolved at this stage of the litigation." *Id.*

3         Plaintiffs also argue that even apart from FOSTA, CDA § 230 was "never intended to

4    immunize conduct that entails both criminal and civil liability." *Id.* (citing *Fair Hous. Council of

5    San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1164 (9th Cir. 2008) ("The

6    Communications Decency Act was not meant to create a lawless no-man's-land on the

7    Internet.")).  In particular, they argue that the plain language of Section 230(c) requires that an

8    interactive service provider "**take action** in good faith to restrict access to material, which is the

9    opposite of what Twitter did in the instant case." *Id.* at 20 (emphasis in original).  Plaintiffs

10   concede that "[s]ome Ninth Circuit decisions have interpreted the liability shield in CDA 230 to

11   cover not just the removal of objectionable content, but the decision whether to remove the

12   content." *Id.* (citing *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1102 (9th Cir. 2009), as amended

13   (Sept. 28, 2009) (citing *Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*,

14   521 F.3d 1157, 1170–71 (9th Cir. 2008)). According to Plaintiffs, "[t]his interpretation is not

15   consistent with the plain language of § 230(c)(2), which only limits liability for 'any action . . . to

16   restrict access' to harmful content[,]" but these cases do not apply here because "they do not hold

17   that CDA 230 immunizes a knowing decision to possess and distribute CSAM and Twitter has

18   pointed to no controlling authority for such a proposition." *Id.* at 21.

19        Further, Plaintiffs assert, the stated purpose for CDA § 230 is inconsistent with Twitter's

20   argument that it creates "immunity for all third-party content, even contraband – specifically, child

21   pornography[.]" *Id.* The title of Section 230 – "Protection for private blocking and screening of

22   offensive material" – supports this conclusion, Plaintiffs assert.  *Id.*  Likewise, the policies stated

23   in Section 230 indicate that it was enacted "to remove disincentives for the development and

24   utilization of blocking and filtering technologies that empower parents to restrict their children's

25   access to objectionable or inappropriate online material," and "to ensure vigorous enforcement of

26   Federal criminal laws to deter and punish trafficking in obscenity, stalking, and harassment by

27   means of computer." *Id.* (quoting 47 U.S.C.A. § 230(b)(4)-(5)).  Twitter's position would

28   undermine these policies rather than advance them, Plaintiffs assert.  *Id.*

United States District Court
Northern District of California

1   Plaintiffs also argue that CDA § 230 does not apply to their claim under 18 U.S.C. §

2   2252A and 2255 that Twitter knowingly possessed and distributed child pornography (Claim

3   Four) because "CSAM material is not lawful 'information provided by another information

4   content provider'" but rather is illegal contraband, stemming from the sexual abuse of a child, and

5   wholly outside any protection or immunity under the law, to include CDA 230.' " *Id.* at 22.

6   Plaintiffs' further assert that "CDA 230 was enacted to incentivize internet service providers

7   ("ISP's") to protect children, not immunize them for intentionally or recklessly harming them."

8   *Id.*

9   Plaintiffs argue that the Court should decline to follow the case cited by Twitter, *Doe v.*

10  *Bates*, 2006 WL 3813758 (E.D. Tex., Dec. 27, 2006), which is a "non-binding, first of its kind,

11  federal decision extending CDA immunity to a civil suit alleging receipt and possession of child

12  pornography." *Id.* at 23. According to Plaintiffs, neither of the cases upon which the Texas

13  district court relied, *Zeran v. Am. Online, Inc.*, 129 F.3d 327 (4th Cir. 1997) and *Noah v. AOL*

14  *Time Warner, Inc.*, 261 F. Supp. 2d 532, 537 (E.D. Va. 2003), aff'd, No. 03-1770, 2004 WL

15  602711 (4th Cir. Mar. 24, 2004), involved child pornography. *Id.* They also contend the

16  reasoning of the Texas case is wrong to the extent it treats child pornography in the same way

17  courts have treated defamatory statements instead of treating it as contraband. *Id.* at 23-24.

18  According to Plaintiffs, given that Congress made clear that the protection of children was

19  paramount when Section 230 was enacted, as is evidenced by the policies stated in subsection (b)

20  and the exemption for " 'chapter . . . 110 of title 18 (relating to sexual exploitation of children),'

21  which includes §§ 2252A and 2255[,]" "[i]t is untenable . . . to assert that CDA 230 immunizes

22  platforms from knowingly possessing and distributing child sexual exploitation material." *Id.* at

23  24. Moreover, Plaintiffs assert, Twitter does not dispute that they have adequately alleged the

24  elements of claim under 18 U.S.C. § 2252A. *Id.* at 25.

25  Plaintiffs also challenge Twitter's argument that their claims under 18 U.S.C. §

26  2258A(a)(1) and (a)(2) fail because those provisions do not create a civil cause of action. *Id.*

27  (citing Motion at 22). According to Plaintiffs, "Congress intended to make deliberate and reckless

28  violations of 2258A privately enforceable" and that is what they allege here. *Id.* (citing 18 U.S.C.

§ 2258B(b)).  Plaintiffs argue further that "the standards of misconduct in paragraph (b) of 2258(B) establish the duty of care that Twitter owes Plaintiffs" for the purposes of their negligence claims and thus establish liability under both federal and state law.  *Id.*  at 25-26.

Next, Plaintiffs argue that CDA § 230 does not give rise to immunity as to their state law products liability claim based on negligent design.  *Id.*  According to Plaintiffs, this is because their claim "does not attempt to treat Twitter as the 'publisher or speaker' of information."  *Id.*  at 26.  Instead, "it seeks to hold Twitter accountable for failing in its 'duty to exercise due care in supplying products that do not present an unreasonable risk of injury or harm to the public.' "  *Id.*  (quoting *Lemmon v. Snap, Inc.*, No. 20-55295, 2021 WL 1743576, at *4 (9th Cir. May 4, 2021)).  Plaintiffs contend that the distinction drawn by the Ninth Circuit in *Lemmon*, in which the court "rejected a social media platform's attempt to argue that CDA 230 applied because the platform allowed its users to transmit user-generated content to one another. . . .[,]' " also applies here, supporting the conclusion that Section 230 does not apply to this claim.  *Id.*  at 26-27.  To the extent Twitter argues that Plaintiffs have not clearly identified what aspect of its platform is the "product," Plaintiffs contend this is just semantics.  *Id.*  at 27.  They also reject Twitter's argument that product liability law applies only to the "tangible" world, arguing that the Ninth Circuit's holding in *Lemmon* shows that Twitter is incorrect.  *Id.*

Finally, Plaintiffs argue that their state law claims are adequately alleged and should be allowed to proceed.  As to the negligence claims, they assert that it is apparent from the FAC that these claims are based on different theories and California's Civil Jury Instructions treat them as separate causes of action.  *Id.* at 28.  To the extent negligence per se operates as a presumption to establish a duty of care rather than a separate claim, Plaintiffs argue, "that simply means that Plaintiffs' allegations of Twitter's multiple violations of its statutory duties should be read in tandem with its negligence claims."  *Id.*  (citing *Tinoco v. San Diego Gas & Elec. Co*., No. 17-CV-2433-BAS-JLB, 2018 WL 4562479, at *2 (S.D. Cal. Sept. 21, 2018)).  Plaintiffs also argue that they state a claim for violation of California's UCL based on "unlawful" conduct because "Twitter's criminal, aiding and abetting conduct is actionable under § 17200."  *Id.* at 29 (citing *Chetal v. Am. Home Mortg*., No. C 09-02727 CRB, 2009 WL 2612312, at *4 (N.D. Cal. Aug. 24,

United States District Court
Northern District of California

2009); *Plascencia v. Lending 1st Mortg.*, 583 F. Supp. 2d 1090, 1098 (N.D. Cal. 2008)).  Twitter's argument that Plaintiffs do not have standing on this claim because they cannot seek "the full spectrum of damages" also falls short, Plaintiffs contend, as "the availability of a certain remedy is not relevant to a determination of standing to assert the claim." *Id.* (citing *Finelite, Inc. v. Ledalite Architectural Prods.*, No. C-10-1276 MMC, 2010 WL 3385027, at *2 (N.D. Cal. Aug. 26, 2010)).

### 3. Reply

In its Reply, Twitter reiterates its arguments that it cannot be held liable as either a perpetrator of sex trafficking under Section 1591(a)(1) or a criminal beneficiary of sex trafficking under Section 1591(a)(2).  Reply at 1-10.  As to Plaintiffs' direct sex trafficking claim under Section 1591(a)(1), Twitter rejects Plaintiffs' interpretation of the provision, again pointing to the words "a person" in the provision to argue that the prohibited conduct applies to an *individual*.  *Id.* at 2.  Twitter argues that Plaintiffs' "novel" interpretation of the provision as also encompassing a video depicting a person is not supported by any authority.  *Id.*  Twitter points to other uses of the word "person" in Section 1591 to support its argument that this word cannot be read to mean a depiction of a person under Section 1591(a)(1).  *Id.* at 3 (citing 18 U.S.C. § 1591(a)(2) ("person has not attained the age of 18");  18 U.S.C. § 1591(e)(2) ("coercion" is "threats of serious harm to or physical restraint against any person")).

Twitter argues further that the cases cited by Plaintiffs in support of their reading of Section 1591(a)(1), *United States v. Flanders*, 752 F.3d 1317, 1330 (11th Cir. 2014) and *United States v. Tollefson*, 367 F. Supp. 3d 865, 878-80 (E.D. Wis. 2019), are not on point because in those cases,  the court "determined that each defendant violated Section 1591(a)(1) because they procured a person for commercial sex using electronic means, i.e., they used the internet to communicate with the victims and to pay them to engage in recorded sex acts, similar to what the Perpetrators did here." *Id.* at 3 (citing *Flanders*, 752 F.3d at 1330; *Tollefson*, 367 F. Supp. 3d at 878-80).  According to Twitter, *Flanders* and *Tollefson* "revolved around whether Section 1591 covered situations in which the defendant was not physically present during the alleged sex trafficking, not whether the challenged conduct could apply to an object (such as a video) instead of a person." *Id.*

United States District Court
Northern District of California

1    Twitter also repeats its argument that Plaintiffs, by their own admission, cannot satisfy the

2    requirement under Section 1591(a) that a defendant must have known that a victim "will in the

3    future [be] cause[d]" to engage in a commercial sex act given that Plaintiffs' allegations establish

4    that "the venture was over at the time Twitter allegedly refused to remove the Videos from its

5    platform, . . . making it impossible for Twitter to know that its alleged failure to act would likely

6    cause Plaintiffs to engage in commercial sex acts in the future." *Id.*

7    Twitter also rejects Plaintiffs' arguments as to their claim that Twitter is liable as a

8    beneficiary of sex trafficking under Section 1591(a)(2). *Id.* at 3-10. It again argues that it did not

9    participate in any "venture" for the purposes of this subsection because it was not "associated in

10   fact" with the perpetrators. *Id.* at 4. Twitter acknowledges that this term is not defined under

11   Section 1591 but argues it is reasonable to look to the RICO cases cited in the Motion to

12   understand its meaning. *Id.* Twitter reiterates its argument that these cases support the conclusion

13   that to be engaged in a "venture" under Section 1591 the participants must have a common

14   purpose, which Plaintiffs fail to allege. *Id.* Twitter notes that "[t]his construction of 'venture' is

15   implicit to the *Afyare* court's holding that Section 1591(a)(2) requires proof of a sex trafficking

16   venture and that '[t]wo or more people who engage in sex trafficking together are a sex-trafficking

17   venture.' " *Id.* n. 4 (quoting *United States v. Afyare*, 632 F. App'x 272, 279-86 (6th Cir. 2016)).

18   Moreover, Twitter contends, under Section 1591 the common purpose that is alleged must

19   involve the *particular* sex trafficking venture involving the plaintiff. *Id.* at 4-5 (citing *S.J. v.

20   Choice Hotels Int'l*, 473 F. Supp. 3d 147, 154 (E.D.N.Y. 2020); *Doe v. Kik*, 482 F. Supp. 3d 1242,

21   1251 (S.D. Fla. 2020); *J.B. v. G6 Hospitality, LLC*, 2020 WL 4901196, at *10 (N.D. Cal. Aug. 20,

22   2020)). Plaintiffs fail to meet this requirement as well, Twitter argues. *Id.* at 5. Twitter argues

23   further that "[f]inding a venture between Twitter and the Perpetrators based on a standard

24   platform-user relationship also makes no sense considering Twitter's userbase, which numbers in

25   the hundreds of millions." *Id.* at 6 (citing FAC ¶ 23; *J.B.*, 2020 WL 4901196, at *10 ("Craigslist

26   cannot be deemed to have participated in all ventures arising out of each post on its site.")).

27   Twitter also asserts that Plaintiffs' claim under Section 1592(a)(2) fails because the FAC

28   does not allege any "active participation" by Twitter, arguing again that Plaintiffs must allege

United States District Court
Northern District of California

United States District Court
Northern District of California

1    overt acts by Twitter in furtherance of the venture. *Id.* According to Twitter, Plaintiffs do not

2    dispute that this is a requirement but instead argue, without authority, that its denial of the requests

3    to remove the Videos was an affirmative act that satisfies this requirement. *Id.* (citing Opposition

4    at 12). Twitter contends this argument "conflicts with the FAC itself, which is clear that Plaintiffs

5    were allegedly harmed by the failure to immediately remove the Videos." *Id.* (citing FAC ¶¶ 124-

6    25). In any event, they assert, Plaintiffs' argument fails because "Twitter's failing to act is not

7    'affirmative conduct' " and "the nine-day removal time frame is not tantamount to an affirmative

8    act on Twitter's part." *Id.* (citing Motion at 14-15 (quoting *Geiss v. Weinstein Co. Holdings, LLC*,

9    383 F. Supp. 3d 383, 169 (S.D.N.Y. 2019)); *Bradley Bergeron v. Monex Deposit Co.*, 2020 WL

10   6468457, at *6–7 (C.D. Cal. Aug. 18, 2020); *Gressett v. Contra Costa Cty.*, 2013 WL 2156278, at

11   *17 (N.D. Cal. May 17, 2013)). Even if Twitter's inaction were deemed an overt act, it argues, it

12   would still be insufficient because it did not further the sex trafficking venture. *Id.* at 6 n. 6

13   (citing *Kik*, 482 F. Supp. 3d at 1251).

14       Twitter reiterates its argument that Plaintiffs' claim under Section 1591(a)(2) also fails

15   because the FAC does not plead that Twitter knowingly benefited from its participation in

16   Plaintiffs' alleged sex trafficking. *Id.* at 7-8. Twitter rejects Plaintiffs' attempt to distinguish

17   *Geiss* and *Kolbek*, cited in the Motion, arguing that "the specific procedural posture and facts of

18   those cases are irrelevant to the legal holding about what the statute requires." *Id.* at 7.

19       More importantly, Twitter argues, "the Opposition never explains how Twitter could have

20   received a benefit from Plaintiffs' alleged sex trafficking when none of the broad allegations

21   regarding how Twitter makes money are connected to what happened to them." *Id.* Twitter

22   contends the "FAC does not allege that there were any advertisements, or promoted Tweets

23   associated with the Videos, nor does it allege that Twitter obtained (let alone licensed) any data

24   related to the Videos." *Id.* Moreover, it argues, the allegations that Twitter " 'continued to

25   distribute the CSAM that it had monetized after' John Doe #1 and his mother reported it" are not

26   supported by any specific facts and therefore do not raise a plausible inference that Twitter

27   received a benefit from the Videos. *Id.* at 7-8 (citing Opposition at 8-10 (citing FAC ¶¶ 52-54)).

28       Twitter argues further that the Opposition also "does not provide any other facts that would

establish the 'causal relationship' between receipt of a benefit and Twitter's 'actual knowledge of that causal relationship.' " *Id.* at 8. Twitter rejects Plaintiffs' argument that it has satisfied this requirement by alleging that Twitter's conduct was motivated by the fact that "CSE content is 'highly sought-after' on Twitter and Twitter 'makes significant revenue from the presence, searches, connections, and interactions of such illegal and dangerous material.' " *Id.* at 8 (quoting Opposition at 9 (citing ¶¶ 37, 71, 84))). According to Twitter, "these allegations are not only incorrect, they are conclusory and unsupported." *Id.* And to the extent that Plaintiffs point to allegations citing statements about how it monetizes its platform, these allegations are insufficient, Twitter asserts, because they do not establish that Twitter monetizes *all* public posts and interactions. *Id.* n. 8 (citing Opposition at 8-9; FAC ¶ 33).

Next, Twitter rejects Plaintiffs' argument that they have satisfied the "actual knowledge" requirement of Section 1591(a)(2) by alleging facts showing "reckless disregard or constructive knowledge." *Id.* at 9. Twitter argues that this standard is incorrect and that "[c]ourts have repeatedly held that Section 1591(a)(2) requires a defendant to have actual knowledge of the sex trafficking venture involving the plaintiff to constitute a criminal violation suffices for a Section 1591(a)(2) violation." *Id.* at 9 (citing *Kik*, 482 F. Supp. 3d at 1251). Twitter contends Plaintiffs also fail to establish in the Opposition that it had actual knowledge as the allegations they point to do not "demonstrate that Twitter understood that Plaintiffs were the victims of sex trafficking and the acts depicted in the Videos were commercial sex acts." *Id.* (citing Opposition at 5, 12-14).

Twitter concedes that Plaintiffs allege "that John Doe #1 emailed saying Plaintiffs 'were baited, harassed, and threatened to take these videos,' " but contends "that is simply insufficient to establish Twitter's actual knowledge of the alleged sex trafficking" because "[f]rom John Doe #1's email Twitter cannot tell whether Plaintiffs were harassed and baited by friends or an adult, for example, and Twitter cannot tell whether the harassment caused them to engage in the sex acts, film them, or share the Videos with others." *Id.* at 9-10 (citing Opposition at 13 (citing FAC ¶ 123)).

Twitter reiterates its arguments that Congress intended only to create a narrow exception to Section 230 when it enacted FOSTA. *Id.* at 10-12. That exception, it contends, was to allow for

the imposition of liability on "websites that *'have done nothing to prevent the trafficking of children.'*" *Id.* at 12 (quoting Opposition at 17-18 (emphasis in Opposition)).   Twitter argues that "even according to Plaintiffs' own allegations, Twitter plainly is not one of those websites." *Id.* (citing FAC ¶¶ 42-43, 55-58, 60, 64-65, 128-29).

Twitter also rejects Plaintiffs' argument that CDA § 230 only provides immunity where an ICS *removes* offensive content, arguing that it is well settled in the Ninth Circuit that Section 230 applies whenever a claim is based on an ICS's decision to publish or remove third-party content. *Id.* at 12-13 (citing *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1170–71 (9th Cir. 2008); *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1103 (9th Cir. 2009); *Jones v. Dirty World Ent. Recordings LLC*, 755 F.3d 398, 406-07 (6th Cir. 2014)).   This immunity applies even when an ICS has received notice of the offensive content, Twitter contends.  *Id.* at 14 (citing *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 333 (4th Cir. 1997); *Doe v. Bates*, 2006 WL 3813758, at *18 (E.D. Tex. Dec. 27, 2006); *Igbonwa v. Facebook, Inc.*, 2018 WL 4907632, at *1, *5-7 (N.D. Cal. Oct. 9, 2018), aff'd, 786 F. App'x 104 (9th Cir. 2019)).

Twitter argues that even if Plaintiffs' claim under Section 1595 is not barred under CDA § 230, it fails to state a claim because Plaintiffs have not alleged all the required elements, namely, "that Twitter participated in a venture with the Perpetrator or should have known about Plaintiffs' alleged sex trafficking."  *Id.* at 14-16. According to Twitter, Plaintiffs' argument that the FAC is not required to allege a "conspiracy" between Twitter and the sex traffickers is a "red herring."  *Id.* at 15 (citing Opposition at 14-15).  Rather, Twitter contends, its argument is that "pleading a 'venture' under Section 1595 required Plaintiffs to allege facts demonstrating 'a continuous [] relationship between the trafficker and the [defendant] such that it would appear that the trafficker and the [defendant] have established a pattern of conduct or could be said to have a tacit agreement.'"  *Id.*  (quoting *J. B.*, 2020 WL 4901196, at *9 (citing *M.A.*, 425 F. Supp. 3d at 970)).  Here, Twitter asserts, the FAC does not allege facts establishing such a continuous relationship. *Id.*

Twitter argues further that "the FAC alleges no facts showing that Twitter 'should have known' that the Videos involved sex trafficking conduct – *i.e.*, the exploitation of children for

commercial sex purposes," despite the arguments in the Opposition to the contrary. *Id.* at 15-16 (citing Motion at 20-21; Reply at 9-10; Opposition at 15). According to Twitter, "[t]he Opposition's reliance on Twitter's alleged 'general knowledge' of CSE content on its platform also fails because such knowledge does not demonstrate Twitter should have known of what specifically happened to Plaintiffs." *Id.* at 16 (citing *A.B. v. Hilton Worldwide Holdings Inc.*, 484 F. Supp. 3d 921, 937-38 (D. Oregon 2020)).

Twitter reiterates it position that all of Plaintiffs' remaining claims are barred under CDA § 230. *Id.* at 16-18. Twitter contends Plaintiffs "do not disagree save for their products liability claim." *Id.*

As to Twitter's arguments that Plaintiffs have failed to state viable state law claims, Twitter notes that Plaintiffs did not address its arguments related to California Civil Code section 1708.85 and contends this claim should therefore be dismissed. *Id.* at 19.

Twitter argues as to the products liability claim that Plaintiffs' reliance on *Lemmon v. Snap* to argue that CDA § 230 does not immunize Twitter from their products liability claim is misplaced because in that case, the plaintiffs' claims were based on the use of a "speed filter" and did not, as here, treat the defendant as a publisher of information. *Id.* at 19-20 (citing 995 F.3d at 1087-88).

Twitter argues that Plaintiffs' Opposition fails to establish that they have viable negligence claims because if does not address Twitter's argument that it owed Plaintiffs no duty. *Id.* at 20 (citing Motion at 23-24; *GN Resound A/S v. Callpod, Inc.*, 2013 WL 1190651, at *5 (N.D. Cal. Mar. 21, 2013)). Nor have Plaintiffs "established that Twitter violated any law or statute that would give rise to a presumption of negligence," Twitter contends, "and Plaintiffs' own authority agrees that negligence per se is not an independent claim." *Id.*

Finally, Twitter argues that the Opposition fails to establish that Plaintiffs have standing on their UCL claim. *Id.* at 20-21. First, to the extent that the Opposition "seemingly argues that Plaintiffs have standing to bring a UCL claim because they suffered economic injury as a result of the 'monetization and dissemination of Plaintiffs' images and likenesses' by Twitter[,]" Twitter rejects that argument. *Id.* (citing Opposition at 29-30 (citing *Fraley v. Facebook, Inc.*, 830 F.

United States District Court
Northern District of California

Supp. 2d 785, 811 (N.D. Cal. 2011))). According to Twitter, *Fraley* does not support Plaintiffs' position because in that case, the "plaintiffs alleged that Facebook 'fail[ed] to compensate them for their valuable endorsement of third-party products and services' when it took their image and name to create 'Sponsored Stories.' " *Id.* (quoting 830 F. Supp. 2d at 790). Twitter contrasts the allegations in the FAC, which "alleges that advertisements or promoted Tweets are 'displayed intermixed between tweets' " but does not allege "that Plaintiffs' image or name was used to endorse any product or used in any advertisement." *Id.* at 20-21.

Twitter also rejects Plaintiffs' reliance on its alleged "criminal, aiding and abetting conduct" in support of UCL standing, arguing that this theory (which was raised for the first time in the Opposition) fails because "[a]iding and abetting requires not only knowledge [of the complained of act], but 'substantial assistance o[r] encouragement' of another's tort." *Id.* at 21 (citing Opposition at 29; quoting *Chetal v. Am. Home Mortg.*, 2009 WL 2612312, at *4 (N.D. Cal. Aug. 24, 2009)). Plaintiffs have not alleged such facts, Twitter asserts. *Id.*

For these reasons, Twitter asks the Court to dismiss all of Plaintiffs' claims with prejudice. *Id.*).

### 4. Amicus Brief

In addition to the briefing supplied by the parties, a group of anti-trafficking organizations have submitted an amicus brief addressing Congress's intent in enacting FOSTA. These organizations contend Congress intended to afford greater protection to victims of online sex trafficking by abrogating the broad immunity afforded under CDA § 230 and urge the Court to reject Twitter's assertion that it is immune from Plaintiffs' claims in this case.

## III. ANALYSIS

### A. Legal Standards Under Rule 12(b)(6)

A complaint may be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim on which relief can be granted. "The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint." *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). Generally, a plaintiff's burden at the pleading stage is relatively light. Rule 8(a) of the Federal Rules of Civil Procedure states that a "pleading which

sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).

In ruling on a motion to dismiss under Rule 12(b)(6), the court analyzes the complaint and takes "all allegations of material fact as true and construe[s] them in the light most favorable to the non-moving party." *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal may be based on a lack of a cognizable legal theory or on the absence of facts that would support a valid theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  A complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).  "[C]ourts 'are not bound to accept as true a legal conclusion couched as a factual allegation.' " *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (alteration in original).  Rather, the claim must be " 'plausible on its face,' " meaning that the plaintiff must plead sufficient factual allegations to "allow [] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 570).

## B. The TVPRA Claims (Claims One and Two)

Plaintiffs assert two claims against Twitter under the TVPRA – a claim for direct sex trafficking and a claim for beneficiary liability.  For the reasons set forth below, the Court finds that Plaintiffs fail to state a claim for direct sex trafficking and therefore does not reach the question of whether that claim is barred under CDA § 230.  On the other hand, the Court finds that Plaintiffs state a claim for beneficiary liability under the TVPRA and that Section 230 does not apply to that claim.

United States District Court
Northern District of California

### 1. Direct Sex Trafficking

Both sides rely on the plain language of Section 1591(a)(1) in support of their arguments relating to the sufficiency of Plaintiffs' allegations that Twitter engaged in direct sex trafficking in violation of the TVPRA. Twitter argues that the series of verbs in the provision relate to a "person" and that here, Twitter's alleged conduct relates not to a person but to the Videos. Plaintiffs, on the other hand, points to the words "by any means" in Section 1591(a)(1) in support of their reading of the provision. The Court finds Twitter's argument more persuasive.

Section 1591(a)(1) contains a series of verbs, all of which relate to a "person." One of the verbs – the word "advertises" – might plausibly be read to fit the allegations in the FAC as a video posted on Twitter could, at least as a matter of grammar, advertise a "person" but Plaintiffs don't claim that Twitter "advertised" them. The verbs on which Plaintiffs rely ("provides", "obtains" and "maintains"), on the other hand, do not lend themselves to the reading Plaintiffs suggest and Plaintiffs have pointed to no authority that supports their interpretation of Section 1591(a)(1).

Plaintiffs' reliance on *United States v. Tollefson*, 367 F. Supp. 3d 865, 878-80 (E.D. Wis. 2019) to support their reading of Section 1591(a)(1) is misplaced. In that case, the defendant was criminally charged under Section 1591(a)(1) on the basis that he had "*solicited*" a child using an online chat, which he used to communicate with the victim and to persuade her to create and send him pornographic content using her phone. 367 F. Supp. 3d at 867-68. Section 1591(a)(1) expressly allows for criminal liability where a defendant "solicits by any means a person" and the conduct at issue in that case falls comfortably within that language. Plaintiffs here do not, however, allege any solicitation by Twitter. Therefore, the Court finds that Plaintiffs do not state a claim for direct sex trafficking under Section 1591(a)(1) and does not reach the question of Section 230 immunity as to that claim.

### 2. Beneficiary Liability

The more difficult issue is whether Plaintiffs have stated a claim under Section 1591(a)(2) and, if they have, whether Twitter is immune from liability under Section 230 on that claim. To decide these questions, the Court must grapple with three primary issues. First, how stringent is the *mens rea* requirement as to Twitter's knowledge of whether Plaintiffs were victims of sex

United States District Court
Northern District of California

1  trafficking.  Second, what must be alleged to show that Twitter participated in a "venture."

2  Finally, what must be alleged to show that Twitter received a benefit from the sex trafficking

3  venture and that the benefit motivated its conduct.  As to all three questions, Twitter urges the

4  Court to adopt the stringent requirements for establishing a criminal violation under Section

5  1591(a).  The Court concludes, however, that Twitter's arguments are at odds with the plain

6  language of FOSTA and the case law addressing the requirements for establishing civil liability

7  under Section 1595.

8         Although the post-FOSTA case law addressing the requirements of Section 1595 and

9  1591(a)(2) as they relate to third-party content and ICS providers is scant, a series of cases in

10 which victims of sex trafficking have sought to impose civil liability against hotel chains shed

11 light on the pleading requirements for such claims in other contexts.  In those cases, courts have

12 addressed the significance of the fact that the "language of § 1591 differs from the language of §

13 1595" in that "the former does not have a constructive knowledge element manifested by 'should

14 have known' language."  *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 969

15 (S.D. Ohio 2019).  In *M.A.*, and in a number of cases that have adopted the reasoning of that case,

16 the court "rejected the application of the criminal definition to civil claims under the TVPRA."

17 *A.B. v. Hilton Worldwide Holdings Inc.*, 484 F. Supp. 3d 921, 937 (D. Or. 2020) (citing *M.A.* 425

18 F. Supp. 3d at 969 (S.D. Ohio 2019); *A.B. v. Marriott Int'l, Inc.*, 455 F.Supp.3d 171, 186–88 (E.D.

19 Pa. 2020); *B.M. v. Wyndham Hotels & Resorts, Inc.*, 2020 WL 4368214 at *3 (N.D. Cal. July 30,

20 2020)).

21        In *M.A.*, the plaintiff was a victim of sex trafficking that occurred at hotels owned by the

22 defendant and she sued under Sections 1595 and 1591(a)(2).  Her claims were based on the theory

23 that the hotel chain benefited from the rental of the rooms where she was trafficked and knew or

24 should have known that trafficking was occurring there based on various signs of sex trafficking

25 that should have been obvious to hotel staff.   425 F. Supp. 3d at 962.  The court found that the

26 plaintiff adequately alleged that the hotel chain benefited from the sex trafficking based on the

27 rental of its rooms.  *Id.* at 965. It further found that she alleged sufficient facts to show that it

28 "knew or should have known" that the venture was engaged in sex trafficking, applying the looser

knowledge requirement of Section 1595 rather than the knowledge requirement that applies to criminal claims under Section 1591(a)(2). *Id.* at 968. It cited both to allegations that there were obvious signs of sex trafficking that hotel staff should have recognized and that the hotel chain was "on notice about the prevalence of sex trafficking generally at their hotels and failed to take adequate steps to train staff in order to prevent its occurrence." *Id.* at 969.

Next, the *M.A.* court addressed what the plaintiff was required to allege to meet the "participation in a venture" requirement of Section 1595. Like Twitter here, the defendant in *M.A.* "rel[ied] extensively on *United States v. Afyare*, 632 F. App'x 272 (6th Cir. 2016), which addresses the meaning of 'participation in a venture' under § 1591." *Id.* at 968. As the *M.A.* court explained, "[i]n *Afyare*, a panel of the Sixth Circuit affirmed the district court's finding that § 1591(a)(2) 'require[s] that a defendant actually participate and commit some 'overt act' that furthers the sex trafficking aspect of the venture.' " *Id.* (quoting *Afyare*, 632 F. App'x at 286). Thus, under Section 1591, "the venture had to be a sex-trafficking venture and the 'participation' had to be an 'overt act' that furthers the sex trafficking aspect of the venture.' " *Id.* (quoting *Afyare*, 632 F. App'x at 286). Further, *Afyare* held that under Section 1591 a defendant had to be " 'associated for the purpose of furthering the sex trafficking.' " *Id.* The court in *M.A.* found, however, that this criminal standard did not apply to the plaintiff's civil claim under Section 1595, concluding that a defendant "need not have actual knowledge of the sex trafficking in order to have participated in the sex trafficking venture for civil liability under the TVPRA, otherwise the 'should have known' language in § 1595(a) would be meaningless." *Id.* at 971. It further found that the alleged acts and omissions of the hotel chain in that case were sufficient to allege "participation in a venture" under Section 1595. *Id.*

The *M.A.* court's interpretation of Section 1595 and the meaning of "participation in a venture" under that section was based on the following statutory analysis:

> Some Defendants have relied on the definition of "participation in a venture" supplied in § 1591(e)(4). Generally, "there is a natural presumption that identical words used in different parts of the same act are intended to have the same meaning." *Atlantic Cleaners & Dyers v. United States*, 286 U.S. 427, 433, 52 S.Ct. 607, 76 L.Ed. 1204 (1932). But this presumption does not apply where "there is such variation in the connection in which the words are used as reasonably

United States District Court
Northern District of California

to warrant the conclusion that they were employed in different parts of the act with different intent." *Id.* Here, § 1591(e) purports to only apply to "this section," i.e., § 1591. *See, e.g., Gilbert v. United States Olympic Committee*, No. 18-cv-00981-CMA-MEH, 2019 WL 1058194, at *9, *10 (D. Colo. Mar. 6, 2019) (noting that "there are persuasive reasons to conclude ... that the term 'venture' is defined differently in § 1591(a)(2) than it is in § 1589(b)" and "neither §§ 1589 nor 1595 define 'venture' ").

In addition to the language in § 1591(e) limiting the definitions to that section, applying the definition of "participation in a venture" provided for in § 1591(e) to the requirements under § 1595 would void the "known or should have known" language of § 1595. Such a construction would violat[e] the " 'cardinal principle of statutory construction' that 'a statute ought, upon the whole, to be construed so that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.' " *TRW Inc. v. Andrews*, 534 U.S. 19, 31, 122 S.Ct. 441, 151 L.Ed.2d 339 (2001) (quoting *Duncan v. Walker*, 533 U.S. 167, 174, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001)). Section 1591(e)(4) provides the following definition of "participation in a venture": "knowingly assisting, supporting, or facilitating a violation of subsection (a)(1)." The term "participation in a venture" in § 1591 thus imports a state of mind requirement—the participation must be "knowing." Although § 1591(a)(2) also criminalizes some action taken with less than actual knowledge, that is, "reckless disregard, such "reckless disregard" provision applies only to the requirement "that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act." § 1591 (a). It does not lessen the scienter requirement of actual knowledge as to participation or the venture's true ends.

425 F. Supp. 3d 959, 969–70. The court therefore concluded that " 'participation' under § 1595 does not require actual knowledge of participation in the sex trafficking itself." *Id.* at 970.

The court in *M.A.* went on to find that "[i]n the absence of a direct association, "the plaintiff could adequately allege participation under Section 1595 only by alleging facts showing "a continuous business relationship between the trafficker and the hotels such that it would appear that the trafficker and the hotels have established a pattern of conduct or could be said to have a tacit agreement." *Id.* The court found that the plaintiff met this requirement by alleging that the defendant rented rooms to people it knew or should have known were engaged in sex trafficking. *Id.*

District courts, including in this district, have found the statutory analysis in *M.A.* supporting its interpretation of Section 1595 to be persuasive. In *B.M. v. Wyndham Hotels &*

*Resorts, Inc.*, Judge Freeman stated, "The Court agrees with the statutory construction analysis in

*M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 969 (S.D. Ohio 2019), adopted by

Judge Orrick in *J.C. v. Choice Hotels Int'l, Inc.*, No. 20-CV-00155-WHO, 2020 WL 3035794, at

*1, n. 1 (N.D. Cal. June 5, 2020) that applying the 'participation in a venture' definition from the

criminal liability section of the TVPRA to the civil liability section of the TVPRA, 'would void

the "should have known" language in the civil remedy' and '[t]his violates the "cardinal principle

of statutory construction that a statute ought, upon the whole, to be construed so that, if it can be

prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." ' " No. 20-

CV-00656-BLF, 2020 WL 4368214, at *3 (N.D. Cal. July 30, 2020) (quoting *J.C. v. Choice

Hotels Int'l, Inc.*, 2020 WL 3035794, at *1, n. 1 (quoting *M.A. v. Wyndham Hotels & Resorts, Inc.*,

425 F. Supp. 3d at 969)).[3]  Thus, in *B.M.*, the court concluded that the plaintiff was "not required

to allege an overt act in furtherance of or actual knowledge of a sex trafficking venture in order to

sufficiently plead her section 1595 civil liability claim" based on beneficiary liability under

Section 1591(a)(2) against parent companies that owned hotels where the plaintiff was the victim

of sex trafficking.  *Id.*

The undersigned also finds the reasoning and analysis of *M.A.* to be persuasive and

therefore concludes that as a general matter, where a plaintiff seeks to impose civil liability under

Section 1595 based on a violation of Section 1591(a)(2), not only does the "known or should have

known" language of Section 1595 apply (rather than the actual knowledge standard of Section

1591(a)) but such a claim also does not require that a plaintiff demonstrate an overt act that

furthered the sex trafficking aspect of the venture in order to satisfy the "participation in a

venture" requirement.

United States District Court
Northern District of California

---

[3]Twitter misrepresents the holding of *B.M.* when it states in its briefs that the court in that case followed *Afyare*.  *See* Motion at 13 (citing *B.M.* with parenthetical stating that the case "analyz[ed] the elements of a Section 1591 violation and follow[ed] *Afyare*");  *see also* Reply at 6 n. 5  (stating that "*Afyare* is the seminal decision interpreting the term 'participation in a venture' under Section 1591(a)(2) and its reasoning has been cited approvingly by numerous courts, including this Court" and citing *B.M.*).  In *B.M.*, Judge Freeman expressly held that while the prosecution in a *criminal* case brought under Section 1591(a)(2) must under *Afyare* "prove that the defendant actually participated in a sex-trafficking venture[,]"  the  standard from criminal cases does not apply to civil claims under Section 1595.

United States District Court
Northern District of California

The hotel line of cases, however, does not answer the question of whether the same standards apply where a civil claim is asserted under Section 1591(a)(2) against an ICS provider and thus (arguably) falls within the ambit of Section 230 immunity.  This issue was recently addressed in *Doe v. Kik Interactive, Inc*., 482 F. Supp. 3d 1242, 1244 (S.D. Fla. 2020), on which Twitter relies.  In that case, the defendant was a web-based interactive service called Kik that offered a messaging service that was marketed to teens and young adults.  The plaintiff alleged that numerous adult male users of Kik "solicited her and convinced her to take and send them sexually graphic pictures of herself using Kik"; that these adult males sent her sexually explicit photographs via Kik"; that "her father found the photographs on her cellphone and computer tablet and reported the incidents to the police"; that there had been "multiple instances where adult users of Kik ha[d] used the service to contact and solicit sexual activity with minors, with some of those contacts resulting in death of the minors"; and that the defendants knew "that sexual predators use[d] its service to prey on minors but have failed to provide any warnings or enact policies to protect minors from such abuses."  *Kik*, 482 F. Supp. 3d at 1244. The plaintiff sued Kik's owner, seeking to impose beneficiary liability under Section 1595 based on alleged violations of Section 1591(a)(2) and the defendant brought a motion to dismiss asserting that it was immune under CDA § 230 and that the plaintiff failed to state a claim under Section 1595(a).  *Id.* at 1244-1245.

In addressing what the plaintiff was required to allege to fall under the FOSTA exemption to CDA § 230, the court in *Kik* acknowledged that in the context of sex trafficking at hotels, courts have found that plaintiffs need not satisfy the definitions that apply to criminal prosecutions under Section 1591(a) to establish civil liability under Section 1595(a) but concluded that under FOSTA, a plaintiff who asserts such a claim against an interactive computer service *is* required to satisfy those more demanding requirements.  *Id.* at 1248-51.

The court in *Kik* reasoned as follows:

> Significantly, because the hotel defendants were not interactive computer service providers, neither FOSTA nor CDA immunity were considered. The present case presents a different scenario, because Congress – in balancing the needs of protecting children and encouraging "robust Internet communication" – enacted a statute protecting interactive computer service providers from liability for their users' content and conduct. If it were not for FOSTA,

Case 3:21-cv-00485-JSC Document 68-3 Filed 08/19/21 Page 72 of 247

1

Defendants in this case would be completely immune from liability under the CDA. 47 U.S.C. § 230(c)(5); *MySpace*, 528 F.3d 413.

2

3

To resolve Defendants' Motion to Dismiss, this Court must consider the extent to which FOSTA has affected the immunity provided by the CDA. Again, FOSTA states that "[n]othing in this section (other than subsection (c)(2)(A)) shall be construed to impair or limit ... any claim in a civil action under section 1595 of Title 18, *if the conduct underlying the claim constitutes a violation of section 1591 of that title*." 47 U.S.C. § 230(e)(5)(A) (emphasis added). Plaintiff argues that as a result of FOSTA, "the exacting standard of 'actual knowledge' and 'overt act' employed in a criminal prosecution under § 1591 is replaced by [a] 'constructive knowledge' standard when a civil recovery is sought under the TVPA." (DE [29], p. 21). But this argument would have the Court disregard the plain language and structure of FOSTA. "A statute should be interpreted so that no words shall be discarded as meaningless, redundant, or mere surplusage." *United States v. DBB, Inc.*, 180 F.3d 1277, 1285 (11th Cir. 1999) (quotation omitted).

4

5

6

7

8

9

10

11

Defendants argue that the Congressional history of FOSTA shows that Congress only intended to create a narrow exception to the CDA for "openly malicious actors such as Backpage where it was plausible for a plaintiff to allege actual knowledge and overt participation." (DE [33], p. 5) and that a finding of actual knowledge and overt participation in a venture of sexual trafficking is required to defeat CDA immunity. This is consistent with the language of FOSTA. By its terms, FOSTA did not abrogate CDA immunity for all claims arising from sex trafficking; FOSTA permits civil liability for websites only "if the conduct underlying the claim constitutes a violation of section 1591." And section 1591 requires knowing and active participation in sex trafficking by the defendants. *Afyare*, 632 Fed. Appx. at 286; *see also Geiss v. Weinstein Co. Holdings, LLC*, 383 F. Supp. 3d 156, 169 (S.D. N.Y. 2019) ("aiders and abettors of sex trafficking are liable under the TVPA only if they knowingly 'benefit[ ], financially or by receiving anything of value from participating in a venture which has engaged in' sex trafficking") (quoting 18 U.S.C. § 1591(a)); *Noble v. Weinstein*, 335 F. Supp. 3d 504, 524 (S.D. N.Y. 2018) ("Plaintiff must allege specific conduct that furthered the sex trafficking venture. Such conduct must have been undertaken with the knowledge, or in reckless disregard of the fact, that it was furthering the alleged sex trafficking venture. In other words, some participation in the sex trafficking act itself must be shown.").

12

13

14

15

16

17

18

19

20

21

22

23

*Id.* at 1250–51 (emphasis in original). The court went on to conclude that the plaintiff in that case

24

had not pled a violation under Section 1591(a)(2) under the definitions and requirements that

25

apply to criminal claims and therefore, that her claim did not fall within FOSTA's exemption to

26

Section 230 immunity. *Id.* at 1251.

27

The undersigned respectfully disagrees with the *Kik* court's analysis. In construing a

28

statute, the Court starts with the language of the statute. *Bailey v. United States*, 516 U.S. 137,

United States District Court
Northern District of California

145 (1995) ("We start, as we must, with the language of the statute."). The Supreme Court has instructed, however, that context also matters and therefore, courts should "consider not only the bare meaning of the word but also its placement and purpose in the statutory scheme." *Id.* Further, where a statute is "remedial," it "should be liberally construed." *Peyton v. Rowe*, 391 U.S. 54, 65 (1968). There is no question that FOSTA is a remedial statute in that it carves out exceptions to CDA § 230 immunity, thereby affording remedies to victims of sex trafficking that otherwise would not have been available. Moreover, the broader statutory framework suggests that the *Kik* court's reading of FOSTA improperly adopted the most restrictive possible reading of that provision when there is an equally (or more) plausible reading of the plain language of FOSTA.

FOSTA consists of two clauses, with the first clause ("[n]othing in this section . . . shall be construed to impair or limit . . . any claim in a civil action under section 1595 of Title 18") modified by the second clause ("if the conduct underlying the claim constitutes a violation of section 1591 of that title"). 47 U.S.C. § 230(e)(5)(A). The *Kik* court concluded that the second clause, on its face, not only limits civil claims that fall outside of CDA § 230 immunity to claims asserted under Section 1591 but that it *also* allows for liability on only a *subset* of the civil claims that may be brought under Sections 1595 and 1591, namely, those that can meet the more stringent burden that applies to criminal prosecutions under Section 1591. The implication of this reading is that a sex trafficking victim who seeks to impose civil liability on an ICS provider on the basis of beneficiary liability faces a higher burden than a victim of sex trafficking who seeks to impose such liability on other types of defendants. Had Congress intended such a limitation on Section 1595 liability as applied to interactive computer services, it could have clearly stated as much, but it did not do so.

Furthermore, the more natural reading of the second phrase of Section 230(e)(5)(A) is simply that it creates an exemption to Section 230 immunity for civil sex trafficking claims under Section 1591 and *not* as to other sections of Title 18 that can give rise to civil liability under Section 1595. In particular, Section 1595 is found in Chapter 77 of Title 18, entitled "Peonage, Slavery, and Trafficking in Persons," and creates civil liability for "[a]n individual who is a victim

United States District Court
Northern District of California

of a violation of *this chapter*." 18 U.S.C. § 1595(a) (emphasis added). As the title of the chapter suggests, it prohibits a host of conduct including "hold[ing] or return[ing] any person to a condition of peonage" (§ 1581), "[e]nticement into slavery" (§ 1583), and "benefit[ing], financially or . . . receiving anything of value, from participation in a venture which has engaged in the providing or obtaining of [forced] labor" (§ 1589). This more straightforward reading does not limit FOSTA's exemption to a narrow subset of civil sex trafficking claims but rather, makes available to victims of sex trafficking the same civil remedies against an ICS provider under Section 1591(a)(2) as are available in cases involving other types of defendants. The Court finds that this reading is consistent with the broad language used in the first clause of FOSTA as well as the remedial purpose of FOSTA.[4]

Nor does the undersigned find persuasive the *Kik* court's finding that the legislative history supports its interpretation of FOSTA. The two isolated statements cited by the *Kik* court provide little guidance as to the very specific question of statutory interpretation presented here. Further,

---

[4] At oral argument, Twitter argued, for the first time, that the narrow interpretation of FOSTA adopted in *Kik* is also consistent with 47 U.S.C. § 230(e)(5)(B), which provides that Section 230 should not be construed to "impair or limit . . . any charge in a criminal prosecution brought under State law *if the conduct underlying the charge would constitute a violation of section 1591 of Title 18.*" 47 U.S.C. § 230(e)(5)(B) (emphasis added). The emphasized phrase mirrors the one used in 47 U.S.C. § 230(e)(5)(A), permitting claims under Section 1595 "if the conduct underlying the claim constitutes a violation of section 1591 of that title." According to Twitter, to the extent that subsection (B) presumably was intended to exempt state law criminal prosecutions only if the higher *mens rea* requirement of Section 1591 is satisfied, the same meaning must be given to this phrase in subsection (A). Thus, Twitter contends, subsection (A) must limit civil liability under Section 1595 to claims that meet the requirements for criminal liability under Section 1591. The Court does not find this argument persuasive. First, the Court notes that the *Kik* court did not rely on this line of reasoning. More importantly, there is no authority one way or the other as to whether subsection (B) permits a state law criminal prosecution for sex trafficking to be brought against an ICS provider under a statute with a less stringent *mens rea* requirement than has been found to apply to Section 1591(a) claims. Thus, the language of subsection (B) provides little guidance in resolving the proper construction of subsection (A). Finally, as the court in *M.A.* explained, there are exceptions to the general presumption that words have the same meaning in a statute. 425 F. Supp. 3d at 969 ("[T]his presumption does not apply where 'there is such variation in the connection in which the words are used as reasonably to warrant the conclusion that they were employed in different parts of the act with different intent.' "(quoting *Atlantic Cleaners & Dyers v. United States*, 286 U.S. 427, 433 (1932)). Even assuming that subsection (B) was not intended to allow state sex trafficking prosecutions of an ICS provider under state statutes with a lower *mens rea* requirement than exists for federal criminal prosecutions, that is a very different matter than allowing civil claims for sex trafficking under a *federal* law, namely, Section 1595, that expressly lowered the *mens rea* requirement for such claims. Therefore, the Court rejects Twitter's reliance on subsection (B) in support of its restrictive reading of FOSTA.

the parties and amici have pointed to numerous statements in the legislative history, often seeming to support conflicting conclusions, highlighting the risks of relying on statements made prior to passage of a bill to interpret the statute that was actually enacted. Here, the Court concludes that this issue is better resolved on the basis of the language of FOSTA as it fits with the broader statutory framework of the TVPRA.

For these reasons, the Court concludes that Plaintiffs' Section 1595 claim against Twitter based on alleged violation of Section 1591(a)(2) is not subject to the more stringent requirements that apply to criminal violations of that provision. Having reached that conclusion, the Court now must address whether Plaintiffs have adequately alleged: 1) that Twitter knowingly participated in a venture; 2) that it received a benefit from its participation; and 3) it knew or should have known that Plaintiffs were victims of sex trafficking.

### a.  Participation in a Venture

A "venture" is defined as "any group of two or more individuals associated in fact." 18 U.S.C. § 1591(e)(6). As discussed above, Plaintiffs are not required to allege an "overt act" of participation in the sex trafficking itself.  Nor does " 'participation' under § 1595 . . . require actual knowledge of participation in the sex trafficking itself."  *M.A.*, 425 F. Supp. 3d at 970. Nonetheless, to the extent that Plaintiffs allege that Twitter  has participated in a sex trafficking venture "by allowing Twitter to become a safe haven and a refuge for, 'minor attracted people,' human traffickers, and discussion of 'child sexual exploitation as a phenomenon,' to include trade and dissemination of sexual abuse material[,]" FAC ¶ 9, they must "allege at least a showing of a continuous business relationship between the trafficker and [Twitter] such that it would appear that the trafficker and [Twitter] have established a pattern of conduct or could be said to have a tacit agreement."  *Id.*  Thus, for example, in *M.A.,* this element was sufficiently alleged because the plaintiff alleged "that Defendants rented rooms to people it knew or should have known were engaged in sex trafficking."  *Id.*[5]

---

[5] In the Motion, Twitter misstates the facts of *M.A.*, stating that in that case "the court found a 'venture' because the plaintiff alleged she saw the beneficiary defendant and her trafficker exchanging high-fives . . . while speaking about 'getting this thing going again.'" Motion at 13. Actually, these are the facts of *Ricchio v. McLean*, 853 F.3d 553 (1st Cir. 2017), a case which the

The Court concludes that Plaintiffs' allegations are sufficient to meet this requirement. In addition to the general allegations that Twitter enables sex trafficking on its platform, *see, e.g.,* FAC ¶¶ 58-59 (alleging Twitter makes it hard for users to report CSAM and has received a lower rating than other platforms for its reporting structure); 61 ("Twitter permits large amounts of human trafficking and commercial sexual exploitation material on its platform, despite having both the ability to monitor it, and actual and/or constructive knowledge of its posting on the platform"); ¶¶ 64-69 (alleging that the number of reports by Twitter to the National Center on Missing and Exploited Children ("NCMEC") of apparent child sexual abuse material on its platform is low compared to what other platforms report); ¶¶ 74-79 (alleging that Twitter hashtags help users find CSAM and that it rarely removes hashtags it knows are associated with CSAM); ¶¶ 80-84 (alleging that Twitter's search suggestion feature makes it easier for users to find CSAM), Plaintiffs also include specific allegations that support an inference that Twitter participated in a "venture" involving these Plaintiffs.

In particular, the FAC alleges that Twitter was specifically alerted that the Videos contained sexual images of children obtained without their consent on several occasions but either failed or refused to take action. First, John Doe # 1 and his mother both allegedly reported the CSAM through Twitter's content reporting interface. FAC ¶¶ 110, 112. Further, when Twitter responded to John Doe #1's complaint by asking for further information, John Doe #1 sent Twitter a copy of his driver's license (reflecting that he was a minor) and stated in his responses that the Videos had been taken three years before "from harassment and being threatened" and that a police report had been filed. FAC ¶ 114. John Doe #1's mother allegedly made two more complaints, including one specifically complaining about the user account @StraightBross, which was one of the accounts that provided links to the videos." FAC ¶ 115. Subsequently, after receiving only form responses, John Doe #1's mother emailed Twitter to inquire about the status of the complaints. FAC ¶ 119.

Two days later, Twitter allegedly sent John Doe #1 a response stating, "We've reviewed

court in *M.A.* found was consistent with its own conclusions.

United States District Court
Northern District of California

the content, and didn't find a violation of our policies, so no action will be taken at this time." *Id.*

¶ 120. John Doe #1 allegedly responded as follows:

> What do you mean you don't see a problem? We both are minors right now and were minors at the time these videos were taken. We both were 13 years of age. We were baited, harassed, and threatened to take these videos that are now being posted without our permission. We did not authorize these videos AT ALL and they need to be taken down. We have a case number with the [Law Enforcement Agency] for these videos and this incident. Please remove this video ASAP and any videos linked to this one. There is a problem with these videos and they are going against my legal rights and they are again at (sic) the law to be on the internet. (capitalized emphasis in original).

FAC ¶ 123. The Videos allegedly remained on Twitter another seven days. FAC ¶ 124. Notably, Plaintiffs also allege that the user account @StraightBross, one of the accounts that allegedly posted the Videos, had been the subject of a citizen complaint in December 2019 alerting Twitter that this account carried links to "OBVIOUS CHILD PORN" but no action was taken on that complaint. FAC ¶ 101.

The Court finds that these allegations are sufficient to allege an ongoing pattern of conduct amounting to a tacit agreement with the perpetrators in this case to allow them to post videos and photographs it knew or should have known were related to sex trafficking without blocking their accounts or the Videos. Therefore, Plaintiffs have adequately alleged participation in a venture under Section 1595 in support of their beneficiary liability claim against Twitter. [6]

### b. Receipt of a Benefit

"To state a claim under a section 1595(a) beneficiary theory," Plaintiffs "must allege facts from which the Court can reasonably infer that" Twitter "knowingly benefit[ted] financially or by receiving anything of value[.]" *B.M.* at *4. In *B.M.*, the court rejected the defendant's argument that the " 'benefit' must derive directly from, and be knowingly received in exchange for,

---

[6] The Court rejects Twitter's argument that the venture was already over when the Videos were posted on Twitter and therefore Plaintiffs have not adequately alleged that Twitter knew that Plaintiffs would, in the future, be victims of sex trafficking as a result of Twitter's conduct. At oral argument, Twitter conceded that the posting of child pornography is a commercial sex act. Thus, regardless of when the Videos were created, the allegations that the Videos were being retweeted on a massive scale while they remained on the Twitter platform raise a plausible inference that Twitter's failure to remove the Videos would result in *future* commercial sex trafficking.

United States District Court
Northern District of California

participating in a sex-trafficking venture[,]" finding that this approach improperly "reads a requirement for 'actual knowledge' of criminal sex trafficking into the civil statute, [and] read[s] out the 'should have known' language." *Id.* Instead, the court found that "[t]he 'knowingly benefit' element of section 1595 'merely requires that Defendant knowingly receive a financial benefit' " from its relationship with the sex trafficker. *Id.* (citing *H.H. v. G6 Hosp.*, LLC, No. 2:19-CV-755, 2019 WL 6682152, at *2 (S.D. Ohio Dec. 6, 2019). The undersigned agrees that this is the correct standard and finds that Plaintiffs' allegations are sufficient as to this requirement.

First, contrary to Twitter's repeated assertions, the FAC contains detailed allegations about how Twitter monetizes content, including CSAM, through advertising, sale of access to its API, and data collection. FAC ¶¶ 25, 30-41, 50-54. It further alleges that searching for hashtags that are known to relate to CSAM brings up promoted links and advertisements, offering a screenshot of advertising that appeared in connection with one such hashtag. FAC ¶ 76. Plaintiffs also specifically allege that the Videos of Plaintiffs were "monetized by Twitter and it receive financial benefit from [their] distribution on its platform." FAC ¶ 196. While Twitter dismisses this allegation as conclusory, it is supported by allegation that the Videos were "viewed at least 167,000 times and retweeted 2,220 times for additional views," FAC ¶195, and that "[t]he videos remained live approximately another seven days, resulting in substantially more views and retweets." FAC ¶ 125. Read together, these allegations support a plausible inference that the Videos of Plaintiffs generated advertising and attracted users, both of which benefited Twitter.

The Court is not persuaded that either *Geiss* or *Kolbek*, cited by Twitter, requires a contrary result. In *Geiss*, the court concluded that officers who worked at the company of film producer Harvey Weinstein could not be held liable on the basis of beneficiary liability under Section 1591(a)(2) simply because they received a benefit from working for the company where that benefit was unrelated to any conduct that facilitated the alleged sex trafficking by Weinstein. 383 F. Supp. 3d 156, 169 (S.D.N.Y. 2019). The court reasoned that "there must be a causal relationship between affirmative conduct furthering the sex-trafficking venture and receipt of a benefit, with actual or, in the civil context, constructive knowledge of that causal relationship." *Id.*

United States District Court
Northern District of California

Here, Plaintiffs allege that the benefit – increased advertising revenue and users – was the result of allowing the Videos to remain on Twitter, allowing for tens of thousands of views and retweets of the Videos. Therefore, *Geiss* is not on point.

Twitter's reliance on *Kolbek v. Twenty First Century Holiness Tabernacle Church, Inc*., No. 10-CV-4124, 2013 WL 6816174, at *16 (W.D. Ark. Dec. 24, 2013) is also misplaced. In that case, the plaintiffs had been forced as children to become "spiritual wives" of a church leader and brought claims against various defendants, including the church, for sex trafficking in violation of Section 1595, alleging that they had benefited from the sex trafficking under Section 1591(a)(2). The court concluded that there was no evidence that the defendants were compensated for the sexual abuse and therefore, that plaintiffs failed to establish that they were the victims of "commercial sex trafficking" based on the definition of the term "commercial sex act" in Section 1591(e)(3). 2013 WL 6816174, at *16 (citing 18 U.S.C. § 1591(e)(3) (defining "commercial sex act" as "any sex act, on account of which anything of value is given to or received by any person.")). Like the court in *Geiss*, the court in *Kolbek* found that to establish sex trafficking, there "needs to be a causal relationship between the sex act and an exchange of an item of value." *Id.* Yet the only alleged financial benefit any of the defendants received was payment of the victim's living expenses by the perpetrator when they were on out-of-state trips. *Id.* The court concluded that these payments were not causally related to the sexual abuse and therefore did not establish commercial sex trafficking. *Id.* In contrast to the facts of *Kolbek*, the benefit Twitter is alleged to have received here was the result of the proliferation of retweets and large number of account users who viewed the Videos, as discussed above. Moreover, Twitter conceded at oral argument that the tweeting and retweeting of child pornography is a "commercial sex act" under the TVPRA.

Therefore, the Court concludes that Plaintiffs' have adequately alleged receipt of a benefit for the purposes of their claim for beneficiary liability.

c. Knew or Should Have Known the Venture Was Engaged in Trafficking

While Twitter need not have actual knowledge of the sex trafficking in order to have participated in the sex trafficking venture for the purposes of Section 1595, Plaintiffs must allege

at least that Twitter knew or should have known that Plaintiffs were the victims of sex trafficking at the hands of users who posted the content on Twitter. *See B.M.*, 2020 WL 4368214, at \*5. Twitter contends it had no way of knowing that the Videos might have been evidence of commercial sex trafficking, but this argument is hard to square with Plaintiffs' allegations that they alerted Twitter that the Videos were created under threat when Plaintiffs were children and provided evidence of John Doe #1's age in response to Twitter's request for further information. Plaintiffs also allege that other Twitter users used the word "twinks" to describe the children in the Videos, which was "another indication that Plaintiffs were minors, and that this fact was evident from their appearance in the Videos. FAC ¶ 37. According to FAC, that term is used to describe "young boys or men" with "certain boyish characteristics such as 'little to no body or facial hair; a slim to average build; and a youthful appearance.' " *Id.* (quoting Wikipedia). Therefore, the Court concludes this requirement is sufficiently alleged.

      \*\*\*

In sum, the Court finds that Plaintiffs have stated a claim for civil liability under the TVPRA on the basis of beneficiary liability and that the claim falls within the exemption to Section 230 immunity created by FOSTA.

### C. Whether the FOSTA Exemption is Limited to Claims Asserted under Sections 1591 and 1595

Before addressing Plaintiffs' remaining claims, the Court addresses Twitter's argument that when Congress enacted FOSTA, it intended to exempt from Section 230 immunity *only* claims asserted under Sections 1591 and 1595. This was the conclusion of the court in *Kik*, which found that the "plain language of [FOSTA] removes immunity only for conduct that violates 18 U.S.C. § 1591." 482 F. Supp. 3d at 1249. Similarly, the court in *M. L. v. Craigslist Inc.*, held that because "FOSTA contains no language about whether it amends the CDA to preclude immunity for state law civil actions" it exempts Section 1595 claims but not state law claims. No. C19-6153 BHS-TLF, 2020 WL 6434845, at \*9 (W.D. Wash. Apr. 17, 2020), report and recommendation adopted, No. C19-6153 BHS-TLF, 2020 WL 5494903 (W.D. Wash. Sept. 11, 2020). In *J. B. v. G6 Hosp., LLC*, Judge Gilliam reached the same conclusion based on the plain language of

United States District Court
Northern District of California

FOSTA and further addressed the legislative history, concluding that even if it were appropriate to look beyond the words of the statute to discern Congress's intent, "it is not clear that Congress was concerned specifically with permitting civil claims under state law." No. 19-CV-07848-HSG, 2020 WL 4901196, at *6 (N.D. Cal. Aug. 20, 2020). The Court agrees that based on the plain language of FOSTA, it exempts only claims under Sections 1595 and 1591. Therefore, to the extent that Plaintiffs' remaining claims fall within the ambit of Section 230 immunity, FOSTA does not exempt Twitter from immunity as to those claims.

### D.    Claim Three (18 U.S.C. §§ 2258A and 2258B)

Section 2258A establishes a duty on the part of electronic communication service providers to report to the National Center for Missing & Exploited Children ("NCMEC") "facts or circumstances from which there is an apparent violation of section 2251, 2251A, 2252, 2252A, 2252B, or 2260 that involves child pornography." 18 U.S.C. § 2258A; *see also* 18 U.S.C. § 2258E (defining "provider", "NCMEC"). Section 2552A, in turn, makes it a criminal offense to, *inter alia*, knowingly mail or transport, receive, distribute or reproduce child pornography. (As discussed above, Claim Four is based, in part, on Twitter's alleged violation of that provision.) Section 2258B bars the imposition of liability on a provider in connection with its performance of the duty established under Section 2258A except where the provider "(1) engaged in intentional misconduct; or (2) acted, or failed to act-- (A) with actual malice; (B) with reckless disregard to a substantial risk of causing physical injury without legal justification; or (C) for a purpose unrelated to the performance of any responsibility or function under [Section 2258B], sections 2258A, 2258C, 2702, or 2703." 18 U.S.C. § 2258B.

Although Section 2258A establishes a duty to report under criminal law, that section does not purport to establish a private right of action. Rather, it provides that "knowing and willful failure" to make a report will result in the imposition of fines on the provider of up to $300,000. *See* 18 U.S.C. 2258A(e). Section 2258B creates a safe harbor that prohibits the imposition of criminal or civil liability based on failure to report unless the failure was the result of intentional or reckless conduct. Based on their plain language, neither of these provisions reflects a clear intent on the part of Congress to establish a private right of action to enforce the reporting

United States District Court
Northern District of California

requirement found in Section 2258A.  *See Abcarian v. Levine*, 972 F.3d 1019, 1025 (9th Cir. 2020

("a cause of action may now be recognized under a statute only where the language Congress used

displays an intent to create not just a private right but also a private remedy." ) (internal quotation

and citation omitted).  Nor have Plaintiffs pointed to any authority suggesting that there is private

right of action under Section 2258A.  For this reason, the Court concludes that Plaintiffs' claim

under this section fails to state a claim and does not reach the question of immunity under CDA §

230.

### E.  Claim Four (Personal Injuries Related To Sex Trafficking And Receipt And Distribution Of Child Pornography Under 18 U.S.C. §§ 2252A, and 2255)[7]

Section 2255 creates a civil remedy for violations of certain sections of the criminal code,

including Sections 2252A, providing as follows:

> **(a) In general.** Any person who, while a minor, was a victim of a
> violation of section 1589, 1590, 1591, 2241(c), 2242, 2243, 2251,
> 2251A, 2252, 2252A, 2260, 2421, 2422, or 2423 of this title and
> who suffers personal injury as a result of such violation,
> regardless of whether the injury occurred while such person was
> a minor, may sue in any appropriate United States District Court
> and shall recover the actual damages such person sustains or
> liquidated damages in the amount of $150,000, and the cost of the
> action, including reasonable attorney's fees and other litigation
> costs reasonably incurred. The court may also award punitive
> damages and such other preliminary and equitable relief as the
> court determines to be appropriate.

18 U.S.C. § 2255(a).  Twitter does not argue that Plaintiffs have failed to allege a violation of

Section 2252A but contend this claim is barred by CDA § 230 immunity.  The Court agrees.

While there is not a great deal of authority on this question, at least two courts have

concluded that under Section 230, ICSs are immune from civil liability under 2252A and 2255.

*See Doe v. Bates,* No. 5:05-CV-91-DF-CMC, 2006 WL 3813758, at *4 (E.D. Tex. Dec. 27, 2006);

*M.A. ex rel. P.K. v. Vill. Voice Media Holdings, LLC*, 809 F. Supp. 2d 1041, 1051 (E.D. Mo.

2011).  The *Bates* court relied on the reasoning in *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 329

---

[7] Although the FAC also relies on 18 U.S.C. § 1591 in support of Claim Four, Plaintiffs addressed
Twitter's argument only with respect to the alleged violation of 18 U.S.C. § 2252A.  Therefore,
the Court understands this claim to be based only on Sections 2252A and not on section 1591.

United States District Court
Northern District of California

1    (4th Cir. 1997), explaining:

2           The *Zeran* court . . . noted the Congressional purpose of removing
            disincentives to self-regulation by internet service providers. If
3           internet service providers such as Yahoo! could be liable for
            reviewing materials but ultimately deciding to allow them, they would
4           likely chose not to regulate at all.  Further, even simply responding to
            notices of potentially obscene materials would not be feasible because
5           the sheer number of postings on interactive computer services would
            create an impossible burden in the Internet context.  To the extent an
6           internet service provider actually makes choices about its content,
            without immunity they would be faced with ceaseless choices of
7           suppressing controversial speech or sustaining prohibitive liability.
            While the facts of a child pornography case such as this one may be
8           highly offensive, Congress has decided that the parties to be punished
            and deterred are not the internet service providers but rather are those
9           who created and posted the illegal material[.]

10   2006 WL 3813758, at *4 (internal quotations and citations omitted). Thus, in *Bates*, the court

11   concluded that while the exemption in Section 230(e)(1) does not prohibit the government from

12   prosecuting an ICS provider under 18 U.S.C. § 2252A (which is found in chapter 110 of Title 18,

13   the section of Title 18 that is expressly carved out from Section 230 under subsection (e)(1)), the

14   exemption does not extend to civil claims asserted under that section.  *Id.* at *4-5; *see also M.*A,

15   809 F. Supp. 2d at 1055 (holding that plaintiff's claim seeking to impose civil liability on internet

16   service based on alleged violation of 18 U.S.C. § 2252A was barred by Section 230 immunity).

17          In *Zeran*, the plaintiff sued AOL based on its alleged delay in taking down offensive posts

18   by an unknown third party that included the plaintiff's telephone number and were resulting in the

19   plaintiff being harassed and receiving death threats.  129 F.3d at 329.  The plaintiff alleged that he

20   repeatedly called AOL requesting that the posts be removed and was told that they would be, but

21   that AOL failed to take them down for many days.  *Id.*  AOL asserted that it was immune from the

22   plaintiff's claims under Section 230 and the court agreed, rejecting the plaintiff's argument that

23   the fact that AOL *knew* about the offending posts deprived AOL of immunity.  *Id.*  at 332-33.  The

24   court reasoned:

25           [O]nce a computer service provider receives notice of a potentially
             defamatory posting, it is thrust into the role of a traditional publisher.
26           The computer service provider must decide whether to publish, edit,
             or withdraw the posting. In this respect, Zeran seeks to impose
27           liability on AOL for assuming the role for which § 230 specifically
             proscribes liability—the publisher role.

28

United States District Court
Northern District of California

A050    50

1   *Id.*

2        Plaintiffs argue that *Bates* was wrongly decided because *Zeran* involved defamatory

3   speech rather than child pornography.  According to Plaintiffs, unlike defamatory speech, child

4   pornography "is at once contraband, beyond the covering of First Amendment speech protection,

5   evidence of criminal child abuse, and an ongoing sexual crime against a child" and therefore,

6   requiring ICS providers to remove pornography does not require them to exercise "traditional

7   editorial functions."  Opposition at 23.  While this argument has some force, it does not square

8   with Ninth Circuit authority, which has found that "[t]o avoid chilling speech, Congress 'made a

9   policy choice . . . not to deter harmful online speech through the separate route of imposing tort

10  liability on companies that serve as intermediaries for other parties' potentially injurious

11  messages.' "  *Gonzalez v. Google LLC*, 2 F.4th 871, 886 (9th Cir. 2021) (*citing Carafano v.*

12  *Metrosplash.com, Inc.*, 339 F.3d 1119, 1123 (9th Cir. 2003) (quoting *Zeran,*129 F.3d at 330)).  In

13  *Carafano*, for example, the third-party content was not only defamatory but also included the

14  creation of a fake profile that resulted in threats to the plaintiff and her son.  339 F.3d at 1122.

15  The Ninth Circuit recognized that the plaintiff had been the victim of a "cruel and sadistic identity

16  theft" but concluded, "despite the serious and utterly deplorable consequences that occurred in this

17  case, . . . that Congress intended that service providers such as Matchmaker be afforded immunity

18  from suit."  *Id.*  at 1121, 1125.[8]

19       The undersigned therefore finds the reasoning and holding of *Bates* and *M.A. ex rel. P.K. v.*

20  *Vill. Voice Media Holdings* on this question to be in line with Ninth Circuit authority and

21

22  _____

    [8] Plaintiffs also point to CDA § 230(e)(1) in support of their argument that their claim under
23  Section 2255 is exempt from immunity.  Opposition at 24.  As discussed above, that section
    provides that the immunity established under subsection (a) "shall [not] be construed to impair the
24  enforcement of section 223 or 231 of this title, chapter 71 (relating to obscenity) or 110 (relating to
    sexual exploitation of children) of Title 18, or any other Federal criminal statute."  While Section
25  2255, which created civil liability for certain criminal offenses, is contained in chapter 110, it was
    enacted two years after Section 230.  Thus, at the time Congress enacted Section 230(e)(1), the
26  exemption it created in that section applied only to *criminal* enforcement of the provisions in
    chapter 110.  Further, while Plaintiffs suggest that the bill adopting section 2255, the Protection of
27  Children from Sex Predators Act of 1998, PL 105–314, 112 Stat 2974 (1998), reflected an intent
    on the part of Congress to abrogate Section 230 immunity as to ICS providers with respect to civil
28  claims asserted under Section 2255, they have pointed to no language in Section 2255 or any
    specific legislative history to support that conclusion.  Therefore, the Court concludes that CDA §
    230(e)(1) does not exempt Plaintiffs' claim under Section 2255 from immunity under Section 230.

concludes that immunity under Section 230 is not defeated by the fact that the third-party content at issue is illegal child pornography. Therefore, the Court concludes that this claim fails under Section 230.

### F. Plaintiffs' State Law Claims

#### 1. Claim Five (California Products Liability)

Plaintiffs' products liability claim is based on the theory that Twitter's platform is unreasonably dangerous and therefore defective because it is designed so as to make it easy for child predators and sex traffickers to quickly disseminate CSAM on a wide scale while making it difficult to report or block the dissemination of such material. Plaintiffs attempt to avoid Section 230 on the ground that the claim is not based on Twitter's conduct as a publisher of information but instead, on a defective product, citing *Lemmon v. Snap, Inc*., 995 F.3d 1085, 1090 (9th Cir. 2021) in support of their position. That case is distinguishable from the facts here, however.

In *Lemmon v. Snap*, the plaintiffs were parents of two boys who were killed in a high-speed car accident where it was alleged that a speed-filter offered by the defendant's smartphone application, Snapchat, played a role in the accident. 995 F.3d at 1087-90. The speed filter allowed Snapchat users to superimpose a filter over photos or videos captured through Snapchat recording their real-life speed, and it was alleged that the speed filter incentivized young drivers to drive at high speeds because it was suspected by Snapchat users that logging a speed of over 100 MPH in a user video would result in "rewards" from Snapchat. *Id.* at 1088-89. It was further alleged that the defendant was aware of the danger of the speed filter because there had been a "series of news articles about this phenomenon; an online petition that 'called on Snapchat to address its role in encouraging dangerous speeding'; at least three accidents linked to Snapchat users' pursuit of high-speed snaps; and at least one other lawsuit against Snap based on these practices." *Id.* at 1089-90.

The plaintiffs in *Lemmon* brought a products liability claim based on negligent design against Snap, the company that owns Snapchat, and Snap asserted that it was entitled to immunity under Section 230. *Id.* at 1090. The district court agreed but the Ninth Circuit reversed, finding that the plaintiffs' claims did not treat the defendant as a publisher or speaker. *Id.* at 1091. The

court reasoned as follows:

> It is . . . apparent that the Parents' amended complaint does not seek to hold Snap liable for its conduct as a publisher or speaker. Their negligent design lawsuit treats Snap as a products manufacturer, accusing it of negligently designing a product (Snapchat) with a defect (the interplay between Snapchat's reward system and the Speed Filter). Thus, the duty that Snap allegedly violated "springs from" its distinct capacity as a product designer. *Barnes*, 570 F.3d at 1107. **This is further evidenced by the fact that Snap could have satisfied its "alleged obligation"—to take reasonable measures to design a product more useful than it was foreseeably dangerous—without altering the content that Snapchat's users generate**. *Internet Brands*, 824 F.3d at 851. Snap's alleged duty in this case thus "has nothing to do with" its editing, monitoring, or removing of the content that its users generate through Snapchat. *Id*. at 852. . . . That Snap allows its users to transmit user-generated content to one another does not detract from the fact that the Parents seek to hold Snap liable for its role in violating its distinct duty to design a reasonably safe product. . . . Though publishing content is "a but-for cause of just about everything" Snap is involved in, that does not mean that the Parents' claim, specifically, seeks to hold Snap responsible in its capacity as a "publisher or speaker."

*Id.* at 1092 (emphasis added).

Here, as in *Lemmon*, Plaintiffs' products liability claim is based on the allegation that the design of the Twitter platform is unreasonably dangerous. The facts here differ, however, from those in *Lemmon* because the nature of the alleged design flaw in this case – and the harm that is alleged to flow from that flaw – is directly related to the posting of third-party content on Twitter. In particular, Plaintiffs allege that Twitter's design, which is aimed at "enabling its users to disseminate information very quickly to large numbers of people" through such features as hashtags and algorithms, also enables "sex traffickers to distribute CSAM on a massive scale." FAC ¶¶ 179-181. Conversely, they allege, Twitter is *not* "designed to enable its users to easily report CSAM, nor is it designed so that CSAM is immediately blocked pending review when reported." *Id.* ¶ 182. Nor does Twitter "consistently deploy IP blocking, or other measures, to prevent users suspended by Twitter for disseminating CSAM from opening new accounts under different names[,]" Plaintiffs allege. These flaws, in essence, seek to impose liability on Twitter based on how well Twitter has designed its platform to prevent the posting of third-party content containing child pornography and to remove that content after it is posted. In other words, to meet the obligation Plaintiffs seek to impose on Twitter on this claim, Twitter would have to alter the

United States District Court
Northern District of California

content posted by its users, in contrast to the design defect alleged in *Lemmon*.   Therefore, the Court concludes that *Lemmon* is not on point and that Plaintiffs' products liability claim fails on the basis that Twitter is entitled to immunity as to that claim under Section 230 immunity.[9]

### 2.  Claims Six through Nine (Negligence Claims)

Twitter challenges all of Plaintiffs' negligence claims on the grounds that it is immune from liability on those claims under Section 230.  It further asserts that the negligence per se and negligent infliction of emotional distress claims (Claims Eight and Nine) are not independent causes of action and that the remaining negligence claims (Claims Six and Seven) fail because Twitter does not owe Plaintiffs any duty.  The Court finds that these claims fall within the scope of Section 230 and therefore does not reach Twitter's remaining arguments.

The essence of these claims is that Twitter breached a duty to Plaintiffs – and violated various criminal statutes –by failing to remove the Videos after being notified of them and instead allowing them to be broadly disseminated on Twitter.  These claims seek to treat Twitter as a publisher of information, which is prohibited under Section 230.  *See In re Facebook, Inc., No. 20-0434, 2021 WL 2603687*, at *9 (Tex. June 25, 2021) (finding that negligence claims against Facebook based on its failure to protect plaintiffs from sex traffickers who used its platform were barred under Section 230).  Therefore, the Court finds that Plaintiffs' negligence claims fail under Section 230.

### 3.  Claim Ten (Distribution of Private, Sexually Explicit Material Under Cal. Civ. Code section 1708.85)

California Civil Code section 1708.85(a) provides:

> A private cause of action lies against a person who intentionally distributes by any means a photograph, film, videotape, recording, or any other reproduction of another, without the other's consent, if (1) the person knew that the other person had a reasonable expectation that the material would remain private, (2) the distributed material exposes an intimate body part of the other person, or shows the other person engaging in an act of intercourse, oral copulation, sodomy, or other act of sexual penetration, and (3) the other person suffers general or special damages as described in Section 48a.

---

[9] The Court assumes without deciding that Plaintiffs' products liability claim is otherwise adequately alleged.

United States District Court
Northern District of California

Cal. Civ. Code section 1708.85(a). Section 1708.85 exempts from liability, however, a "person distributing material under subdivision (a)" where "[t]he distributed material was previously distributed by another person." Cal. Civ. Code section 1708.85(c)(6). Based on the plain language of these provisions, the Court concludes Plaintiffs have failed to state a claim.

Liability under section 1708.85(a) requires that Twitter *intentionally* distributed the Videos. Even assuming that Twitter's conduct amounted to intentional distribution once it was put on notice of the Videos, the allegations in the FAC make clear that at that point these Videos had already been posted by "another person," namely, the owners of the user handles @StraightBross and @fitmalesblog. *See* FAC ¶¶ 89, 91, 99. Plaintiffs have not cited any contrary authority or even addressed Twitter's argument in their Opposition. Therefore, the Court concludes that Plaintiffs fail to state a claim under section 1708.85(a). Further, to the extent that this claim seeks to hold Twitter liable for failing to remove third-party content from its platform, the Court concludes that the claim is barred under CDA § 230 because it treats Twitter as a publisher.

#### 4. Claim Eleven (Intrusion Into Private Affairs)

The tort of intrusion into private affairs has two elements: "(1) intrusion into a private place, conversation or matter, (2) in a manner highly offensive to a reasonable person." *Shulman v. Grp. W Prods., Inc.*, 18 Cal. 4th 200, 231 (1998), as modified on denial of reh'g (July 29, 1998). Twitter does not argue in the Motion that Plaintiffs fail to state a claim for intrusion into private affairs and therefore, the Court assumes that Plaintiffs adequately allege such a claim. Nonetheless, the basis for this claim is Twitter's "role as a 'republisher' of material posted by a third party," and therefore, the claim is barred by CDA § 230. *Caraccioli v. Facebook, Inc.*, 700 F. App'x 588, 590 (9th Cir. 2017) (holding that claim against Facebook for intrusion into private affairs based on Facebook's refusal to remove private photos and videos of the plaintiff from Facebook was barred under Section 230).

#### 5. Claim Twelve (Invasion of Privacy Under California Constitution)

To establish an invasion of privacy claim under the California Constitution, a plaintiff must demonstrate three elements: "(1) a legally protected privacy interest; (2) a reasonable

United States District Court
Northern District of California

expectation of privacy in the circumstances; and (3) conduct by defendant constituting a serious invasion of privacy." *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal.4th 1, 39–40 (1994). Again, Twitter has not argued that Plaintiffs fail to state a claim as to this claim and the Court assumes that their claim is sufficiently alleged, but like the claim for intrusion into private affairs, this claim is based on Twitter's role as a "republisher" of third-party content and therefore is barred under CDA § 230.

### 6. Claim Thirteen (UCL Claim)

Twitter asserts that Plaintiffs do not have standing to assert their UCL claim and that they fail to state a claim because they have not alleged any statutory violation or, to the extent the claim is based on alleged misrepresentations by Twitter, any reliance on those misrepresentations. It also contends the claim is barred by CDA § 230. The Court assumes without deciding that Plaintiffs have adequately alleged standing. It also finds that Plaintiffs have adequately alleged an "unlawful" practice under the UCL for the same reasons it finds that Plaintiffs have stated a claim for beneficiary liability under Section 1595 and 1591(a)(2). The gravamen of the UCL claim, however, is that Twitter engaged in an unlawful and unfair practice by failing to ensure that the Videos were blocked from Twitter or at least, removed promptly. As such, this claim seeks to impose liability on Twitter as a publisher of third-party content and is therefore barred by Section 230.

## IV.   CONCLUSION

For the reasons stated below, the Motion is DENIED as to Plaintiffs' TVPRA claim based on beneficiary liability (Claim Two). The Motion is GRANTED as to Plaintiffs' remaining claims, which are dismissed with prejudice.

**IT IS SO ORDERED.**

Dated:  August 19, 2021

JOSEPH C. SPERO
Chief Magistrate Judge

1  COOLEY LLP
   MICHAEL G. RHODES (116127)
2  (rhodesmg@cooley.com)
   KATHLEEN HARTNETT (314267)
3  (khartnett@cooley.com)
   KYLE C. WONG (224021)
4  (kwong@cooley.com)
   3 Embarcadero Center 20th Floor
5  San Francisco, CA 94111-4004
   Telephone:    (415) 693-2000
6  Facsimile:    (415) 693-2222

7  LINH K. NGUYEN (305737)
   (lknguyen@cooley.com)
8  JAMIE D. ROBERTSON (326003)
   (jdrobertson@cooley.com)
9  4401 Eastgate Mall
   San Diego, California 92121
10 Telephone:    (858) 550-6000
   Facsimile:    (858) 550-6420

11

12 Attorneys for Defendant
   TWITTER, INC.

13

14              UNITED STATES DISTRICT COURT

15             NORTHERN DISTRICT OF CALIFORNIA

16                SAN FRANCISCO DIVISION

17

18 JOHN DOE #1 AND JOHN DOE #2,          Case No. 3:21-cv-00485-JCS

19          Plaintiffs,                  **DEFENDANT TWITTER, INC.'S MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION OR, IN THE ALTERNATIVE, MOTION FOR AN ORDER PERMITTING INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(b)**

20    v.

21 TWITTER, INC.,

22          Defendants.                  Hearing Date:    November 19, 2021
                                         Hearing Time:    9:30 a.m.
23                                       Judge:    Honorable Joseph C. Spero

24

25

26

27

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

A057

TWITTER, INC.'S MOT. FOR
RECONSIDERATION OR CERT. ORDER
Case No. 3:21-cv-00485-JCS

# **TABLE OF CONTENTS**

Page

NOTICE OF MOTION AND MOTION ............................................................................... 1

STATEMENT OF RELIEF SOUGHT AND ISSUES TO BE DECIDED ........................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................... 1

I.     INTRODUCTION ...................................................................................................... 1

II.    BACKGROUND ........................................................................................................ 3

      A.     Procedural History of Plaintiffs' Section 1595 Claims and the
            Interpretation of CDA § 230(e)(5)(A)........................................................... 3

      B.     The Court's Order Concerning Claim Two ................................................... 5

      C.     Subsequent Events ......................................................................................... 7

III.   THE COURT SHOULD PERMIT TWITTER TO SEEK RECONSIDERATION
        OF THE ORDER ....................................................................................................... 9

IV.   ALTERNATIVELY, THE COURT SHOULD CERTIFY THE ORDER FOR
        INTERLOCUTORY APPEAL ................................................................................. 11

      A.     Legal Standard for Certification of Interlocutory Appeal............................ 12

      B.     Interlocutory Review is Warranted to Determine the Standard for
            Triggering Section 230(e)(5)(A) Immunity Carve-Out. ............................... 13

            1.     Whether Twitter Has Immunity in Light of Section 230(e)(5)(A) is
                  a Controlling Question of Law.................................................................. 13

            2.     Substantial Grounds for Difference of Opinion Exist on this Issue.......... 14

            3.     Interlocutory Review May Materially Advance the Ultimate
                  Termination of the Litigation. .................................................................. 15

      C.     Interlocutory Review is Warranted to Determine the Meaning of
            "Participation in a Venture" in Sections 1595 and 1591(a)(2). ........................... 16

            1.     The Statutory Interpretation of "Participation in a Venture" Under
                  Sections 1595 and 1591(a)(2) is a Controlling Question of Law. ............. 16

            2.     Substantial Grounds for Disagreement Exist Regarding Whether
                  "Participation in a Venture" Under Sections 1595 and 1591
                  Requires a "Continuous Business Relationship" Between the ICS
                  Provider and Traffickers. ......................................................................... 17

            3.     Certification of the Statutory Interpretation of "Participation in a
                  Venture" Under Sections 1595 and 1591(a)(2) Will Materially
                  Advance the Ultimate Termination of the Litigation................................ 17

V.     CONCLUSION ........................................................................................................ 18

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# <u>TABLE OF AUTHRORTIES</u>

**Pages**

**Cases**

*Ass'n of Irritated Residents v. Fred Schakel Dairy*,
634 F. Supp. 2d 1081 (E.D. Cal. 2008)............................................................... 15, 18

*AXA Rosenberg Grp. v. Gulf Underwriters*,
2004 WL 1844846 (N.D. Cal. Aug. 16, 2004) ......................................................... 14

*Brickman v. Facebook, Inc.*,
2017 WL 1508719 (N.D. Cal. Apr. 27, 2017) ......................................................... 12

*Cave Consulting Grp., Inc. v. OptumInsight, Inc.*,
2020 WL 127612 (N.D. Cal. Jan. 10, 2020) ........................................................... 10

*In re Cement Antitrust Litig.*,
673 F.2d 1020 (9th Cir. 1981)................................................................. 12, 14, 17, 18

*Coopers & Lybrand v. Livesay*,
437 U.S. 463 (1978)................................................................................................. 12

*Couch v. Telescope Inc.*,
611 F.3d 629 (9th Cir. 2010)................................................................................... 13

*Doe #1 et al. v. MG Freesites LTD et al.*,
Case No. 21-cv-00220 (N.D. Ala. Feb. 11, 2021) ................................................... 14

*Doe By & Through Doe v. Petaluma City Sch. Dist.*,
949 F. Supp. 1415 (N.D. Cal. 1996) ......................................................................... 9

*Doe v. Kik Interactive, Inc.*,
482 F. Supp. 3d 1242 (S.D. Fla. 2020) ............................................................ *passim*

*G (a minor), et al. v. Salesforce.com, Inc.*,
Case No. 20-cv-02335 (N.D. Ill. Apr. 15, 2020) ................................................... 14

*Helman v. Alcoa Glob. Fasteners Inc.*,
2009 WL 2058541 (C.D. Cal. June 16, 2009) .......................................... 15, 16, 18

*J.B. v. G6 Hospitality, LLC*,
2021 WL 4079207 (N.D. Cal. Sept. 8, 2021) .................................................. *passim*

*Jane Doe et al. v. Reddit, Inc.*,
Case No. 21-cv-768-JVS (C.D. Cal.)........................................................... 2, 3, 8, 9

*Jane Doe v. Mindgeek USA Incorporated*,
2021 WL 4167054 (C.D. Cal. Sept. 3, 2021)................................................... 3, 8

*Jones v. Dirty World Ent. Recordings LLC*,
755 F.3d 398 (6th Cir. 2014)................................................................................... 13

*Klinghoffer v. S.N.C. Achille Lauro*,
921 F.2d 21 (2d Cir.1990)....................................................................................... 14

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

*Kuehner v. Dickinson & Co.*,
   84 F.3d 316 (9th Cir. 1996) ............................................................................................... 13

*Lee v. Postmates Inc.*,
   2019 WL 1864442 (N.D. Cal. Apr. 25, 2019) ...................................................................... 13

*M.L. v. craigslist Inc.*,
   2020 WL 5494903, at *3-4 (W.D. Wash. Sept. 11, 2020) ............................................. 3, 8, 9

*Mohawk Indus., Inc. v. Carpenter*,
   558 U.S. 100 (2009) ........................................................................................................... 13

*N.L.R.B. v. SW Gen., Inc.*,
   137 S. Ct. 929 (2017) ........................................................................................................... 4

*Ornelas v. Target Corp.*,
   2020 WL 4915774 (C.D. Cal. June 21, 2020) .................................................................... 12

*Reese v. BP Expl. (Alaska) Inc.*,
   643 F.3d 681 (9th Cir. 2011) ................................................................................... 13, 14, 15

*Scallon v. Scott Henry's Winery Corp.*,
   686 F. App'x 495 (9th Cir. 2017) ....................................................................................... 16

*Springs Ambulance Serv., Inc. v. City of Rancho Mirage*,
   Cal., 745 F.2d 1270 (9th Cir. 1984) ................................................................................... 13

*Steering Comm. v. U.S.*,
   6 F.3d 572 (9th Cir. 1993) ............................................................................................ 12, 14

*United Food Grp., LLC v. Cargill, Inc.*,
   2015 WL 13868985 (C.D. Cal. July 27, 2015) .................................................................... 15

*United States v. Shaw*,
   936 F.2d 412 (9th Cir. 1991) ............................................................................................... 5

*United States v. Todd*,
   627 F.3d 329 (9th Cir. 2010) .............................................................................................. 10

*VIA Techs., Inc. v. SonicBlue Claims, LLC*,
   2011 WL 2437425 (N.D. Cal. June 17, 2011) ............................................................... 14, 15

**Statutes**

47 U.S.C. § 230 ...................................................................................................... *passim*

18 U.S.C.
   § 1591 ........................................................................................................... *passim*
   § 1595 ........................................................................................................... *passim*
   § 2421A ............................................................................................................... 5

28 U.S.C. § 1292(b) ................................................................................................ *passim*

Fight Online Sex Trafficking Act .......................................................................... *passim*

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**TWITTER, INC.'S MOT. FOR
RECONSIDERATION OR CERT. ORDER
CASE NO. 3:21-CV-00485-JCS**

**Other Authorities**

Federal Rule of Civil Procedure 54(b) ........................................................................... 1, 10

Local Civil Rule 7-9 ................................................................................................ *passim*

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

A061       iv

TWITTER, INC.'S MOT. FOR
RECONSIDERATION OR CERT. ORDER
CASE NO. 3:21-CV-00485-JCS

Case 3:21-cv-00485-JCS  Document 86-3  Filed 10/04/21  Page 96 of 247

**NOTICE OF MOTION AND MOTION**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD: PLEASE TAKE NOTICE THAT**, on November 19, 2021, at 9:30 a.m., or as soon thereafter as may be heard, Defendant Twitter, Inc. ("Twitter") will and hereby does move this Court (1) pursuant to Federal Rule of Civil Procedure 54(b) and Northern District of California Civil Local Rule 7-9 for leave to file a motion for reconsideration of this Court's August 19, 2021 order denying in part Twitter's motion to dismiss (ECF No. 69, or the "Order") or, (2) in the alternative, for an order certifying the Order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).  Twitter's proposed motion for reconsideration is attached as Exhibit A.[1]  This motion is based on this Notice of Motion and Motion, Memorandum of Points and Authorities, the papers on file in this action, and such other and further evidence or argument that the Court may consider.

**STATEMENT OF RELIEF SOUGHT AND ISSUES TO BE DECIDED**

Twitter seeks leave to file the attached motion for reconsideration of the Order, and for reconsideration of the Order for the reasons set forth in the attached motion.  Alternatively, Twitter requests that the Court certify the Order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.      INTRODUCTION

Twitter respectfully submits that it should be granted leave to file a motion for reconsideration of the Order, which denied Twitter's motion to dismiss Plaintiffs' Section 1595 beneficiary liability claim (Claim Two) based on its interpretation of both the CDA § 230[2] immunity carve-out in Section 230(e)(5)(A) and the term "participation in a venture" in 18 U.S.C. Sections 1591 and 1595.  As the Court is aware, Twitter argued in seeking dismissal of Claim Two that the carve-out from CDA § 230 immunity enacted through the Fight Online Sex Trafficking Act ("FOSTA") does not apply to Plaintiffs' claims because Section 230(e)(5)(A) applies only

---

[1] The Parties stipulated to a briefing schedule for the two motions noticed herein, which the Court adopted by order of September 17, 2021.  (ECF No. 77.)  Per the prevailing practice in this District, Twitter has attached its proposed motion for reconsideration to this motion for leave.  If Plaintiffs attach a substantive opposition to reconsideration to their response to this motion for leave, Twitter will respectfully request the Court permit Twitter to file a consolidated reply on the schedule set forth in ECF No. 77 to Plaintiffs' oppositions to the (1) motion for leave to file for reconsideration, or, alternatively for § 1292(b) certification, and (2) proposed motion for reconsideration.
[2] 47 U.S.C. § 230.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

A062          1

TWITTER, INC.'S MOT. FOR
RECONSIDERATION OR CERT. ORDER
Case No. 3:21-cv-00485-JCS

where the conduct underlying the claim constitutes a violation of Section 1591.  Persuasive subsequent authority, detailed below and justifying reconsideration, supports this interpretation and elucidates why the Order erroneously denied Twitter immunity under Section 230(e)(5)(A) and incorrectly interpreted the legal requirements to show "participation in a venture."  Alternatively, Twitter respectfully asks the Court to certify the Order for Section 1292(b) interlocutory appeal given the important, disputed, and dispositive nature of the legal questions at issue.

The Order concluded that Twitter, while generally immunized from Plaintiffs' claims under CDA § 230, was not entitled to such immunity with respect to Plaintiffs' beneficiary liability claim because, under the plain language of Section 230(e)(5)(A), that claim "is not subject to the more stringent requirements that apply to criminal violations of that provision."  (Order at 42.)  Since the Order, two other courts in the Ninth Circuit have issued rulings to the contrary, reasoning that CDA § 230 immunity is available for Section 1595/1591 claims only if the "more stringent requirements" for a criminal violation are met: (1) Judge Gilliam in *J.B. v. G6 Hospitality, LLC*, 2021 WL 4079207, at *4-12 (N.D. Cal. Sept. 8, 2021), which reconsidered his earlier ruling reaching the opposite conclusion; and (2) Judge Selna in his tentative order in *Jane Doe et al. v. Reddit, Inc*., Case No. 21-cv-768-JVS (C.D. Cal.), issued September 17, 2021 and attached as Exhibit B.  In *J.B.*, Judge Gilliam engaged in an extensive statutory construction and legislative history analysis after briefing by the parties on the issue and concluded that "the most persuasive reading of [S]ection 230(e)(5)(A) is that it provides an exemption from immunity for a section 1595 claim ***if, but only if***, the defendant's conduct amounts to a violation of section 1591."  *J.B*, 2021 WL 4079207 at *12.[3]  Judge Selna's tentative order in *Reddit* adopted Judge Gilliam's reconsidered reasoning.  (Exhibit B at 11.)

Permission for filing for reconsideration should be granted pursuant to Local Civil Rule 7-9 because these two subsequent rulings are a "change of law" that Twitter has diligently brought to the Court's attention, and also because the Order's reasoning concerned topics that the parties did not brief to any substantial extent, but rather were raised by the Court at argument *sua sponte*. Twitter respectfully submits that these circumstances justify reconsideration, particularly given that

---

[3] Unless otherwise noted, all emphasis is added, and all internal quotation marks and citations are omitted.

1  the Order is now contrary to the weight of authority on the interpretation of Section 230(e)(5)(A)

2  as to interactive computer service ("ICS") providers.[4]

3      Alternatively, if the Court denies Twitter leave to file for reconsideration or denies

4  reconsideration, the Court should certify its Order for interlocutory appeal under Section 1292(b).

5  The scope of an ICS provider's CDA § 230 immunity against 1595/1591 claims, and the

6  interpretation of "participation in a venture" in Sections 1591 and 1595, are novel, important, and

7  dispositive issues of law that are ripe for certification. Numerous courts across the country,

8  including many within the Ninth Circuit, are grappling with these issues but lack controlling

9  guidance. Absent reconsideration, certifying the Order to the Ninth Circuit will allow the appellate

10 court to provide Circuit-wide clarity, avoid the waste of judicial and party resources litigating

11 claims from which ICS providers may be immune, and avoid the development of inconsistent case

12 law.

13 **II.    BACKGROUND[5]**

14     **A.    Procedural History of Plaintiffs' Section 1595 Claims and the Interpretation of**
15         **CDA § 230(e)(5)(A).**

16     On May 7, 2021, Twitter moved to dismiss all counts of Plaintiffs' FAC under CDA § 230,

17 including Plaintiffs' claims based on Sections 1595 and 1591 (Claims One and Two). Twitter

18 asserted that Section 230(e)(5)(a), the carve-out from CDA § 230 immunity created by FOSTA, did

19

20 [4] *Compare Doe v. Kik Interactive, Inc.*, 482 F. Supp. 3d 1242, 1250-51 (S.D. Fla. 2020) (granting
   motion to dismiss); *J.B.*, 2021 WL 4079207, at *4-*12 (reconsidering prior ruling to the contrary
21 and granting motion to dismiss) (petition for interlocutory review filed Sept. 23, 2021, ECF No.
   179); Ex. B (tentative order granting motion to dismiss in *Reddit, Inc.*, Case No. 21-cv-768-JVS
22 (C.D. Cal. Sept. 17, 2021); *M.L. v. craigslist Inc.*, 2020 WL 5494903, at *3-4 (W.D. Wash. Sept.
   11, 2020) ("agree[ing] with craigslist's argument that FOSTA does not create an exemption for all
23 § 1595 claims," but concluding that the distinction was irrelevant because the plaintiff adequately
   alleged that craigslist materially contributed to the development of the advertisements that
24 trafficked plaintiff and therefore was not entitled to CDA § 230 immunity), *with* Order at 33-42;
   *Jane Doe v. Mindgeek USA Inc.* ("*Mindgeek*"), 2021 WL 4167054, at *4-*5 (C.D. Cal. Sept. 3,
25 2021) (denying motion to dismiss) (petition for interlocutory review filed Sept. 30, 2021, ECF No.
   73).
26 [5] Given the Court's familiarity with this case, Twitter provides an abbreviated background, focusing
   on the issues relevant to this motion. All "FAC" references are to Plaintiffs' First Amended
27 Complaint (ECF No. 39); all "MTD" references are to Twitter's Motion to Dismiss Plaintiffs' First
   Amended Complaint (the "Motion to Dismiss," ECF No. 48), all "Opp." references are to Plaintiffs'
28 Opposition to Defendants' Motion to Dismiss (the "Opposition," ECF No. 55), all "Reply"
   references are to Twitter's Reply in Support of Motion to Dismiss (the "Reply," ECF No. 59).
   Capitalized terms not defined herein have the meanings set forth in Twitter's Motion to Dismiss.

1   not apply to Plaintiffs' claims because Section 230(e)(5)(A) applies only where "the conduct

2   underlying the claim constitutes a violation of [S]ection 1591[.]"  47 U.S.C. § 230(e)(5)(a); *see*

3   MTD at 1-2, 4-5, 18.  Twitter explained that Plaintiffs did not plead such facts, including the

4   requirement that Twitter had *knowingly* participated in a sex trafficking venture.  (MTD at 12-15.)

5   In support of its argument that Plaintiffs failed to trigger Section 230(e)(5)(A)'s immunity carve-

6   out, Twitter cited Section 230(e)(5)(A)'s plain text and *Kik*, 482 F. Supp. 3d at 1250-51, which

7   adopted Twitter's interpretation of that provision.  Twitter's MTD quoted several statements by

8   individual legislators and a House committee report on a proposed version of FOSTA (the

9   "Committee Report") to argue that the carve-out from CDA § 230 immunity in Section

10  230(e)(5)(A) was aimed at companies like Backpage that were purposefully created to promote

11  prostitution and "knowingly" encouraged sex trafficking, as opposed to companies like Twitter that

12  sought to remove trafficking content (even if they did so imperfectly).  (MTD at 4-5, 11-12.)

13         Plaintiffs' Opposition did not challenge Twitter's interpretation of Section 230(e)(5)(A) in

14  any meaningful respect.  Rather, in a single footnote, Plaintiffs asserted without citation to any legal

15  authority that "the exemption text states that the 'conduct underlying the claim' not the 'defendant's

16  conduct' must violate 1591, 47 U.S.C. § 230 (e)(5)(A), which is almost certainly to limit the

17  exception to sex trafficking claims, as labor trafficking claims are also covered by § 1595."  (Opp.

18  at 16 n.35.)  Notably, Plaintiffs' argument that the "should have known" standard should apply to

19  their Section 1595 claim was not based on a purported interpretation of Section 230(e)(5)(A), and

20  the Opposition did not address (or even mention) the *Kik* case.  Instead, Plaintiffs made two

21  principal arguments: (1) that they adequately alleged that Twitter *knew* it was participating in a

22  venture in violation of Section 1591 and (2) that courts had authorized Section 1595 suits against

23  entities who knew or "should have known" that they were participating in a venture in violation of

24  Section 1591.  (*Id*. at 10-16.)  The Opposition also sparsely referenced legislative history to argue

25  that FOSTA's exception was meant to be applied broadly and not just to "actors as deliberate and

26  organized as Backpage."  (*Id*. at 17-18 n.38-40 (citing rejected amendment to FOSTA and a few

27  ambiguous statements by individual legislators).)[6]

28

Cooley LLP
Attorneys at Law
San Francisco

---

[6] Judge Gilliam observed that generally "statements by individual legislators rank among the least illuminating forms of legislative history."  *J.B.*, 2021 WL 4079207, at *7 (quoting *N.L.R.B. v. SW*

TWITTER, INC.'S MOT. FOR
RECONSIDERATION OR CERT. ORDER
CASE NO. 3:21-CV-00485-JCS

1    Given the Opposition's failure to dispute Twitter's construction of Section 230(e)(5)(A)

2    based on any authority or analysis, or to address the reasoning of *Kik* proffered by Twitter, Twitter's

3    Reply did not further address the proper construction of § 230(e)(5)(A).  Rather, Twitter cited

4    additional aspects of FOSTA's legislative history to rebut Plaintiffs' general argument that

5    FOSTA's carve-out from CDA § 230 is broad.  (Reply at 10-12.)  To this end, Twitter referenced

6    the Committee Report and explained how it, together with the structure of FOSTA—including its

7    amendment of Section 1591(e) and addition of a new federal criminal statute, 18 U.S.C.

8    § 2421A[7]—indicated Congress's intent to limit CDA § 230 immunity for Section 1595 claims only

9    where an ICS provider defendant allegedly violated Section 1591.  (*Id.* (citing H.R. Rep. No. 115-

10   572 and Pub. L. No. 115-164, 132 Stat. 1254).)  Twitter's Reply also again distinguished Backpage.

11   (*Id.* at 11-12.)

12    In light of this scope of the briefing, the Court's questions about statutory construction at

13   the oral argument were the first time these issues were raised in earnest.  (Ex. C (oral argument

14   transcript) at 6, 10-14.)  Asked by the Court about the proper construction of Section 230(e)(5)(A)'s

15   language "the conduct underlying the claim constitutes a violation of [S]ection 1591," Twitter

16   pointed out the parallel language used in Section 230(e)(5)(B) and argued that the second clause in

17   both subparts should be given the same meaning.  (Ex. C at 12-14.)  In response, Plaintiffs repeated

18   the conclusory point in their brief's footnote that the second clause was a limitation to sex

19   trafficking (as opposed to other trafficking), but cited no authority for support and did not discuss

20   any statutory construction doctrines.  (*Id.* at 32-35.)  Twitter's argument "resonate[d]" with the

21   Court, (*id.* at 24:24-25:7), and the Court took the MTD under submission.

22   **B.    The Court's Order Concerning Claim Two**

23    On August 19, 2021, the Court issued the Order, dismissing with prejudice all of Plaintiffs'

24   claims except for the Section 1595 beneficiary liability claim based on Twitter's alleged violation

---

26   *Gen., Inc*., 137 S. Ct. 929, 943 (2017)).  However, when statements by individual legislators "are
     consistent with the statutory language and other legislative history, they provide evidence of

27   Congress' intent."  *J.B.*, 2021 WL 4079207, at *7 (quoting *United States v. Shaw*, 936 F.2d 412,
     416 (9th Cir. 1991)).

28   [7] With 18 U.S.C. § 2421A, Congress created a new law that prohibited the promotion or facilitation
     of prostitution "in reckless disregard of the fact that such conduct contributed to sex trafficking[.]"
     Pub. L. No. 115-164, 132 Stat. 1253 (2018).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**A066**    5

TWITTER, INC.'S MOT. FOR
RECONSIDERATION OR CERT. ORDER
CASE NO. 3:21-CV-00485-JCS

of Section 1591(a)(2) (Claim Two), which the Court concluded was subject to the immunity carve-out in Section 230(e)(5)(A).  (ECF No. 69.)  Specifically, the Court held "that Plaintiffs' Section 1595 claim against Twitter based on [an] alleged violation of Section 1591(a)(2) is not subject to the more stringent requirements that apply to criminal violations of that provision," but instead "creates an exemption to Section 230 immunity for civil sex trafficking claims under Section 1591[.]"  (Order at 40, 42.)  To reach this conclusion, the Court analyzed Section 230(e)(5)(A)'s plain language using various doctrines of statutory construction that the parties had not briefed.  The Court also examined FOSTA's legislative history, which the parties' briefing referenced with respect to the general issue of whether Congress intended FOSTA's exemption to apply only to companies like Backpage or more broadly, but which the parties did not directly tie to statutory construction given the failure of Plaintiffs to join issue in any meaningful way.  The Court also expressly disagreed with the only other court at the time to have addressed the statutory construction question with detailed analysis, *Kik*, 482 F. Supp. 3d 1242 (holding that the requirements of Section 1591 must be satisfied to trigger the immunity carve-out in Section 230(e)(5)(A)).  (Order at 38-42.)

Accordingly, under the Order, a plaintiff may trigger the Section 230(e)(5)(A) immunity carve-out by alleging the lower showing required by Section 1595 rather than the heightened showing required by Section 1591, namely:  that a defendant (1) participated in a venture, (2) received a benefit from its participation, and (3) "knew or should have known [that the venture] related to sex trafficking[.]"  (Order at 44; *see id*. at 42.)

The Order then concluded that Plaintiffs adequately alleged Twitter's "participation in a venture" under Section 1595's lower "should have known" standard.  (*Id*. at 43-44.)  The Court based this conclusion on the FAC's "general allegations that Twitter enables sex trafficking on its platform," as well as allegations that Twitter was "specifically alerted" to the Videos and their nature on "several occasions" and yet "failed or refused" to remove them.  (*Id*. at 42-44.)  The Court found that these allegations sufficiently pled a Section 1595 "venture," *i.e.*, they "show[ed] [] a continuous business relationship between the trafficker and [Twitter] such that it would appear that the trafficker and [Twitter] have established a pattern of conduct or could be said to have a tacit

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

A067      6

TWITTER, INC.'S MOT. FOR
RECONSIDERATION OR CERT. ORDER
CASE NO. 3:21-CV-00485-JCS

agreement." (Order at 42-43.) Notably, the Order cites no allegation (and there is none) that the individuals who posted the Videos to Twitter were the traffickers or that there was any relationship, business or otherwise between Twitter and the traffickers.[8]

Finally, with respect to allegations of knowledge, the Court rejected Twitter's argument that, because the venture "was already over when the Videos were posted on Twitter," the allegations were insufficient to show under Section 1591(a)(2) that Twitter knew its conduct would cause Plaintiffs to engage in future "commercial sex trafficking." (*Id*. at 44 n.6.) In reaching this conclusion, the Court relied on Twitter's purported "conce[ssion] [at oral argument] that the posting of child pornography is a commercial sex act."[9] (*Id*.) According to the Court, this meant that "regardless of when the Videos were created, the allegations that the Videos were being retweeted on a massive scale while they remained on the Twitter platform raise[d] a plausible inference that Twitter's failure to remove the Videos would result in *future* commercial sex trafficking." (*Id*.)

**C.    Subsequent Events**

Since the Court's Order, additional courts have addressed the question of Section 230(e)(5)(A)'s scope, as well as the application of Section 1595 to ICS providers, with two courts disagreeing with the Order, one in a lengthy ruling, and one court agreeing with the Order.

On September 8, 2021, Judge Gilliam, reconsidering his earlier ruling to the contrary, disagreed with the Order and ruled that "[S]ection 230(e)(5)(A) withdraws immunity only for claims asserting that the defendant's own conduct amounts to a violation of section 1591." *J.B.*, 2021 WL 4079207, at *4-12 (granting motion to dismiss filed by craigslist, Inc ("Craigslist")). Judge Gilliam acknowledged his prior ruling concluding that plaintiff's Section 1595 claim was not barred in light of CDA § 230(e)(5)(A), *id.* at *4, but reversed that ruling in light of having "closely reexamined the issue," including through an "in-depth" examination of the statutory text

---

[8] The Order held that under Section 1595's lower standard, Plaintiffs sufficiently pleaded that Twitter received a benefit from its participation. (Order at 44-46.) In the event the Court reconsiders the Order and concludes that Section 230(e)(5)(A) requires Plaintiffs to plead that Twitter violated Section 1591, then for the reasons stated in Twitter's briefing, Plaintiffs have not adequately alleged that Twitter received a benefit from participation in the sex trafficking venture involving Plaintiffs under Section 1591's stricter "knowingly" standard. (*See* MTD at 16-17 and Reply at 7-8.)

[9] As explained in Section III, Twitter did not concede this point either in its briefing or at oral argument.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

A068                 7

TWITTER, INC.'S MOT. FOR
RECONSIDERATION OR CERT. ORDER
CASE NO. 3:21-CV-00485-JCS

and legislative history, *see id.* at *4-12 (reviewing in detail various statutory interpretation arguments and comprehensively reviewing the key legislative history).  He also noted as support the intervening court rulings in *Kik* and *M.L.*[10]

On September 17, 2021, Judge Selna in the Central District of California issued a tentative order agreeing with Judge Gilliam's September 8 order in *J.B.*, disagreeing with the Order, and dismissing a complaint against Reddit, Inc. ("Reddit"), which asserted a Section 1595 trafficking claim against an ICS provider.[11]  (Ex. B (tentative order).)  Judge Selna explained that the "most persuasive" interpretation of Section 230(e)(5)(A) was that it limited CDA § 230 immunity "for a section 1595 claim *if, but only if*, the defendant's conduct amounts to a violation of section 1591." (Ex. B at 11-12.)  Judge Selna also reasoned that the plaintiffs failed to allege a violation of Section 1591 (or, for that matter, Section 1595) because they failed to adequately allege Reddit's participation in a venture and because their general allegations (as here) that Reddit enabled sex trafficking on its platform did ***not*** show that the specific traffickers who trafficked the plaintiffs' children were in a "continuous business relationship" with Reddit.  (*Id.* at 12.)

On September 3, 2021, Judge Carney in the Central District of California denied a motion to dismiss asserting that defendant was immune from a Section 1595 claim under CDA § 230. *Mindgeek*, 2021 WL 4167054, at *4-*7.[12]  Judge Carney determined, citing the Order, that Section 230(e)(5)(A) did not require a plaintiff to plead that the defendant violated Section 1591.  *Id.*  Judge Carney's order did independently analyze the question but instead relied on the Order's analysis for that conclusion.[13]  (*Id.*)

---

[10] On September 23, 2021, the *J.B.* plaintiff filed a motion to certify Judge Gilliam's order for interlocutory appeal under 28 U.S.C. § 1292(b). (Case No. 4:19-cv-07848, ECF No. 179.) Craigslist filed a statement of non-opposition to the plaintiff's motion. (*Id.* at ECF No. 183.)  A hearing on the plaintiff's motion is calendared for October 5, 2021.

[11] On September 21, 2021, the plaintiffs in Reddit requested a hearing to contest Judge Selna's tentative order.  (*Reddit*, Case No. 8:21-cv-00768, ECF No. 55.)  On September 23, 2021, Judge Selna requested additional briefing from Reddit to respond to the plaintiffs' arguments.  (*Id.* at ECF No. 56.)  No hearing has yet been set.  (*Id.* at ECF No. 55.)

[12] On September 30, 2021, defendants filed a motion for reconsideration of the order denying defendants' motion to dismiss or, in the alternative, for Section 1292(b) certification. (*MindGeek*, Case No. 8:21-cv-00338 (C.D. Cal.), ECF No. 73.)

[13] Judge Carney also solely relied on this Court's analysis to conclude that "posting child pornography is a commercial sex act."  *Mindgeek*, 2021 WL 4167054, at *7.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

A069          8

TWITTER, INC.'S MOT. FOR
RECONSIDERATION OR CERT. ORDER
CASE NO. 3:21-CV-00485-JCS

## III. THE COURT SHOULD PERMIT TWITTER TO SEEK RECONSIDERATION OF THE ORDER

Pursuant to Local Civil Rule 7-9, a party may obtain leave to move for reconsideration of an interlocutory order upon a showing of "reasonable diligence in bringing the motion" and either of the following circumstances: the "emergence of new material facts or a change of law occurring after the time of such order" or a "manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court[.]" L.R. 7-9(b)(2), (b)(3).[14]

Here, among other things, after the Order issued, a highly pertinent, detailed, and persuasive opinion has been issued in *J.B.* that conflicts with the Order (and reverses the prior *J.B.* opinion that was consistent with the Order). The new *J.B.* ruling is based on adversarial briefing that raised arguments not presented to the Court in this matter, largely due to Plaintiffs' failure to contest Twitter's statutory interpretation in any specific fashion. Accordingly, Twitter respectfully submits that it has shown reasonable diligence, that the second and third circumstances cited above apply, and that it should be granted leave to move for reconsideration on three issues.[15]

First, based on both Local Rule 7-9(b)(2) and (b)(3), Twitter seeks reconsideration of the Court's holding that the immunity carve-out in Section 230(e)(5)(A) does not require pleading that the defendant's conduct violated Section 1591. (Order at 42.) As explained above, this ruling now conflicts not only with *Kik* and *M.L.*, but also with Judge Gilliam's recent ruling in *J.B.*, which comprehensively examined Section 230(e)(5)(A)'s text, structure, and legislative history after adversarial briefing on that issue. Judge Selna's tentative order in *Reddit* has since followed Judge Gilliam and disagreed with the Order. These rulings were not available to the Court at the time of the Order and have rendered the Order's construction of Section 230(e)(5)(A) contrary to the weight of authority in "a rapidly expanding area of law" thus satisfying Local Rule 7-9(b)(2)'s "change of law" requirement. *See Doe By & Through Doe v. Petaluma City Sch. Dist.*, 949 F. Supp. 1415,

---

[14] Local Civil Rule 7-9(b)(1) also allows for a motion for reconsideration to be filed if "a material difference in fact or law exists from that which was presented to the Court before entry of the interlocutory order" and the movant "did not know such fact or law at the time" despite the exercise of reasonable diligence; this provision does not apply here.

[15] As noted above, Twitter's proposed motion for reconsideration is attached as Exhibit A. The key arguments for reconsideration are also the bases upon which Twitter satisfies the criteria of Local Civil Rule 7-9, and accordingly, the points detailed in this section are supported by the attached motion.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

A070    9

TWITTER, INC.'S MOT. FOR
RECONSIDERATION OR CERT. ORDER
CASE NO. 3:21-CV-00485-JCS

1417 (N.D. Cal. 1996) (concluding that new district court and out of Circuit court opinions constituted a "change of law" warranting reconsideration where the law was still developing on sex harassment issues); *J.B.*, 2021 WL 4079207, at *4 (reconsidering prior motion to dismiss order because of two intervening district court opinions that came to a contrary conclusion).[16]

Although satisfaction of Local Rule 7-9(b)(2) alone is sufficient for the Court to allow Twitter's reconsideration motion on this issue, Twitter also notes the potential applicability of the "manifest failure" prong of Local Rule 7-9(b)(3).  Twitter respectfully submits that this prong should be satisfied where, as here, the relevant issues were first raised and explored at oral argument.  In somewhat similar circumstances, this Court has allowed for the filing of a motion for reconsideration.  *Cave Consulting Grp., Inc. v. OptumInsight, Inc.*, 2020 WL 127612, at *4-5 (N.D. Cal. Jan. 10, 2020) (Spero. J) (granting reconsideration based on the movant's argument that the Court granted judgment on an issue not briefed by the parties).

Second, pursuant to Local Rule 7-9(b)(3), Twitter respectfully seeks leave to file for reconsideration to correct two of the Order's erroneous conclusions that led the Court to hold that Plaintiffs' allegations satisfied Section 1591(a)(2): (1) that the posting of child pornography is itself a "commercial sex act," based on Twitter's alleged concession of this point at oral argument, and (2) that Plaintiffs adequately alleged Twitter's knowledge that because of its conduct the victim "***will be*** caused to engage in a ***commercial sex act***."  (*See* Order at 44 n.6).  With respect to the first of these issues, Twitter did not concede at oral argument that posting of child pornography is a "commercial sex act" (*see* Ex. C at 17:7-15.), and the Court's holding on this point disregarded Section 1591's definition of "commercial sex act," which does not include the posting of depictions of sex acts.  Section 1591 pertains to "sex acts" that constitute "trafficking" while *depictions* of "sex acts" are covered by other offenses in Title 18 concerning child pornography that are not subject to the Section 230(e)(5)(A) immunity carve-out, including offenses that Plaintiffs otherwise pled and the Court dismissed.  With respect to the second issue of Twitter's knowledge, the Court's ruling ignores the Ninth Circuit's holding in *United States v. Todd*, 627 F.3d 329, 334 (9th Cir.

---

[16] Local Rule 7-9's allowance for reconsideration upon a "change of law" recognizes, as the Local Rule notes, the "discretion of Court to reconsider its orders prior to entry of final judgment" under Fed. R. Civ. P. 54(b).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

A071        10

TWITTER, INC.'S MOT. FOR
RECONSIDERATION OR CERT. ORDER
CASE NO. 3:21-CV-00485-JCS

2010), that a defendant must know that its conduct will cause the plaintiff to engage in commercial sex acts—here, that was not possible under the facts alleged as Plaintiffs were no longer under their traffickers' control by the time of the alleged posting.

Third, based on both Local Rule 7-9(b)(2) and (b)(3), Twitter respectfully seeks leave to file for reconsideration to correct errors in the Order relating to the application of Section 1595 to Twitter. Section 1595 case law, which Twitter cited, requires a plaintiff to allege facts showing a "continuous business relationship" between a plaintiff's specific traffickers and the defendant. However, the Order concluded that Plaintiffs adequately alleged that Twitter participated in a Section 1595 venture with the traffickers even though there is no allegation that the traffickers were behind the user accounts who posted the Videos to Twitter or that they even use Twitter. (Order at 42-44.) As Judge Selna explained in his tentative ruling, such allegations are legally insufficient because they do not show that there were "business deal[ings]" or a "monetary relationship" between Twitter and the Perpetrators. (Ex. B at 12.)

Twitter has been reasonably diligent in seeking leave to file its motion for reconsideration. Since the Court issued its Order on August 19, 2021, the parties have engaged in ongoing discussions regarding their appellate options. (Declaration of Linh K. Nguyen in Support of Motion for Reconsideration ("Nguyen Decl."), ¶ 5.) Moreover, Twitter's reconsideration arguments are based in part on the changes of law occasioned by Judge Gilliam's September 8, 2021 decision in *J.B.* and Judge Selna's September 17, 2021 tentative ruling following *J.B.* On September 13, 2021, Twitter's counsel informed Plaintiffs' counsel that in light of *J.B.*, Twitter intended to seek leave to move for reconsideration of the Order or, in the alternative, seek certification of the Order for interlocutory appeal under 28 U.S.C. § 1292(b). (Nguyen Decl. ¶ 6.) Plaintiffs' counsel advised that they did not intend to seek reconsideration or appeal. (*Id.*) The parties agreed on a briefing schedule for the instant motion, which the Court granted on September 17, 2021, 9 days after the decision in *J.B.* was issued. (ECF No. 76.)

## IV. ALTERNATIVELY, THE COURT SHOULD CERTIFY THE ORDER FOR INTERLOCUTORY APPEAL

Twitter respectfully submits that reconsideration is warranted and should be granted. If the

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

A072    11

TWITTER, INC.'S MOT. FOR
RECONSIDERATION OR CERT. ORDER
CASE NO. 3:21-CV-00485-JCS

Court does not permit Twitter to file for reconsideration or denies reconsideration, Twitter requests that the Court certify its Order for interlocutory appeal under 28 U.S.C. § 1292(b). Specifically, Twitter seeks interlocutory review of the following controlling questions of law: (1) whether the immunity carve-out in Section 230(e)(5)(A) requires that a plaintiff plead a violation of Section 1591; and (2) whether "participation in a venture" under Section 1591(a)(2) requires that a defendant have a "continuous business relationship" with the traffickers in the form of business dealings or a monetary relationship.

### A.  Legal Standard for Certification of Interlocutory Appeal.

A district court may certify an order for interlocutory appeal under § 1292(b) if it: (1) involves "a controlling question of law"; (2) on which there is "substantial ground[s] for difference of opinion"; and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation . . . ." 28 U.S.C. § 1292(b); *see In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1981). "So long as a pure legal question is identified . . . an order can be certified for appeal to resolve all questions material to the order." *Ornelas v. Target Corp.*, 2020 WL 4915774, at *7 (C.D. Cal. June 21, 2020) (quoting *Steering Comm. v. United States*, 6 F.3d 572, 576 (9th Cir. 1993) (determining that it is proper to certify a mixed question of law and fact material to the order if coupled with a pure legal question)). The party seeking certification bears the burden of showing these circumstances exist and that interlocutory appeal is warranted. *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 474-75 (1978).

To establish a "controlling" question under Section 1292(b), "all that must be shown . . . is that resolution of the issue on appeal could materially affect the outcome of the litigation in the district court." *In re Cement Antitrust*, 673 F.2d at 1026. Interlocutory appeals are also frequently allowed "on the question whether the plaintiff has stated a claim if the problem is a difficult one of substantive law[.]" 16 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3931 (3d ed. 2021); *see, e.g., Brickman v. Facebook, Inc.*, 2017 WL 1508719, at *5 (N.D. Cal. Apr. 27, 2017) (granting motion to certify order denying motion to dismiss because if reversed, "the litigation could completely end or take a decidedly different path"). A question may also be controlling even though its resolution does not determine who will prevail on the merits. *See*

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

A073      12

TWITTER, INC.'S MOT. FOR
RECONSIDERATION OR CERT. ORDER
CASE NO. 3:21-CV-00485-JCS

1    *Kuehner v. Dickinson & Co.*, 84 F.3d 316, 318–19 (9th Cir. 1996).

2        "Courts traditionally will find that a substantial ground for difference of opinion exists . . .

3 if novel and difficult questions of first impression are presented." *Lee v. Postmates Inc.*, 2019 WL

4 1864442, at *2 (N.D. Cal. Apr. 25, 2019) (Spero, J.) (quoting *v. Telescope Inc.*, 611 F.3d 629, 633

5 (9th Cir. 2010)). Moreover, where an order "involves a new legal question or is of special

6 consequence," a district court "should not hesitate to certify an interlocutory appeal[.]" *Mohawk*

7 *Indus., Inc. v. Carpenter*, 558 U.S. 100, 111 (2009); *see also Reese v. BP Expl. (Alaska) Inc.*, 643

8 F.3d 681, 688 (9th Cir. 2011) ("Stated another way, when novel legal issues are presented, on which

9 fair-minded jurists might reach contradictory conclusions, a novel issue may be certified for

10 interlocutory appeal without first awaiting development of contradictory precedent.").

11        The Ninth Circuit rejects a "rigid approach" to section 1292(b), favoring instead a "flexible

12 approach," "wisely targeted to avoid . . . undesirable consequences" such as "unnecessary,

13 protracted litigation and a considerable waste of judicial resources." *Reese*, 643 F.3d at 688 n.5.

14     **B.    Interlocutory Review is Warranted to Determine the Standard for Triggering**
15            **Section 230(e)(5)(A) Immunity Carve-Out.**

16        The Court's Order should be certified for interlocutory review because the standard for

triggering Section 230(e)(5)(A)'s immunity carve-out is an issue that is potentially dispositive of

17

Plaintiffs' remaining claim; involves a novel and important question of law which is the subject of

18

clear disagreement among multiple courts; and would materially advance the ultimate termination

19

of this case by an immediate appeal.

20

21            **1.    Whether Twitter Has Immunity in Light of Section 230(e)(5)(A) is a**
                **Controlling Question of Law.**

22        Whether Twitter is immune from Plaintiffs' Section 1595 claims in light of Section

23 230(e)(5)(A) presents a controlling question of law. *See Springs Ambulance Serv., Inc. v. City of*

24 *Rancho Mirage, Cal.*, 745 F.2d 1270, 1272 (9th Cir. 1984) (questions of immunity meet the first

25 prong of Section 1292(b)); *see also Jones v. Dirty World Ent. Recordings LLC*, 755 F.3d 398, 417

26 (6th Cir. 2014) (recognizing that interlocutory appeal would have been appropriate on the scope of

27 CDA § 230 immunity).

28        Reversal of the Order on this question by the Ninth Circuit would undoubtedly "materially

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

A074    13

TWITTER, INC.'S MOT. FOR
RECONSIDERATION OR CERT. ORDER
CASE NO. 3:21-CV-00485-JCS

1   affect" this litigation. *See In re Cement Antitrust*, 673 F.2d at 1026. If the Ninth Circuit determines,

2   as Twitter argues and as the majority of courts have held, that the § 230(e)(5)(A) immunity carve-

3   out applies only where a defendant's conduct meets the Section 1591 standard for criminal liability,

4   the only remaining claim in this litigation may be conclusively resolved in favor of Twitter. *See*

5   *AXA Rosenberg Grp. v. Gulf Underwriters*, 2004 WL 1844846, at *10 (N.D. Cal. Aug. 16, 2004)

6   (Spero, J.) (certifying order for interlocutory appeal because "if the Ninth Circuit determines . . .

7   that the Court has erred . . . such a ruling may be dispositive of the entire case"); *VIA Techs., Inc.*

8   *v. SonicBlue Claims, LLC*, 2011 WL 2437425, at *1 (N.D. Cal. June 17, 2011) ("it is clear that a

9   question of law is controlling if reversal of the district court's order would terminate the action").

10  Because this is a "pure legal question," an interlocutory appeal is especially appropriate. *See*

11  *Steering Comm.*, 6 F.3d at 575–76.

12      Courts also have recognized that legal questions that could affect other cases may be

13  particularly warranted for interlocutory appeal. *See Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d

14  21, 24 (2d Cir. 1990) ("the impact that an appeal will have on other cases is a factor" in determining

15  whether a question is controlling). The scope of an ICS provider's immunity in light of Section

16  230(e)(5)(A) could have a significant effect on numerous other cases pending before district courts

17  within this circuit and across the country. Indeed, there are currently at least eight cases litigating

18  this exact issue in seven district courts, including six cases in this Circuit alone.[17] Interlocutory

19  appeal to resolve the standard for triggering the Section 230(e)(5)(A) immunity carve-out would

20  help resolve those pending litigations and preserve judicial resources. *See Reese*, 643 F.3d at 688

21  n.5 (noting approach to Section 1292(b) certification should be "flexible" and aimed to prevent

22  waste of judicial resources).

23                  **2.      Substantial Grounds for Difference of Opinion Exist on this Issue.**

24      As of the filing of this motion, there exists both an intra- and inter- district split of authority,

25  across multiple circuits, as to the novel and important question of the standard for triggering the

26  Section 230(e)(5)(A) immunity carve-out for Section 1595 claims, and no Circuit has yet weighed

---

[17] *See supra* note 4. In addition to courts in this circuit, at least two other district courts are
addressing these same issues: *G (a minor), et al. v. Salesforce.com, Inc.*, Case No. 20-cv-02335
(N.D. Ill. Apr. 15, 2020) and *Doe #1 et al. v. MG Freesites LTD et al.,* Case No. 21-cv-00220 (N.D.
Ala. Feb. 11, 2021).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

A075      14      TWITTER, INC.'S MOT. FOR
RECONSIDERATION OR CERT. ORDER
CASE NO. 3:21-CV-00485-JCS

in on this issue.[18]  This Court has expressly recognized this split in authority, having stated in the Order that it "respectfully disagrees with the *Kik* court's analysis" on CDA § 230's application to Section 1595 claims.  (Order at 39-40.)  In the month since this Court's Order disagreed with *Kik*, three district courts in this Circuit confronted this precise question, with two following *Kik* and disagreeing with this Court's Order, and one agreeing with the Order.  *See supra* Section III.  This indicates the substantial grounds for difference of opinion justifying interlocutory review.  *See Reese*, 643 F.3d at 688 ("A substantial ground for difference of opinion exists where reasonable jurists might disagree on an issue's resolution[.]"); *see, e.g.*, *United Food Grp., LLC v. Cargill, Inc.*, 2015 WL 13868985, at *2 (C.D. Cal. July 27, 2015) (certifying order involving "an issue over which reasonable judges might differ" (citation omitted)).

### 3.  Interlocutory Review May Materially Advance the Ultimate Termination of the Litigation.

A litigation is materially advanced by interlocutory appeal if reversal of the Order at issue would more quickly dispose of the litigation.  *VIA Techs.*, 2011 WL 2437425, at *1.  Here, immediate appeal of the Court's interpretation of Section 230(e)(5)(A) will materially advance the litigation and save the parties and the Court significant expense.  *Helman v. Alcoa Glob. Fasteners Inc.*, 2009 WL 2058541, at *6 (C.D. Cal. June 16, 2009), *aff'd*, 637 F.3d 986 (9th Cir. 2011) ("Immediate appeal should be granted where there is a highly debatable question that is easily separated from the rest of the case, that offers an opportunity to terminate the litigation completely, and that may spare the parties the burden of a trial that is expensive for them even if not for the judicial system.").

Specifically, if Twitter successfully obtains reversal based on its proffered interpretation of Section 230(e)(5)(A), the remaining Section 1595 claim in this case will likely be dismissed because plaintiffs' allegations have failed to meet the more stringent standards of Section 1591, obviating the need for any discovery, further motion practice, and trial.  *See Ass'n of Irritated Residents v. Fred Schakel Dairy*, 634 F. Supp. 2d 1081, 1092–93 (E.D. Cal. 2008); *Jones*, 755 F.3d at 417 (recognizing that if certification of the order rejecting defendants' claim for CDA immunity

---

[18] *Supra* note 4.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

had been granted earlier the case would have been resolved before trial).

### C. Interlocutory Review is Warranted to Determine the Meaning of "Participation in a Venture" in Sections 1595 and 1591(a)(2).

Plaintiffs' Section 1595 beneficiary liability claim against Twitter is based on Twitter's alleged violation of Section 1591(a)(2). (FAC ¶¶ 144-155.) Section 1591(a)(2) punishes "[w]hoever knowingly. . . benefits, financially or by receiving anything of value, from ***participation in a venture*** which has engaged in an act described in violation of [Section 1591(a)(1)], knowing . . . that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act[.]" 18 U.S.C. § 1591(a)(2). As with the meaning of Section 230(e)(5)(A), the question whether "***participation in a venture***" requires a "continuous business relationship" with the traffickers in the form of business dealings or a monetary relationship also meets each of the three criteria required for certification under Section 1292(b).[19]

### 1. The Statutory Interpretation of "Participation in a Venture" Under Sections 1595 and 1591(a)(2) is a Controlling Question of Law.

The statutory interpretation of "participation in a venture" under Sections 1595 and 1591(a)(2) is a controlling question of law that is appropriate for interlocutory review because the Ninth Circuit could resolve this question without needing to delve deeply into the factual record. *Cf. Scallon v. Scott Henry's Winery Corp.*, 686 F. App'x 495, 495 (9th Cir. 2017) (reviewing interpretation of state statute pursuant to Section 1292(b)); *see also Helman*, 2009 WL 2058541, at *7 (The "issue of statutory interpretation involves a controlling issue of law where there is substantial ground for disagreement[.]")

Courts interpreting "participation in a venture" under Section 1595 have found that plaintiffs must allege facts showing that a defendant was "associated in fact" or had a "continuous business relationship" with the plaintiffs' traffickers. Plaintiffs, however, have alleged no facts to support the existence of a "continuous business relations" – or *any relationship* – between Twitter and Plaintiffs' alleged traffickers, and yet the Order determined that Plaintiffs alleged "participation

---

[19] If the Ninth Circuit finds that the CDA § 230 immunity carve-out in Section 230(e)(5)(A) requires a showing that the ICS provider's conduct constitutes a violation of Section 1591, the court must still address whether Plaintiffs established "participation in a venture" under the more stringent Section 1591 standard.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   in a venture."  Reversal of that ruling would undoubtedly "materially affect" this litigation as it

2   would require dismissal of Plaintiffs' only remaining claim.  *See In re Cement Antitrust*, 673 F.2d

3   at 1026.

4               **2.      Substantial Grounds for Disagreement Exist Regarding Whether
                "Participation in a Venture" Under Sections 1595 and 1591 Requires a
5               "Continuous Business Relationship" Between the ICS Provider and
                Traffickers.**

6

7           Reasonable jurists have recently disagreed on the statutory interpretation of "participation

8   in a venture" under Sections 1595 and 1591(a)(2).  This Court concluded that "Plaintiffs'

9   allegations are sufficient" to allege participation in a venture because Twitter "enables sex

10  trafficking on its platform" and "Twitter was specifically alerted that the Videos contained sexual

11  images of children obtained without their consent on several occasions but either failed or refused

12  to take action."  (Order at 43.)

13          Other courts, however, have required that "in the absence of direct association," there must

14  be "a showing of a ***continuous business relationship*** between ***the trafficker*** and the [ICS provider]

15  such that it would appear that the trafficker and the [ICS provider] have established a pattern of

16  conduct or could be said to have a tacit agreement."  *J.B.*, 2020 WL 4901196, at *9 (citing *M.A. v.

17  Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 970 (S.D. Ohio 2019); *see also* Order at 36

18  ("District courts, including in this district, have found the statutory analysis in *M.A.* supporting its

19  interpretation of Section 1595 to be persuasive."); *see also* Ex. B at 12 (Plaintiffs were required to

20  allege facts demonstrating the ICS provider "made a business deal with" the Perpetrators or had a

21  "monetary relationship with [the Perpetrators]"—to establish a venture under Section 1595.)

22          Certification of the proper interpretation of "participation in a venture" is appropriate

23  because jurists within the Ninth Circuit and across the country have expressly disagreed about the

24  proper application of this element under Sections 1595 and 1591(a)(2).

25              **3.      Certification of the Statutory Interpretation of "Participation in a
                Venture" Under Sections 1595 and 1591(a)(2) Will Materially Advance
26              the Ultimate Termination of the Litigation.**

27          Immediate appeal of the Court's ruling on this controlling question of the meaning of

28  "participation in a venture" will also materially advance the litigation and save the parties and the

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

A078          17          TWITTER, INC.'S MOT. FOR
                          RECONSIDERATION OR CERT. ORDER
                          CASE NO. 3:21-CV-00485-JCS

1   Court significant expense. *Helman*, 2009 WL 2058541, at *6 ("Immediate appeal should be

2   granted where . . . [it] may spare the parties the burden of a trial that is expensive for them even if

3   not for the judicial system.").

4       Like the Section 230(e)(5)(A) issue discussed in section B, *supra*, reversal on appeal of the

5   Court's "participation in a venture" interpretation is likely to obviate the need for any discovery,

6   further motion practice, and trial. *See Ass'n of Irritated Residents*, 634 F. Supp. 2d at 1092–93. If,

7   for example, the Ninth Circuit construes Sections 1595 and 1591(a)(2) to require more than

8   conclusory suggestions of an undefined relationship between an ICS provider and a plaintiff's

9   unknown and unidentified traffickers, Plaintiffs will have failed to state a facially valid claim for

10  relief on their only remaining claim because they make no allegation of any relationship that

11  between Twitter and the traffickers or even that the traffickers posted the video on Twitter. Thus,

12  an immediate appeal could lead to the ultimate termination of the case. *See In re Cement Antitrust*

13  *Litig.*, 673 F.2d at 1020.

14  **V.**    **CONCLUSION**

15      Based on the foregoing, Twitter respectfully requests the Court grant leave for Twitter to

16  move for reconsideration of the Court's Order. Alternatively, Twitter respectfully requests that the

17  Court enter an order or amend its Order to allow Twitter to seek interlocutory appeal.

18  Dated: October 4, 2021          COOLEY LLP

19

20                      By: */s/ Michael G. Rhodes*

21                          Michael G. Rhodes

22                      *Attorneys for Defendant*
                        *Twitter, Inc.*

23

24

25

26

27

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

A079    18

TWITTER, INC.'S MOT. FOR
RECONSIDERATION OR CERT. ORDER
CASE NO. 3:21-CV-00485-JCS

1  COOLEY LLP
   MICHAEL G. RHODES (116127)
2  (rhodesmg@cooley.com)
   KATHLEEN HARTNETT (314267)
3  (khartnett@cooley.com)
   KYLE C. WONG (224021)
4  (kwong@cooley.com)
   3 Embarcadero Center 20th Floor
5  San Francisco, CA 94111-4004
   Telephone:    (415) 693-2000
6  Facsimile:    (415) 693-2222

7  LINH K. NGUYEN (305737)
   (lknguyen@cooley.com)
8  JAMIE D. ROBERTSON (326003)
   (jdrobertson@cooley.com)
9  4401 Eastgate Mall
   San Diego, California 92121
10 Telephone:    (858) 550-6000
   Facsimile:    (858) 550-6420

11
   Attorneys for Defendant
12 Twitter, Inc.

13                    UNITED STATES DISTRICT COURT

14                   NORTHERN DISTRICT OF CALIFORNIA

15                      SAN FRANCISCO DIVISION

16

17
   JOHN DOE #1 AND JOHN DOE #2,              Case No. 3:21-cv-00485-JCS
18
                      Plaintiff,             **DECLARATION OF LINH K. NGUYEN IN**
19                                           **SUPPORT OF DEFENDANT TWITTER, INC.'S**
          v.                                 **MOTION FOR LEAVE TO FILE MOTION FOR**
20                                           **RECONSIDERATION OR, IN THE**
   TWITTER, INC.,                            **ALTERNATIVE, MOTION FOR AN ORDER**
21                                           **PERMITTING INTERLOCUTORY APPEAL**
                      Defendant.             **PURSUANT TO 28 U.S.C. § 1292(b)**
22
                                             Hearing Date:    November 19, 2021
23                                           Hearing Time:    9:30 a.m.
                                             Judge:    Honorable Joseph C. Spero
24

25

26

27

28

I, Linh K. Nguyen, declare as follows:

1. I am an attorney licensed to practice law in California and am an associate at Cooley, LLP and counsel of record for Defendant Twitter, Inc. ("Twitter") in this matter. I make this declaration based on my personal knowledge of this matter and information I obtained following a reasonable investigation of the events described below. If called as a witness, I could and would testify competently to the matters stated herein.

2. **Exhibit A** is a true and correct copy of the draft Motion for Reconsideration Twitter intends to file if the Court grants Twitter's Motion for Leave to File for Reconsideration.

3. **Exhibit B** is a true and correct copy of the tentative order on defendant's motion to dismiss issued by the Honorable James V. Selna in the matter *Jane Doe et al. v. Reddit, Inc.*, Case No. 21-cv-768-JVS (C.D. Cal.) on September 17, 2021. In its tentative order, the court vacated the September 20, 2021 hearing date. On September 21, 2021, plaintiffs filed a request for a hearing. Defendant a response on September 29, 2021. At the time this declaration was filed, the court had not yet ruled on plaintiffs' request for a hearing.

4. **Exhibit C** is a true and correct copy of excerpts from the transcript of the August 6, 2021 hearing on Twitter's motion to dismiss Plaintiffs' First Amended Complaint.

5. Since the Court's August 19, 2021 Order issued, the parties met and conferred regarding their respective appellate options on August 20, August 25, and September 13, 2021.

6. On September 13, 2021, Twitter's counsel informed Plaintiffs' counsel that in light of Judge Gilliam's September 8, 2021 order in *J.B. v. G6 Hospitality, LLC*, 2021 WL 4079207 (N.D. Cal. Sept. 8, 2021), Twitter intended to seek leave to move for reconsideration of the Order or, in the alternative, seek certification of the Order for interlocutory appeal under 28 U.S.C. § 1292(b). Plaintiffs' counsel informed Twitter that Plaintiffs did not intend to seek reconsideration or appeal.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

A081

NGUYEN DECL. ISO MOT. FOR
LEAVE TO FILE REC. CERT
CASE NO. 3:21-CV-00485-JCS

I declare under penalty of perjury that the foregoing is true and correct. This declaration was executed on October 4, 2021 in San Diego, California.

/s/ *Linh K. Nguyen*
Linh K. Nguyen
.

Cooley LLP
Attorneys at Law
San Francisco

3

A082

Nguyen Decl. ISO Mot. for
Leave to File Rec. Cert
Case No. 3:21-CV-00485-JCS

# EXHIBIT A

1   COOLEY LLP
    MICHAEL G. RHODES (116127)
2   (rhodesmg@cooley.com)
    KATHLEEN HARTNET (314267)
3   (khartnett@cooley.com)
    KYLE C. WONG (224021)
4   (kwong@cooley.com)
    3 Embarcadero Center, 20th Floor
5   San Francisco, CA 94111-5800
    Telephone:    (415) 693-2000
6   Facsimile:    (415) 693-2222

7   LINH K. NGUYEN (305737)
    (lknguyen@cooley.com)
8   JAMIE D. ROBERTSON (326003)
    (jdrobertson@cooley.com)
9   4401 Eastgate Mall
    San Diego, California 92121
10  Telephone:    (858) 550-6000
    Facsimile:    (858) 550-6420

11

12  Attorneys for Defendant
    TWITTER, INC.

13

14              UNITED STATES DISTRICT COURT

15            NORTHERN DISTRICT OF CALIFORNIA

16               SAN FRANCISCO DIVISION

17

18  JOHN DOE #1 AND JOHN DOE #2,          |  Case No. 3:21-cv-00485-JCS

19              Plaintiffs,               |  **DEFENDANT TWITTER, INC.'S MOTION**
                                          |  **FOR RECONSIDERATION OF THE COURT'S**
20        v.                              |  **AUGUST 19, 2021 ORDER (ECF NO.  9)**

21  TWITTER, INC.,                        |  Hearing Date:      TBD
                                          |  Hearing Time:      9:30 a.m.
22              Defendants.               |  Judge:      Honorable Joseph C. Spero

23

24

25

26

27

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

TWITTER, INC.'S MOTION FOR
RECONSIDERATION
Case No. 3:21-cv-00485-JCS

# TABLE OF CONTENTS

Page

NOTICE OF MOTION ........................................................................................................... 1

STATEMENT OF RELIEF SOUGHT .................................................................................... 1

STATEMENT OF ISSUES TO BE DECIDED ...................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................ 2

I. INTRODUCTION ......................................................................................................... 2

II. BACKGROUND ........................................................................................................... 3

III. ARGUMENT ................................................................................................................ 3

A. THE COURT HAS INHERENT AUTHORITY TO RECONSIDER THE ORDER. .................................................................................................... 3

B. THE COURT SHOULD RECONSIDER ITS CONCLUSION THAT SECTION 230(E)(5)(A) DOES NOT REQUIRE PLAINTIFFS TO PLEAD THAT TWITTER VIOLATED SECTION 1591 ...................................... 4

1. NEW AUTHORITY ON THE PROPER STATUTORY CONSTRUCTION OF SECTION 230(E)(5)(A) WARRANTS RECONSIDERATION OF THE ORDER. ..................................................... 4

2. *J.B.'S* LEGISLATIVE HISTORY ANALYSIS WARRANTS RECONSIDERATION OF THE ORDER. ..................................................... 7

3. THE ORDER'S INTERPRETATION OF SECTION 230(E)(5)(A) UNDERMINES CONGRESSIONAL INTENT. ...................................... 10

C. THE COURT SHOULD RECONSIDER ITS CONCLUSION THAT FUTURE POSTINGS OF THE VIDEOS CONSTITUTE A FUTURE "COMMERCIAL SE   ACT" UNDER SECTION 1591. ................................... 13

D. THE COURT SHOULD RECONSIDER ITS CONCLUSION THAT PLAINTIFFS ADEQUATELY ALLEGED A "CONTINUOUS BUSINESS RELATIONSHIP" BETWEEN TWITTER AND THE PERPETRATORS. ....................................................................................... 15

IV. CONCLUSION .......................................................................................................... 18

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

TWITTER, INC.'S MOTION FOR
RECONSIDERATION
Case No. 3:21-cv-00485-JCS

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abada v. Charles Schwab & Co., Inc.*,
127 F. Supp. 2d 1101 (S.D. Cal. 2000) ...................................................................... 4

*Amarel v. Connell*,
102 F.3d 1494 (9th Cir. 1996) ................................................................................. 4

*B.M. v. Wyndham Hotels & Resorts, Inc.*,
2020 WL 4368214 (N.D. Cal. July 30, 2020) ......................................................... 17

*Carafano v. Metrosplash.com, Inc.*,
339 F.3d 1119 (9th Cir. 2003) ................................................................................. 13

*Cave Consulting Grp., Inc. v. OptumInsight, Inc.*,
2020 WL 127612 (N.D. Cal. Jan. 10, 2020) .................................................. 5, 7, 14

*Colaprico v. Sun Microsystems, Inc.*,
1991 WL 330923 (N.D. Cal. July 12, 1991) ................................................... 4, 7, 8

*Crab Boat Owners Ass'n v. Hartford Ins. Co. of the Midwest*,
2004 WL 2600455 (N.D. Cal. Nov. 15, 2004) ................................................. 4, 10

*Doe By & Through Doe v. Petaluma City Sch. Dist.*,
949 F. Supp. 1415 (N.D. Cal. 1996) ................................................................. 4, 5

*Doe v. Kik Interactive, Inc.*,
482 F. Supp. 3d 1242 (S.D. Fla. 2020) ............................................................. 4, 5

*Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*,
521 F.3d 1157 (9th Cir. 2008) ..................................................................... 10, 11, 12

*Goddard v. Google, Inc.*,
2008 WL 5245490 (N.D. Cal. Dec. 17, 2008) ........................................................ 12

*J.B. v. G6 Hosp., LLC*,
2020 WL 4901196 (N.D. Cal. Aug. 20, 2020) .................................... 12, 16, 17, 18

*J.B. v. G6 Hospitality, LLC*,
2021 WL 4079207 (N.D. Cal. Sept. 8, 2021) ................................................. passim

*J.C. v. Choice Hotels Int'l, Inc.*,
2020 WL 6318707 (N.D. Cal. Oct. 28, 2020) ........................................................ 17

*Jane Doe v. Reddit, Inc.*,
Case No. 21-cv-768-JVS (C.D. Cal. Sept. 17, 2021).................................. 2, 5, 16, 17

*M.A. v. Wyndham Hotels & Resorts, Inc.*,
425 F. Supp. 3d 959 (S.D. Ohio 2019).................................................... 6, 16, 17

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Powerex Corp. v. Reliant Energy Servs., Inc.*,
 551 U.S. 224 (2007) ............................................................................................... 6

*Ricchio v. McLean*,
 853 F.3d 553 (1st Cir. 2017) ............................................................................... 17

*Robinson v. Shell Oil Co.*,
 519 U.S. 337 (1997) ............................................................................................... 6

*Stratton Oakmont, Inc. v. Prodigy Servs. Co.*,
 1995 WL 323710 (N.Y. Sup. Ct. May 24, 1995) .............................................. 11

*United States v. Casasola*,
 670 F.3d 1023 (9th Cir. 2012) ............................................................................... 7

*United States v. Todd*,
 627 F.3d 329 (9th Cir. 2010) ......................................................................... 3, 15

**Statutes**

18 U.S.C.
 § 1591(a) ............................................................................................................. 13
 § 1591(a)(2) ........................................................................................................ 13
 § 1591(e)(3) ........................................................................................................ 14
 § 1595 ................................................................................................................... 16

47 U.S.C. § 230(b) ....................................................................................................... 7

**Other Authorities**

164 CONG. REC. H1302 (daily ed. Feb. 27, 2018) ................................................ 10

164 CONG. REC. H1303 (daily ed. Feb. 27, 2018) ................................................ 10

164 CONG. REC. S1849 (daily ed. March 21, 2018) .............................................. 10

H.R. 1865, 115th Cong. § 4 (as introduced, Apr. 3, 2017) ...................................... 8

H.R. REP. NO. 115-572 (2018) ........................................................................... 9, 10

H.R. REP. NO. 115-583 (2018) .............................................................................. 10

Hearing on S. 1693 Before the Comm. on Commerce, Sci., and Transp., 115 Cong. 7 (2017) ..... 8

*The Latest Developments in Combating Online Sex Trafficking*, Hearing on S. 1693 Before the
 Subcomm. on Commc'ns and Tech., 115 Cong. 7 (2017) ........................................ 9

Local Civil Rule 7-9 .............................................................................................. 1, 3

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**NOTICE OF MOTION**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD: PLEASE TAKE NOTICE THAT**, at a time to be set by the Court, in Courtroom F of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA, 94102, Defendant Twitter, Inc. ("Twitter") will, and hereby does, move under Local Rule 7-9(b), for reconsideration of the Court's August 19, 2021 order denying in part Twitter's motion to dismiss (ECF No. 69, or the "Order").  This motion is based on this Notice of Motion; the accompanying Memorandum of Points and Authorities; the Declaration of Linh K. Nguyen in Support of Defendant Twitter, Inc.'s Motion for Leave to File Motion For Reconsideration or, in the Alternative, Motion for an Order Permitting Interlocutory Appeal Pursuant to 28 U.S.C. § 1292(B) and its exhibits; the pleadings and papers on file in this matter, including the Motion for Leave to File Motion for Reconsideration or, in the Alternative, Motion for an Order Permitting Interlocutory Appeal Pursuant to 28 U.S.C. § 1292(B) and accompanying papers; and such other matters as may be presented to the Court at any hearing the Court may choose to hold on this motion.

## STATEMENT OF RELIEF SOUGHT

Twitter seeks reconsideration of the Order denying Twitter's motion to dismiss Claim Two of the First Amended Complaint (ECF No. 39, or FAC), in which Plaintiffs allege beneficiary liability against Twitter under 18 U.S.C. Sections 1595 and 1591(a)(2).  If the Court denies reconsideration, Twitter alternatively requests the Court certify its Order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b) for the reasons explained in Twitter's Motion for Leave to File the Motion for Reconsideration or, in the Alternative, Motion for an Order Permitting an Interlocutory Appeal Pursuant to 28 U.S.C. § 1292(b).

## STATEMENT OF ISSUES TO BE DECIDED

Twitter respectfully submits that reconsideration should be granted because: (1) Plaintiffs must allege a violation of Section 1591 to trigger the immunity carve-out of Section 230(e)(5)(A); (2) the posting of the Videos by a third party neither constitutes a "commercial sex act" under Section 1591 nor shows that Twitter knowingly caused Plaintiffs to engage in future commercial

Cooley LLP
Attorneys at Law
San Francisco

A088

1

Twitter, Inc.'s Motion for
Reconsideration
Case No. 3:21-cv-00485-JCS

1   sex acts; and (3) Plaintiffs did not plead a continuous business relationship as required to establish

2   a venture between Twitter and Plaintiffs' alleged traffickers under Section 1595.

3   <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

4   **I.    INTRODUCTION**

5           Twitter respectfully requests reconsideration of the Order on the following three grounds.

6           First, persuasive subsequent authority, detailed below, elucidates why the Order

7   erroneously denied Twitter immunity based on the immunity carve-out in Section 230(e)(5)(A).

8   The Order ruled that Plaintiffs are "not subject to the more stringent requirements that apply to

9   criminal violations of that provision" in order to trigger the Section 230(e)(5)(A) carve-out. (Order

10  at 42.)  Since the Order, however, two other courts in the Ninth Circuit have issued rulings to the

11  contrary reasoning that the carve-out applies only if the "more stringent requirements" for a

12  criminal violation are met: (1) Judge Gilliam in *J.B. v. G6 Hospitality, LLC*, 2021 WL 4079207, at

13  \*4-12 (N.D. Cal. Sept. 8, 2021), which reconsidered his earlier decision reaching the opposite

14  conclusion; and (2) Judge Selna in his tentative order in *Jane Doe v. Reddit, Inc*., Case No. 21-cv-

15  768-JVS (C.D. Cal. Sept. 17, 2021), attached as Exhibit B.  Twitter respectfully submits that the

16  extensive statutory construction and legislative history analysis in *J.B.*, which followed briefing by

17  the parties on the issue, warrants this Court's reconsideration of the Order and provides strong

18  support for the conclusion that "the most persuasive reading of [S]ection 230(e)(5)(A) is that it

19  provides an exemption from immunity for a section 1595 claim ***if, but only if***, the defendant's

20  conduct amounts to a violation of section 1591." *J.B*, 2021 WL 4079207, at \*12.[1]

21          Second, the Court erroneously ruled that Plaintiffs sufficiently alleged the required element

22  under Section 1591(a) that Twitter knew its conduct would cause Plaintiffs to engage in future

23  "commercial sex acts" for purposes of Section 1591(a)(2).  The Court reached this conclusion by

24  misconstruing Twitter's statements at oral argument as a concession that posting child pornography

25  is itself a "commercial sex act," but Twitter made no such concession and the Court's ruling is

26  contrary to the definition of "commercial sex act" under Section 1591(a)(2), which does not include

27  the posting of depictions of sex acts.  In determining that Plaintiffs sufficiently pled Twitter's

28

---

[1] Unless otherwise noted, all emphasis is added, and all internal quotation marks and citations are omitted.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

A089                              2

TWITTER, INC.'S MOTION FOR
RECONSIDERATION
CASE NO. 3:21-CV-00485-JCS

knowledge, the Court also incorrectly applied *United States v. Todd*, 627 F.3d 329, 334 (9th Cir. 2010); Twitter's conduct as pled could not cause Plaintiffs to engage in future commercial sex acts because Plaintiffs allegedly cut off contact with the traffickers long before Twitter was ever involved.

Third, the Court incorrectly concluded that Twitter participated in a Section 1595 venture with Plaintiffs' alleged sex traffickers even though there was no "continuous business relationship"—namely, no allegation in the FAC that the Perpetrators ever used Twitter, let alone were the people behind the accounts that posted the Videos on Twitter.

In light of the intervening rulings cited herein and errors identified in this motion, Twitter respectfully requests that the Court reconsider the Order's resolution of Claim Two and grant Twitter's motion to dismiss that claim.

## II. BACKGROUND[2]

To streamline the Court's review, Twitter incorporates by reference the Background section of the Motion for Leave to File Motion for Reconsideration or, in the Alternative, Motion for an Order Permitting an Interlocutory Appeal Pursuant to 28 U.S.C. § 1292(b).

## III. ARGUMENT

### A. The Court Has Inherent Authority to Reconsider the Order.

Pursuant to Local Civil Rule 7-9, a party may obtain leave to move for reconsideration of an interlocutory order upon a showing of "reasonable diligence in bringing the motion" and either of the following circumstances: the "emergence of new material facts or a change of law occurring after the time of such order" or a "manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court[.]" L.R. 7-9(b)(2), (b)(3).[3] Twitter has separately sought leave to file this motion pursuant to this Local Rule. *See* Twitter's Motion

---

[2] Capitalized terms not defined herein have the meanings ascribed to them in Twitter's Motion to Dismiss and Motion for Leave to File Motion for Reconsideration or, in the Alternative, Motion for an Order Permitting an Interlocutory Appeal Pursuant to 28 U.S.C. § 1292(b).

[3] Local Civil Rule 7-9(b)(1) also allows for a motion for reconsideration to be filed if "a material difference in fact or law exists from that which was presented to the Court before entry of the interlocutory order" and the movant "did not know such fact or law at the time" despite the exercise of reasonable diligence; this provision does not apply here.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

A090    3

TWITTER, INC.'S MOTION FOR
RECONSIDERATION
CASE NO. 3:21-CV-00485-JCS

1  to Dismiss and Motion for Leave to File Motion for Reconsideration or, in the Alternative, Motion

2  for an Order Permitting an Interlocutory Appeal Pursuant to 28 U.S.C. § 1292(b).

3       Upon a properly filed motion, Northern District courts grant reconsideration where, among

4  other things, "there has been an intervening change of law" or where it is "necessary to correct a

5  clear error of law[.]" *Doe By & Through Doe v. Petaluma City Sch. Dist*., 949 F. Supp. 1415, 1417

6  (N.D. Cal. 1996) (reconsidering order on basis that "several new [persuasive] cases . . . have been

7  decided since this Court's order"); *Colaprico v. Sun Microsystems, Inc.*, 1991 WL 330923, at *1

8  (N.D. Cal. July 12, 1991) (considering a "well-reasoned and thoroughly researched" decision from

9  the California Court of Appeal); *Crab Boat Owners Ass'n v. Hartford Ins. Co. of the Midwest*, 2004

10  WL 2600455, at *2 (N.D. Cal. Nov. 15, 2004) (granting reconsideration where the court committed

11  legal error).  The Court has inherent authority to reconsider its previous interlocutory orders.  *See,*

12  *e.g.*, *Abada v. Charles Schwab & Co., Inc*., 127 F. Supp. 2d 1101, 1102 (S.D. Cal. 2000) ("A district

13  court may reconsider and reverse a previous interlocutory decision for any reason it deems

14  sufficient, even in the absence of new evidence or an intervening change in or clarification of

15  controlling law."); *see also Amarel v. Connell*, 102 F.3d 1494, 1515 (9th Cir. 1996).

**B.     The Court Should Reconsider Its Conclusion That Section 230(e)(5)(A) Does Not Require Plaintiffs to Plead That Twitter Violated Section 1591.**

1.     *New authority on the proper statutory construction of Section 230(e)(5)(A) warrants reconsideration of the Order.*

19       The Court concluded in the Order that Section 230(e)(5)(A)'s immunity carve-out did not

20  require Plaintiffs to plead that Twitter violated Section 1591.  (Order at 38-41.)  However, the

21  Order's statutory construction was based largely upon the Court's own analysis and disagreement

22  with *Doe v. Kik Interactive, Inc.*, 482 F. Supp. 3d 1242, 1250-51 (S.D. Fla. 2020), following

23  questions first raised by the Court at oral argument.  The parties' briefing did not directly or at any

24  length address the application of statutory construction doctrines to Section 230(e)(5)(A).

25  Plaintiff's Opposition addressed the statute's meaning in one sentence of a footnote that lacked

26  legal authority, and the parties' briefing discussed the legislative history in a general way, rather

27  than specifically directed at the statutory construction issues addressed by the Order.[4]

28

---

[4] *See* Motion for Leave to File Motion for Reconsideration or, in the Alternative, Motion for an Order Permitting an Interlocutory Appeal Pursuant to 28 U.S.C. § 1292(b), at 3-5.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

A091    4

TWITTER, INC.'S MOTION FOR
RECONSIDERATION
CASE NO. 3:21-CV-00485-JCS

1    Reconsideration of the Court's construction of Section 230(e)(5)(A) is thus appropriate here

2    in light of Judge Gilliam's recent decision in *J.B. v. G6 Hospitality*, which is a change in law

3    containing a highly pertinent, detailed, and persuasive statutory construction analysis that conflicts

4    with the Order and holds that Section 1591 must be satisfied to trigger Section 230(e)(5)(A)'s

5    immunity carve-out.  The new *J.B.* ruling itself is a reconsideration of Judge Gilliam's earlier order

6    reaching the opposite conclusion.  It also is far more extensive and comprehensive than the *Kik*

7    analysis and takes into consideration factors that neither this Court nor the *Kik* court examined.

8    *Compare* 2021 WL 4079207, at \*5-7, *with Kik*, 482 F. Supp. 3d at 1251.  The new *J.B.* ruling also

9    followed adversarial briefing that raised arguments not presented to the Court in this matter.  This

10   further supports reconsideration given that the Court's reasoning in the Order stemmed from its *sua*

11   *sponte* consideration of arguments not advanced or briefed by either party.  *See Petaluma City Sch.*

12   *Dist.*, 949 F. Supp. at 1417; *see Cave Consulting Grp., Inc. v. OptumInsight, Inc.*, 2020 WL 127612,

13   at \*2-5 (N.D. Cal. Jan. 10, 2020) (Spero. J) (granting reconsideration based on the movant's

14   argument that the Court granted judgment on an issue not briefed by the parties).  Notably, Judge

15   Selna has issued a tentative order in the Central District *Reddit* case endorsing Judge Gilliam's

16   analysis, and agreeing with Judge Gilliam that this was the "most persuasive reading of Section

17   230(e)(5)(A)[.]"  (Ex. B at 11.)

18   Examining the statutory plain language, Judge Gilliam reasoned that "the most

19   straightforward reading [of Section 230(e)(5)(A) is] that the provision provides an exemption from

20   CDA immunity for a section 1595 claim if the civil defendant's conduct amounts to a violation of

21   section 1591." *J.B.*, 2021 WL 4079207, at \*6.  Judge Gilliam rejected the plaintiff's argument that

22   Section 230(e)(5)(A)'s second clause (*i.e.*, "if the conduct underlying the claim constitutes a

23   violation of section 1591 of that title") merely served to limit FOSTA's exemption to Section 1595

24   claims arising from sex trafficking (as opposed to other claims like forced labor or peonage), and

25   observed that, if that had been Congress's intent, there were far less confusing ways for Congress

26   to draft Section 230(e)(5)(A)'s second clause so that it would encompass that meaning.  *See id.*

27   ("[I]if Congress meant to exempt all claims involving sex trafficking, it could have said 'if the

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

A092    5

TWITTER, INC.'S MOTION FOR
RECONSIDERATION
CASE NO. 3:21-CV-00485-JCS

claim arises out of a violation of section 1591,' or 'if the plaintiff is a victim of a violation of section 1591.'").

Judge Gilliam also held that a narrow interpretation of Section 230(e)(5)(A) is supported by "the specific context in which that language is used." *See id*. (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)). Specifically, Judge Gilliam took note of the nearly identical language used in the second clauses of sections 230(e)(5)(A), (B), and (C), and observed that the language in subparts (B) and (C)—"'if the conduct underlying the charge'—"necessarily refers to the conduct of the [named] defendant" in a criminal prosecution. *See J.B.*, 2021 WL 4079207, at *6. Judge Gilliam concluded that Section 230(e)(5)(A) should be read in parallel with subparts (B) and (C) because, "[n]otwithstanding the obvious differences between civil claims and criminal charges," the fact that "Congress included nearly identical language in the same subsection, at the same time, strongly suggests that it intended to give the 'conduct underlying' phrases the same meaning." *Id*. (citing *Powerex Corp. v. Reliant Energy Servs., Inc.*, 551 U.S. 224, 232 (2007)). What is more, as Judge Gilliam noted, this statutory construction doctrine is "'***doubly appropriate***' where a phrase 'was inserted into' two provisions 'at the same time.'" *J.B.*, 2021 WL 4079207, at *6.[5]

Judge Gilliam's analysis also observed that FOSTA amended Section 1595 to "authoriz[e] state attorneys general to bring *parens patriae* civil actions against 'any person who violates section 1591.'" *Id*. at *7. He determined that "it would be unreasonable to conclude that Congress would allow state attorneys general to sue only 'direct violators' of section 1591, while allowing private plaintiffs to sue civil defendants who only violated section 1595 based on the application of a

---

[5] "[T]here are exceptions to the general presumption that words have the same meaning in a statute," including when "there is such variation in the connection in which the words are used as reasonably to warrant the conclusion that they" should be interpreted differently. *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 969 (S.D. Ohio 2019). No such exception applies here. In *M.A.*, as the Court observed in its Order (Order at 41 n.4), the court was analyzing the phrase "participation in venture," which is in both Sections 1591 and 1595. *Id*. The court concluded that an exception applied because there was material variation in the connection in which the phrase was used in Sections 1591 and 1595, as "the former does not have not have a constructive knowledge element manifested by 'should have known' language." *Id*. The *M.A.* court also noted that Section 1591(e)(4) expressly states that the definition of "participation in a venture" in Section 1591 "only appl[ies] to" Section 1591. *Id*. Here, unlike the statutory provisions to which the exception was applied in *M.A.*, there is only an immaterial variation in language between sections 230(e)(5)(A), (B), and (C), and nothing in FOSTA indicates the three subparts should be interpreted differently.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

A093     6     TWITTER, INC.'S MOTION FOR
RECONSIDERATION
CASE NO. 3:21-CV-00485-JCS

1  constructive knowledge standard." *Id*. Such a conclusion would violate the interpretive precept

2  that "courts do not construe statutes in a manner that would lead to absurd" or "unreasonable

3  result[s]." *See id*. (quoting *United States v. Casasola*, 670 F.3d 1023, 1029 (9th Cir. 2012)).

4  Finally, while FOSTA is a remedial statute, Judge Gilliam concluded that his (and

5  Twitter's) interpretation still satisfied FOSTA's "remedial purpose" because it allows sex

6  trafficking victims to "pursue a subset of claims that were previously barred" against ICS

7  providers—namely those that satisfy the requirements of Section 1591 regardless of who created

8  the content at issue. *See J.B.*, 2021 WL 4079207, at *6 (citing Order at 40 (noting that FOSTA is

9  a remedial statute that "should be liberally construed"). Moreover, Judge Gilliam noted that a

10  narrow interpretation of Section 230(e)(5)(A), which is located within CDA § 230, is "facially

11  consistent with the CDA's stated policies 'to preserve the vibrant and competitive free market that

12  presently exists for the Internet and other interactive computer services, unfettered by Federal or

13  State regulation.'" *See J.B.*, 2021 WL 4079207, at *12 (citing 47 U.S.C. § 230(b)).

14  Given that *J.B.* issued after the Court's Order and is "well-reasoned and thoroughly

15  researched," it is a change in law that merits reconsideration of the Order. *See Colaprico*, 1991

16  WL 330923, at *1. Further warranting reconsideration here is that the Order pertains to statutory

17  construction issues first raised by the Court at oral argument and thereafter resolved by the Court

18  without further briefing (Order at 39-41), as neither party's papers addressed the canons of statutory

19  construction in light of Plaintiffs' one-sentence in a footnote opposing Twitter's interpretation of

20  § 230(e)(5)(A) without any citation to legal authority. (*See* Opp. at 16 n.35.) This Court has

21  previously granted reconsideration in a similar situation, when it ruled on an issue that was touched

22  on by the parties but not briefed. *See Cave Consulting Grp.*, 2020 WL 127612, at *4-5 (noting

23  reconsideration was appropriate where the Court "acted sua sponte on an issue *not* raised by the

24  parties" even though the parties had presented arguments that "touched on evidence relevant to the

25  [] inquiry" (emphasis in original)).

26  2. *J.B.'s legislative history analysis warrants reconsideration of the Order.*

27  Reconsideration of the Court's order is also appropriate in light of Judge Gilliam's

28  comprehensive analysis of FOSTA's legislative history. As previously noted, the parties' briefing

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

A094

7

TWITTER, INC.'S MOTION FOR
RECONSIDERATION
CASE NO. 3:21-CV-00485-JCS

regarding FOSTA's legislative history largely focused on whether Congress intended FOSTA's exemption only to apply to companies like Backpage or more broadly. (*See, e.g.*, Mot. at 5; Opp. at 17-18 (arguing "the Congressional record overall does not indicate an intent for the exception to be limited to actors as deliberate and organized as Backpage").) Based on this limited briefing, the Order concluded that FOSTA's legislative history was inconclusive and did not shed light on whether Section 230(e)(5)(A) required a plaintiff to meet Section 1591's "knowingly" standard. (Order at 41-42.)

*J.B.* represents a change of law as it is the first comprehensive examination of Section 230(e)(5)(A)'s legislative history, beginning from the initial pieces of legislation all the way through to enactment, making clear that Congress intended Section 230(e)(5)(A) to limit immunity only where the plaintiff adequately alleges the defendant "knowingly" engaged in sex trafficking or "knowingly" facilitated a sex trafficking venture. *See Colaprico*, 1991 WL 330923, at *1 (granting reconsideration in light of a "well-reasoned and thoroughly researched" intervening ruling). And, when viewed within the broader history of FOSTA that Judge Gilliam also detailed, it becomes apparent that the numerous statements referenced by the parties and amici in this case are consistent with that conclusion.

To start, Judge Gilliam noted that FOSTA's evolution began with two separate House and Senate bills, H.B. 1865 and S.B. 1693, both of which "contained more expansive, victim-centered provisions," that excepted **all** Section 1595 claims from CDA § 230 immunity. *J.B.*, 2021 WL 4079207, at *8. H.B. 1865 also "broadly defined 'participation in a venture' to 'include[ ] knowing or reckless conduct[.]'" *Id.* (quoting H.R. 1865, 115th Cong. § 4 (as introduced, Apr. 3, 2017)). At the legislative hearing on S.B. 1693, witnesses and members of Congress debated whether a constructive knowledge standard was appropriate because while the "knowing standard" is a "high bar," there was "concern about frivolous litigation targeting legitimate, law-abiding intermediaries, [if] civil liability is unbounded by any actual knowledge or participation in trafficking." *See J.B.,* 2021 WL 4079207, at *8-9 (quoting SESTA, Hearing on S. 1693 Before the Comm. on Commerce, Sci., and Transp., 115 Cong. 7 (2017)).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

A095        8

TWITTER, INC.'S MOTION FOR
RECONSIDERATION
CASE NO. 3:21-CV-00485-JCS

Shortly thereafter, Senator John Thune presented an amended version of S.B. 1693, which "included many of the provisions that would later be incorporated into FOSTA[]." *J.B.*, 2021 WL 4079207, at *8-9. As amended, S.B. 1693 provided that Section 1595 claims would be exempt from immunity "if the conduct underlying the claim constitutes a violation of [S]ection 1591[.]" *Id.* It also "amended [S]ection 1595 to add a *parens patriae* provision authorizing state attorneys general to bring civil actions against 'any person who violates [S]ection 1591.'" *Id.* A committee report explained that Senator Thune's bill "would eliminate section 230 as a defense for websites that **_knowingly_** facilitate sex trafficking." *Id.* This conclusion was supported at a Subcommittee on Communications and Technology of the Committee on Energy and Commerce hearing during which Congresswoman Ann Wagner "indicated that under [Senator Thune's bill], the 'federal civil carve-out **_has been narrowed_** and is now based on the '**_knowingly_**' mens rea standard.'" *Id.* at *10 (quoting *The Latest Developments in Combating Online Sex Trafficking*, Hearing on S. 1693 Before the Subcomm. on Commc'ns and Tech., 115 Cong. 7 (2017)).

Congressman Bob Goodlatte later proposed an amended H.B. 1865, which included an additional "federal offense concerning the promotion of prostitution and **_reckless disregard_** of sex trafficking, and exclude[ed] the proposed [civil sex trafficking exemption] to the CDA[.]" *J.B.*, 2021 WL 4079207, at *10 (citing H.R. REP. NO. 115-572 (2018)). The new federal offense proposed by Goodlatte, which had a lower *mens rea* and (unlike Section 1591) was **_not_** part of the proposed CDA § 230 carve-out, became part of FOSTA as enacted (codified at 18 U.S.C. § 2421A), included a civil recovery provision, and represented Congress's compromise for keeping the Sections 1595/1591 carve-out from § 230 narrow and pegged to "knowing" conduct. *See J.B.*, 2021 WL 4079207, at *11. The committee report on Congressman Goodlatte's proposal "explained that '[p]rostitution and sex trafficking are inextricably linked,' and that a 'new statute that instead targets promotion and facilitation of prostitution is far more useful to prosecutors'" than Section 1591. *Id.* at *10. Congresswoman Mimi Walters "later introduced another amendment to [H.B. 1865] that included the enactment of a new federal offense concerning prostitution, but also incorporated elements from [Senator Thune's proposed amendment to S.B. 1693], including the **_narrowed_** federal civil sex trafficking carve-out and the definition of 'participation in a venture.'"

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

A096    9

TWITTER, INC.'S MOTION FOR
RECONSIDERATION
CASE NO. 3:21-CV-00485-JCS

1    *Id*. at *11.  A committee report "summarized the Walters amendment as '[a]llow[ing] enforcement

2    of criminal and civil sex trafficking laws against websites that ***knowingly*** facilitate online sex

3    trafficking.'"  *Id*. (quoting H.R. REP. NO. 115-583, at 2 (2018)).

4         On February 26, 2018, the House Rules Committee took up both the Goodlatte and Walters

5    amendments, and the combined bill that became known as FOSTA passed the House on February

6    27, 2018, and the Senate on March 21, 2018.  *J.B*., 2021 WL 4079207, at *11.  Congresswoman

7    Wagner observed—"consistent with others' previous statements concerning the federal civil sex

8    trafficking carve-out"—that "[n]o website is immune from civil liability for ***knowingly*** facilitating

9    the sale of trafficking victims."  *Id*. (quoting 164 CONG. REC. H1303 (daily ed. Feb. 27, 2018)).

10   Congresswoman Walters made the same observation: "[FOSTA] will allow enforcement of

11   criminal and civil sex trafficking laws against websites that ***knowingly*** facilitate online sex

12   trafficking activities."  *J.B*., 2021 WL 4079207, at *11 (quoting 164 CONG. REC. H1302 (daily

13   ed. Feb. 27, 2018)).

14        After conducting this "in-depth" analysis of FOSTA's legislative history, Judge Gilliam

15   concluded that "Congress ***reached a compromise*** by including a ***narrowed*** federal civil sex

16   trafficking carve-out that requires plaintiffs to show the civil defendant's ***knowing*** assistance,

17   support or facilitation, while also enacting a criminal offense (now codified at 18 U.S.C. § 2421A)

18   that, at least in theory, targets bad actor websites and includes a civil recovery provision."  *J.B*.,

19   2021 WL 4079207, at *10-11 (citing 164 CONG. REC. S1849, at S1857 (daily ed. March 21,

20   2018)).

21             3.    *The Order's interpretation of Section 230(e)(5)(A) undermines*
22                   *Congressional intent.*

23        It is undisputed that Congress's purpose in enacting CDA § 230 was to encourage platforms

24   like Twitter to self-police.  *See Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*,

25   521 F.3d 1157, 1163 (9th Cir. 2008) (noting that CDA § 230 was enacted to overturn a court holding

26   that punished the internet platform defendant for its "decision to perform some voluntary self-

27   policing").  Yet the Court's Order, which holds that ICS providers may be held liable for participation

28   in sex trafficking ventures under a negligence standard, directly frustrates and contradicts Congress's

     purpose in enacting CDA § 230.  Reconsideration is necessary to correct this error, *see Crab Boat*

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

*Owners Ass'n*, 2004 WL 2600455, at *2, particularly given the legislative history just discussed, which indicates that Congress intended no such result in passing FOSTA. (*See supra* Section III.B.2.)

The catalyst for CDA § 230 was a decision by a New York state court in the 1990s: *Stratton Oakmont, Inc. v. Prodigy Servs. Co.*, 1995 WL 323710 (N.Y. Sup. Ct. May 24, 1995). (Reply at 12-14.) In *Stratton Oakmont*, the defendant was held liable as a publisher for unlawful third-party messages that it "failed to delete" from its message board "*because*" it "voluntarily deleted some messages" but not all. *Roommates*, 521 F.3d at 1163. As Twitter noted, *Stratton-Oakmont* provided a perverse incentive to ICS providers to "bury their heads in the sand and ignore problematic posts altogether [to] escape liability." (Reply at 12-14 (quoting *Roommates*, 521 F.3d at 1163).)

Respectfully, the Court's interpretation of § 230(e)(5)(A) did not give sufficient consideration to this bedrock principle of CDA § 230 jurisprudence—particularly when viewed in light of FOSTA's complete legislative history, which indicates no intent to undermine that principle, but, to the contrary, to protect it. (*See supra* Section III.B.2.) While Section 230(e)(5)(A) was enacted as part of FOSTA as remedial statute, it is located within CDA § 230 and therefore, its interpretation must fit within the existing framework established around CDA § 230's original purpose. *See J.B.*, 2021 WL 4079207, at *12 (interpreting Section 230(e)(5)(A) so that it "is [] facially consistent with the CDA's stated policies" in Section 230(b)); *see also Roommates*, 521 F.3d at 1163-64 (discussing *Stratton-Oakmont* and analyzing plaintiff's claim "[w]ith th[at] backdrop in mind"). Yet interpreting Section 230(e)(5)(A) to subject ICS providers to a negligence standard (Order at 42-47) indisputably recreates that same perverse incentive that Congress sought to avoid. *See Roommates*, 521 F.3d at 1163 (explaining that "[i]n passing section 230, Congress sought to spare interactive computer services" from the "grim choice" between "taking responsibility for all messages" by "perform[ing] some editing on user-generated content" or "deleting no messages at all"). As embodied in Section 230, a negligence standard is unworkable for ICS providers because it does not consider the volume of third-party content that ICS providers like Twitter must moderate. Plaintiffs themselves allege that Twitter has over ***330 million*** users who post hundreds of millions of third-party content every day. (FAC ¶ 23.) There is simply no

Cooley LLP
Attorneys at Law
San Francisco

A098    11

Twitter, Inc.'s Motion for
Reconsideration
Case No. 3:21-CV-00485-JCS

practicable way that Twitter—or any company—could moderate hundreds of millions of posts every day, let alone without making mistakes along the away. Such a standard also conflicts with the purpose underlying CDA § 230: "Congress sought to spare [ICS providers] . . . by allowing them to [police their platform] without [] becoming liable for all . . . unlawful messages that they didn't . . . delete." *Roommates*, 521 F.3d at 1163; *see also Goddard v. Google, Inc.*, 2008 WL 5245490, at *6 (N.D. Cal. Dec. 17, 2008) (noting that the "intent of Congress" in enacting CDA § 230 "was to encourage efforts by Internet service providers to eliminate [unlawful] material by immunizing them from liability **where those efforts failed**").

Compounding the Order's undermining of CDA § 230's intent, the Order gave unduly broad interpretation to Section 1595's "should have known" standard, which the Court deemed sufficient to trigger the immunity carve out of Section 230(e)(5)(A). Specifically, the Order determined that Plaintiffs sufficiently alleged that Twitter participated in a Section 1595 venture with Plaintiffs' alleged sex traffickers even though there is no allegation that the Perpetrators posted the Videos to Twitter's platform or that they even used Twitter. (*See* Ex. C, Tr. at 31-32 (stating that Plaintiffs do not know who posted the Videos onto Twitter's platform).) Instead, the Court found it sufficient that Twitter was allegedly aware of sex trafficking content generally on its platform and received notice of specific content that it did not immediately take down. (Order at 42-44.) However, as Judge Gilliam recognized in a portion of his prior *J.B.* ruling unaffected by the new order, concluding that an ICS provider "enters into tacit agreements with all traffickers" whose content somehow ends up on the provider's platform "would mean that all web[-]based communications platforms have a legal duty to inspect every single user-generated message before it is communicated to a single person . . . lest such platforms be deemed to have participated in [sex trafficking] venture[s]." *See J.B. v. G6 Hosp., LLC*, 2020 WL 4901196, at *9 (N.D. Cal. Aug. 20, 2020). According to Judge Gilliam "there [was] no indication that Congress intended to create such a duty [with Section 230(e)(5)(A)], or that it would be reasonable in light of the volume of posts generated by third parties daily." *Id*. This conclusion is reinforced by Judge Gilliam's recent analysis of Section 230(e)(5)(A)'s legislative history, which demonstrates that Congress deliberately limited Section 230(e)(5)(A)'s carve-out to conduct that violated Section 1591 because

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

A099    12

TWITTER, INC.'S MOTION FOR
RECONSIDERATION
CASE NO. 3:21-CV-00485-JCS

there were concerns about "frivolous litigation targeting legitimate, law-abiding [ICS providers if] civil liability is unbounded by any actual knowledge or participation in [sex] trafficking." *See J.B.*, 2021 WL 4079207, at *8-11. Although Twitter relied heavily on the first *J.B.* order, (Mot. at 14, 20, 21, 23; Reply at 5, 6, 151), the Court's Order did not address this forceful point. Nor did it address the possible "chilling effect" that a broad interpretation of Section 230(e)(5)(A) would have. *See Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1124 (9th Cir. 2003) (noting that ICS providers with "*millions* of users" must deal with such "staggering" amounts of information that just the "specter of tort liability" would "have an obvious chilling effect").

### C. The Court Should Reconsider Its Conclusion that Future Postings of the Videos Constitute a Future "Commercial Sex Act" Under Section 1591.

The Court should also reconsider its conclusion that Plaintiffs' allegations with respect to Claim Two (FAC ¶¶ 144-155) adequately demonstrate that Twitter knew that Plaintiffs would be caused to engage in "commercial sex acts," a requirement under Section 1591(a). 18 U.S.C. § 1591(a). Section 1591(a)(2) punishes applicable behavior only when done "*knowing* . . . that the person has not attained the age of 18 years and *will be caused to engage in a commercial sex act*[.]" 18 U.S.C. § 1591(a)(2). The Order rejected Twitter's argument that Plaintiffs failed to allege that they "would, in the future, be victims of sex trafficking as a result of Twitter's conduct" because the venture "was already over when the Videos were posted on Twitter[.]" (Order at 44 n.6.) Rather, the Order erroneously determined that the posting of child pornography is a "commercial sex act" that Twitter could be responsible for going forward. (*Id.*) Reconsideration of this aspect of the Order is warranted for three reasons.

First, the Court's analysis contains a manifest error of fact: Twitter did not concede that posting child pornography is itself a "commercial sex act" under Section 1591. The Order, which does not cite to the oral transcript on this point, appears to be referencing this exchange:

> **THE COURT:** You don t disagree that the -- you know, leaving aside, for a moment, Twitter s intent with respect to and knowledge with respect to the posting, but the posting of child pornography falls within the definition of a conduct that would cause plaintiffs to engage in a commercial sex act, you don t disagree with that
> **MR. RHODES:** In the abstract, I can see your point. What I m saying on the facts of this case -- let me give you an analogy.
> **THE COURT:** There are two questions. One is in the abstract and then Twitter s

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

A100    13

TWITTER, INC.'S MOTION FOR
RECONSIDERATION
CASE NO. 3:21-CV-00485-JCS

participation.
**MR. RHODES:** Yes.
**THE COURT:** That s a different question.
**MR. RHODES:** Yeah. I agree with you.

(Ex. C, Tr. at 17:7-20.)  This colloquy is muddled at best and is in no way fairly read as a concession by Twitter that the posting of the Videos on its platform by third parties was a "commercial sex act" under Section 1591 or could cause Plaintiffs to engage in a future commercial sex act.  Indeed, such a proposition would contradict the FAC's allegations that Plaintiffs had cut off contact with the Perpetrators before the Videos were posted on Twitter's platform.  (FAC ¶¶ 94-96.)  In light of these allegations, Twitter vigorously argued that it could not have known that its conduct would cause Plaintiffs to engage in future commercial sex acts.  (Mot. at 12 n.10; Reply at 3.)  Twitter respectfully submits that it cannot be bound on a dispositive issue contrary to its arguments in briefing to the Court based on an ambiguous exchange at oral argument.

Second, the Court's analysis contains a manifest error of law: posting a *depiction* of a sex act is not itself a "commercial sex act" constituting "trafficking" under Section 1591.  A "commercial sex act" is defined by Section 1591 as a "*sex act*, on account of which anything of value is given to or received by any person."  18 U.S.C. § 1591(e)(3).  Posting a depiction of a sex act is not the same as a sex act (just as the Order concluded that "maintaining" a depiction of Plaintiffs (i.e., the Videos) was not the same as "maintaining" Plaintiffs for the purposes of a Section 1591(a)(1) violation, (Order at 33)).  Indeed, the Order relies only on Twitter's purported concession for this point and does not provide any legal reasoning or citation to the statutory definition, and the parties did not brief this issue, which the Court ruled on *sua sponte*.  Notably, Title 18 contains other provisions—unlike Section 1591, that are not subject to the Section 230(e)(5)(A) carve-out—concerning the dissemination of *depictions* of "sex acts" involving minors, *see, e.g.*, 18 U.S.C. §§ 2252A and 2256(8), including provisions cited by Plaintiffs as a basis for otherwise dismissed claims.  Those other provisions make clear that Congress knows how to outlaw the dissemination of depictions of sex—in addition to sex acts—when it seeks to do so, and that it did not do in Section 1591. This error warrants reconsideration.  *See Cave Consulting Grp.*, 2020 WL 127612, at *4-5.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

A101    14

TWITTER, INC.'S MOTION FOR
RECONSIDERATION
CASE NO. 3:21-CV-00485-JCS

Finally, reconsideration is warranted because the Order ignores the requirement that under Section 1591(a)(2) the defendant must know that its conduct will cause **Plaintiffs** to engage in **future** commercial sex acts, and the Court did not and could not make that finding. (Order at 44 n.6.) To violate Section 1591, a defendant must know that "the *person* [Plaintiffs] *will be caused* to engage in a commercial sex act[.]" 18 U.S.C. § 1591(a). Indeed, in *United States v. Todd*, the Ninth Circuit confirmed that Section 1591 requires the defendant to know that the *specific person* they are accused of sex trafficking will be caused to engage in a future commercial sex act. 627 F.3d at 333-34 (discussing the trafficker's knowledge as to the specific people he was charged with sex trafficking).

Here, however, there is no allegation that Twitter knew that any of its actions would lead to sex trafficking *of Plaintiffs*. To the contrary, the FAC alleges that Plaintiff John Doe #1 cut off contact with the Perpetrators before Twitter was involved. (FAC ¶¶ 94-96.) The Order erroneously concluded that there was "a plausible inference that Twitter's failure to remove the Videos would result in *future* commercial sex trafficking" of Plaintiffs, apparently based on its flawed notion that the posting of a depiction of child pornography by itself is a commercial sex act. (Order at 44 n.6 (emphasis in original).) However, there is no allegation that the Videos remaining on Twitter's platform would cause Plaintiffs to engage in a separate, future commercial sex act. To the contrary, that allegation is not possible here as, according to the FAC, Plaintiffs allegedly had already cut off contact with the traffickers when the Videos were posted. (FAC ¶ 96.) That makes this case factually distinct from those Congress sought to bring within FOSTA's CDA § 230 exclusion. The underlying facts of this case as alleged in the FAC, while abhorrent, simply do not meet the strict requirements necessary to hold third-party ICS providers liable under Section 1591. Reconsideration is warranted of this flawed conclusion.

### D. The Court Should Reconsider Its Conclusion That Plaintiffs Adequately Alleged a "Continuous Business Relationship" between Twitter and the Perpetrators.

As Twitter argued in its Motion to Dismiss, under Section 230(e)(5)(A), Plaintiffs were required to adequately allege that Twitter "knowingly" participated in a Section 1591 venture with the Perpetrators to exempt their Section 1595 claim. (Mot. at 12-13.) Yet the Court incorrectly

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

A102    15

TWITTER, INC.'S MOTION FOR
RECONSIDERATION
CASE NO. 3:21-CV-00485-JCS

applied Section 1595's lower *mens rea* standard to determine whether Plaintiffs pleaded that Twitter "participated in a venture" with the Perpetrators. (Order at 42-44.) Upon reconsideration, the Court should apply the correct standard under Section 1591(a)(2) and conclude that Plaintiffs fail to allege facts showing that Twitter was "associated in fact" with the Perpetrators and committed an "overt act" that furthered the sex trafficking venture involving Plaintiffs. (*See* Mot. at 13-15; Reply at 3-6.)

Even were the Court not to grant reconsideration of its holding that Section 1595's "should have known" standard applies here notwithstanding Section 230(e)(5)(A), reconsideration should be granted of the Court's conclusion that Plaintiffs sufficiently pleaded Twitter's participation in a venture with the Perpetrators under Section 1595's lower standard. Under Section 1595, the Court was required to determine whether Plaintiffs adequately alleged that Twitter "participated in a venture" with the Perpetrators. *See* 18 U.S.C. § 1595. "[C]ourts defining participation under § 1595 have, 'in the absence of direct association,' required 'a showing of a ***continuous business relationship*** between ***the trafficker*** and the [defendant] such that it would appear that ***the trafficker*** and the [defendant] have established a pattern of conduct or could be said to have a tacit agreement.'" *J.B.*, 2020 WL 4901196, at *9 (citing *M.A.*, 425 F. Supp. 3d at 970); *see also* Order at 36 ("District courts, including in this district, have found the statutory analysis in *M.A.* supporting its interpretation of Section 1595 to be persuasive."). It is therefore irrelevant whether Twitter had a business relationship with the account-holders who allegedly posted the Videos, unless it is alleged that Plaintiffs' perpetrators are those account-holders or have a business relationship with them. As outlined in Judge Selna's tentative ruling in *Reddit*, this standard requires Plaintiffs to allege facts demonstrating that the defendant "made a business deal with" the Perpetrators or had a "monetary relationship with [the Perpetrators]."[6] (*See* Ex. B at 12.)

---

[6] The *Reddit* plaintiffs—like Plaintiffs here—argued that general allegations of child pornography on Reddit's platform indicated Reddit's tacit agreement with sex traffickers, but Judge Selna disagreed that it was sufficient under Section 1595's lower *mens rea* standard to plead Reddit's "participation in a venture" with the sex traffickers who exploited the plaintiffs' children. (Ex. B at 12-13.) Specifically, Judge Selna concluded that plaintiffs asserting a Section 1595 venture were still required to allege facts "showing [] a ***continuous business relationship***" between the specific traffickers and Reddit. (*Id.* at 12-13.) And because "Reddit [was] not accused of having made a business deal with the alleged traffickers—and did not have any monetary relationship with those traffickers—the standard for stating a claim under § 1595 ha[d] not been satisfied." (*Id.*)

Cooley LLP
Attorneys at Law
San Francisco

A103    16

Twitter, Inc.'s Motion for
Reconsideration
Case No. 3:21-cv-00485-JCS

Twitter respectfully submits that reconsideration is appropriate here because although the Court endorsed the Section 1595 venture standard articulated by *M.A.* and numerous other courts (*see* Order at 42), the Court did not apply it properly to the facts at hand—as evidenced by the conflicting recent application of the standard in *Reddit*, under similar facts. (*See* Ex. B at 12-13.) At oral argument, Plaintiffs' counsel admitted that Plaintiffs "***don't know who***" posted the Videos on Twitter, although Plaintiffs' counsel claimed—without citing to any alleged fact in the FAC— that "***subsequent traffickers***" posted them. (Ex. C, Tr. at 31:23-32:3.) Yet the Court still concluded that Plaintiffs adequately alleged Twitter's participation in a Section 1595 "venture" with the Perpetrators based on the FAC's "general allegations that Twitter enables sex trafficking on its platform," as well as allegations that Twitter was "specifically alerted" to the Videos and their nature on "several occasions" and yet "failed or refused" to remove them."  (Order at 43.) However, none of these allegations speak to the ***specific relationship*** between Twitter and the Perpetrators.  (*See* Ex. B at 12-13 (holding that general allegations that Reddit permits sex trafficking content on its platform was insufficient to show a "continuous business relationship" between the traffickers who trafficked plaintiffs' children and Reddit.)  The first allegation relates to Twitter's conduct generally and is insufficient because it "necessarily suggests that [Twitter] enters into tacit agreements with all traffickers" whose content somehow makes its way onto Twitter's platform regardless of whether those traffickers even use Twitter.  *See J.B.*, 2020 WL 4901196, at *9 (noting that such an inference is improper when "there is no factual basis pled that makes [it] plausible").  The second allegation relates to interactions between Twitter and Plaintiff John Doe #1 and his mother.  By contrast, in the hotel-related Section 1595 cases, there are allegations of direct and repeated business interactions between the hotel defendants and the plaintiffs' specific traffickers. *E.g.*, *Ricchio v. McLean*, 853 F.3d 553, 555 (1st Cir. 2017) (plaintiff alleged a past business relationship between her trafficker and hotel owner); *J.C. v. Choice Hotels Int'l, Inc.*, 2020 WL 6318707, at *5 (N.D. Cal. Oct. 28, 2020) (plaintiff alleged her traffickers checked her into the hotels and paid for the rooms in cash over a period of years); *B.M. v. Wyndham Hotels & Resorts, Inc.*, 2020 WL 4368214, at *5-6 (N.D. Cal. July 30, 2020) (plaintiff alleged her traffickers "rented two adjoining rooms" at the hotels over a period of years and had a "personal

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

A104     17

TWITTER, INC.'S MOTION FOR
RECONSIDERATION
CASE NO. 3:21-CV-00485-JCS

1  relationship [with] the front desk employees").

2         Moreover, in analyzing how Twitter's purported failure to immediately remove the Videos

3  contributed to the inference of tacit agreement between Twitter and the alleged traffickers, the

4  Court noted that Twitter refused to remove the Videos for "another seven days" after January 28,

5  2020, when it received Plaintiff John Doe #1's email explaining the Videos' circumstances.  (Order

6  at 43-44.)  The Court also noted at oral argument that Twitter "delayed removing [the Videos] even

7  after the Department of Homeland Security was called."  (Ex.C, Tr. at 7:11-13.)  This was incorrect.

8  The referenced email was allegedly sent by Plaintiff John Doe #1 on January 28, 2020, and Twitter

9  allegedly removed Videos *two days* later on January 30, 2020, the ***same day*** it received the request

10  from DHS.  (FAC ¶¶ 123, 128.)

11         Simply put, the Court's acceptance of general, unsupported, allegations regarding Twitter's

12  conduct towards CSE content and its response to certain alleged complaints regarding the Videos

13  is insufficient to conclude that Twitter had a "business relationship" with the Perpetrators.  There

14  is no allegation that the Perpetrators even use Twitter, let alone that Twitter had a specific business

15  relationship with the Perpetrators.  Thus, the Order amounts to a conclusion that Twitter is

16  participating in ventures with all traffickers whose trafficking content makes its way onto Twitter.

17  Such a conclusion is contrary to CDA § 230. *See J.B.*, 2020 WL 4901196, at *9 (concluding it

18  would be improper to accept allegations that "necessarily suggest[] that [an ICS provider] enters

19  into tacit agreements with all traffickers . . . that use its website").

20  **IV.  CONCLUSION**

21         Based on the foregoing, Twitter respectfully requests the Court reconsider the Order, hold

22  that Section 230(e)(5)(A) requires Plaintiffs to adequately plead that Twitter violated Section 1591

23  to avoid CDA § 230 immunity, and dismiss the FAC in its entirety because Plaintiffs did not

24  adequately allege that Twitter violated Section 1591 or participated in a Section 1595 venture.

25

26

27

28

Cooley LLP
Attorneys at Law
San Francisco

A105     18

Twitter, Inc.'s Motion for
Reconsideration
Case No. 3:21-cv-00485-JCS

1    Dated: October 4, 2021                   COOLEY LLP

2

3                                   By: */s/ Michael G. Rhodes*

4                                        Michael G. Rhodes

5                                 *Attorneys for Defendant Twitter, Inc.*

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

A106   19

TWITTER, INC.'S MOTION FOR
RECONSIDERATION
CASE NO. 3:21-CV-00485-JCS

# EXHIBIT B

Jane Doe et al. v. Reddit, Inc.
SACV 21-768 JVS (KESx)

**<u>TENTATIVE</u> Order Regarding Motion to Dismiss**

     Defendant Reddit, Inc. ("Reddit") filed a motion to dismiss the complaint of Plaintiffs Jane Does Nos. 1-6 and John Does Nos. 2, 3, and 5 (collectively — "Plaintiffs"). Mot., Dkt. No. 40. Plaintiffs filed an opposition. Opp'n, ECF No. 43. Reddit responded. Reply, ECF No. 44.

     For the following reasons, the Court **GRANTS** the motion.

## I. BACKGROUND

     This is a class action lawsuit that arises from the posting on Reddit's website sexually explicit videos and images of individuals under the age of 18 — commonly referred to as child sexual exploitation material ("CSEM"). First Amended Complaint ("FAC"), ECF No. 31, ¶ 1. Before addressing Plaintiffs' claims, the Court briefly reviews how Reddit is structured.

     Reddit is one of the Internet's most popular websites and is built around users submitting links, pictures, and text that everyone can view and vote on. <u>Id.</u> ¶¶ 36-37. Reddit is organized into what are called "Subreddits," which are online bulletin boards that are focused on particular themes or interests. <u>Id.</u> ¶ 38. Subreddits are governed as follows. Reddit allows users to create Subreddits. <u>Id.</u> ¶ 44. Each Subreddit is managed by a small group of users, who are given the title of "moderator." Moderators can dictate what type of content is allowed on the Subreddit, subject to certain overall limitations placed by Reddit. <u>Id.</u>

     Reddit itself has four teams of employees that engage in content moderation for the company. <u>Id.</u> ¶¶ 44-47. "Administrators" have the power to strip moderators of their privileges and ban Subreddits or particular content from Reddit. <u>Id.</u> ¶ 44. Administrators are primarily supposed to identify and remove content that violates Reddit's Content Policy, whether on Subreddits or in private messages between users. <u>Id.</u> ¶ 44. The Trust & Safety Team focuses on enforcing Reddit's Content Policy against malicious users and when content violations may have urgent legal or safety implications. <u>Id.</u> ¶ 45. The Anti-Evil internal security

1

team consists of back-end engineers who create automated software that flags content that violates Reddit's policies. Id. ¶ 46. Finally, the Legal Operations Team removes or disables content that it finds to be in violation of the Digital Millennium Copyright Act. Id. ¶ 47.

Jane Doe No. 1 is an individual who is now of the age of majority under United States and California law. Id. ¶ 8. An ex-boyfriend of Jane Doe No. 1 posted sexually explicit images and videos of Jane Doe No. 1 from when she was 16 years old on websites, including Reddit, without her consent. Id. ¶¶ 143-46. Each time that Jane Doe No. 1 reported the CSEM of herself to Subreddit moderators, it would take days for the CSEM to come down, only for it to reappear within minutes. Id. ¶¶ 148-49. When she had her ex-boyfriend's account banned, he was able to make a new account and post the CSEM anew. Id. ¶ 151.

Jane Does Nos. 2-6 and John Does Nos. 2, 3, and 5 are the parents of daughters who are below the age of majority under United States and California law. Id. ¶¶ 9-13. Each of their daughters has had CSEM images or videos of them posted on Reddit and have had to repeatedly request that various Subreddit moderators and Reddit administrators remove the CSEM, often only to have the CSEM reappear shortly after it is removed. Id. ¶¶ 156-229.

Plaintiffs allege that Reddit knowingly facilitates the posting of CSEM and benefits from the CSEM in the form of increased advertising revenue and subscription fees by premium Reddit users. Id. ¶¶ 61-65, 75, 119. Plaintiffs allege that Reddit facilitates the posting of CSEM to achieve these benefits in a variety of ways, including (1) allowing the creation of a number of Subreddits that target users seeking CSEM, id. ¶ 94; (2) rarely removing CSEM when it is reported by users, id. ¶ 82; (3) failure to verify users' age, id. ¶ 51; (4) reliance on poorly trained, volunteer moderators to manage Subreddits, id. ¶¶ 106-07, 110; (5) having ineffective and inefficient administrators managing content moderation for Reddit, id. ¶¶ 108-09, 112; (6) failing to take steps to prevent banned users from creating new user accounts on the website, id. ¶¶ 113-14; (7) failing to report all CSEM to the National Council for Missing and Exploited Children ("NCMEC"), id. ¶ 124; and (8) failing to use PhotoDNA, an automated means of identifying images of CSEM previously identified to NCMEC, until 2019, and at that point only using PhotoDNA minimally, id. ¶¶ 122-124.

2

Plaintiffs bring this lawsuit on behalf of one class and two subclasses. The Class is defined as:

> all persons who were under the age of 18 when they appeared in a sexually explicit video or image that has been uploaded or otherwise made available for viewing on any website owned or operated by Reddit, Inc. in the last ten years.

Id. ¶ 239. Jane Doe No. 1 seeks to represent the following California subclass:

> all persons residing in California who were under the age of 18 when they appeared in a sexually explicit video or image that has been uploaded or otherwise made available for viewing on any website owned or operated by Reddit, Inc. in the last ten years.

Id. ¶ 240. The remaining Plaintiffs seek to represent the following New Jersey subclass:

> all persons residing in New Jersey who were under the age of 18 when they appeared in a sexually explicit video or image that has been uploaded or otherwise made available for viewing on any website owned or operated by Reddit, Inc. in the last ten years.

Id. ¶ 241.

Plaintiffs filed their Complaint on April 22, 2021. See generally Complaint, ECF No. 1. Following the filing of the instant motion and a motion to stay discovery, Plaintiffs filed the FAC. See generally FAC. Plaintiffs now bring nine claims for relief: (1) violation of the federal Trafficking Victims Protection Act, 18 U.S.C. §§ 1591, 1595; (2) violation of the duty to report child sexual abuse material under 18 U.S.C. § 2258A; (3) receipt and distribution of child pornography in violation of 18 U.S.C. § 2252A; (4) distribution of private sexually explicit materials in violation of Cal. Civ. Code § 1708.85; (5) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200;

3

(6) violation of California's Trafficking Victims Protection Act, Cal. Civ. Code §
52.5; (7) violation of New Jersey's child exploitation laws, N.J. Rev. Stat. §
2A:30B-3; (8) unjust enrichment; and (9) intentional infliction of emotional
distress. FAC ¶¶ 248-98. Of these claims, the three claims for violation of
California law are brought on behalf of the California subclass while the claim for
violation of New Jersey law is brought on behalf of the New Jersey subclass. Id.
¶¶ 273-89.

Reddit moved to stay discovery pending resolution of this motion. Stay
Mot., ECF No. 25. The Court granted that motion. Order, ECF No. 35.

## II. LEGAL STANDARD

Under Rule 12(b)(6), a defendant may move to dismiss for failure to state a
claim upon which relief can be granted. A plaintiff must state "enough facts to
state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly,
550 U.S. 544, 570 (2007). A claim has "facial plausibility" if the plaintiff pleads
facts that "allow[] the court to draw the reasonable inference that the defendant is
liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

In resolving a 12(b)(6) motion under Twombly, the Court must follow a
two-pronged approach. First, the Court must accept all well-pleaded factual
allegations as true, but "[t]hreadbare recitals of the elements of a cause of action,
supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.
Nor must the Court "'accept as true a legal conclusion couched as a factual
allegation.'" Id. at 678-80 (quoting Twombly, 550 U.S. at 555). Second, assuming
the veracity of well-pleaded factual allegations, the Court must "determine
whether they plausibly give rise to an entitlement to relief." Id. at 679. This
determination is context-specific, requiring the Court to draw on its experience
and common sense, but there is no plausibility "where the well-pleaded facts do
not permit the court to infer more than the mere possibility of misconduct." Id.

4

# III. Discussion

## A. Section 230 Generally

Reddit's primary argument is that dismissal is appropriate because Plaintiffs' claims are barred by Section 230 of the Communications Decency Act, 47 U.S.C. § 230. See Mot. at 5-18. Under § 230(c)(1), "[n]o provider . . . of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." In other words, "Section 230(c)(1) precludes liability for (1) a provider or user of an interactive computer service (2) whom a plaintiff seeks to treat as a publisher or speaker (3) of information provided by another information content provider." Gonzalez v. Google LLC, 2 F.4th 871, 891 (9th Cir. 2021) (internal quotation marks omitted).

The Court concludes that § 230 immunizes Reddit from many of Plaintiffs' claims.[1] First, Reddit is a provider of an interactive computer service. Under § 230(f)(2), an "interactive computer service" is defined as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server . . . ." Reddit provides a system that enables computer access by multiple users to a server. See also Hepp v. Facebook, Inc., 465 F. Supp. 3d 491, 498 (E.D. Pa. 2020) (finding that Reddit "falls squarely within" the definition of interactive computer service).

Plaintiffs argue that "the complaint alleges Reddit is responsible in whole or in part, for the creation or development of information." Opp'n at 18. As a consequence, Plaintiffs contend that Reddit is an "information content provider" and not an "interactive computer service." Under 47 U.S.C. § 230(f)(3) an "information content provider" is "any person or entity that is responsible, in

---

[1] Plaintiffs argue that the Court should not consider whether § 230 bars Plaintiffs' claims because § 230 provides an affirmative defense to claims. Opp'n at 18 n.9 (citing Gonzalez, 2 F.4th at 889; Lusnak v. Bank of America, N.A., 883 F.3d 1185, 1194 n.6 (9th Cir. 2018)). But the Ninth Circuit has held that § 230 can be considered on a motion to dismiss where "the allegations in the complaint suffice to establish the defense." Gonzalez, 2 F.4th at 890 n.8. The Court concludes that such is the case here. The Court does agree with Plaintiffs that if the complaint does contain sufficient factual allegations suggesting that Reddit is not immune under § 230, then the Court cannot dismiss the claims on that basis. See Opp'n at 18 n.10. But this is not the case here.

5

whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." Under <u>Fair Housing Council of San Fernando Valley v. Roommates.com, LLC</u>, 521 F.3d 1157, 1167-68 (9th Cir. 2008), a website is classified as an information content provider if it "materially contributes to [the information's] unlawfulness." Cases applying this test "have consistently drawn the line at the 'crucial distinction between, on the one hand, taking actions (traditional to publishers) that are necessary to the display of unwelcome and actionable content and, on the other hand, responsibility for what makes the displayed content illegal or actionable.'" <u>Kimzey v. Yelp! Inc.</u>, 836 F.3d 1263, 1269 n.4 (9th Cir. 2016) (quoting <u>Jones v. Dirty World Entertainment Recordings LLC</u>, 755 F.3d 398, 413–14 (6th Cir. 2014)) (citing <u>Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.</u>, 591 F.3d 250, 257–58 (4th Cir. 2009); <u>Federal Trade Commission v. Accusearch Inc.</u>, 570 F.3d 1187, 1197-1201 (10th Cir. 2009)). Thus, "providing neutral tools to carry out what may be unlawful or illicit" is not sufficient to make an entity an "information content provider." <u>Fair Housing Council</u>, 521 F.3d at 1169.

In making their argument, Plaintiffs rely most heavily on <u>M.L. v. craigslist Inc.</u>, 2020 WL 5494903, at *4 (W.D. Wash. Sept. 11, 2020). <u>See</u> Opp'n at 19. In that case, the court held that craigslist was an information content provider with respect to sex trafficking advertisements posted to its website. <u>M.L.</u>, 2020 WL 5494903 at *3-4. The court so held because (1) trafficking advertisements were posted on craigslist's website while complying with its rules and guidelines, (2) traffickers paid craigslist to display trafficking advertisements in the "erotic services" section of the website, and (3) traffickers were able to evade law enforcement by making use of craigslist's anonymous communications system. <u>Id.</u> at *3. These allegations collectively described "specific, concrete actions taken by craigslist that facilitated [the plaintiff's] trafficking."[2] <u>Id.</u>

Here, Plaintiffs contend that the FAC alleges that Reddit is an information content provider because of Reddit's (1) "refusal to enforce its policies," (2)

---

[2] Reddit attempts to characterize <u>M.L.</u> as holding that a website provider can only become an information content provider if the "website was <u>designed</u>" to take the illegal action. Reply at 3 (emphasis in original). But the <u>M.L.</u> court does not use the word "designed" in reaching its conclusion. <u>See generally</u> 2020 WL 5494903. Also, as noted previously, the test in the Ninth Circuit is whether the website provider being "responsib[le] for what makes the displayed content illegal or actionable." <u>Kimzey</u>, 836 F.3d at 1269 n.4. The Court will look to this test.

6

provision of "karma" awards for subreddits featuring CSEM, (3) pseudonymous, private messaging system that allows evasion of law enforcement, (4) "elevation" of subreddits involving CSEM, and (5) use of "barely-trained moderators who failed to enforce its policies and propagated the spread of" CSEM. Mot. at 19. Before considering this argument, the Court first elaborates on the exact allegations in the FAC. First, the FAC states that Reddit "tries to ban as little content as possible" and so provides a reporting tool that includes "no opportunity for a user to explain to Reddit why the content is child pornography, [leaving] the user . . . to rely on a Reddit administrator or moderator to decide whether to remove the content." FAC ¶¶ 80, 82. Plaintiffs summarize these allegations as showing Reddit's "refusal to enforce its policies." Opp'n at 19. Second, contrary to Plaintiffs' summary, paragraphs 115 and 116 of the FAC do not include allegations that Reddit took any actions that "elevated" subreddits where users had posted CSEM. Rather, those paragraphs allege that those subreddits were often searched for by users and rated highly in user polls. FAC ¶ 115.

The Court is not persuaded that these allegations are sufficient for the Court to find that Reddit is an information content provider. The Court does not believe that the allegations show that Reddit is responsible for the illegal content on its website. Many allegations that Plaintiffs point to do not speak to whether Reddit "materially contributed" to the CSEM because the allegations relate to "neutral tools." Karma awards, which are an aggregate metric representing how many user votes a user has received,[3] and pseudonymous, private messaging apply broadly across Reddit and do not play any special role in the illegality of the CSEM. See Kimzey, 836 F.3d at 1270 (holding that "inputs from third parties [that] reduce[] . . . . information into a single, aggregate metric . . . is best characterized as the kind of 'neutral tool[ ]' operating on 'voluntary inputs' that we determined did not amount to content development or creation");[4] Fields v. Twitter, Inc., 217 F. Supp. 3d 1116, 1127-29 (N.D. Cal. 2016) (holding that the provider of a direct

---

[3] Karma "reflects how much a user has contributed to the Reddit community by an approximate indication of the total votes a user has earned on their submissions ('post karma') and comments ('comment karma')." FAC ¶ 41 (citation omitted).

[4] Plaintiffs' argument that karma is awarded by Reddit is irrelevant because the amount that users receive is determined by votes the user receives from other users. Opp'n at 20. While Reddit may have created a system for awarding karma, this does not change the fact that it is an aggregate metric. All such metrics must be created by an interactive service provider.

7

messaging service is not a publisher and is therefore immune under § 230). Nor does the Court believe that having a reporting tool without a comment section amounts to "materially contributing" to users posting CSEM on its website.

The remaining issue is whether Reddit's use of community moderators causes Reddit to material contribute to users posting CSEM on its website. First, the Court notes that having community moderators instead of company moderators does not appear to the Court to have any bearing on whether Reddit is responsible for users posting CSEM on its website. In theory, a very highly trained set of committed community moderators could create an effective system for taking down CSEM.

Plaintiffs' more promising argument is that Reddit's community moderators are poorly trained, and this means Reddit materially contributes to users posting CSEM on its website. Plaintiffs allege that community moderators are slow, can engage in "seemingly arbitrary behavior," can have difficulty communicating with Reddit administrators, and may be overruled by Reddit when moderators find that content violates Reddit's Content Policy. See FAC ¶ 108-12. But the Court notes that these allegations do not appear to be specific to Reddit's treatment of CSEM; rather, the complaints about Reddit's use of community managers generally relate to handling of content that violates Reddit's Content Policy. This is a key distinction with M.L. In that case, the allegations indicated that craigslist had rules, guidelines, and processes in place for its "erotic services" section by which traffickers could post advertising on craigslist's website such that they could avoid law enforcement. M.L., 2020 WL 5494903 at *3-4. By contrast, here Reddit does not have a special way of handling CSEM that is particularly permissive relative to other kinds of content. The allegations against Reddit here are not sufficiently targeted such that there is "responsibility for what makes the displayed content illegal." Kimzey, 836 F.3d at 1269 n.4; see F.T.C. v. Accusearch, 570 F.3d 1187, 1199 (10th Cir. 2009) (holding that "a service provider is 'responsible' for the development of offensive content only if it in some way specifically encourages development of what is offensive about the content" (emphasis added)).

Plaintiffs also advance a different theory that community moderators who upload CSEM are Reddit's agents. Opp'n at 19-20. But this argument is unavailing. Plaintiffs analogize this case to Accusearch, in which "defendant's knowledge that third-party 'researchers were obtaining the information through

8

fraud or other illegality' that was posted on defendant's platform indicated its responsibility for developing unlawful content." Opp'n at 19 (quoting <u>Accusearch</u>, 570 F.3d at 1199). But here there is no allegation that Reddit knew that the accused moderators were also posting CSEM. <u>Cf.</u> Reply at 7. Plaintiffs then compare the case to <u>Mavrix Photographs, LLC v. Livejournal, Inc.</u>, 873 F.3d 1045, 1054 (9th Cir. 2017), in which the Ninth Circuit held that the Court should consider "common law agency principles" when deciding whether to hold a social media platform liable for the actions of moderators. Opp'n at 19-20. This case is inapposite for two reasons. First, <u>Marvix</u> related to copyright law, not Section 230, and therefore is no directly relevant to the analysis here. <u>See generally</u> <u>Marvix</u>, 873 F.3d 1045. Moreover, in <u>Marvix</u> it was alleged that Marvix gave "explicit and varying levels of authority to screen posts," and this made Marvix an agent for purposes of screening and posting images. <u>Id.</u> at 1054. By contrast, there is no allegation that Reddit gave authority to the moderators to post CSEM or that they appeared to be agents of Reddit as they were posting CSEM. <u>See generally</u> FAC. The Court therefore concludes that Reddit is an information service provider that could be covered by § 230.

Returning to the remaining requirements for § 230 immunity, it is readily apparent that several of Plaintiffs' claims seek to treat Reddit as a publisher or speaker of information provided by other content providers. Plaintiffs assert a claim for unjust enrichment because "[b]y permitting users to upload videos and images of Plaintiffs (and/or their daughters) and the Class and profiting from those videos and images, Defendant have [sic] become unjustly enriched at the expense of Plaintiffs and the Class . . .." FAC ¶ 292. The decision to permit users to upload content to a website is a quintessential function of a publisher under § 230. <u>See</u> <u>Barnes v. Yahoo!, Inc.</u>, 570 F.3d 1096, 1105 (9th Cir. 2009) ("Subsection (c)(1), by itself, shields from liability all publication decisions, <u>whether</u> to edit, to remove, or <u>to post</u>, with respect to content generated entirely by third parties." (emphasis added)).[5] Similarly, Plaintiffs' claim for distribution of private sexually

---

[5] Plaintiffs attempt to distinguish the claim for unjust enrichment relating to advertising revenue as involving functions unrelated to publishing and therefore exempt from § 230 immunity. Opp'n at 21-22. The Court is not persuaded. Plaintiffs rely on <u>Gonzalez</u>, 2 F.4th at 897-99. <u>Id.</u> But in that case, the Ninth Circuit concluded that § 230 did not immunize Google from the allegation that it illegally provided material support to the terrorist group ISIS by sharing advertising revenue from YouTube with ISIS. <u>Gonzalez</u>, 2 F.4th at 898. In so holding, the Ninth Circuit noted that the claim "does not depend on the particular content ISIS places on

9

explicit materials stems from users being permitted to upload the relevant videos and images to Reddit. That claim is therefore barred. The same analysis holds true for Plaintiffs' claim for intentional infliction of emotional distress, which is premised on Reddit "knowingly tolerat[ing]" CSEM on its website. FAC ¶ 295. See Fair Housing Council, 521 F.3d at 1163 ("Congress sought to immunize the removal of user-generated content . . ..."). The Court **DISMISSES** these claims.

### B.   *Child Pornography Claims*

Of course, providers of interactive computer services, like Reddit, do still have obligations for dealing with CSEM. Plaintiffs attempt to sue under the two statutes that provide the most stringent requirements: 18 U.S.C. §§ 2252A and 2258A. Neither, however, can form the basis of a claim that can proceed here. Although Plaintiffs assert a claim against Reddit for failing to report CSEM as required under 18 U.S.C. § 2258A, there is no private cause of action that allows Plaintiffs to assert that claim. See 18 U.S.C. § 2255 (providing causes of action for various violations of criminal CSEM statutes but not listing § 2258A).

18 U.S.C. § 2252A makes it illegal to knowingly receive and distribute CSEM. In contrast to § 2258A, § 2252A does provide a private right of action for individuals who are aggrieved by another's knowing receipt and distribution of CSEM. 18 U.S.C. § 2252A(f). But § 230 provides immunity for interactive computer services in civil suits under § 2252A as well. Notably, § 230(e)(1) states that § 230 "shall not be construed to impair the enforcement of . . . chapter 110 (relating to sexual exploitation of children) of title 18 . . .." Chapter 110 includes § 2252A. But, the Ninth Circuit has held that § 230(e)(1)'s use of the word "enforcement" shows an intent to only exclude criminal enforcement under that chapter, not civil claims. See Gonzalez, 2 F.4th at 890 (collecting cases); see also Doe v. Bates, 2006 WL 3813758, at *3-4 (E.D. Tex. Dec. 27, 2006) (holding that § 230(e)(1) does not provide an exception permitting civil suit under § 2252A). While the Government could prosecute interactive computer services for

---

YouTube; this theory is solely directed to Google's unlawful payments of money to ISIS." Id. Here, by contrast, Plaintiffs' claim for unjust enrichment is the only one for which the illegality is the receipt of advertising revenue. That claim is inherently premised on the CSEM appearing near the advertising being improper. The particular content on Reddit therefore does matter, and Gonzalez is distinguishable.

10

knowingly distributing CSEM, they cannot be subject to civil suits under these statutes. The Court therefore **DISMISSES** the child pornography claims.

C.   *Trafficking Claims*

1.   *Federal Claim*

This brings the Court to the Plaintiffs' attempt to assert a claim for violation of the federal sex trafficking laws that are exempted from § 230 immunity. In 2018, Congress passed the Allow States and Victims to Fight Online Sex Trafficking Act ("FOSTA"), which added § 230(e)(5). Pub. L. No. 115-164, 132 Stat. 1253. Under § 230(e)(5)(A), § 230 "shall not be construed to impair or limit" "any claim in a civil action brought under section 1595 of title 18, if the conduct underlying the claim constitutes a violation of section 1591 of that title." 47 U.S.C. § 230(e)(5)(A). Under § 1595, "[a]n individual who is a victim of a violation of this chapter may bring a civil action against . . . whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter . . . ." 18 U.S.C. § 1595(a) (emphasis added). Section 1591, in turn, defines "participation in a venture" as "knowingly assisting, supporting, or facilitating a violation" of subsection (a)(1)." Id. § 1591(e)(4).

The parties have substantial disagreement over what is required to state a claim under Section 1595 that is exempt from § 230 immunity. See Opp'n at 6-18; Reply at 18-23. The Court agrees with other courts that found that "the most persuasive reading of section 230(e)(5)(A) is that it provides an exemption from immunity for a section 1595 claim if, but only if, the defendant's conduct amounts to a violation of section 1591." J.B. v. G6 Hospitality, LLC, No. 19-cv-07848-HSG, 2021 WL 4079207 (N.D. Cal. Sept. 8, 2021); see also Doe v. Kik Interactive, Inc., 482 F. Supp. 3d 1242, 1251 (S.D. Fla. 2020); M.L. v. craigslist Inc., 2020 WL 5494903, at *4. While other courts in this circuit have reached a different conclusion and applied the more lenient mens rea standard under § 1595 of "known or should have known," see Doe v. Twitter, Inc., No. 21-cv-00485-JCS, 2021 WL 3675207, at *23-*24 (N.D. Cal. Aug. 19, 2021); Doe v. Mindgeek USA Inc., -- F. Supp. 3d --, 2021 WL 4167054, at *4 (C.D. Cal. Sept. 3, 2021), the Court does not find their reasoning persuasive.

11

In the Court's order granting Reddit's motion for a stay of discovery pending resolution of this motion, the Court held that it "does not see any indication from the facts alleged that Plaintiffs would be able to state a claim under § 1591." Order at 8. This was because "courts defining participation under § 1595 have, in the absence of direct association, required a showing of a continuous business relationship between the trafficker and the defendant such that it would appear that the trafficker and the defendant have established a pattern of conduct or could be said to have a tacit agreement." Id. at 7 (quoting J.B. v. G6 Hospitality, LLC, 2020 WL 4901196, at *9 (N.D. Cal. Aug. 20, 2020)). The Court found that the allegations in the FAC were insufficient to show a "continuous business relationship." Id.

Plaintiffs now point to other allegations that they allege indicate that Reddit "knowingly fostered a business relationship with sex traffickers to support their trafficking ventures." Opp'n at 13-14. But there is no indication that there was a "business relationship" with such traffickers. It is true that there can be a "tacit agreement" that gives rise to participation in a venture. But where Reddit is not accused of having made a business deal with the alleged traffickers – and did not have any monetary relationship with those traffickers – the standard for stating a claim under § 1595 has not be satisfied.[6]

The core of the Court's analysis from the previous order still holds true. Although Plaintiffs cite to a variety of other paragraphs in the FAC, see Opp'n at 13-14 (collecting citations), these allegations can be summarized as stating that Reddit has "affiliations with sex traffickers by enabling the posting of child pornography on its websites" and "making it easier to connect traffickers with those who want to view child pornography." FAC ¶ 255. But this allegation is not sufficient to show "a continuous business relationship between" Reddit and traffickers. "To conclude otherwise would mean that all web-based

---

[6] Plaintiffs argue that a footnote in J.B. expands the scope of what constitutes participation in a venture. Opp'n at 13 (citing J.B., 2020 WL 4901196, at *9 n.3). In that footnote, the J.B. court stated that it "can envision a circumstance, for example, in which a website operator openly and knowingly makes a deal with sex traffickers to support the venture by posting advertisements featuring trafficked minors in exchange for a cut of the proceeds," and thereby participated in a sex trafficking venture. J.B., 2020 WL 4901196 at *9 n.3. But that footnote discusses a hypothetical and one in which the defendant received a "cut of the proceeds." Id. The footnote therefore has no bearing on the Court's analysis.

12

communications platforms have a legal duty to inspect every single user-generated message before it is communicated to a single person or displayed to the public, lest such platforms be deemed to have participated in the venture." J.B., 2020 WL 4901196, at *9. "[T]here is no indication that Congress intended to create such a duty, or that it would be reasonable in light of the volume of posts generated by third parties daily." Id. The Court agrees with the J.B. court and does not see any indication from the facts alleged that Plaintiffs would be able to state a claim under § 1591.[7]

While other courts have recently found allegations sufficiently alleged that web-based communication platforms were participating in a venture, those courts were both applying a different legal standard and considering different facts. See Doe v. Mindgeek, 2021 WL 4167054, at *5-*6 (Sept. 3, 2021) (finding plaintiffs sufficiently allege participation in a venture where an employee of the defendant reviewed, approved, and uploaded a video of a plaintiff); Doe v. Twitter, 2021 WL 3675207, at *23-*24 (N.D. Cal. Aug. 19, 2021) (finding participation in a venture where employees of defendant refused to take down videos of plaintiff). The allegations cited by Plaintiffs are insufficient to support a finding that Reddit knowingly participated in a venture, as defined by § 1591. See Opp'n at 7 n.2. The Court **DISMISSES** Plaintiffs' federal sex trafficking claim.

### 2. State Claims

Reddit argues that the state law trafficking claims are barred by Section 230. Mot. at 18. The Court previously found that Section 230 did bar these claims. Order at 8-11. Plaintiffs do not raise any new arguments in response to the Court's previous holding. Opp'n at 22 n.12. The Court therefore **DISMISSES** Plaintiffs' state law trafficking claims.

### D. UCL Claim

Finally, the Court notes that Plaintiffs cannot assert their remaining UCL claim. For an individual to assert a UCL claim, the person must have "suffered injury in fact and . . . lost money or property as a result of the unfair competition."

---

[7] This analysis does not address whether the distribution of CSEM is a form of sex trafficking as contemplated by § 1591(a)(1), an issue which the Court does not reach.

13

Cal. Bus. & Prof. Code § 17204. But, there is no indication in the FAC that Plaintiffs have lost money or property as a result of Reddit's alleged conduct. The Court **DISMISSES** this claim.

### E. Leave to Amend

Plaintiffs seek leave to amend the allegations of their complaint. Opp'n at 25. "A party may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1). In all other cases, a party may amend its pleading only with written consent from the opposing party or the court's leave, which should be "freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a)(2); see Morongo Band of Mission Indians v. Rose, 893 F.2d 1074, 1079 (9th Cir. 1990) (requiring that policy favoring amendment be applied with "extreme liberality").

In the absence of an "apparent or declared reason," such as undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by prior amendments, prejudice to the opposing party, or futility of amendment, it is an abuse of discretion for a district court to refuse to grant leave to amend a complaint. Foman v. Davis, 371 U.S. 178, 182 (1962); Moore v. Kayport Package Express, Inc., 885 F.2d 531, 538 (9th Cir. 1989). The consideration of prejudice to the opposing party "carries the greatest weight." Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003). "Although there is a general rule that parties are allowed to amend their pleadings, it does not extend to cases in which any amendment would be an exercise in futility, or where the amended complaint would also be subject to dismissal." Steckman v. Hart Brewing, 143 F.3d 1293, 1298 (9th Cir. 1998) (internal citations omitted).

Here, the Court does not find that there was undue delay given that Plaintiffs' complaint has only been amended once. The Court is not convinced that the action was filed in bad faith. The Court is not convinced that most amendments would be futile or that Reddit will be unduly prejudiced. The exception is that the Court has concluded that there is no legal basis for bringing a claim under 18 U.S.C. § 2258A. Therefore, the Court **GRANTS** Plaintiffs thirty-days' leave to amend its claims, except as to the § 2258A claim.

## IV. Conclusion

For the foregoing reasons, the Court **GRANTS** the motion.

### IT IS SO ORDERED.

The Court **VACATES** the September 20, 2021, hearing. Any party may file a request for hearing of no more than five pages no later than 5:00 p.m. on Tuesday, September 21, 2021, stating why oral argument is necessary. If no request is submitted, the matter will be deemed submitted on the papers and the tentative will become the order of the Court. If the request is granted, the Court will advise the parties when and how the hearing will be conducted.

# EXHIBIT C

Pages 1 - 53

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE JOSEPH C. SPERO, MAGISTRATE JUDGE

JOHN DOE #1 AND JOHN DOE #2,           )
                                       )
          Plaintiffs,                  )
                                       )
  VS.                                  )   No. C 21-485 JCS
                                       )
TWITTER, INC.,                         )
                                       )
          Defendant.                   )
_____)   San Francisco, California
                                            Friday, August 6, 2021


**TRANSCRIPT OF PROCEEDINGS VIA ZOOM WEBINAR**

**APPEARANCES**:  (via Zoom Webinar)

For Plaintiffs:

                    NATIONAL CENTER ON SEXUAL EXPLOITATION
                    1201 F St NW, Suite 200
                    Washington, District of Columbia 20004
               BY:  **PETER A. GENTALA, ESQ.**

                    THE HABA LAW FIRM, P.A.
                    1220 Commerce Park Drive, Suite 207
                    Longwood, Florida 32779
               BY:  **LISA D. HABA, ESQ.**

                    THE MATIASIC FIRM, P.C.
                    4 Embarcadero Center, Suite 1400
                    San Francisco, California 94111
               BY:  **PAUL A. MATIASIC, ESQ.**
                    **HANNAH E. MOHR, ESQ.**

               (Appearances continued on next page)


Reported By:  Katherine Powell Sullivan, CSR #5812, CRR, RMR
              Official Reporter - U.S. District Court

**APPEARANCES:** (via Zoom Webinar; continued)

For Defendant:

                    COOLEY LLP
                    101 California Street, 5th Floor
                    San Francisco, California 94111-5800
          BY:  **MICHAEL G. RHODES, ESQ.**
               **KYLE C. WONG, ESQ.**

```
 1   Friday - August 6, 2021                          9:38 a.m.

 2                     P R O C E E D I N G S

 3                        ---oOo---

 4        THE CLERK:  We are calling case number 21-cv-0485, Doe

 5   versus Twitter.  Counsel, please raise your hands.

 6        Appearances, please, first, starting with the plaintiffs.

 7        MR. MATIASIC:  Good morning, Your Honor.  Paul

 8   Matiasic on behalf of the plaintiffs.

 9        MS. HABA:  Good morning, Your Honor.  Lisa Haba on

10   behalf of the plaintiffs.

11        THE COURT:  Good morning.

12        MR. GENTALA:  Good morning, Your Honor.  Peter Gentala

13   on behalf of the plaintiffs.

14        THE COURT:  Good morning.

15        MS. MOHR:  Good morning, Your Honor.  Hannah Mohr also

16   on behalf of the plaintiffs.

17        THE COURT:  Good morning.

18        THE CLERK:  And for the defendants.

19        MR. RHODES:  Good morning, Your Honor.  Michael

20   Rhodes, of Cooley, on behalf of Twitter.  Nice to see you.

21        THE COURT:  Good morning.  Good to see you.

22        MR. WONG:  Good morning, Your Honor.  Kyle Wong, of

23   Cooley, on behalf of the defendant.

24        THE COURT:  Good morning.

25        MR. WONG:  Good morning.
```

```
 1          THE COURT:  So thank you, all.

 2      On the motion to dismiss, obviously, I've read your briefs

 3  on it.  And the matter is not uncomplicated, but I do

 4  appreciate all the work you put into it.

 5      I had a few questions that I want you to address

 6  specifically.  I'm not going to hide the ball; I'll tell you my

 7  tentative ruling.  But, most importantly, I want you to address

 8  the following questions when you talk to me because they are

 9  questions on which I don't have a firm answer, I would say.

10      The first two questions are related, and it's the question

11  of -- I guess I'll put them this way, to address the question

12  of whether what occurred here, posting child pornography, at

13  least that's how its pled, on Twitter is sex trafficking under

14  the statute.

15      You know, we're talking about a TVPRA claim.  Is it --

16  whether the defendant participated in a venture or benefited

17  from an venture or whatever it is that would cause plaintiffs

18  to engage in a commercial sex act, and does this qualify as a

19  commercial sex act or something that would cause a plaintiff

20  to, and the related question of whether or not the plaintiffs

21  have adequately or can adequately allege that this, whatever it

22  was, would cause the victims to engage in a commercial sex act

23  within the meaning of the statute.

24      Obviously, it's horrible, and what happened to these kids

25  should never happen and is unforgivable, and we should all do
```

1  whatever we can to make sure it doesn't happen to anyone else.

2  But the question -- the narrow question is whether this is

3  related to the commercial sex act requirements under the

4  statute, number one.

5       Number two is, I want you to address here the question

6  that's raised in the *Kik* case and other cases about whether

7  FOSTA's including of the language *if the conduct underlying the*

8  *claim constitutes a violation of 1951* limits or changes the

9  *mens rea* of 1595.  Key issue.

10      You've addressed it some in your briefs, and I'd like to

11 have some discussion today about it.  But I wanted to throw out

12 the idea that if that was what someone wanted to do, this is a

13 pretty opaque way of doing it.

14      It's not obvious to me that that's what Congress intended,

15 and maybe a more natural reading of the statute is that, with

16 respect to 1595, Congress wanted to limit the immunity

17 exception to claims based on 1595 -- brought under 1595, which

18 were based on 1591, and did not intend to extend that immunity

19 to other claims brought under 1595, because that statute allows

20 for civil claims based on any sections within the chapter.  And

21 there are lots of sections in the chapter; peonage, slavery,

22 transportation of -- you know, lots of things that don't have

23 to do with sex acts.

24      But that's one -- I wanted you to -- since you addressed

25 that some in your brief and I had this possible way of

1  interpreting, I wanted you to address that.

2  Next I want you to address -- and I'm not sure it's

3  directly germane, because this is a pleading motion, but I'm

4  interested in the relationship between viewings and re-tweets

5  and ad revenue for Twitter.

6  So my tentative is as follows:  As to the TVPRA, I don't

7  think there's a claim for direct sex trafficking.  It was a

8  lovely argument to try to make, but I think that's obviously

9  not correct here.

10  On the claim under TVPRA, under (a)(2), which requires a

11  knowing benefit from participation in a venture engaged in sex

12  trafficking, knowing the person was involved as a minor and

13  caused to engage, et cetera, et cetera, my tentative thought is

14  that that claim survives.

15  And it is my thought for a couple of reasons.  One is, I

16  think the -- because you can tell from my previous suggestion

17  that I think the *knew or should have known* standard of 1595 is

18  the relevant *mens rea* here and that given the proceedings

19  there's sufficient allegation, subject to our discussion about

20  what constitutes a commercial sex act.

21  In terms of participation in a venture, you know, since

22  I'm using the *knew or should have known*, it's not about

23  satisfying the criminal code or putting up an overt act or any

24  of those sorts of things.  It's about sufficient allegations to

25  infer that there was tacit agreement one way or another to

1   allow this to continue.

2       And there are many allegations about that.  Enabling sex

3   trafficking by making it hard to report; permitting a large

4   amount of it to occur.  The allegation is there's an ability to

5   monitor it, and they still let it happen.

6       In this particular case there's no question that Twitter

7   was repeatedly told about this exploitation.  I mean, this is a

8   unique -- maybe it's not unique, but there's a set of facts

9   here that make this case plausible.  And that is, Twitter was

10  repeatedly told about this exploitation, in great detail, and

11  first failed to remove it then refused to remove it, and

12  delayed removing it even after the Department of Homeland

13  Security was called.  You know, even though one of the accounts

14  was posted -- the post of the video was subject to a prior

15  complaint, the content is the content, but the allegation is

16  it's obvious child porn.  So, you know, these repeatedly

17  ignoring or denying requests suggests that they knew or should

18  have known that they were participating in a venture that was,

19  if this is commercial sex act, satisfying participation in a

20  venture.

21      The benefits -- you know, the benefits is an interesting

22  question.  And I will say, with respect to all of this, I'm

23  thinking about this as a pleading motion, of course, and I

24  don't have a preconceived idea about where this comes out to if

25  and when we get to a summary judgment motion, of course.  And

the receipt of a benefit is a particular example of that.

I mean, there's all sorts of things pled about the benefits received, you know, and the views and re-tweets and bringing up advertisements and all sorts of things. You know, they've certainly pleaded, you know, increase in advertising and users, and that sort of thing, which would be benefits under the statute. And then so, you know, with those conclusions, I think it fits within the statute of both FOSTA and 1595.

On the other hand, I think all the other remaining claims are barred. There's no prior cause of action under 2258A and B of the criminal code.

As to the other claims, they're all founded on the idea that this content posted on a website caused an injury and that without the content there would be no injury, and that they should have done something or structured their platform differently to make sure the content didn't show up so easily.

Whatever it is, it's all about the content. And it doesn't matter whether you're putting -- talking about putting it up or taking it down or it's contraband or whether the flaw in that platform makes it easy to put up or difficult to challenge or difficult to take down it seems to me that all the claims are barred by 203 under that -- with respect to that.

But that's my tentative. And I think that what -- I'm particularly interested in your thoughts on the first few

```
1    things I talked about, and I'll first turn to the moving party.
2              MR. RHODES:  Good morning, Your Honor.  May I be
3    heard?
4              THE COURT:  Yes, of course.
5              MR. RHODES:  Thank you.  For the court reporter's
6    benefit, I'm Michael Rhodes representing Twitter.
7         So, Your Honor, my analysis would take us this way.  Let's
8    take a look, for a second, at 230 subsection (e), because I
9    think within the architecture of that statute we will find the
10   answer to what claim, under this particular pattern of facts,
11   can go forward and what the elements of the claim is.
12        If you take a look at (c)(1), which states no effect on
13   criminal law, you see in the *Gonzalez versus Google* case, at
14   page 890, they say that's limited to criminal prosecutions.
15   Then we go to Section 5, which talks about the trafficking
16   laws, and there are three subsections; capital A, capital B and
17   capital C.
18        I note that capital B and C are specifically constrained
19   to criminal prosecutions.  And it was interesting to me to look
20   at subpart B because the carve-out for criminal prosecutions
21   under state law again cites to a charge, quote, that would
22   constitute a violation of Section 1591, not 1595.  So they
23   limited the state law criminal remedy what -- meeting the
24   elements of 1591.
25        And, of course, our argument -- and I understand what the
```

1    Court's position is, but our argument is that if you look at

2    the text of subpart A, the only claim against an electronic

3    computer service under 230 that is allowed to survive is one

4    that meets the definitions under 1591.

5         1595 is the more omnibus civil remedy provision.  And if

6    you look at that *Kik* case, recognizing it's not controlling but

7    it's another case under a similar fact pattern out of Florida,

8    what the court says there is 1595 will apply to offline

9    behavior, like the hotel cases that the parties cited, and when

10   you're dealing with an online interactive computer service, as

11   we are here, the only claim that can go forward is 1591.

12        And so you're allowed to bring the claim under 1595, but

13   you have to meet the strictures and elements of 1591.  And I

14   think that there are four elements that are required for a 1591

15   claim.

16             **THE COURT:**  Can I --

17             **MR. RHODES:**  Yes.

18             **THE COURT:**  Obviously, that was a piece that I wanted

19   to talk about, just what you just said.

20             **MR. RHODES:**  Yes.

21             **THE COURT:**  I want to ask you a little bit about it

22   because they didn't say for claims that you have to -- they

23   didn't say that they meant to change the elements of a claim

24   under the civil statute, 1595, which is the vehicle by which

25   you're allowed to bring a 1591 claim.  They didn't say that.

1  Your point is that they indirectly said it by having -- by

2  saying so long as, et cetera, et cetera.

3       I'm wondering why I should -- they could just -- they

4  could have said something different.  They could have said:

5  And we mean, and, therefore, we're abrogating the 1595 to the

6  extent that it's inconsistent with the elements of 1591,

7  because it is.  I mean 1595, a case brought under 1595 doesn't

8  have to show, even though it's based on 1591, the same

9  *mens rea*.  It seems like an odd way to do it to me.

10      And why isn't my reading of it a more natural reading,

11 that there are lots of different claims you could bring against

12 an Internet service provider based under 1595, but they only

13 wanted you to be able to bring this one because they were

14 particularly concerned, and that's the one thing we can agree

15 about the legislative history, about sex trafficking, not, you

16 know, the other forms of -- abhorrent forms of -- that's kind

17 of redundant, abhorrent forms of slavery that occur.

18      Why doesn't that make more sense?

19          **MR. RHODES:**  I think there are two answers, Your

20 Honor.

21      First, the express language of subpart A, and let's parse

22 it.  The first clause says *Any claim in a civil action brought*

23 *under 1595 of this title*.  Title 18.  If you put a period

24 there, I think the Court's reasoning might obtain.  But there's

25 not a period there.  It goes on.

**A134**

1      **THE COURT:** No. My reasoning wouldn't work. If there

2    was a period there and they didn't have the next phrase --

3      **MR. RHODES:** Look at the next phrase with me, Your

4    Honor.

5      **THE COURT:** I'm just saying --

6      **MR. RHODES:** Yeah.

7      **THE COURT:** -- if there was a period there and you

8    didn't have the next phrase, then you could bring a claim

9    against an Internet service provider for peonage or

10   transporting slaves or the other things that fall within the

11   chapter. But that's not what they did. It's not --

12     **MR. RHODES:** They --

13     **THE COURT:** So a period wouldn't change it.

14     **MR. RHODES:** But the phrase is *conduct*. I think this

15   is important. It doesn't say if the elements -- it says *if the*

16   *conduct underlying the claim*. So the thing that has to be

17   satisfied is you have to demonstrate the conduct of the claim

18   has to say 1591. They repeated that a second time in subpart B

19   for carving out state criminal prosecutions.

20       My argument is, if they had intended to allow claims at

21   the lower intent or, as you call it, the lower *mens rea* level

22   under 1595, which is the *known or should have known* standard,

23   why are they specifically saying the conduct has to satisfy

24   1591?

25       The one case that dealt with that directly is *Kik*. They

**A135**

```
 1   conclude that we were correct and Your Honor's construction is

 2   not correct.  I accept that that's not binding on you.  But

 3   what I'm saying is, if you look at the language, why would they

 4   repeat that phrase *if the conduct*?

 5       Then if we go to 1591, Your Honor, it says the conduct has

 6   to satisfy 1591, twice in 1591, both in sort of the very

 7   beginning of subpart A, where it says *whoever knowingly*, and

 8   then you've got the 1 and 2 claims.  The 2 claim, as you point

 9   out, which is the one that we would attach to here, in the

10   definition of participation and venture, we once again find the

11   word *knowingly*.

12       So I think the architecture of the statute is very clear

13   that they were trying to identify a class of websites.  We know

14   what they were because, remember, before this amendment

15   Backpage and others were getting off the hook on 230, and they

16   tried to design something.

17       But they used the phrase *knowingly* in the statute in 1591

18   twice, and then they say you've got to satisfy the conduct of a

19   1591 claim.  They don't say the conduct of a 1595 claim.

20       And I argue that you're making that second phrasing --

21       **THE COURT:**  They couldn't say conduct satisfying a

22   1595 claim because conduct satisfying a 1595 claim would go

23   beyond -- would go beyond sex trafficking.

24       **MR. RHODES:**  I agree with you.  But I'm just saying

25   if -- if the only claim that survives in this context -- in
```

```
 1    fact, you know, the Kik case says this explicitly.  They say
 2    explicitly, in the sex trafficking context the only claim that
 3    gets to be brought against an interactive computer service is a
 4    1591 claim, and you have to show knowledge and overt acts.  And
 5    the complaint doesn't allege knowledge and overt acts here.

 6         And, for one thing, a 1591 claim has a very interesting
 7    subpart which has a temporal aspect to it.  If you look at
 8    subpart 3, you asked about commercial sex acts in your
 9    preamble, and there it says it means any sex act on account of
10    which anything of value is exchanged, and then it goes on to
11    say the venture is -- and the syntax is important -- knowingly
12    assisting, supporting, facilitating a violation.

13         And if you look back to the original part of the
14    beneficial or beneficiary claim after subpart 2, there's
15    another unnumbered paragraph, okay.  And it also uses the
16    phrase knowingly, and it talks about the minor being under 18,
17    and then it says will be caused to engage.

18         I mean, one of the elements that's missing here for a 1591
19    claim is not just the knowledge and the overt acts and any
20    connective tissue between just posting the video generally and
21    boosting it generally -- which Gonzalez says is not enough
22    under a nonFOSTA case -- but you have this temporal aspect that
23    your action is going to cause this to occur in the future.

24         So our argument is --

25              THE COURT:  Well, not necessarily your action.  The
```

1   venture --

2          **MR. RHODES:**  The venture, correct.

3          **THE COURT:**  -- will cause it to occur in the future.

4          **MR. RHODES:**  I agree with that.

5          **THE COURT:**  And I guess the argument on the venture

6   is, well, you know, that's what child pornography is all about.

7   Posting leads to reposting, leads to trading, leads to selling

8   of this, and that's the commercial sex acts that occur

9   naturally in the future from the first posting and from the

10  second posting and from the third posting.

11      Why isn't that enough for a commercial sex act?

12         **MR. RHODES:**  Because they're talking about

13  participation in a venture, and that has been construed by the

14  cases as to having some connection.  It's not necessarily a

15  conspiracy per se.

16      But here Twitter doesn't know who these people are.

17  There's no allegation that we were aware of them.  It's simply

18  the content.  The content got posted, and it's the fact you

19  didn't take it down quickly enough despite, as you point out,

20  the several notices.

21      It's still the underlying content.  You're treating this

22  as a (c)(1) publisher or speaker of the content.  And we

23  believe it's very clear in the statute that the only claim

24  that's allowed to go forward is a 1591 claim, which requires a

25  specific level of intent.

1      And if you look at that *Afyare* case that we cite, *U.S.*
2   *versus Afyare*, which is sort of the benchmark for what is the
3   elements of the claim, it's knowledge that you're intending to
4   facilitate this activity.

5      This already took place.  We're not intending to
6   facilitate it.  The argument really is, you made an error in
7   judgment in not taking it down quickly enough.  That's the
8   classic 230 situation.  That's not a 1591 violation.

9      And I think the *Kik* case got it right when they point out
10  the 1595 claim was built for the offline world, the situation
11  where you've got the motel manager who's aware that the
12  trafficking is taking place on premises based on their
13  observations, and they talk about, you know, what you're able
14  to see.  That's the *should have known* standard.

15     In the interactive computer service context, the only sex
16  trafficking claim that gets to go forward is one that meets the
17  strictures of 1591.  And our argument is that does require a
18  level of intent that's higher than the *should have known*
19  standard in 1595.

20     Otherwise, why would Congress, in multiple sections under
21  the carve-out for FOSTA, why would they use the phrase *the*
22  *conduct of the claim has to satisfy 1591*?  Why would they use
23  that phrase?

24         **THE COURT:**  I think it's an interesting argument.  And
25  we'll get the other side's response on it in a moment, but I

1    wanted to ask you one other question.

2         You were talking about the requirement that it cause to

3    engage in a commercial sex act regarding the venture.

4         So I guess you don't disagree that -- I'll put it in a

5    provocative fashion.

6              **MR. RHODES:**  Yes, Your Honor.

7              **THE COURT:**  You don't disagree that the -- you know,

8    leaving aside, for a moment, Twitter's intent with respect to

9    and knowledge with respect to the posting, but the posting of

10   child pornography falls within the definition of a conduct that

11   would cause plaintiffs to engage in a commercial sex act, you

12   don't disagree with that?

13             **MR. RHODES:**  In the abstract, I can see your point.

14   What I'm saying on the facts of this case -- let me give you an

15   analogy.

16             **THE COURT:**  There are two questions.  One is in the

17   abstract and then Twitter's participation.

18             **MR. RHODES:**  Yes.

19             **THE COURT:**  That's a different question.

20             **MR. RHODES:**  Yeah.  I agree with you.  I guess what

21   I'm hung up on is if you look at the most recent Ninth Circuit

22   articulation generally on 230, which is the *Gonzalez* case, they

23   specifically note in that instance that they accepted as a

24   premise that the platform was intentionally, as they put it,

25   intentionally recommending the offensive conduct, the

 1   ISIS-created content, and that they were making it more easy to

 2   see, more allowable.  And they said that's not enough to get

 3   you outside of 230.

 4        I think the analogy holds here too.  It's we have to have

 5   an intent and knowledge that our action is facilitating the

 6   violation of 1591, which has, as you point out, the commercial

 7   sex trafficking activity, and the victims will be trafficked.

 8   And I don't think that connection is made here on this record.

 9        **THE COURT:**  So why isn't it made?  And I'm not sure I

10   agree that's the right way to look at the standard.

11        But why isn't it made by saying that you were told over

12   and over and over, in great detail, that this was child

13   pornography, the sources of the child's pornography, that it

14   was up there, that people who were posting it were child

15   pornographers?  Why isn't that enough to take you out of that

16   exception?

17        **MR. RHODES:**  Because you still have to show a

18   connection between your knowledge and the intent -- in the

19   venture definition, the second knowingly assisting the venture.

20        And what you've got here is in the language of the

21   original 230 case, *Zeran*, the *Goddard versus Google* case, and

22   that *Vimeo* case, I believe, out of the Second Circuit, they all

23   say perfection is not the standard.

24        So I think the record shows, Your Honor, that they took it

25   down after nine days.  And the totality of the circumstances

```
 1   are clear that Twitter does not want this kind of content on

 2   its website.

 3       Under Gonzalez, we're not treating -- there's no

 4   allegation that we treated this content specifically different.

 5   It's you've got to do more than just have general platform or

 6   that somehow you make money generally on content on your

 7   platform.  We dispute that it's all content, but that's what

 8   they allege.

 9       And the point I'm making is, if you look at the cases

10   going back to even Zeran and even the Congressional intent, as

11   in the language of the Ninth Circuit in Gonzalez, Congress

12   didn't differentiate between criminal, dangerous, or obscene

13   content from innocuous content.

14       The question presented is, is my failure to retract the

15   offensive material, is my failure to retract over a nine-day

16   period, is that enough to satisfy the intent element of 1591?

17       Now, if you disagree with me as a threshold matter, if you

18   disagree with me that the only claim that can survive is one

19   built on 1591, as the language says, based on the conduct that

20   satisfies 1591, and you say that notwithstanding that we can

21   satisfy the claim by looking at 1595, then, yeah, I understand

22   that I'm more in trouble with you on that point.

23       But I think that's legally wrong, Your Honor, for the

24   textural language of the entire statute, the fact that the

25   first part is only limited to criminal prosecutions.  And in
```

1   multiple places in the FOSTA carve-out they said even for state

2   criminal prosecution the only thing that gets by for an

3   electronic computer service is a claim that satisfies 1591.

4   And there's no dispute that 1591 has higher and more stringent

5   elements than 1595.

6       So the question is, so why is that the case?  And what the

7   *Kik* case says is that the only commercial sex trafficking

8   activity that gets laid against an online computer service like

9   this is 1591.  And 1595 is meant to pick up the real world, the

10  non-online world of sex trafficking, and that's what those

11  hotel cases talk about.

12      That's the argument we're making, Your Honor, as the

13  gating item.  And, frankly, for me to win, you have to accept

14  that as a paradigm, and I understand that.

15          **THE COURT:**  Okay.  I get it.  I get it.  I get it.

16      So can you -- while I've got you, before I go to the other

17  side, and you can say anything else you'd like to, as well,

18  would you tell me a little bit about the relationship between

19  views and re-tweets and ad revenue for Twitter?  I mean, I have

20  to go by the pleadings, but I am interested in how that

21  actually works.

22          **MR. RHODES:**  Right.  So there's sponsored tweets,

23  which are based algorithmically filtered, if you're looking at

24  a feed on a certain subject matter and then, simplistically

25  put -- and my apologies to my Twitter colleagues who are on the

```
 1    Zoom.  I'll probably get this wrong.

 2         But in concept, the company has sponsored tweets.  People

 3    have paid for those tweets to get to your eyes, if you will.

 4    And it's basically kind of content matching.

 5         Now, what's interesting here is another one of our

 6    arguments, one of our sub arguments here is -- and *again*

 7    *Gonzalez* helps us understand this -- just because you have a

 8    platform that monetizes user-generated content, including

 9    dangerous, offensive, and criminal content, doesn't mean that

10    that takes you outside of the immunity; right.  It has to be

11    more than that.

12         So, for example, there's no allegation here that there was

13    a sponsored tweet for this content or that Twitter did anything

14    knowingly with respect to this particular content.

15         The allegation appears to be that, well, the content was

16    there, there was 171,000 views of it; and, therefore, that

17    monetization, if you will, to the extent there was a

18    monetization there, it may be indirect in the sense there was

19    more overall user engagement or something on the platform.

20         And, I think, if you go back and look at *Gonzalez* it's

21    very interesting because they talk about the monetization

22    concept, and they say just because -- even when you're kind of

23    boosting content or making it easier to find or easier to see

24    in the language of that case, it's not enough to take you out

25    of the 230 harbor.  You have to kind of entwine yourself with
```

1   the specific content for that principle to attach here.  It's

2   not enough to just simply say, you know, you're making money

3   because there's content.

4        And the reason I say that is you go back to the

5   legislative history -- look, I understand that's always a

6   dangerous argument for lawyers to make; right.  But if you look

7   at what motivated this and look at the congressional record,

8   they were talking about a specific set of websites, where the

9   entire website was designed to facilitate sex trafficking.

10       I argued these cases a lot before 2018, and I would always

11  have judges tell me:  I'm really disturbed by your citation to

12  the Grinder case or the Backpage case where the entire website

13  was designed with tools to anonymize conduct, make it hard to

14  find people, use coded language, facilitate payments, and all

15  those things.

16       Twitter is obviously meant to be a benign platform; right.

17  May not like some of the content, but it's meant to be a benign

18  platform.  They move heaven and earth to try to get this kind

19  content off of it.  What you can say here is, at best, someone

20  may have made a human error, and it was up for nine days.

21  Okay.  But that is a fundamental publisher function, trying to

22  retract offensive material.

23       And *Zeran* and *Goddard* and *Vimeo* and other cases say, look,

24  we understand we're not going to get perfection.  So if we're

25  going to take your immunity away, if we're going to take it

1    away, we're going to require more engagement with the
2    particular offensive content.
3         Go back to that *Kik* case.  They talk about this.  They
4    said the same thing there.  And remember, in *Kik* the
5    trafficking took place on the *Kik* platform.  The allegation
6    was:  You know those people are there; they met the victim
7    there; they contacted the victim there; they used your service
8    to connect with them and then get them to engage in the
9    trafficking off the platform.
10        And the Court said, yeah, but your venture is all about
11   just the generic money-making machine of that platform, that
12   user engagement drives economic uplift.  And the Court said
13   there's no allegation that *Kik* intended to facilitate the
14   trafficking of that particular person or to engage in an
15   economic relationship with the perpetrators who were targeting
16   that particular person.
17        And that's what 1591 captures differently than 1595.  And
18   that's why the gating concept I've given you suggests that
19   that's the right way of thinking about it, because you're still
20   trying to motivate these platforms to do the right thing and
21   self-police.  But they're not going to get it right every time.
22   And so if you take the immunity away because they screwed it up
23   in one instance like this, it becomes very challenging to the
24   underlying architecture of the whole thing.
25        And so we would argue that it's more than just you make

1   money because there's content and people are eyeballing it.

2   There's no allegation that I was trying to target Judge Spero

3   particularly and get people to look at Judge Spero's content

4   and make additional money on Judge Spero or, as Twitter does,

5   license data about Judge Spero, and so on and so forth.

6       It's really, if you look at it, the complaint says you

7   make money by having this kind of content there.  And if the

8   issue is we're knowingly acting, then why are we trying to take

9   down 400,000 accounts all the time?

10      I think what you really have here is you have that old

11  adage bad facts can lead to bad law.  It's a tough fact

12  pattern.  I get it.  But it doesn't change the fundamental

13  analysis that we had nothing to do with this other than

14  allowing it to be up there for nine days and didn't -- if the

15  Court accepts the plaintiffs' argument, didn't respond as

16  accurately and fast as we should have to the takedown notices.

17      It's still a retraction function.  It's still the

18  quintessential publisher behavior.

19          **THE COURT:**  Thank you very much.

20      Let me talk to the other side a little bit.  I want you

21  all to respond to what Mr. Rhodes has said, in particular in

22  addition to the *Gonzalez* case and the recent Ninth Circuit

23  opinions.

24      He says two things that resonate somewhat with me, and

25  that is, in FOSTA the reference using the same language in the

```
 1   next subpart, in subpart B for state criminal proceedings, it's
 2   a -- he suggests that that way of doing it means that they
 3   really meant it as a limiting feature in the way that Twitter
 4   is arguing.  And, secondly, that it refers to conduct
 5   satisfying the elements of 1591, and that that is another --
 6   additional evidence that they really meant to confine what was
 7   encompassed within the allowable 1595 claim.
 8        So if you would address those as well as the other things
 9   that Mr. Rhodes stated and the things that I wanted stated, I
10   would appreciate it.
11           MR. GENTALA:  Thank you, Your Honor.  My name is Peter
12   Gentala, again, for the record --
13           THE COURT:  Welcome.
14           MR. GENTALA:  -- and I represent the plaintiffs.
15   Thank you.
16        Also with me is co-counsel Lisa Haba, and we had designed
17   our presentation so that I would speak to the trafficking
18   issues and Ms. Haba would essentially speak to the balance of
19   the claims in the complaint.  And I'm also prepared to speak to
20   2258A, which you've already indicated in your tentative that
21   you've made a tentative decision on.
22        We would be -- we'll go straight to the Court's concerns,
23   but we would like to be heard, if there's time, on some of
24   those issues that are outside of the tentative order.
25           THE COURT:  Of course.
```

1      **MR. GENTALA:**  Turning, Your Honor, just to your first

2   question, where you asked about the commercial sex act and

3   whether child sex abuse material -- and, with the Court's

4   permission, I'll just use that term.  I understand that the

5   term in the statute is *child pornography*, but the parlance in

6   the field is to really focus on what it actually is because it

7   does constitute a crime.

8      And the definition of the commercial sex act is any sex

9   act on account of which anything of value is given to or

10  received by any person.  There's a lot of *anys* in there, Your

11  Honor.  That's broad language.  Congress has swept,

12  essentially, any sex act where there's a knowledge component in

13  there.

14     So it's absolutely the case that child sex abuse material

15  can constitute a commercial sex act and that a commercial

16  benefit can be received from it after the fact.  The whole

17  point to child sex abuse material is that it's harmful in its

18  inception, but then it is also devastatingly harmful as it

19  continues to be spread over and over again, so much so that the

20  mere possession of it is criminalized.

21     So what we have here -- I heard what Mr. Rhodes said, and

22  I saw in the papers their argument about *any person*.  But the

23  relative phrase in these sex trafficking laws is not *any*

24  *person*, it's whoever commits one of the acts, let's say

25  maintaining or facilitating, and then it's *by any means a*

1   *person.*

2       And the means that has been used here is by a digital

3   creation and then recirculation of an abusive sex act that has

4   been committed against them.

5           **THE COURT:**  You have to go back to the language of the

6   statute.  The question is whether one recruits, entices,

7   harbors, transfers, provides, obtains, patronizes, or

8   solicited, right, a person.  And I'm wondering how this can be

9   that direct thing when Twitter has not done any of those

10  things.

11      You know, give them -- assume for the moment that they may

12  have some responsibility, ultimately, for not taking the

13  posting down, for after the fact getting some benefit from it,

14  et cetera, et cetera.  I'm still troubling -- you're talking

15  about the direct claim under (a)(1), I assume, that how that

16  could be that they've actually done one of these things with

17  respect to a person.

18          **MR. GENTALA:**  Your Honor, really, the commercial sex

19  act element is there in both the direct and the benefiting

20  claim under (a)(2).

21      But that predicate term *maintained* is in the direct

22  portion.  And the maintaining here would be at the point of

23  knowledge, once Twitter knows that this child sex abuse

24  material is on its platform.  And then we have in the record

25  paragraph 120, Twitter writing back to one of the victims and

saying:  We've reviewed the material; it doesn't violate our

policies; it's going to stay up on our website.  So that's the

maintaining.

But I understand we're going through the lens of 1595 and

that the standard is through that, and we agree with what

you've been saying about the knowledge standard that's from

there.

Your second question, I think, really gets to the

economics of Twitter and the value that can come from a

commercial sex act.

And here, Your Honor, I think it's important to note,

first of all, there was substantial user engagement with this

child sex abuse material.  The numbers that we were able to

document for the purpose of the First Amended Complaint, the

167,000 views, 2200 re-tweets, 6600 likes, that's all just

after two days after it was reported to Twitter.  It was active

at least another seven days on the platform.  So we really

can't tell, but it's a very, very substantial engagement with

the users.

And what does Twitter say to the business community, to

its investors, to the public, about the way it conducts its

business?  Simply stated, Twitter says, by its own description,

that it receives value from every account and every post on its

platform.  And whether that turns into immediately hard

currency and when it gets converted into revenue is not the

1   question because it's anything of value.

2       So look at, for example, just to give you a few paragraphs

3   that you can look at later, paragraph 31, in a letter to

4   shareholders Twitter says:

5           "Using our proprietary algorithms and understandings

6       of the interests of each account, we can deliver promoted

7       tweets that are intended to be relevant to a particular

8       account."

9       Again, paragraph 41 talks about an active usage model that

10  Twitter has put together to help its prospective business

11  partners and advertisers understand daily activity.  That's the

12  monetizable daily active usage program.

13      They're basically saying every account matters every day,

14  and we can track what happens on a use-by-user basis and on an

15  account-by-account basis.  That's value to Twitter, which they

16  turn around and turn into value in the marketplace.

17      And then, finally, paragraph 32, this is what Twitter

18  tells not advertisers and businesses but users themselves,

19  quote:

20          When you use Twitter to follow, tweet, search, view or

21      interact with tweets or Twitter accounts we may use these

22      actions to customize Twitter ads for you.  Unquote.

23      And it goes on at some length describing for users what it

24  is for the purpose of users appreciating how they track that

25  data.

1     Now, I heard Mr. Rhodes say that what there should be is

2    proof that this particular CSAM was monetized.  And that is not

3    in the statute.  The statute focuses on anything of value.  And

4    from the point of time that Twitter knew that that child sex

5    abuse material was on its platform, it also knew or should have

6    known that it was receiving value from it.  And the amount of

7    user engagement that we have pointed to, to the Court,

8    demonstrates that.

9     So that's the commercial benefit side.  It does not --

10   it's not a transactional transaction-by-transaction benefit.

11   It's anything of value, whether it's monetary or otherwise.

12     And just to give you one example, many courts have held,

13   for example, that offenders in the child pornography space

14   receive something of value when they just get the image,

15   because it's valuable to them for their own personal

16   possession, whether they convert that into currency afterwards.

17   So that's the kind of value that we're talking about overall.

18     I just want to mention, the reference to the *Kik* case and

19   the *mens rea* with 1595, I think the -- you know, the relative

20   analysis there that was done by Judge Freeman in the *BM* case

21   and Judge Orrick in the *JC* case, both of which are in the

22   pleadings, in the papers before you, point out that basically

23   the argument that Twitter is making here would completely

24   nullify the *should have known* standard that appears in 1595.

25   And at the pleading stage, here you have two different judges

1    that have said they're not prepared to do that.

2           **THE COURT:**  I understand.  I have to decide for

3    myself.

4           And I want you to address the two arguments that he

5    brought up, that I hadn't focused on in as great a detail, and

6    that is the language that he says changes the *mens rea* from the

7    1595 standard to the 1591 standard in FOSTA is the same in

8    subpart B for state criminal prosecutions, suggesting that they

9    intended to limit those things in the same way.  And the only

10   way you can understand that if they're in the same way is if

11   it's the same kind of limitation; and, secondly, the reference

12   to conduct.

13          But those are the two things I need you to address that

14   Mr. Rhodes mentioned on this *mens rea* part.

15          **MR. GENTALA:**  Sure.  So the context is a

16   sex-trafficking-focused piece of legislation.  So your take is

17   correct that what Congress was doing was coming in and carving

18   out sex trafficking from the rest of the Trafficking Victims

19   Protection Act, which focuses on employment trafficking,

20   peonage, et cetera.  And so that's how they're singling that

21   out in the language of FOSTA, they're focusing on it has to be

22   a violation of a 1591 claim that is the initial conduct.

23          I want to point out something here.  The conduct doesn't

24   necessarily have to be Twitter's.  In fact, in this case the

25   initial conduct was not Twitter.  It was the initial trafficker

1  who trafficked these young men.  And then there were subsequent

2  traffickers who posted the material onto the Twitter platform.

3  We don't know who they are.

4      But what Congress accomplished in FOSTA was by

5  specifically noting 1595, which has the *should have known*

6  standard in there.  It was allowing trafficking victims to come

7  forward and basically have access to discovery so that they

8  would have a chance to prove a claim when it's predicated on an

9  original 1591 violation.

10     **THE COURT:**  So you're not answering my question.  My

11  question is, what about the fact that subpart B for state

12  criminal prosecutions has the same language?  That's the

13  question.

14     And I think the argument is -- and I'm just making it up

15  off the top of my head; Mr. Rhodes will correct me when I'm

16  wrong -- is that you don't think that in putting it in subpart

17  B for state criminal prosecutions, do you, that if the state

18  criminal prosecution had a lesser standard, it had a lesser

19  standard for conviction of a sex trafficking crime than was

20  required for 1591, that the state could still prosecute someone

21  and the immunity would go away, do you?

22     And if you agree with me on that or you agree with

23  Mr. Rhodes on that, then it's the same language with respect to

24  the subpart regarding 1595.  So that's, as I understand it, the

25  issue with respect to it's the same language in two subparts of

```
 1   FOSTA and how can you square your view of it with the second

 2   subpart.

 3        MR. GENTALA:  I understand.  Thank you.

 4        I don't think -- I think it's an apples-and-oranges

 5   comparison or analogy.  Here we have Congress specifically

 6   pointing to a civil cause of action statute that rests on top

 7   of the criminal statutes.

 8        And it would be a different matter if Congress also

 9   decided to point out state civil causes of action that could

10   work in the sex trafficking area where they're creating civil

11   causes of action.  But that's not the case there.  So --

12        THE COURT:  No, but did --

13        MR. GENTALA:  -- alignment on the criminal side and

14   civil side -- sorry.

15        THE COURT:  Maybe I'm not being clear.

16        Assume with me when the Congress says what you say they

17   say, that when they say that the conduct satisfying the

18   elements of 1591, that that is not meant to restrict or in any

19   way change the *mens rea* requirement of the phrase that's before

20   it, which is the broader category of things that are allowed to

21   be brought, in the subpart we're talking about, that's 1595,

22   has a particular *mens rea*.  And it's not Congress's intent by

23   saying so long as the conduct meets the elements of 1591 to

24   change the *mens rea* requirement of 1595.  That's your argument.

25   That's the point.
```

1      If you go into subpart B, where it says you can proceed

2   with state criminal prosecutions, and then says so long as, et

3   cetera, et cetera, et cetera, what's the implication for that?

4      If we go with what you're saying, then if a state has a

5   criminal prosecution for sex crimes that has a lower *mens rea*

6   than 1591, that it doesn't -- state criminal prosecution is

7   allowed; right?  The state criminal prosecution is allowed even

8   though it has a lower -- I think that's the way the argument

9   goes -- a lower *mens rea* than 1591.  That would be your

10  argument.

11     But that seems like an odd thing in the criminal context,

12  when they said the conduct has to fall within a criminal

13  statute to be accepted and allowed for a criminal prosecution

14  in the state area.

15     I mean, that's the argument, in any event.

16        **MR. GENTALA:**  I understand.  It is an odd -- it would

17  be odd, and Congress didn't do that.  Congress has a specific

18  civil carve-out here.

19     And so when I see the -- I don't understand why when

20  Congress moves in with a scalpel and focuses on a specific

21  civil cause of action in federal law and then in a separate

22  vein moves over to talk about the kind of criminal *mens rea*

23  that would apply on the criminal side of things, why the two

24  are completely linked together or would have to be linked

25  together.

1       That phrase *if the conduct underlying the claim*

2   *constitutes* really is very similar to what we're talking about

3   in 1595, where there's a victim of the chapter and -- and they

4   knew or should have known that they have engaged in an act that

5   is in violation of the chapter.

6       And so Congress is saying, among this chapter let's focus

7   on 1591, and if there is a 1591 claim then we can focus in

8   specifically on the state of knowledge, and we're going to give

9   a civil plaintiff the benefit of the *should have known*

10  standard.

11      Your Honor, I don't want to get lost with that because we

12  believe that we satisfy the direct knowledge standard --

13      **THE COURT:**  No, I appreciate.

14      **MR. RHODES:**  -- and, certainly, the reckless disregard

15  standard as well.

16      **THE COURT:**  Yeah.

17      **MR. GENTALA:**  Your Honor, I had a point about

18  participation in the venture and the *Afyare* case.  Are you

19  satisfied with our discussion of following up on Mr. Rhodes's

20  points?

21      **THE COURT:**  Yes, I think I am.  I think I need you to

22  finish up your argument though.  I've got a -- unfortunately,

23  I'm doing the criminal calendar for the district for -- the

24  morning criminal calendar for the district, and I need to get

25  to that pretty soon.  But I want you to finish up your argument

1    and make any additional arguments you wanted to make pretty

2    quickly if you could.

3        **MR. GENTALA:**  Sure.  I'll be very brief then.

4        With regard to participation in a venture, the *Afyare* case

5    is of no value because it was decided by the Sixth Circuit in

6    2016 before Congress conveyed a specific definition for

7    participation in a venture.

8        Congress included that in the package of changes that were

9    made with FOSTA-SESTA in 2018.  So *Afyare* is not -- I saw it

10   called, a couple of times in the pleading, a seminal case.

11   It's a case that really doesn't provide any value when it comes

12   to participation in the venture.

13       With regard to the nexus between sex trafficking and

14   sexually explicit photos and videos, one case that wasn't in

15   the pleadings, that addresses a specific offense made by a

16   criminal defendant under 1591, is *United States versus Marcus*.

17   That cite is 487 F.Supp.2d 289.  487 F.Supp.2d 289.

18       And there you have a criminal defendant making the

19   argument you need a tangible person and it doesn't apply to

20   pornography.  And the Court rejects that defense in the context

21   of 1591.  And the Court specifically notes that when the

22   Trafficking Victim Protection Act was passed in 2000, among the

23   congressional findings was a concern about sexual exploitation

24   through pornography.  And that's with the *Marcus* case.

25       With regard to this concept *will be caused*, that the verb

```
 1   tense matters there, it's broad language.  And as the Court's
 2   have looked at 1591 and -- both direct and beneficiary
 3   trafficking, they have ruled that it's broad enough to cover
 4   even when a sexual act has not yet taken place, even if it
 5   never takes place, even in police sting situations where there
 6   is no minor.
 7        But here we have the children.  The initial sexual act has
 8   taken place, and the commercial sex act was ongoing on the
 9   Twitter platform, and Twitter had knowledge of that and left it
10   there.
11        And without the benefit of discovery, we won't know the
12   full footprint or the impact of that.  It still may be there
13   now for all we can know.  But we need to have a chance to get
14   to the bottom of these issues under the trafficking statute.
15        With that, Your Honor, I just want to give my co-counsel a
16   chance to raise any issues touching the balance of the
17   complaint.
18        THE COURT:  That's fine.  But I do -- please make it
19   as concise as you can.
20        MS. HABA:  Your Honor.  Lisa Haba on behalf of John
21   Does 1 and 2.  Thank you for your time, Your Honor.  I'll be
22   brief.
23        I'm going to talk about three of our other causes of
24   action very briefly.  The first one being 2252A and 2255, the
25   second one being the common law claims, and the third being the
```

```
 1   product liability.

 2       We believe that all three of them -- I know Your Honor's

 3   preliminary ruling was they fall outside.  Within CDA 230, we

 4   would respectfully assert they fall outside CDA 230 for the

 5   following.  I'm going to talk first about the 2255.  This deals

 6   with child pornography.

 7           THE COURT:  So can I ask you a question?

 8           MS. HABA:  Yes, sir.

 9           THE COURT:  With respect to 2255A and B, I said

10   there's no cause of action for those claims.  No private right

11   of action.  What's your response to that?

12           MS. HABA:  There is a cause of action for 2255 and

13   2252A.

14       2252A created a cause of action in 2255.  That was created

15   when the civil cause of action came into existence in 1998,

16   under the Children From Sexual Predators Act of 1998, and

17   that's when 2255 created the civil remedy.

18       So that was two years after CDA 230 was codified.

19   Congress, knowing of CDA 230's immunity provision, then

20   codified the civil cause of action allowing child pornography

21   to come into effect.

22       It's referred to as Masha's law as the common phrase

23   that's being used throughout the circuits.

24           THE COURT:  Okay.

25           MS. HABA:  Under Masha's Law, in that civil cause of
```

1  action, we're dealing with a unique situation that's not been

2  addressed and would be a matter of first impression here in the

3  Ninth Circuit.

4      Matter of first impression would be the following.  There

5  are a couple of cases that deal with CDA 230 immunity.  None of

6  them deal with child pornography.  And it falls outside of that

7  because in other situations all the other scenarios that we've

8  been talking about in the case law and the jurisprudence deal

9  with matters of discussing different criminal activity.

10     This is criminal activity.  Trading child pornography on

11 Twitter's platform is criminal activity.  They're participating

12 in criminal activity as opposed to discussing it.

13     For example, if you said, I'd like to sell you drugs on

14 Twitter's platform, and there's a conversation about that, and

15 the drug sale takes place offline, that's a very different

16 scenario than actually trading the illicit, illegal material

17 through the platform.  And Twitter, when they acknowledge that,

18 becomes a part of that crime.

19     When they allowed --

20         **THE COURT:**  So is there any case law that says that?

21 I mean, for example, is there a case that says if you post --

22 if you're a person with security clearance and you post

23 national security information on Twitter, Twitter is

24 responsible because the act of posting that is itself a crime?

25         **MS. HABA:**  To my knowledge, Your Honor -- and I've

```
 1   looked ostensibly for a case that would say that -- I don't
 2   think there is one.
 3           THE COURT:  So what about that source?  So you think
 4   that if somebody gets on Twitter and posts something that's a
 5   crime, Twitter is responsible for it?
 6           MS. HABA:  If they have knowledge.  So Twitter got --
 7   I don't think it's in a vacuum.  I don't think it's a scenario
 8   where --
 9           THE COURT:  Okay.  So they have knowledge.  They're
10   told about it, and nine days later they take it down,
11   hypothetically.  Do you think they can be held liable, that
12   there's a civil or criminal claim against them for that?
13           MS. HABA:  Well, there's a middle piece that makes it
14   the civil liability.  That's when they reviewed it and they
15   chose not to remove it.  They made a definitive act to say, I
16   refuse to remove this, I refuse to act on this, with the full
17   knowledge of the criminal context of what I'm looking at.  And
18   I refuse to act, allowing it to continue to be distributed by
19   my platform, knowing that this criminal material is being
20   distributed and knowing that I'm profiting from it.
21       With those facts in mind, yes, there is civil liability
22   for them, and that -- we have adequately pled that in our
23   pleadings.
24           THE COURT:  Okay.
25           MS. HABA:  The authority I would state to is in the
```

1    *Roommates* case, Your Honor.  *Roommates* has two pieces in it

2    that I think are very instructive on this.

3        On page 1164 they say that unlawful conduct, when posed

4    face to face or by telephone does not magically become lawful

5    when accessed electronically online.  The communications

6    Decency Act is not meant to create a lawless no man's land on

7    the Internet.

8        In the same *Roommates* case, the Ninth came forward and

9    talked about in the context of discussing 230 immunity.  And

10    they came down on the district court and they said this is not

11    a blanket immunity.  This is absolutely not something that

12    should be across the board if it's online we can't touch it.

13        They actually found fault with the district court for

14    doing that.  And that's going to be cited on 1175 in the

15    *Roommates* case.  And what the line says, when Congress passed

16    Section 230, it did not intend to prevent the enforcement of

17    all laws online.  There's no case in the Ninth that says child

18    pornography is permissible to be traded and be given immunity

19    of any kind for participating in criminal conduct.

20        And I think another piece of *Roommates* that's incredibly

21    important is that they talk about:  We believe, in the context

22    of discussing total immunity versus participating in criminal

23    conduct, the message to website operators is clear.  If you

24    don't encourage illegal content, you will be immune.

25        We believe this distinction, again in the context of legal

1  versus illegal participation, is consistent with the intent of

2  Congress to preserve the free-flowing nature of Internet speech

3  and commerce without unduly prejudicing the enforcement of

4  other state and federal laws.

5      Well, Your Honor, Twitter violated the criminal laws that

6  prohibit the distribution and possession of child pornography.

7  At the very least, when Your Honor is interpreting this, at the

8  moment it was uploaded to their platform they were in

9  possession of child pornography.  Every single time it's been

10 re-tweeted at a massive rate and scale this rampant

11 distribution of child pornography has been their distribution

12 of child pornography.

13      THE COURT:  Well, but they clearly don't meet the *mens*

14 *rea* at that point in time; right?

15      MS. MOHR:  Correct.  But then there was a point in

16 time when John Doe's mother and himself contacted them and said

17 this is happening.  And they responded back and said --

18 acknowledging their *mens rea*, and said, we know; we see this;

19 we've reviewed the material, and we refuse to remove it.  And

20 that's at the moment when they are not only possessing and

21 redistributing child pornography with full knowledge, in

22 violation --

23      THE COURT:  No, I appreciate that.  I'm very troubled

24 by the idea that there's some distinction between civil and

25 criminal here.

**A165**

```
 1        So did you have something else you want -- because I've
 2   got a bunch of people on the criminal calendar that are waiting
 3   to get on, including, I hope, the jail.
 4        MS. HABA:  No, I appreciate that.  And if you can
 5   indulge me, very, very brief, I'd like to talk very briefly
 6   about the CDA 230 immunity provision.
 7        I think it's very important just to look at the language
 8   of the statute.  We talk about Twitter being either a publisher
 9   or a provider.
10        In the provider context, they only get immunity if certain
11   predicate acts are met.  Those predicate acts being they have
12   to take a voluntary good-faith act to restrict material or they
13   have to have -- they have to basically take certain actions.
14        Well, Twitter has alleged that they acted in good faith
15   and that they took voluntary good-faith acts, but there is no
16   evidence in the pleadings that --
17        THE COURT:  I know.  Mr. Rhodes is relying on the
18   publisher immunity.
19        MR. RHODES:  Yes, Your Honor.
20        THE COURT:  He's not relying on that for this
21   pleading.
22        MS. HABA:  Okay.  Well, then, I'll address the
23   publisher immunity very briefly as well.  Publisher immunity is
24   as follows.  There was --
25        THE COURT:  I know what the publisher immunity is.
```

1    If you have a specific thing you want to argue about a

2    specific cause of action you should do it because I'm going to

3    cut off the argument in about two minutes.

4        **MS. HABA:**  Yes, Your Honor.  I will move on to the

5    products liability claim, and then I'll be finished, Your

6    Honor.

7        Our products liability claim does not fall under CDA 230

8    either.  Our products liability claim talks about the actions

9    of Twitter itself.  Twitter created an algorithm, an API, and a

10   software network that creates the Twitter and Twitter

11   platforms.  That is the product that they created, and, as

12   such, they have a duty to create a safe product that's fully

13   independent of different things within it that would cause

14   danger to its users.

15       Let's talk about what we've pled in terms of --

16       **THE COURT:**  Why doesn't that swallow the immunity?

17       So every single provider of this sort has a platform and

18   has algorithms, and so anytime anybody puts on offensive

19   conduct that hurts someone -- that's the definition that needs

20   to be here for products liability -- they can always say it was

21   the way you designed the platform and, therefore, there's no

22   publisher immunity whatsoever because there would never be

23   publisher immunity.

24       **MS. HABA:**  Well, publisher immunity talks more about

25   what the third parties are posting on the platform.  What I'm

1   talking about is actual creation of the platform.

2          **THE COURT:**  I know.  I understand that.  But your

3   clients were hurt by what was posted on the platform; right?

4          **MS. HABA:**  Correct.

5          **THE COURT:**  So that's a necessary part of the element

6   of the claim of products liability here; right?

7          **MS. HABA:**  Yes.

8          **THE COURT:**  As a result of the product, the structure

9   of this product, this material was allowed to be posted on the

10  platform; and, therefore, it hurt our client.  Which it did

11  horribly.  That's the claim; right?

12         **MS. HABA:**  That is the claim as well as the way that

13  the product was manufactured --

14         **THE COURT:**  No, of course.  Of course.

15         **MS. HABA:**  Yes.

16         **THE COURT:**  But every provider has that flaw.

17         **MS. HABA:**  Well, I can't say that.  I mean --

18         **THE COURT:**  I can.  I can.  Every provider has a

19  platform.

20         **MS. HABA:**  Yes.

21         **THE COURT:**  Every provider has algorithms.  Every

22  provider that allows postings has algorithms that allow

23  particular posting or doesn't allow other particular postings,

24  or screens or doesn't screens.  And if you do it so that it

25  allows something harmful to get on, say, for example, some

```
 1   defamation that hurt someone terribly by saying something
 2   completely false, or child pornography, or anything else, that
 3   means any publication that hurts someone is evidence of a
 4   product -- if it hurt someone, is evidence that the product is
 5   dangerous, and there should be a product liability claim.
 6        Why doesn't that swallow the publisher liability
 7   completely?
 8        MS. HABA:  Well, I think it's a little bit different,
 9   Your Honor, because the way the platform exists.
10        If we were just in a world where the publisher's
11   manufactured platform doesn't contribute to illegal content
12   being disseminated on their platform -- I'm not talking about
13   defamation, I'm talking about our separate scenario with child
14   pornography and illegal material -- if we're dealing with
15   something like that it's different and separate and apart.
16        I'll give you an example.  We've alleged in our
17   complaint -- I believe it's paragraph 82 -- that there's a
18   search term feature.  So users can create hashtags.  Twitter
19   allows their algorithm to take those hashtags and pair it with
20   words to help a user find in their search term what they're
21   looking for.
22        So there are certain hashtags that are known for only
23   being related to child pornography.  There's no other
24   legitimate purpose to them.  So #megalinks is one such hashtag.
25   #S2R, send to receive, another one.  When you type into your
```

```
 1   search terms #megalinks, it gives you suggestions for how you

 2   can find what you're looking for.  It suggests pairing the

 3   phrase young with #megalinks.

 4       Twitter's algorithm also suggests pairing hashtag send to

 5   receive with #megalinks so you can better find the child

 6   pornography you're looking for, if you're the kind of person

 7   looking for that material.  That is an inherent defect on that

 8   platform.

 9       So John Doe 1 and John Doe 2, their image, against their

10   will, is put on this platform.  Twitter is made aware of it.

11   Their inherent algorithms help people find it and view it.  And

12   every view is a harm to our plaintiffs.

13       Furthermore, Twitter alleged in their own pleadings that

14   they had 500,000 times they removed child porn off their

15   employing last year.  I think they meant it as a celebration of

16   good faith of what they're doing.  But, in reality, what it

17   shows this Court is that they are inherently aware of the

18   dangers of their platform.

19       They had to remove it 500,000 times.  And instead of doing

20   what's necessary to remove the hashtags that are only geared

21   towards child porn, to remove such search term pairings that

22   make it inherently dangerous to users, they've chose to

23   maintain --

24           THE COURT:  But that's not relevant to your argument

25   about products liability, which doesn't have an intent element;
```

```
 1   right?

 2           MS. HABA:  I'm sorry, I didn't hear that.

 3           THE COURT:  That's got nothing to do with your

 4   products liability claim, because there's no intent element for

 5   products liability.

 6           MS. HABA:  Well, it's not that there's no intent

 7   argument, Judge.  I think when they created it they have a

 8   duty -- I mean, they obviously have a duty to protect their

 9   users, to create a safe product.

10      And I think it goes to show that they're even aware of

11   their own danger in their manufactured product.  They're aware

12   of their own danger in their algorithm, and they continue to

13   act on the status quo.

14           THE COURT:  Okay.  Anything else?

15           MR. RHODES:  Your Honor, may I have 30 seconds to

16   respond?

17           THE COURT:  When I'm done with Ms. Haba's argument,

18   you can have 30 seconds to respond.

19      Go ahead.  Anything further?

20           MS. HABA:  No, Your Honor.  That would be my entire

21   argument.  Thank you for your time.

22           THE COURT:  Okay.  Mr. Rhodes, 30 seconds.

23           MR. RHODES:  I will be brief.

24      Let me read to you a passage from the Kik case.  Again.

25   It's not controlling, but I think it's persuasive.  Quote:
```

1          By its terms FOSTA did not abrogate CDA immunity for

2     all claims arising from sex trafficking.  FOSTA permits

3     civil liability for websites only if the conduct

4     underlying the claim constitutes a violation of 1591.

5          And then the Court goes on to say you'd have to show the

6     defendants knowingly participated in the sex trafficking

7     venture involving her, the named plaintiff.

8          I would then refer you back to the *Gonzalez* case where

9     they say specifically that, quote, the publication involves the

10    decision to take down -- response to takedown.  So takedown

11    notice decision-making is part of the publishing construct.

12         I will also then cite you the same case where they talk

13    about the carve-out in 23(e)(1) as being limited to criminal

14    prosecution.  We cited the *Doe versus Barnes* case on your 2255A

15    arguments and why you're right there.

16         And then last, but not least, let me give you another cite

17    for what the knowledge requirement is in the Ninth Circuit on

18    1591.  And this is a case called *United States versus Todd*, 627

19    F.3d 329.  If you're interested in what the Ninth Circuit says

20    the standard is, you'll find it there.

21         You have correctly summarized to my adversary what our

22    argument is.  We're saying they added that clause.  I go back

23    to putting a period there before that other phrase.  Why would

24    they say the conduct underlying the claim satisfies 1591, which

25    clearly has a higher level of *mens rea*, if they didn't mean it

```
1    for both civil claims in A and state law criminal prosecution

2    in B?

3         With that, Your Honor, I submit.  And I appreciate your

4    time.

5         THE COURT:  Thank you, all.  Thank you, all, for your

6    argument.  I very much appreciate the briefing and the argument

7    in this case.

8         I take it that -- just by listening to this argument, and

9    maybe I shouldn't take this, but there was suggestion that the

10   parties wanted to discuss whether or not sometime soon there

11   might be an appropriate time to have settlement discussions or

12   ADR.

13        It doesn't sound like we're there yet, but if someone

14   disagrees, I'd love to hear it.  But it doesn't sound like

15   we're there yet.

16        MR. RHODES:  I don't think we're there yet, Your

17   Honor, speaking on behalf of Twitter.  And I'm also

18   disappointed that if you're going to be the adjudicating judge

19   I won't be able to come see you in that regard, because you're

20   very effective in that setting.

21        THE COURT:  You know -- yeah, okay.  Thank you.

22        Well, in any event, okay.  So I'll get this order out.

23   I've got to look at a number of things again -- it will take a

24   little bit of time -- and then we'll get it out.  I'm going

25   to -- and then we'll take it from there.
```

1       I'm going to set a case management conference 90 days out,

2    just as a protective matter.  And then we'll -- and then we'll

3    see what we can do.

4       I guess, assuming that I sustain my tentative and say that

5    these allegations are insufficient under 203, with respect to

6    all of the claims, except that the -- the benefiting claim

7    under the TVPRA, I assume that plaintiff has alleged what they

8    can with respect to that, and there's no reason to give leave

9    to amend to cure the 203 problems with the remaining claims.

10      But I thought I'd ask you that one last question, either

11   Mr. Gentala or Ms. Haba.

12      **MR. GENTALA:**  Your Honor, I'm not sure we could assume

13   that at this stage.  For example, we did not talk about 2258A

14   and B.  But there might be some allegations there that could be

15   added depending on how that works.  I mean, there is a standard

16   that's in 2258B.

17      **THE COURT:**  I mean with respect to the immunity.  If I

18   say they're all barred by the immunity, what's your -- what's

19   your opinion on whether there's any way to amend it?

20      I don't want to go through this more than we have to.  If

21   you think there are legitimate things one can add to this that

22   give more detail, that would show that all these other claims,

23   state law claims, are not subject to the immunity, then -- more

24   than what you've already said -- great.  I think, just looking

25   at it, I didn't see that.

```
 1            MR. GENTALA:  Your Honor, I appreciate the question.

 2   I think we'd just like to reserve the right to review your

 3   order and see --

 4            THE COURT:  Well, all right.  I may do it without

 5   leave to amend.  You know, if you've got a good argument on new

 6   facts that could be alleged, why that would justify the filing

 7   an amended complaint, you could bring a motion to that effect.

 8            MR. GENTALA:  And just one point.  I understood the

 9   Court that the 1591 direct trafficking claim would also be

10   barred, and there might be places there where we could add

11   allegations that could support our 1591(a) piece.

12            THE COURT:  Maybe.  But I think I'll handle that the

13   same way.  If you find some facts that you can, you can talk to

14   Mr. Rhodes, meet and confer.  If you can't reach agreement with

15   him on what you want to do, then bring a motion before me for

16   permission to file an amended complaint.

17            MR. GENTALA:  Thank you, Your Honor.

18            THE COURT:  Yeah, okay.

19       All right.  Karen, 90 days.

20            THE CLERK:  November 5th, at 2:00 p.m.  Does that work

21   for the parties?

22            THE COURT:  Does that work for everyone's calendars?

23            MR. RHODES:  Yes, Your Honor.

24            THE COURT:  Does that work for the plaintiffs?

25            MR. GENTALA:  Just one moment, Your Honor.
```

1           THE COURT:  Yeah, no problem.

2           MS. HABA:  That works for my calendar, Your Honor.

3           MR. GENTALA:  Yes, it works for mine as well.

4           THE COURT:  Okay.  Thank you, all.

5      So give me an updated joint statement one week in advance

6  of that.  But -- and, otherwise, I'll get out the order in the

7  next, you know, 30, 45 days, and then we'll take it from there.

8  Okay.

9      Thank you, all.

10          MR. RHODES:  Thank you, Your Honor.

11          MR. MATIASIC:  Thank you, Your Honor.

12      (At 10:54 a.m. the proceedings were adjourned.)

13                           - - - - -

14

15

16                  **CERTIFICATE OF REPORTER**

17      I certify that the foregoing is a correct transcript

18  from the record of proceedings in the above-entitled matter.

19  DATE: Sunday, August 22, 2021

20

21

22

23  _____

24      Katherine Powell Sullivan, CSR #5812, RMR, CRR
                 U.S. Court Reporter

25

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JOHN DOE #1 AND JOHN DOE #2, | Case No. 3:21-cv-00485-JCS |
| Plaintiffs, | **PROPOSED ORDER GRANTING DEFENDANT TWITTER, INC.'S MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION AND GRANTING RECONSIDERATION** |
| v. | |
| TWITTER, INC., | |
| Defendant. | Hearing Date:  November 19, 2021<br>Hearing Time:   9:30 a.m.<br>Judge:   Honorable Joseph C. Spero |

Defendant Twitter, Inc.'s ("Twitter") Motion for Leave to File Motion for Reconsideration or, in the Alternative Motion for an Order Permitting an Interlocutory Appeal Pursuant to 28 U.S.C. § 1292(b) (the "Motion") regarding the Court's order on Twitter's Motion to Dismiss Plaintiffs' First Amended Complaint (ECF No. 69, the "Order") was heard on November 19, 2021 at 9:30 a.m. by this Court.

Having considered all papers filed in support of and in opposition to the Motion, any oral arguments of counsel, and all other pleadings and papers on file herein, the Court finds as follows:

1.   Twitter's motion for leave to file a motion for reconsideration of the Order is **DENIED.**

2.   Twitter's motion for an order permitting an interlocutory appeal pursuant to 28 U.S.C. § 1292(b) is **GRANTED**.

Good cause appearing therefor, **IT IS HEREBY ORDERED** that Twitter's motion for leave to file a motion for reconsideration is **DENIED** and Twitter's Motion for an order permitting an interlocutory appeal pursuant to 28 U.S.C. § 1292(b) is **GRANTED**.  The Court hereby amends its order of August 19, 2021 (ECF No. 69) to certify the order for interlocutory review by the United States Court of Appeals for the Ninth Circuit pursuant to 28 U.S.C. § 1292(b) and Federal Rule of Appellate Procedure 5(a)(3). Twitter must seek leave from the Ninth Circuit for an order permitting an interlocutory appeal pursuant to 28 U.S.C. § 1292(b) within 10 days of this Order.

**IT IS SO ORDERED.**

Dated:

The Hon. Joseph C. Spero
United States Magistrate Judge

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

A178   2

PROPOSED  ORDER GRANTING TWITTER'S
MOTION FOR UNDER 28 USC § 1292(B)
Case No. 3:21-cv-00485-JCS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JOHN DOE #1 AND JOHN DOE #2, | Case No. 3:21-cv-00485-JCS |
| Plaintiffs, | **PROPOSED ORDER GRANTING DEFENDANT TWITTER, INC.'S MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION AND GRANTING RECONSIDERATION** |
| v. | |
| TWITTER, INC., | |
| Defendant. | Hearing Date: November 19, 2021 |
| | Hearing Time: 9:30 a.m. |
| | Judge: Honorable Joseph C. Spero |

Defendant Twitter, Inc.'s ("Twitter") Motion for Leave to File Motion for Reconsideration or, in the Alternative Motion for an Order Permitting an Interlocutory Appeal Pursuant to 28 U.S.C. § 1292(b) (the "Motion") regarding the Court's order on Twitter's Motion to Dismiss Plaintiffs' First Amended Complaint (ECF No. 69, the "Order") was heard on November 19, 2021 at 9:30 a.m. by this Court.

Having considered all papers filed in support of and in opposition to the Motion, any oral arguments of counsel, and all other pleadings and papers on file herein, the Court finds as follows:

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

A179    1

**PROPOSED ORDER GRANTING TWITTER,
INC.'S MOTION FOR RECONSIDERATION
Case No. 3:21-cv-00485-JCS**

1.  Twitter's motion for leave to file a motion for reconsideration of the Order is **GRANTED.**

2.   The Court accepts Twitter's memorandum of points and authorities attached to the Motion as the basis for its motion for reconsideration.

3.  Twitter's motion for reconsideration of the Order is **GRANTED**.

4.  Twitter's motion for an order permitting an interlocutory appeal pursuant to 28 U.S.C. § 1292(b) is **DENIED AS MOOT**.

Good cause appearing therefor, **IT IS HEREBY ORDERED** that Twitter's motion for reconsideration is **GRANTED** and Claim Two in Plaintiffs' First Amended Complaint is **DISMISSED WITH PREJUDICE.**

**IT IS SO ORDERED.**

Dated:

The Hon. Joseph C. Spero
United States Magistrate Judge

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

A180    2

PROPOSED  ORDER GRANTING TWITTER,
INC.'S MOTION FOR RECONSIDERATION
Case No. 3:21-cv-00485-JCS

**NATIONAL CENTER ON**
**SEXUAL EXPLOITATION**
Benjamin W. Bull*
Peter A. Gentala*
Danielle Bianculli Pinter*
Christen M. Price*
1201 F St. NW, Suite 200
Washington, DC, 20004
Telephone: (202) 393-7245
lawcenter@ncose.com

**THE HABA LAW FIRM, P.A.**
Lisa D. Haba*
Adam A. Haba*
1220 Commerce Park Dr., Suite 207
Longwood, FL 32779
Telephone: (844) 422-2529
lisahaba@habalaw.com
adamhaba@habalaw.com

**THE MATIASIC FIRM, P.C.**
Paul A. Matiasic (SBN 226448)
Hannah E. Mohr (SBN 294193)
4 Embarcadero Center, Suite 1400
San Francisco, CA 94111
Telephone: (415) 675-1089
matiasic@mjlawoffice.com

*Attorneys for Plaintiffs*
*Admitted Pro Hac Vice*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN DOE #1 AND JOHN DOE #2, | Case No. 3:21-cv-00485-JCS |
| Plaintiffs, | **PLAINTIFFS' COMBINED OPPOSITION TO DEFENDANT'S MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION OR, IN THE ALTERNATIVE, MOTION FOR AN ORDER PERMITTING INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(b).** |
| vs. | |
| TWITTER, INC., | |
| Defendant. | |
| | Hearing Scheduled: November 19, 2021 |
| | Hearing Time: 9:30 a.m. |
| | Judge: Honorable Joseph C. Spero |

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

ARGUMENT ....................................................................................................... 2

I.      THE COURT SHOULD NOT RECONSIDER ITS ORDER
GRANTING IN PART AND DENYING IN PART TWITTER'S
MOTION TO DISMISS .................................................................... 2

     A. The Court's Determination that the "Should Have Known"
Standard from 18 U.S.C. § 1595 Applies to Plaintiffs'
Allegations is Correct and Should not be Reconsidered. ............... 3

         1. The *J.B. v. G6 Hospitality* and *Jane Doe v. Reddit*
decisions do not constitute a change of law. ........................... 3

         2. The *J.B. v. G6 Hospitality* and *Jane Doe v. Reddit*
decisions do not merit reconsideration ................................... 4

             a. *J.B.* and *Reddit* do not refute the argument on
limiting § 1595 claims to sex trafficking. ....................... 4

             b. *J.B.*'s interpretation relies on a *non sequitur* about
criminal law standards. ................................................... 6

             c. *J.B.* and *Reddit* do not seriously consider FOSTA's
remedial nature. .............................................................. 8

             d. *J.B.* and *Reddit* do not present legislative history
refuting alternative interpretations. ............................... 9

         3. Twitter's re-argued interpretation of FOSTA/SESTA
clashes with Congress's clear decision to use the "should
have known" standard for civil trafficking cases. ................ 10

         4. The Court's Order Adequately considered Twitter's
arguments ............................................................................. 13

     B. The Court's Determination that the CSAM Can Constitute
a "Commercial Sex Act" is Correct and Should Not be
Reconsidered. ............................................................................... 14

     C. The Court's determination that the Plaintiffs have adequately
alleged a relationship with the traffickers who posted the CSAM

material depicting the Plaintiffs is correct and should not be reconsidered. ........................................................ 16

    D.   The Court's determination that Twitter knowingly received a commercial benefit is correct and should not be reconsidered. ........................................................ 17

II.   THE COURT SHOULD NOT GRANT THE REQUEST FOR AN INTERLOCUTORY APPEAL ........................................................ 18

    A.  Controlling Question of Law ........................................ 19

    B.  Substantial Ground for Difference of Opinions .......................... 21

    C.  Advancement of Termination of Litigation .............................. 22

CONCLUSION ........................................................ 23

CERTIFICATE OF SERVICE ........................................................ 25

# **TABLE OF AUTHORITIES**

## **Cases**

*Arizona v. Ash Grove Cement Co.*, 459 U.S. 1190 (1983) ................................................ 19

*Arizona v. U.S. Dist. Ct. for the Dist. of Arizona*, 459 U.S. 961 (1982) ............................. 19

*Boise Cascade Corp. v. U.S. E.P.A.*, 942 F.2d 1427 (9th Cir. 1991).................................... 13

*City of San Diego v. Monsanto Co.*, 310 F. Supp. 3d 1057, 1065 (S.D. Cal. 2018).............. 19

*Coopers & Lybrand v. Livesay*, 437 U.S. 463 (1978)........................................................... 18

*Couch v. Telescope Inc.*, 611 F.3d 629 (9th Cir. 2010) ........................................... 18, 19, 21

*Doe v. Mindgeek USA Inc.*, No. SACV2100338CJCADSX, 2021 WL 4167054
(C.D. Cal. Sept. 3, 2021)................................................................................................. 3, 17

*Facebook, Inc. v. Power Ventures, Inc.*, No. 08-CV-5780-LHK, 2013 WL 5372341,
at *4 (N.D. Cal. Sept. 25, 2013)........................................................................................... 2

*Finjan, Inc. v. Check Point Software Techs., Inc.*, No. 18-CV-02621-WHO, 2020 WL
1929250 (N.D. Cal. Apr. 21, 2020) ................................................................................... 19

*Fisons, Ltd. v. United States,* 458 F.2d 1241, 1248 (CA7 1972)......................................... 18

*Goodyear Atomic Corp. v. Miller*, 486 U.S. 174 (1988) ...................................................... 12

*Hellon & Assocs., Inc. v. Phoenix Resort Corp.*, 958 F.2d 295, 297 (9th Cir. 1992)............ 13

*In re Cement Antitrust Litig.*(MDL No. 296), 673 F.2d 1020, 1027 (9th Cir. 1981) ...... 18, 19

*J.B. v. G6 Hospitality*, LLC, 2021 WL 4079207 (N.D. Cal. Sept. 8, 2021).................. passim

*Jane Doe et al. v. Reddit, Inc.*, Case No. 21-cv-768-JVS (C.D. Cal. Sep. 17, 2021) ..... passim

*Parker Drilling Mgmt. Servs., Ltd. v. Newton*, 139 S. Ct. 1881, 1890 (2019)...................... 12

*Reilly v. Wozniak*, No. CV-18-03775-PHX-MTL, 2021 WL 1383178 (D. Ariz.
Apr. 13, 2021) ................................................................................................................... 23

*Rieve v. Coventry Health Care, Inc.*, 870 F. Supp. 2d 856, 880 (C.D. Cal. 2012) ............... 22

*Sateriale v. RJ Reynolds Tobacco Co.,* No. 2:09-CV-08394-CAS, 2015 WL 3767424,
at *2 (C.D. Cal. June 17, 2015)........................................................................................... 20

*Senne v. Kansas City Royals Baseball Corp.*, No. 14-CV-00608-JCS, 2017 WL 5973487 .. 18

*Spears v. Washington Mut. Bank FA*, No. C-08-00868 RMW, 2010 WL 54755, at *2 (N.D. Cal. Jan. 8, 2010) ................................................................................................. 21

*Stiner v. Brookdale Senior Living, Inc.*, 383 F. Supp. 3d 949 (N.D. Cal. 2019) ................. 21

*Stromberg v. Ocwen Loan Servicing, LLC*, No. 15-CV-04719-JST, 2017 WL 3727233 (N.D. Cal. Aug. 30, 2017) ............................................................................................... 2

*Turner v. PHH Mortg. Corp.*, 467 F. Supp. 3d 1244 (M.D. Fla. 2020) ............................... 3

*Twentieth Century–Fox Film Corp. v. Dunnahoo,* 637 F.2d 1338, 1341 (9th Cir.1981) ........ 3

*U.S. v. Todd,* 627 F.3d 329 (9th Cir. 2009) ........................................................................ 16

*United States v. Marcus*, 487 F. Supp. 2d 289, 306 (E.D.N.Y. 2007) ................................. 16

*United States v. Real Prop. & Improvements Located at 2441 Mission St., San Francisco, California*, No. C 13-2062 SI, 2014 WL 1350914, at *3–4 (N.D. Cal. Apr. 4, 2014) .......... 19

## Statutes

18 U.S.C. § 1595 ....................................................................................................... passim

28 U.S.C. § 1291 ............................................................................................................ 18

28 U.S.C. § 1292(b) .................................................................................................. passim

47 U.S.C. § 230 ......................................................................................................... passim

47 U.S.C. § 230(e)(5)(A) ........................................................................................... passim

## Other Authorities

Black's Law Dictionary (11th ed. 2019) ............................................................................ 7

U.S. Sen., Permanent Subcomm. on Investigations, Comm. on Homeland Sec. and Gov't Aff., 114th Cong., Staff Rep. on Backpage.com's Knowing Facilitation of Online Sex Trafficking (2017) .......................................................................... 5

**Rules**

Civil L.R. 7-9(b) .......................................................................................... passim

**Congressional Enactments**

Allow States and Victims to Fight Online Sex Trafficking Act of 2017 Pub. L. No. 115-164, § 4, 132 Stat. 1253 (2018) ...................................................... passim

Stop Enabling Sex Traffickers Act of 2017, S. 1693, 115th Cong. § 2 (2017) ........................ 8

Trafficking Victims Protection Reauthorization Act of 2003, Pub. L. No. 108–193, § 4, 117 Stat 2875 (2003).................................................................... 5, 7, 10

Victims of Trafficking and Violence Protection Act of 2000, Pub. L. No. 106–386, § 112, 114 Stat. 1464 (2000).................................................................. 10

William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, Pub. L. No. 110–457, 122 Stat. 5044 (2008) ............................................... 11

### INTRODUCTION

On August 19, 2021, this Court entered an Order Granting in Part and Denying in Part the Defendant's Motion to Dismiss ("Order" or "the Order"), and determined that "Plaintiffs have stated a claim for civil liability under the Trafficking Victims Protection Reauthorization Act ("TVPRA") on the basis of beneficiary liability and that the claim falls within the exemption to Section 230 immunity created by FOSTA." (Order at 47.) Twitter now seeks reconsideration of the Order, but its arguments fall substantially short of the required standard.

First, Twitter does not establish that a material change of law has taken place. The two recent decisions Twitter cites to are neither controlling, nor persuasive. Rather, they are examples of judges largely following the reasoning from the *Doe v. Kik* decision out of the Southern District of Florida, which this Court—after extensive analysis—disagreed with in its Order. (Order at 38-42.)

Second, Twitter's Motion for Leave to File Motion for Reconsideration ("Motion for Leave") does not establish that this Court's Order constitutes a manifest failure to consider material facts or dispositive legal arguments. This Court's 53-page order dismissed 10 of Plaintiffs' 11 claims. In no way does the Order fail to consider the arguments presented by the parties. On the contrary, it dedicates 22 pages to meticulously recounting them. After careful scrutiny of the arguments and legal issues presented, the Order refused to dismiss Count II, which alleged beneficiary liability under the TVPRA.

Third, Twitter's Motion for Leave substantially re-argues substantive law that was briefed and decided as part of the Court's consideration of the Motion to Dismiss. To the extent Twitter's arguments re-tread issues the Court has already reviewed and decided, Plaintiffs urge the Court to disregard them.

Twitter also asks the Court to take the rare step of certifying an interlocutory appeal to the Ninth Circuit. This also lacks merit, and the Court should decline this invitation because there is not a conflict of controlling law, or a difference of opinion adequate to justify splitting this case into piecemeal appeals. Interpreting §§ 1591 and 1595, as well as 47 U.S.C. § 230(e)(5)(a) and measuring Plaintiffs' allegations against that statutory framework is well

within the Court's competence. Moreover, an interlocutory appeal will not speed the resolution of this case. In all events, it adds an extra appeal. Review by the Ninth Circuit will not close out all issues, but it will delay their ultimate resolution. In the meantime, two young men who have been severely harmed by Twitter will have their opportunity to prove their case delayed. The Court has determined that Plaintiffs sufficiently plead the allegations and should be allowed to begin discovery. Twitter's attempt to unwind that determination should be denied.

## **ARGUMENT**

## I. **THE COURT SHOULD NOT RECONSIDER ITS ORDER GRANTING IN PART AND DENYING IN PART TWITTER'S MOTION TO DISMISS**

Under Civil Local Rule 7-9(b), leave to file a motion for reconsideration is only available on a specific showing of "reasonable diligence in bringing the motion" and either:

> **(2)** The emergence of new material facts or a change of law occurring after the time of such order; or
> **(3)** A manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order.[1]

Parties seeking reconsideration are prohibited from "repeat[ing] any oral or written argument made by the applying party in support of or in opposition to the interlocutory order which the party now seeks to have reconsidered." LR 7-9(b)(c); *see also Stromberg v. Ocwen Loan Servicing, LLC*, No. 15-CV-04719-JST, 2017 WL 3727233, at *2 (N.D. Cal. Aug. 30, 2017) ("A motion for reconsideration is not a vehicle to re-assert arguments already considered and rejected in an earlier order."). "In general, motions for reconsideration should not be frequently made or freely granted." *Facebook, Inc. v. Power Ventures, Inc.*, No. 08-CV-5780-LHK, 2013 WL

---

[1] Civil L.R. 7-9(b). Twitter's motion is brought pursuant to Civil L.R. 7-9(b)(2) and (b)(3)—but not under Civil L.R. 7-9(b)(1). (Pls. Mot. For Leave at 9, n. 4.)

5372341, at *4 (N.D. Cal. Sept. 25, 2013) (citing *Twentieth Century–Fox Film Corp. v. Dunnahoo,* 637 F.2d 1338, 1341 (9th Cir.1981)).

### A. The Court's Determination that the "Should Have Known" Standard from 18 U.S.C. § 1595 Applies to Plaintiffs' Allegations is Correct and Should not be Reconsidered.

Twitter's principle contention is that the Court's interpretation of 47 U.S.C. § 230(e)(5)(A) is incorrect, and that the 18 U.S.C. § 1595(a) "should have known" standard does not apply in cases of online or technology-based sex trafficking.

### 1. The *J.B. v. G6 Hospitality* and *Jane Doe v. Reddit* decisions do not constitute a change of law.

Twitter argues that two subsequent orders by District Courts in entirely separate cases represent a change of law.[2]  In contrast to this position, Twitter also acknowledges that a third order in *Doe v. Mindgeek USA, Inc.* follows this Court's approach and substantially cites the Order.[3]  None of these decisions represent a change of law in the instant case.

First, the decisions are not changes in the controlling law of this case. There has been no development in the controlling law of this case, as the Ninth Circuit has not spoken to the issues in this case beyond what was briefed and argued in the Motion to Dismiss hearing. In the *Reddit* and *JB* decisions, other district courts applied a different interpretation to 47 § 230(e)(5)(A)—while the *Mindgeek* decision agrees with this Court's interpretation. But "another district court interpreting the law differently is not a proper basis for a motion for reconsideration." *Turner v. PHH Mortg. Corp.*, 467 F. Supp. 3d 1244, 1249 (M.D. Fla. 2020).

---

[2] Mtn. for Leave at 2 (citing *J.B. v. G6 Hospitality*, LLC, 2021 WL 4079207 (N.D. Cal. Sept. 8, 2021) and ) *Jane Doe et al. v. Reddit, Inc.*, Case No. 21-cv-768-JVS (C.D. Cal. Sep. 17, 2021).
[3] *See Doe v. Mindgeek USA Inc.*, No. SACV2100338CJCADSX, 2021 WL 4167054 (C.D. Cal. Sept. 3, 2021).

Reconsideration is only appropriate when this Court, in its discretion, determines that the basis of its decision is no longer sound.

Second, the new *J.B.* decision, which is a partial reconsideration by Judge Gilliam of his prior order, does not constitute a change in law in relation to this Court's analysis. The original *J.B.* decision, which this Court acknowledged in its Order, was not the basis of this Court's analysis and interpretation of 47 U.S.C. § 230(e)(5). (Order at 33-42.) Thus, the Court's reasoning is not in any way undermined by the revised *J.B.* order—rather *J.B.*, like the *Kik* decision, is the interpretive path that the Court has already considered and rejected.

### 2. The *J.B. v. G6 Hospitality* and *Jane Doe v. Reddit* decisions do not merit reconsideration

Not only are *J.B.* and *Reddit* procedurally nonbinding decisions, with no precedential effect on this case, but the decisions also do not substantively merit reconsideration for at least four reasons: (a) *J.B.* and *Reddit* do not refute the argument on limiting § 1595 claims to sex trafficking; (b) *J.B.*'s interpretation relies on a *non sequitur* about criminal law standards; (c) *J.B.* and Reddit do not seriously consider FOSTA's remedial nature; and (d) *J.B.* and *Reddit* do not present legislative history refuting alternative interpretations.

#### a. *J.B.* and *Reddit* do not refute the argument on limiting § 1595 claims to sex trafficking.

First, the *J.B.* and *Reddit* decisions do not refute the central plain language argument advanced by the Plaintiffs and adopted by the court in this case. *J.B.* acknowledges that one reading of Section 230(e)(5)(A) is that the phrase "if the conduct underlying the claim constitutes a violation of section 1591" references § 1591 to avoid confusion about whether the provision includes labor as well as sex trafficking, since both can be the subject of § 1595 claims. *See* 2021 WL 4079207 at *9 n.3.

*J.B.* does not address or refute this reading, however, before concluding, the opinion states: "[r]eferencing solely the language itself, the Court finds the most straightforward reading to be that the provision provides an exemption from CDA immunity for a section 1595 claim if the civil defendant's conduct amounts to a violation of section 1591." *Id.*

Twitter repeats *J.B.*'s claim that if Congress intended to clarify that, there were less confusing ways for it to have drafted the exception, Def. Mot. for Leave, Exh. A at 5-6 (citing 2021 WL 4079207 at *6). But this does not mean *J.B.*'s interpretation is correct or the most reasonable. The *J.B.* court agreed that Congress could have used the language "if the claim arises out of a violation of 1591" or "if the plaintiff is a victim of a violation of section 1591," if the exception was meant to allow plaintiffs to use §1595's *mens rea* to sue website defendants. 2021 WL 4079207 at *9-10 (internal quotation marks omitted).[4] Indeed, if Congress had intended to revert to the criminal standard for civil liability[5] for a particular subclass of defendants it was already concerned were acting with impunity,[6] Congress would have specified that when it drafted the exception.

Ultimately, *J.B.* did not argue why its interpretation was the most reasonable, and even acknowledged that the plaintiff's view of the exception was not "wholly implausible, particularly because there arguably is some tension between the [*J.B.*] Court's reading of the statute and the constructive knowledge standard set out in section 1595. But the [*J.B.*] Court

---

[4] It is not immediately apparent to Plaintiffs how this example language is clearer than the current version of 47 U.S.C. § 230(e)(5)(A).

[5] Trafficking Victims Protection Reauthorization Act of 2003, Pub. L. No. 108–193, § 4, 117 Stat 2875 (2003).

[6] *See, e.g.*, U.S. Sen., Permanent Subcomm. on Investigations, Comm. on Homeland Sec. and Gov't Aff., 114th Cong., Staff Rep. on Backpage.com's Knowing Facilitation of Online Sex Trafficking (2017) available at https://www.courthousenews.com/wp-content/uploads/2017/02/Backpage-Report.pdf.

does not find that the plain language interpretation, in context, produces an absurd or unreasonable result." *Id.* at *11 (internal citations omitted).[7]

Similarly, the *Reddit* court said: "It is more logical to read the statute as requiring the conduct underlying the claim against the defendant to be the same as the claim in the civil action brought under section 1595." Case No. 21-cv-768-JVS at *12. But the court does not say why; it merely makes that assertion.

In short, neither court's interpretation of Section 230(e)(5)(A) analyzed and refuted the simplest interpretation of the provision: that the § 1591 reference merely intended to clarify that § 1589 and other non-sex trafficking claims are not covered. By contrast, the Order in this case examined this issue and this Court explained its reasoning clearly and with deliberation. Another district court's disagreement, especially in light of the above noted deficiencies in the orders, does not merit reconsideration.

**b. *J.B.*'s interpretation relies on a *non sequitur* about criminal law standards.**

Second, *J.B.* uses a *non sequitur* to argue that the exception's provisions on criminal law warrant interpreting the civil law provision as containing a heightened, criminal standard. *J.B.* decided that since "conduct underlying the charge" is used in the FOSTA sections addressing criminal conduct under §§ 1591 and 2421A, it should also be read to require § 1591 elements be proven in civil claims involving § 1595:

> In the context of a criminal charge, the underlying conduct necessarily refers to the conduct of the criminal defendant. Notwithstanding the obvious differences between civil claims and criminal charges, it thus is consistent to construe the provisions referencing "the conduct underlying

---

[7] The court's interpretation did not merely create "some tension" between its reading and Section 1595's constructive knowledge standard; it eliminated § 1595's constructive knowledge standard altogether for plaintiffs against website defendants.

**PLS.' OPPOSITION TO DEF.'S
MOTION FOR RECONSIDERATION
CASE NO. 3:21-CV-00485-JCS**

the" claim or charge, "constitut[ing] a violation of section 1591" to refer to the conduct of the named defendant.

2021 WL 4079207 at *10.

But a charge is not a claim: that is, this is not the same language.[8] "Charge" is the phrase used in criminal law; "claim" is the phrase used in civil law. In the TVPRA, criminal and civil violations are defined differently.[9] *Compare* 18 U.S.C. § 1591(a) *with* 18 U.S.C. § 1595(a). Section 230(e)(5)(B)-(C) deals with criminal charges, in the context of a statutory scheme where Congress had already originally permitted and rejected a criminal *mens rea* standard for civil claims.[10] Furthermore, Congress did not add the civil remedy into the § 1591 text, but instead enacted an entirely separate statute under § 1595, again differentiating the standards.

In other words, the court suggested that one reason to interpret a civil claim provision as requiring plaintiffs meet a criminal law standard is that nearby criminal law provisions with

---

[8] Here are the statutory provisions:

(5)No effect on sex trafficking law
Nothing in this section (other than subsection (c)(2)(A)) shall be construed to impair or limit—
(A) any *claim in a civil action brought under* section 1595 of title 18, if the conduct underlying the *claim constitutes* a violation of section 1591 of that title;
(B) any *charge in a criminal prosecution brought under State law* if the conduct underlying the *charge would constitute* a violation of section 1591 of title 18; or
(C) any *charge in a criminal prosecution brought under State law* if the conduct underlying the charge *would constitute* a violation of section 2421A of title 18, and promotion or facilitation of prostitution is illegal in the jurisdiction where the defendant's promotion or facilitation of prostitution was targeted.

47 U.S.C. § 230(e)(5)(A) (emphasis added).
[9] *Compare*, "The assertion of an existing right; any right to payment or to an equitable remedy, even if contingent or provisional." CLAIM, Black's Law Dictionary (11th ed. 2019), *with* "A formal accusation of an offense as a preliminary step to prosecution." CHARGE, Black's Law Dictionary (11th ed. 2019).

[10] *Compare* Trafficking Victims Protection Reauthorization Act of 2003, Pub. L. No. 108–193, § 4, 117 Stat. 2875 (2003) at Sec. 4. *with* 18 U.S.C. §1595(a).

similar language require prosecutors to meet a criminal law standard.  This is a *non sequitur*, and does not merit reconsideration.

### c.  *J.B.* and Reddit do not seriously consider FOSTA's remedial nature.

Third, the *J.B.* and *Reddit* decisions do not seriously consider the remedial nature of the FOSTA exception in their analysis.  *J.B.* stated that the provision's remedial nature did not merit interpreting it consistent with the rest of the § 1595 jurisprudence, Def. Mot. for Leave, Exh. A at 12 (citing 2021 WL 4079207 at *6, 12), implying that Congress intended to still give special protections to websites credibly accused of facilitating and benefiting from sex trafficking.

*J.B.*'s argument that a narrow exception is most consistent with CDA's overall immunity purpose is misplaced, *see* 2021 WL 4079207 at *12, given that the purpose of the enactment of FOSTA was that the CDA's immunity provisions were being inappropriately deployed to shield websites engaging in and/or benefiting from sex trafficking.[11]

Similarly, *Reddit* stated that the argument "for a broad reading of § 230(e)(5) in light of the remedial nature of the law" was insufficient to overcome the statute's plain language, since "section 230 as a whole is designed to provide immunity to interactive computer service providers." *Id.* (internal citations omitted). Both decisions fail to address why it is more reasonable to interpret § 230(e)(5) to limit civil actions against "websites that facilitate traffickers in advertising the sale of unlawful sex actions" when it was designed to be a "clarification" in order to "ensure that [§ 230] does not provide" "such legal protection, to such

---

[11] Stop Enabling Sex Traffickers Act of 2017, S. 1693, 115th Cong. § 2 (2017).

websites."[12] The *J.B.* and *Reddit* decisions' disregard for the remedial nature of FOSTA/SESTA is unpersuasive and do not merit reconsideration.

### d. *J.B.* and *Reddit* do not present legislative history refuting alternative interpretations.

The *J.B.* and *Reddit* decisions present no legislative history that refutes the plain language interpretation advanced by the Plaintiffs and adopted by the Court in this case. *J.B.* provided little legislative history analysis; it cited various parts of the congressional record (including witness testimony from a pro-CDA law professor), and then concluded that the legislative record did not support the plaintiffs' interpretation of § 230(e)(5)(A). Def. Mot. for Leave, Exh. A at 13 (citing 2021 WL 4079207 at *12-15). The *Reddit* court simply cited *J.B.*'s legislative history account, asserting without discussion or analysis: "The legislative history comports with the Court's reading of the plain text." Case No. 21-cv-768-JVS at *12.

But *J.B.*'s legislative analysis was not exhaustive, nor was it quantified, and therefore it cannot be conclusive. More to the point, *J.B.* did not consistently clarify when its legislative history citations were referring to debate about provisions of § 2421A (criminal), § 1591 (criminal), or § 1595 (civil)—all of which were being discussed during the legislative process for FOSTA/SESTA.[13] 2021 WL 4079207 at *12-20.

Notably, *J.B.* is itself a reconsideration decision. 2021 WL 4079207 at *7. If *J.B.*'s interpretive conclusions about 230(e)(5)(A) were as obvious as Twitter asserts, the *J.B.* court would have reached them the first time, *see J.B.*, 2020 WL 4901196, at *8-9. In short, taken together with their noncontrolling nature, limited analysis, and interpretations already

---

[12] *Id*.

[13] *See, e.g., J.B.* 2021 WL 4079207 at *12-13 (discussing Sen. Blumenthal's statement).

considered and rejected by this court, the *J.B.* and *Reddit* decisions do not merit reconsideration in this case.

### 3. Twitter's re-argued interpretation of FOSTA/SESTA clashes with Congress's clear decision to use the "should have known" standard for civil trafficking cases.

When Congress amended 47 U.S.C. § 230 in 2018, it specifically invoked 18 U.S.C. § 1595.[14] The reference in §230(e)(5)(A) to § 1595 is significant because the latter provision has its own unique constructive knowledge requirement, which Congress added as an enhancement to the civil cause of action. A brief recounting of the origin and background of § 1595's "should have known" standard is instructive.

Congress originally enacted the Trafficking Victims Protection Act (TVPA) in 2000. The original version of the TVPA added 18 U.S.C. § 1591 under the section title of "Strengthening Prosecution and Punishment of Traffickers."[15] Section 1591 was a criminal provision with no civil right of action. When the TVPA was reauthorized in 2003, Congress added 18 U.S.C. § 1595, under the subheading "Private Right of Action." The original version of § 1595 referenced specific sections of law, including § 1591, but did not include its own separate *mens rea* standard. That changed in 2008 when Congress amended § 1595 under a section heading entitled "Enhancement of Civil Action." Congress enhanced § 1595 by changing from a "knowing" to a "should have known" standard for civil actions premised on violations of 18 U.S.C. § 1591(a)(2).

---

[14] Allow States and Victims to Fight Online Sex Trafficking Act of 2017 Pub. L. No. 115-164, § 4, 132 Stat. 1253 (2018) (hereinafter "FOSTA/SESTA").

[15] Victims of Trafficking and Violence Protection Act of 2000, Pub. L. No. 106–386, § 112, 114 Stat. 1464 (2000).

This chart shows the change:

| 18 U.S.C. § 1595(a)<br>as originally enacted in 2003[16] | 18 U.S.C. § 1595(a)<br>as amended in 2008[17] |
|---|---|
| An individual who is a victim of a violation of section 1589, 1590, or 1591 of this chapter may bring a civil action against the perpetrator in an appropriate district court of the United States and may recover damages and reasonable attorneys fees. | An individual who is a victim of a violation ~~of section 1589, 1590, or 1591~~ of this chapter may bring a civil action against the perpetrator <u>(or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter)</u> in an appropriate district court of the United States and may recover damages and reasonable attorneys fees. |

Since 2008, beneficiary-liability trafficking claims brought under § 1595 have been subject to the "should have known" standard rather than the *mens rea* standard in § 1591 (i.e., "knowing" or "reckless disregard of the fact"). This is the legislative foundation Congress built upon when it enacted FOSTA/ SESTA in 2018.

The official overview of the legislation makes its remedial purpose clear:

> An Act To amend the Communications Act of 1934 to clarify that section 230 of such Act does not prohibit the enforcement against providers and users of interactive computer services of Federal and State criminal and civil law relating to sexual exploitation of children or sex trafficking, and for other purposes.[18]

---

[16] Trafficking Victims Protection Reauthorization Act of 2003, Pub. L. No. 108–193, § 4, 117 Stat. 2875 (2003).

[17]

William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, Pub. L. No. 110–457, § 221, 122 Stat. 5044 (2008).

[18] FOSTA/SESTA, note 5, *supra*.

Congress also detailed the problems it identified with Section 230 that it sought to remedy.

> It is the sense of Congress that—
> (1) section 230 of the Communications Act of 1934 (47 U.S.C. 230; commonly known as the "Communications Decency Act of 1996") was never intended to provide legal protection to websites that unlawfully promote and facilitate prostitution and websites that facilitate traffickers in advertising the sale of unlawful sex acts with sex trafficking victims;
> (2) websites that promote and facilitate prostitution have been reckless in allowing the sale of sex trafficking victims and have done nothing to prevent the trafficking of children and victims of force, fraud, and coercion; and
> (3) clarification of such section is warranted to ensure that such section does not provide such protection to such websites.[19]

The way Congress accomplished this clarification was by adding 47 U.S.C. § 230(e)(5)(A):

"Nothing in [Section 230] shall be construed to impair or limit any claim in a civil action

brought under section 1595 of title 18 . . . if the conduct underlying the claim constitutes a

violation of section 1591 of that title."

Congress's change to Section 230 in FOSTA/SESTA should be read *in pari materia* with

the section 1595's "should have known standard."[20] Indeed, if Congress wanted to abandon the

"should have known" standard for civil actions against an Interactive Computer Service ("ICS")

alleged to have benefited from a trafficking venture, it could have clearly done so by not

referencing section 1595 at all. Congress's decision to invoke both sections 1591 and 1595

demonstrates its intention that the existing legislative framework from the two statutes should

---

[19] *Id.*
[20] *See generally*, *Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 184-85 (1988) ("We generally presume that Congress is knowledgeable about existing law pertinent to the legislation it enacts." *And see*, *Parker Drilling Mgmt. Servs., Ltd. v. Newton*, 139 S. Ct. 1881, 1890 (2019) ("It is a commonplace of statutory interpretation that Congress legislates against the backdrop of existing law."") (cleaned up).

be applied in the online context, including 1595's tailored knowledge requirement for beneficiary-liability actions.

The interpretation of Section 230(e)(5) that Twitter urged in its motion to dismiss—and now re-argues here—wrongly assumes Congress sought to disturb the statutory framework for civil sex trafficking claims. But Section 230(e)(5) should be read in harmony with 18 U.S.C. § 1595.[21] Moreover, Section 230(e)(5) should not be read to render any part of Section 1595 without meaning or superfluous.[22] In its Order, this Court was right to reject Twitter's interpretation of FOSTA/SESTA because it assumes, without support, that Congress sought to backtrack from the "should have known" standard that Congress specifically added to Section 1595 in order to enhance its effectiveness for trafficking victims. Twitter's arguments are merely repetitive of the issues argued in their original Motion to Dismiss and rejected by this Court.

### 4. The Court's Order Adequately considered Twitter's arguments

Twitter repeatedly argues that at the Motion to Dismiss hearing the Court *sua sponte* raised questions concerning the interpretation of 47 U.S.C. § 230(e)(5)(A).[23] This is risible. Twitter raised that statutory interpretation question in its own motion and briefing. Plaintiffs responded to the argument in their opposition.[24] There was substantial discussion and argument

---

[21] *See Hellon & Assocs., Inc. v. Phoenix Resort Corp.*, 958 F.2d 295, 297 (9th Cir. 1992) ("To the extent that statutes can be harmonized, they should be. . . .") (cleaned up).
[22] *See Boise Cascade Corp. v. U.S. E.P.A.*, 942 F.2d 1427, 1432 (9th Cir. 1991) (statutes should be read "as a whole, giving effect to each word and making every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous.").
[23] Mtn. for Leave at 4, 5, and 10; Mtn. for Reconsid'n at 5, 7, 14.
[24] *Compare* Twitter's MTD at *with* Pls. MTD Resp. in Opp. At 16, n. 35. It is not material that Plaintiffs' response was concise, or even in a footnote. The issue was joined in response and Twitter was free to address it in its reply. Indeed, the scope of Plaintiffs' response was consistent with the discussion between the Court and the parties at the hearing.

**PLS.' OPPOSITION TO DEF.'S
MOTION FOR RECONSIDERATION
CASE NO. 3:21-CV-00485-JCS**

concerning how FOSTA/SESTA should be interpreted at the Motion to Dismiss hearing. Twitters' claim that "the Court's questions about statutory construction at the oral argument were the first time these issues were raised in earnest" simply fails to square with the course of litigation. (Mtn. for Leave at 5.) The briefing, argument, and the Court's ultimate Order may not have unfolded or turned out the way Twitter preferred—but there was no manifest failure by the Court to consider Twitter's legal arguments.

Twitter cites this Court's order in the *Cave Creek Consulting Group* decision as an example where reconsideration was granted on the basis of the parties not having a chance to argue or brief an issue that was not raised by them. (Mtn. for Reconsid'n at 7.). That decision is not analogous to the instant motion for reconsideration. First, this Court's decision in *Cave Creek Consulting Group* did not turn on L.R. 7-9(b)(3). Instead, it turned on the fact that Rule 56(f) specifically speaks to the required process for grants of summary judgment on the court's own initiative. *Cave Creek Consulting Group*, 2020 WL 127612 at *5. There is not a corollary process for motions to dismiss. Second, Twitter cannot be surprised by the statutory-interpretation questions in this case. Plaintiffs' claims clearly invoke the FOSTA/SESTA exception to § 230, and as Twitter acknowledges, it raised the issue it its original motion to dismiss. (Mtn. for Leave at 4.) Under these circumstances, the Court's decision concerning the motion to dismiss is not a manifest failure to consider Twitter's legal arguments.

## B. The Court's Determination that the CSAM Can Constitute a "Commercial Sex Act" is Correct and Should Not be Reconsidered.

Twitter attempts to re-argue its position that the posting and re-posting of CSAM cannot constitute a "commercial sex act" within the meaning of § 1591. (Mtn. for leave at 10-11; Mtn. for Reconsid'n at 13-14.) The Court should again reject this argument. First, it finds no basis in

a "change of law" theory: Neither the revised *J.B.* order, the *Reddit* order, nor the *Mindgeek* order addresses the issue.[25] As discussed above, these decisions are not controlling, nor do they constitute a change of law under L.R. 7-9(b)(2) as to this issue.

Twitter's argument for reconsideration under L.R. 7-9(b)(3) also fails on its merits. Twitter asserts without authority that the definition of "commercial sex act" "does not include the posting of depictions of sex acts." (Mtn. for Leave at 10.) Congress, however, has assigned that term a very broad definition: "any sex act, on account of which anything of value is given to or received by any person."[26] Moreover, when it enacted the TVPA, Congress expressed its concern over "sexual exploitation of persons. . . involving activities related to prostitution, pornography, sex tourism, and other commercial sexual services."[27]

Twitter has not presented a single authority for its interpretation that pictures and videos of sexual abuse always fall outside the scope of "commercial sex act." Images capturing sexual abuse, like any other sex act, can be a form of trafficking – they only differ in that they can be replayed or reviewed over and over again, revictimizing the victim with each viewing. As one court has found in the context of a TVPA criminal prosecution:

> Essentially, the defendant's interpretation of the term "commercial sex act" would limit the purview of [§1591] to prostitution and exclude pornography. The court finds no support for this contention.
> ....
> The statutory language provides no basis for limiting the sex acts at issue to those in which payment was made for the acts themselves; rather, the use of the phrase "on account of which" suggests that there merely needs to be a causal relationship between the sex act and an exchange of an item of value. If Congress had intended to limit the commercial sex acts reached by the statute to prostitution, it could have easily drafted the statute

---

[25] The *J.B.* decision makes no mention of the issue, while the *Reddit* decision specifically notes that it did not reach the issue. (Pls. Mtn. for Leave, Ex. B at 13, n. 7.)

[26] 18 U.S.C. 1591(e)(3).

[27] TVPA, *supra* note 15 at sec. 102 (Congress's "Purposes and Findings") (emphasis added).

PLS.' OPPOSITION TO DEF.'S
MOTION FOR RECONSIDERATION
CASE NO. 3:21-CV-00485-JCS

1  accordingly.[28]

2  The Court should reject Twitter's argument—and re-argument—of this issue.[29]

3

4  **C. The Court's determination that the Plaintiffs have adequately
5  alleged a relationship with the traffickers who posted the CSAM
6  material depicting the Plaintiffs is correct and should not be
   reconsidered.**

7  Twitter argues "there is no allegation that the traffickers were behind the user accounts

8  who posted the Videos to Twitter or that they even use Twitter." (Mtn. for Leave at 11.) This

9  is not a new argument, nor was this argument unavailable to Twitter during the initial briefing;

10  rather, it is another re-argument of the issues already addressed by this Court, although not to

11  Twitter's liking.

12  This argument fundamentally misunderstands the trafficking events in this case. The

13  person or persons who originally threatened Plaintiffs at the time the CSAM was created are

14  traffickers. (FAC ¶¶ 90-5.) Whoever posted the CSAM to Twitter also committed sex

15  trafficking in violation of § 1591.[30] The only material issue is that once Twitter knew about the

16  CSAM being distributed on its platform, it had a duty to act to prevent further commercial sex

17  acts from taking place and being monetized on its platform. Moreover, as the Court correctly

---

[28] *United States v. Marcus*, 487 F. Supp. 2d 289, 306 (E.D.N.Y. 2007), *vacated on other grounds*, 538 F.3d 97 (2d Cir. 2008), *rev'd*, 560 U.S. 258, 130 S. Ct. 2159, 176 L. Ed. 2d 1012 (2010), and *aff'd in part, vacated in part, remanded*, 628 F.3d 36 (2d Cir. 2010).

[29] Twitter re-asserts its arguments concerning the *U.S. v. Todd* decision and claims that the Court has "ignore[d]" its holding. (Mtn. for Leave at 10.) But the Court, in its discretion, is not required to respond to every argument raised by the parties. It is merely required to consider them; and the Court's citation to *Todd* in its summary of the arguments of the parties in its Order sufficiently indicates that it has in fact considered Twitter's arguments concerning the case.

[30] The individuals who posted CSAM depicting Plaintiffs to the Twitter platform were traffickers. In their FAC, the Plaintiffs alleged the Twitter user names of the two user accounts that they reported to Twitter (FAC at ¶ 115 (@Straightbross and @fitmalesblog)) as well as a third user (¶ 124 screen capture of a post by "Muscle Scally Twinks"). Additionally, the CSAM was re-tweeted at least 2,223 times. (*Id.*—screen capture showing the number of retweets).

**PLS.' OPPOSITION TO DEF.'S
MOTION FOR RECONSIDERATION
CASE NO. 3:21-CV-00485-JCS**

observed, Plaintiffs' § 1591(a)(2) claim is about the timing of CSAM material being posted to Twitter, not about when it was originally created. (Order at 44, n. 6.)

### D. The Court's determination that Twitter knowingly received a commercial benefit is correct and should not be reconsidered.

This issue was directly addressed in the recent *Doe v. Mindgeek USA, Incorporated* decision. The *Mindgeek* Court held that a commercial benefit is interpreted broadly as "*any sex act* on account of which anything of value is given or received by *any person*." This includes the posting of child pornography, which constitutes a sex act. *Doe v. Mindgeek USA Inc.*, No. SACV2100338CJCADSX, 2021 WL 4167054, at *7 (C.D. Cal. Sept. 3, 2021) (emphasis in original).

> Plaintiff sufficiently alleges a commercial sex act here. She alleges her ex-boyfriend posted child pornography (the sex act). She also alleges Defendants received "thing[s] of value" in return for posting child pornography. "Defendants financially benefitted from Jane Doe's trafficking in the form of increased traffic and advertising revenue." *Id.* (cleaned up).

This reasoning is entirely consistent with this Court's analysis. In its Order, this Court found that Plaintiffs alleged that Twitter monetizes content, including CSAM, that it monetized the videos depicting the exploitation of Plaintiffs. (Order at 45.) The Order also found that the exploitive videos received substantial user engagement and that "these allegations support a plausible inference that the Videos of Plaintiffs generated advertising and attracted users, both of which benefited Twitter." (*Id.*) This conclusion is consistent with the plain language of §1591 and Congress's intent to address internet platforms that knowingly benefit from sexual exploitation.

## II. THE COURT SHOULD NOT GRANT THE REQUEST FOR AN INTERLOCUTORY APPEAL

The appellate jurisdiction of the courts of appeals is limited to "final decisions of the district courts." 28 U.S.C. § 1291. "Thus, parties may appeal only from orders which "end the litigation on the merits and leave nothing for the court to do but execute the judgment." *Couch v. Telescope Inc.*, 611 F.3d 629, 632 (9th Cir. 2010) (cleaned up). Notwithstanding this "final judgment rule, Congress made a "narrow exception"—28 U.S.C. § 1292(b).

"A district court may certify an order for interlocutory review where the order involves (1) a "controlling question of law," (2) where there are "substantial grounds for difference of opinion," and (3) an immediate appeal may "materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). The Ninth Circuit "has recognized the congressional directive that section 1292(b) is to be applied sparingly and only in exceptional cases...." *In re Cement Antitrust Litig.*(MDL No. 296), 673 F.2d 1020, 1027 (9th Cir. 1981) (cleaned up). Cases should only be certified where "allowing an interlocutory appeal would avoid protracted and expensive litigation." *Id*. at 1026. The Party seeking an interlocutory appeal "has the burden of persuading the court of appeals that exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978) (citing *Fisons, Ltd. v. United States,* 458 F.2d 1241, 1248 (CA7 1972)). "In seeking interlocutory appeal, a movant therefore has a heavy burden to show that 'exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment.'" *Senne v. Kansas City Royals Baseball Corp.*, No. 14-CV-00608-JCS, 2017 WL 5973487, at *2 (N.D. Cal. May 5, 2017) (citing *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978).

**PLS.' OPPOSITION TO DEF.'S
MOTION FOR RECONSIDERATION
CASE NO. 3:21-CV-00485-JCS**

"Certification under § 1292(b) requires the district court to expressly find in writing that all three § 1292(b) requirements are met." *Couch v. Telescope Inc.,* 611 F.3d 629, 633 (9th Cir. 2010). The purpose of allowing such appeals is to resolve a legal issue that would end the litigation at hand as well as "other actions in the district." *United States v. Real Prop. & Improvements Located at 2441 Mission St., San Francisco, California,* No. C 13-2062 SI, 2014 WL 1350914, at *3–4 (N.D. Cal. Apr. 4, 2014). Because the requirements of § 1292(b) are jurisdictional, even where a District Court finds the standards have been met, the Ninth Circuit is required to undertake its own determination whether the standards have been met. *Couch,* 611 F.3d at 633.

### A. Controlling Question of Law

"The precedent in this circuit has recognized the congressional directive that section 1292(b) is to be applied sparingly and only in exceptional cases, and that the "controlling question of law" requirement be interpreted in such a way to implement this policy." *In re Cement Antitrust Litig. (MDL No. 296),* 673 F.2d 1020, 1027 (9th Cir. 1981), *cause dismissed sub nom. Arizona v. U.S. Dist. Ct. for the Dist. of Arizona,* 459 U.S. 961 (1982), and *aff'd sub nom. Arizona v. Ash Grove Cement Co.,* 459 U.S. 1190 (1983). In order for a legal question to be controlling, there must be a showing that the "resolution of the issue on appeal could materially affect the outcome of litigation in the district court." *Id.*

"Courts in the Ninth Circuit have determined that mixed questions of fact and law are not appropriate for interlocutory appeal under § 1292(b)." *City of San Diego v. Monsanto Co.,* 310 F. Supp. 3d 1057, 1065 (S.D. Cal. 2018). "A "mixed question of law and fact or the application of law to a particular set of facts" by itself is not appropriate for permissive interlocutory review." *Finjan, Inc. v. Check Point Software Techs., Inc.,* No. 18-CV-02621-WHO, 2020 WL 1929250,

at *3 (N.D. Cal. Apr. 21, 2020). "The antithesis of a proper § 1292(b) appeal is one that turns on whether there is a genuine issue of fact, or whether the district court properly applied settled law to the facts." *Sateriale v. RJ Reynolds Tobacco Co.,* No. 2:09-CV-08394-CAS, 2015 WL 3767424, at *2 (C.D. Cal. June 17, 2015) (cleaned up).

In its Order, this Court determined that Plaintiffs' claim for beneficiary liability under §§ 1595 and 1591(a)(2) "is not subject to the more stringent requirements that appy to criminal violations of the provision." (Order at 42.) If, however, this determination was overturned on appeal it would not necessarily be dispositive of Plaintiffs' entire case. After this Court ruled that § 1595's "should have known" standard applied, it analyzed the allegations in the FAC against that standard. The Court's order did not reach or address the question of whether Plaintiffs' allegations meet the regular "knowing" or "reckless disregard" standards § 1591(a)(2). Plaintiffs have sufficiently pled these facts in the FAC.[31]

Indeed, the allegations in the FAC meet the actual knowledge standard. Twitter was provided proof of CSAM depicting John Doe #1 and John Doe #2 on its platform. It was told that both boys were 13 years old at the time the CSAM was created, and it was also provided with proof that John Doe #1 was still a child at the time he submitted the report. (FAC §§ 111-14.) With this knowledge, Twitter wrote to John Doe #1 telling him that it had "reviewed the content, and didn't find a violation of our policies." It also told him that "no action will be taken at this time." (FAC § 120.) Twitter's decision not to take the CSAM down ensured its continued distribution and monetization on its platform. These allegations are sufficient to state a plausible

---

[31] (Pls. FAC at ¶¶ 144-150 (Count II); ¶¶ 101-132 (alleging actual knowledge of Plaintiffs' trafficking as indicated by correspondence with Twitter, and including a prior report to Twitter of CSAM distribution by one of the traffickers submitted by a third party).)

claim for relief under § 1591's "knowing" or "reckless disregard" standards. Thus, even if an interlocutory appeal resulted in reversal on the knowledge standard, the alleged facts must still be applied to that legal standard. It also means that an interlocutory appeal sought by Twitter would not necessarily materially affect the outcome of the case.

## B. Substantial Ground for Difference of Opinions

"Courts traditionally will find that a substantial ground for difference of opinion exists where the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point, if complicated questions arise under foreign law, or if novel and difficult questions of first impression are presented." *Couch* at 633. In this case, no circuit courts have ruled on the issue at hand, and no questions have arisen under foreign law. Applying the law differently does not necessarily create substantial grounds for interlocutory review. *Id*. Furthermore, "a "dearth of cases" does not give rise to a substantial ground for difference of opinion." *Id*. at 634. "[J]ust because a court is the first to rule on a particular question or just because counsel contends that one precedent rather than another is controlling does not mean there is such a substantial difference of opinion as will support an interlocutory appeal." *Id.* (footnotes omitted). *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010); *see also Stiner v. Brookdale Senior Living, Inc.*, 383 F. Supp. 3d 949, 958 (N.D. Cal. 2019) (Counsel's "argument that the Court misapplied the existing law to the facts alleged … is insufficient to show a "substantial ground for difference of opinion."). *Spears v. Washington Mut. Bank FA*, No. C-08-00868 RMW, 2010 WL 54755, at *2 (N.D. Cal. Jan. 8, 2010) ("The mere fact that the Ninth Circuit has not yet ruled on this issue is insufficient to establish a substantial ground for difference of opinion.").

**PLS.' OPPOSITION TO DEF.'S
MOTION FOR RECONSIDERATION
CASE NO. 3:21-CV-00485-JCS**

21

Interpreting and applying federal statutes is the role of the district courts. In its Order, this Court interpreted 47 U.S.C. § 230(3)(5) to permit civil actions against online platforms according to § 1595's "should have known" standard. As such, Twitter has not and cannot meet its burden.

## C. Advancement of Termination of Litigation

The Court has determined that Plaintiffs have met their burden to plausibly allege a violation of § 1591(a)(2). Twitter now seeks to forestall discovery on that claim with this motion. Twitter's desire to delay and avoid discovery is different from an interlocutory appeal that would advance the termination of litigation. "Where the Court concludes certification would actually delay the resolution of the litigation, certification is not appropriate." *Rieve v. Coventry Health Care, Inc.*, 870 F. Supp. 2d 856, 880 (C.D. Cal. 2012) (citation omitted).

This Court should reject Twitter's attempts to delay the progress of this litigation. First, the Ninth Circuit would likely agree with this Court, in which case the litigation would have been delayed, not advanced. Second, certification would not advance the conclusion of this litigation because, as Twitter acknowledges: "[i]f the Ninth Circuit finds that the CDA § 230 immunity carve-out in Section 230(e)(5)(A) requires a showing that the ICS provider's conduct constitutes a violation of Section 1591, the court must still address whether Plaintiffs established 'participation in a venture' under the more stringent Section 1591 standard." (Mtn. for Leave at 16, n. 19.) Either way, adding an interlocutory appeal will likely have the effect of prolonging the resolution of this case, by placing all case progress on hold while the parties await action by the Ninth Circuit. As one district judge recently concluded:

> According to the most recently published statistics, the median disposition of a civil case in the Ninth Circuit Court of Appeals is 15.3 months.[*] Even

assuming a shorter duration for interlocutory appeals, the Court can say with near certainty that an interlocutory appeal in this case would delay, rather than advance, the termination of this litigation.

*Reilly v. Wozniak*, No. CV-18-03775-PHX-MTL, 2021 WL 1383178, at *2 (D. Ariz. Apr. 13, 2021). The path Twitter requests elongates this litigation by interposing an extra appeal followed by additional litigation. The Court should reject the request.

## CONCLUSION

For all these reasons, Plaintiffs request that the Court deny to the Motion for Leave to File a Motion for Reconsideration and deny the Motion for an Order Permitting an Interlocutory Appeal.

Respectfully submitted this 18th day of October, 2021.

By:      /s/ *Paul A. Matiasic*
Paul A. Matiasic
Hannah E. Mohr
**THE MATIASIC FIRM, P.C.**
4 Embarcadero Center, Suite 1400
San Francisco, CA 94111
Telephone: (415) 675-1089
*matiasic@mjlawoffice.com*


Lisa D. Haba*
Adam A. Haba*
**THE HABA LAW FIRM, P.A.**
1220 Commerce Park Dr., Suite 207
Longwood, FL 32779
Telephone: (844) 422-2529
*lisahaba@habalaw.com*
*adamhaba@habalaw.com*


Benjamin W. Bull*
Peter A. Gentala*
Dani Bianculli Pinter*
Christen M. Price*
**NATIONAL CENTER ON SEXUAL**

**EXPLOITATION**
1201 F St, NW, Suite 200
Washington, DC 20004
Telephone: (202) 393-7245
*lawcenter@ncose.com*

***Attorneys for Plaintiffs***

*Admitted Pro Hac Vice

## CERTIFICATE OF SERVICE

I hereby certify that on October 18, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email address denoted on the Electronic Mail Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 18th day of October, 2021.

  /s/ *Hannah E. Mohr*
Paul A. Matiasic
Hannah E. Mohr
**THE MATIASIC FIRM, P.C.**
4 Embarcadero Center, Suite 1400
San Francisco, CA 94111
Telephone: (415) 675-1089
*matiasic@mjlawoffice.com*
*mohr@mjlawoffice.com*

Case 21-2200485-JCS, Document 85, Filed 10/26/21, Page 245 of 247

1

2

3

4

5

6                 UNITED STATES DISTRICT COURT

7             NORTHERN DISTRICT OF CALIFORNIA

8

9                                       Case No. 21-cv-00485-JCS

10

    JOHN DOE, et al.,                    **ORDER RE: 1)  MOTION FOR**

11                                   **LEAVE TO FILE MOTION FOR**

            Plaintiffs,             **RECONSIDERATION OR, IN THE**

12                                   **ALTERNATIVE, MOTION FOR AN**

                              **ORDER PERMITTING**

13        v.                         **INTERLOCUTORY APPEAL**

                              **PURSUANT TO 28 U.S.C. § 1292(B); 2)**

14     TWITTER, INC.,                **MOTION FOR STAY; AND 3)**

                              **ADMINISTRATIVE MOTION TO**

15            Defendant.           **ENLARGE TIME TO RESPOND TO**

                              **DISCOVERY REQUESTS**

16

                                  Re: Dkt. Nos. 80, 81, 82

17

18         Twitter has requested leave to file a motion for reconsideration of the Court's August 19,

19 2021 order denying in part Twitter's motion to dismiss (Dkt. 69) ("Order") or, in the alternative,

20 an order certifying the Order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).  The Court

21 GRANTS the request for certification of an interlocutory appeal.  A district court may certify an

22 order for interlocutory appeal under § 1292(b) if it: (1) involves "a controlling question of law";

23 (2) on which there is "substantial ground[s] for difference of opinion"; and (3) "an immediate

24 appeal from the order may materially advance the ultimate termination of the litigation . . . ." 28

25 U.S.C. § 1292(b); *see In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1981).  The

26 Court finds that all three requirements are met here.  Therefore, the Court certifies the Order for

27 interlocutory appeal.  The Court GRANTS Twitter's Motion for Stay and therefore STAYS ALL

28 PROCEEDINGS in this case pending resolution of any appeal that may be taken up by the Ninth

1    Circuit.  The Court DENIES the Administrative Motion to Enlarge Time on the basis that it is

2    moot.  The motion hearing set for **November 19, 2021** is VACATED.

3           The parties shall notify the Court within fourteen days of the final resolution of Twitter's

4    appeal.

5           **IT IS SO ORDERED.**

6

7    Dated: October 26, 2021

8    _____

9    JOSEPH C. SPERO
     Chief Magistrate Judge

2

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 15. Certificate of Service for Electronic Filing

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form15instructions.pdf

**9th Cir. Case Number(s)** [                                              ]

I hereby certify that I electronically filed the foregoing/attached document(s) on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

**Service on Case Participants Who Are Registered for Electronic Filing:**

☒ I certify that I served the foregoing/attached document(s) via email to all registered case participants on this date because it is a sealed filing or is submitted as an original petition or other original proceeding and therefore cannot be served via the Appellate Electronic Filing system.

**Service on Case Participants Who Are <u>NOT</u> Registered for Electronic Filing:**

☐ I certify that I served the foregoing/attached document(s) on this date by hand delivery, mail, third party commercial carrier for delivery within 3 calendar days, or, having obtained prior consent, by email to the following unregistered case participants *(list each name and mailing/email address)*:

[                                                                              ]

**Description of Document(s)** *(required for all documents)*:

1. Petition for Permission to Appeal Pursuant to 28 U.S.C. § 1292(b);
2. Representation Statement; and
3. Appendix to Petition for Permission to Appeal Pursuant to 28 U.S.C. § 1292(b)

**Signature** [/s/ Kathleen Hartnett]   **Date** [11/5/2021]

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 15**                                                                 *Rev. 12/01/2018*